1  Yasin M. Almadani (Cal. Bar No. 242798)
ALMADANI LAW
2  14742 Beach Blvd., Suite 410
La Mirada, California 90638
3  (213) 335-3935 | YMA@LawAlm.com

4  *Attorney for Plaintiffs*

5

6  **UNITED STATES DISTRICT COURT**

7  **CENTRAL DISTRICT OF CALIFORNIA**

8  **WESTERN DIVISION**

9

| | |
|---|---|
| CORBRUS, LLC, a Delaware limited liability company, | Case No. CV |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| 8TH BRIDGE CAPITAL, INC., a California corporation; 8TH BRIDGE CAPITAL, LLC, a California limited liability company; YOUNG HUN KIM, an individual; OMNIA GROUP, LTD., a New York company; OMNIA PROPERTIES LLC, a New York limited liability company; DAVID PAZ, an individual; MANHATTAN REAL ESTATE FUND GP, LLC, a Delaware limited liability company; MANHATTAN REAL ESTATE FUND, LP, a Delaware limited partnership; MANHATTAN REAL ESTATE FUND II, LP, a Delaware limited partnership; MANHATTAN REAL ESTATE EQUITY FUND, LP, a Delaware limited partnership; JEFFER MANGLES BUTLER & MITCHELL LLP, a California Limited Liability Partnership; CATHERINE DEBONO HOLMES, an individual; SETH JAMES PARDEE, an individual, | 1. **FRUAD & DECEIT (OPPRESSION AND MALICE)** |
| | 2. **FRAUDULENT CONCEALMENT; CONSTRUCTIVE FRAUD (OPPRESSION AND MALICE)** |
| | 3. **NEGLIGENT MISREPRESENTAION** |
| | 4. **BREACH OF FIDUCIARY DUTY** |
| | 5. **PROFESSIONAL NEGLIGENCE** |
| | 6. **BREACH OF CONTRACT** |
| | 7. **RICO** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.      JURISDICTION AND VENUE...................................................... 1

II.     NATURE OF THE ACTION ........................................................ 1

III.    PARTIES....................................................................................... 2

        A.   PLAINTIFF.......................................................................... 2

        B.   DEFENDANTS ..................................................................... 2

IV.     ALTER EGO RELATIONSHIPS.................................................. 4

V.      FACTS COMMON TO ALL COUNTS ......................................... 5

        A.   THE EB-5 IMMIGRANT INVESTOR PROGRAM ................... 5

        B.   THE JOINT VENTURE AND PARTNERSHIP BETWEEN CORBRUS AND 8TH BRIDGE........... 6

        C.   PLAINTIFF CORBRUS' CONTRIBUTIONS TO THE MANHATTAN FUND ............................. 8

        D.   PLAINTIFF CORBRUS RETAINS JEFFER MANGLES, HOLMES, AND PARDEE TO
             REPRESENT CORBRUS ....................................................... 9

        E.   PLAINTIFF CORBRUS' CONTINUED CONTRIBUTIONS TO THE MANHATTAN FUND ........ 10

        F.   KIM (8BC) AND PAZ'S (OMNIA) FRAUD SCHEME TO INDUCE CORBRUS OUT OF ITS
             PARTNERSHIP IN THE MANHATTAN FUND................... 10

        G.   CONTINUED EXTORTIONATE BEHAVIOR BY PAZ (OMNIA)........................ 20

VI.     DISCOVERY RULE & FRAUDULENT CONCEALMENT ............................ 20

        A.   DISCOVERY RULE ............................................................. 20

        B.   FRAUDULENT CONCEALMENT ......................................... 21

VII.    PLAINTIFFS' CLAIMS FOR RELIEF....................................... 21

        A.   FIRST CLAIM FOR RELIEF: FRAUD & DECEIT .................... 21

        B.   SECOND CLAIM FOR RELIEF: FRAUDULENT CONCEALMENT
             (CONSTRUCTIVE FRAUD)................................................. 22

        C.   THIRD CLAIM FOR RELIEF: NEGLIGENT MISREPRESENTATION................ 24

        D.   FOURTH CLAIM FOR RELIEF: BREACH OF FIDUCIARY DUTY .................... 25

        E.   FIFTH CLAIM FOR RELIEF: PROFESSIONAL NEGLIGENCE ......................... 27

        F.   SIXTH CLAIM FOR RELIEF: BREACH OF CONTRACT ................................... 29

i

G.    SEVENTH CLAIM FOR RELIEF: VIOLATIONS OF RICO ................................... 30

**VIII.    DEMAND FOR JURY TRIAL ............................................................... 33**

*Fraud Complaint*

Plaintiff CORBRUS, LLC ("Corbrus" or "Plaintiff") brings this Complaint ("Complaint") demanding a jury trial against Defendants 8TH BRIDGE CAPITAL, INC., 8TH BRIDGE CAPITAL, LLC, YOUNG HUN KIM, OMNIA GROUP, LTD., OMNIA PROPERTIES LLC, DAVID PAZ, JEFFER MANGLES BUTLER & MITCHELL LLP, CATHERINE DEBONO HOLMES, and SETH JAMES PARDEE (collectively, "Defendants"). Plaintiff alleges the following based upon information and belief and personal knowledge:

## I.    JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff on the one hand, and Defendants on the other, and more than $75,000 is in controversy in this action, exclusive of interest and costs.

2.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331, based on the federal claims asserted under the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and 18 U.S.C. §§ 1331, 1334, 1962, and 1964.

3.      This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because all of Plaintiff's state-law claims are derived from a common nucleus of operative facts and are of the kind Plaintiff would ordinarily expect to try in one judicial proceeding.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, or a substantial part of property that is the subject of the action is situated in this District, and because at least one of the Defendants resides in this judicial district.

## II.    NATURE OF THE ACTION

5.      The "EB-5 Program" was created by Congress in 1990 to stimulate the economy through job creation and capital investment by foreign investors in exchange for

1

visas and residency opportunities.

6.     Plaintiff Corbrus entered into a partnership and joint venture with Defendants Young Kim and 8th Bridge Capital to locate and finance largescale real estate development projects using various financing options including the EB-5 Program.  For the EB-5 financing projects, the Corbrus and 8th Bridge partnership and joint venture would serve as a bridge between American developers and EB-5 foreign investors to arrange, facilitate, and manage the deals.

7.     However, after Plaintiff expended significant time and resources finding and cultivating lucrative business opportunities and developed one such opportunity into a mega client, working laboriously toward project completion, Defendants Kim and 8th Bridge Capital with the assistance of the other Defendants carried out a scheme to defraud Plaintiff out its rightful place in the partnership.  This suit seeks to vindicate Plaintiff Corbrus' rights, compensate Corbrus for its losses, and restore Corbrus' position in the partnership (the Manhattan Fund) that was unlawfully stripped using fraud.

### III.   PARTIES

#### A.     Plaintiff

8.     Plaintiff CORBRUS, LLC ("Corbrus" or "Plaintiff") is a Delaware limited liability company.  Corbrus' sole principal, Mr. Fu-Shen Chang ("Max Chang" or "Chang"), is a resident of the State of Washington.

#### B.     Defendants

9.     Defendant 8TH BRIDGE CAPITAL, INC. ("8th Bridge Inc.") is a California corporation formed in 2009, with its principal place of business within this judicial district.

10.     Defendant 8TH BRIDGE CAPITAL, LLC ("8th Bridge LLC") is a California limited liability company formed in December 2016, with its principal place of business within this judicial district.

11.     Defendant YOUNG HUN KIM ("Kim") is an individual with his residence

2

and domicile in the State of California, within this judicial district.

12.     On information and belief, Defendant Kim is the sole owner of both Defendant 8th Bridge Inc. and Defendant 8th Bridge LLC (collectively, "8th Bridge Capital" or "8BC").  Kim simultaneously (and interchangeably) uses the 8BC companies as alter egos of one another and of himself to conduct his financing projects.

13.     Defendant OMNIA GROUP, LTD. ("Omnia Ltd.") is a New York company.

14.     Defendant OMNIA PROPERTIES LLC ("Omnia LLC") is a New York limited liability company.

15.     Defendant DAVID PAZ ("Paz") is an individual with his residence and domicile in the State of New York.

16.     On information and belief, Defendant Paz is the sole owner of both Defendant Omnia Ltd. and Defendant Omnia LLC (collectively, "Omnia").  Paz simultaneously (and interchangeably) uses the Omnia companies as alter egos of one another and of himself to conduct his real estate development and financing projects.

17.     On information and belief, Paz merged Omnia Ltd. into Omnia LLC on or about June 6, 2017.

18.     Defendant JEFFER MANGLES BUTLER & MITCHELL LLP ("Jeffer Mangles") is a California limited liability partnership and law firm that maintains a principle place of business within this judicial district.

19.     Defendant CATHERINE DEBONO HOLMES ("Holmes") is an individual with her residence and domicile in the State of California, within this judicial district. Holmes is an attorney licensed by the California State Bar to practice law and was so licensed at all times relevant to this Complaint.

20.     Defendant Holmes is a partner and the Chair of the Investment Capital Law Group at the Jeffer Mangles law firm.

21.     Defendant SETH JAMES PARDEE ("Pardee") is an individual with his residence and domicile in the State of California.  Pardee is an attorney licensed by the

3

California State Bar to practice law and was so licensed at all times relevant to this Complaint.

## IV.   ALTER EGO RELATIONSHIPS

22.     On information and belief, there has existed a unity of interest and ownership between and among **Defendants Kim, 8th Bridge Inc., and 8th Bridge LLC** such that any individuality and separateness between or among them has ceased, and such that each is the alter ego of the other; in that:

a.     Kim has at relevant times completely controlled, led, dominated, managed and operated 8th Bridge Inc. and 8th Bridge LLC, has intermingled his assets with their assets, and has intermingled the assets of each of them with those of the other, to suit his and their convenience;

b.     Kim has at relevant times used the assets of 8th Bridge Inc. and 8th Bridge LLC for his own use, and has caused or will cause their assets to be transferred to him and to one another without adequate consideration;

c.     8th Bridge Inc. and 8th Bridge LLC each is, and at relevant times was, a mere shell and sham without sufficient capital or assets, or its capitalization is and was trifling, compared with the business to be done and the risks of loss attendant thereto; and/or

d.     8th Bridge Inc. and 8th Bridge LLC each is, and at relevant times was, a mere shell, instrumentality, and conduit through which Kim carried on his businesses, exercising complete control and dominance of 8th Bridge Inc. and 8th Bridge LLC to such an extent that any individuality or separateness between and among them does not, and at all relevant times did not, exist.

23.     On information and belief, there has existed a unity of interest and ownership between and among **Defendants Paz, Omnia Ltd., and Omnia LLC** such that any individuality and separateness between or among them has ceased, and such that each is the alter ego of the other; in that:

*Fraud Complaint*

a.     Paz has at relevant times completely controlled, led, dominated, managed and operated Omnia Ltd. and Omnia LLC, has intermingled his assets with their assets, and has intermingled the assets of each of them with those of the other, to suit his and their convenience;

b.     Paz has at relevant times used the assets of Omnia Ltd. and Omnia LLC for his own use, and has caused or will cause their assets to be transferred to him and to one another without adequate consideration;

c.     Omnia Ltd. and Omnia LLC each is, and at relevant times was, a mere shell and sham without sufficient capital or assets, or its capitalization is and was trifling, compared with the business to be done and the risks of loss attendant thereto; and/or

d.     Omnia Ltd. and Omnia LLC each is, and at relevant times was, a mere shell, instrumentality, and conduit through which Paz carried on his businesses, exercising complete control and dominance of Omnia Ltd. and Omnia LLC to such an extent that any individuality or separateness between and among them does not, and at all relevant times did not, exist.

## V.     FACTS COMMON TO ALL COUNTS

### A.     The EB-5 Immigrant Investor Program

24.     The term "EB-5" denotes a category of U.S. visas known as "Employment-Based Fifth Preference" visas.  The United States permits foreign investors to obtain an EB-5 visa by investing: (i) a minimum of $1,000,000 in capital in a U.S. Citizenship and Immigration Services ("USCIS")-approved new commercial enterprise, or (ii) a minimum of $500,000 in capital in a USCIS-approved new enterprise within a high-unemployment or rural area, known as a "Targeted Employment Area."

25.     The enterprise may be formed to conduct any lawful for-profit business, but must directly create full-time jobs for at least ten qualifying employees.

26.     EB-5 funds can be allocated only to programs specifically approved by the

*Fraud Complaint*

USCIS and cannot be diverted elsewhere.

27.     Ten thousand (10,000) EB-5 visas are granted each year, entitling visa holders to apply for permanent U.S. residency.

28.     Since its inception, the EB-5 Program has enabled U.S. businesses to raise billions of dollars in investment capital from foreign investors.

**B.     The Joint Venture and Partnership Between Corbrus and 8th Bridge**

29.     Corbrus is a full-service real estate development and financing company that operates in, *inter alia*, the EB-5 financing space.

30.     The 8BC companies are real estate financing companies that operate in, *inter alia*, the EB-5 financing space.

31.      On or about April 13, 2015, Plaintiff Corbrus (through Chang) and Defendant 8BC (through Kim) entered into Non-Disclosure and Non-Circumvention Agreement (the "First NDNCA") (proposed by Corbrus) to explore joint venture and partnership opportunities to finance large real estate development projects, including providing EB-5 Program financing.  Corbrus' primary part was to find large real estate development projects and 8BC's primary part was to cultivate investor interest, including interest among EB-5 investors by cultivating relationships with foreign sales agents.

32.     The First NDNCA prohibited 8BC from disclosing any proprietary or confidential information about potential real estate development projects presented by Corbrus and/or circumventing Corbrus on those projects.

33.     Between April 13 and 30, 2015, Corbrus introduced to 8BC a number of potential development projects, which the two companies discussed extensively.

34.     On April 30, 2015, Corbrus and 8BC entered into a second NDNCA (proposed by 8BC) (the "Second NDNCA") that allowed the two companies to continue exploring financing projects on which to partner together with the continued agreement that neither would disclose proprietary information or circumvent the other on projects the two companies were exploring pursuant to their NDNCAs.  The Second NDNCA

6

provided that the "federal and state courts within the State of California shall have exclusive jurisdiction to adjudicate any dispute arising out of this Agreement."

35.     Between April and June 2015, Corbrus proposed additional promising projects from coast to coast that Chang (Corbrus) and Kim (8BC) discussed. Among those were real estate projects in New York City ("NYC") being developed by Paz (Omnia) that Chang (Corbrus) introduced to 8BC under the parties' NDNCAs. 8BC wanted very much to pursue these projects.

36.     Between June 17 and 22, 2015, Chang (Corbrus) and Kim (8BC) agreed in writing to have a joint venture and partnership, which would lend EB-5 funds to various projects including one or more of Paz's projects. Corbrus and 8BC's general partnership EB-5 lending company was dubbed the "Manhattan Real Estate Fund" (the "Manhattan Fund" or the "Partnership"), and was to be funded by a number of limited partnerships consisting of foreign investors.[1] EB-5 investors would fund the Manhattan Fund, and the

---

[1] On information and belief, there are a number of "Manhattan Real Estate Fund" entities and companies that raise and control EB-5 funds for Omnia Projects, which are covered under Corbrus' and 8BC's non-circumvention agreement and partnership. Examples of these entities and companies include, The Manhattan Real Estate Corporation, Manhattan Real Estate Equity Fund, LP, Manhattan Real Estate Equity Fund GP, LLC, Manhattan Real Estate Fund II, LP, The Manhattan Real Estate Fund LLC, Manhattan Real Estate Fund, LP, Manhattan Real Estate Limited Partnership, Manhattan Real Estate Partners I, L.P., and will be collectively referred to as the "Manhattan Fund Companies" or the "Manhattan Fund." On information and belief, there has existed a unity of interest and ownership between and among Defendants Kim, 8BC and the Manhattan Fund Companies such that any individuality and separateness between or among them has ceased, and such that each is the alter ego of the other; in that: (i) Kim and 8BC have at relevant times completely controlled, led, dominated, managed and operated the Manhattan Fund Companies, have intermingled their assets with the assets of the Manhattan Fund Companies, and have intermingled the assets of each of the Manhattan Fund Companies with those of the other Manhattan Fund Companies, to suit Kim, 8BC's, and the Manhattan Fund Companies' convenience; (ii) Kim and 8BC have at relevant times used the assets of the Manhattan Fund Companies interchangeably among the companies and for their own use, and have caused or will cause the Manhattan Fund Companies' assets to be transferred to Kim and/or 8BC and to one another without adequate consideration; (iii) the Manhattan Fund Companies have at relevant times each been treated by Kim and 8BC as mere shells and shams without sufficient capital or assets, or their capitalization is and was trifling, compared with the business to be done and the risks of loss attendant thereto; and/or (iv) the Manhattan Fund Companies have at relevant times each been treated by Kim and 8BC as mere shells, instrumentalities, and conduits through which Kim and 8BC carried on

*(footnote cont'd on next page)*

*Fraud Complaint*

Manhattan Fund would in turn serve as a lender to Paz and Omnia) and other such projects that the Manhattan Fund partnership would pursue.

37. Corbrus and 8BC agreed to be *equal* partners in the Manhattan Fund, splitting the proceeds of the first Omnia deal as follows:

      a.    Corbrus would collect 2% of the closing fees and 8BC would collect 1%;

      b.    Corbrus would be entitled to 20% of the interest accrued for the life of the Manhattan Fund and 8BC would be entitled to 80% of the interest accrued;

      c.    All other compensation, including but not limited to equity, equity reward, or equity-reward-like compensation, would be split equally between Corbrus and 8BC.

## C.    Plaintiff Corbrus' Contributions to the Manhattan Fund

38. As described above, Chang (Corbrus) had expended tremendous effort for months laboring through the details of numerous real estate development projects ranging from coast to coast to find a suitable project for the Manhattan Fund partnership and joint venture. The two had ultimately settled on Paz's Omnia real estate development projects (the "Omnia Projects") as the first of first of many projects covered by the NDNCAs.

39. From May through September 2015, Chang (Corbrus) and Kim (8BC) negotiated with Paz (Omnia) to provide EB-5 financing for one or more of the Omnia Projects through the Manhattan Fund. Chang (Corbrus), Kim (8BC), and Paz (Omnia) settled on Omnia's Ace Hotel project in NYC to be the first of such projects (the "Ace Hotel Project").[2] The Ace Hotel Project would receive a loan of at least $20 million in EB-5 funds from Manhattan Fund.

40. From July through November 2015, Corbrus expended considerable time and effort on the Manhattan Fund, providing advice and expertise, negotiating terms

their businesses, exercising complete control and dominance of the Manhattan Fund Companies to such an extent that any individuality or separateness between and among them does not, and at all relevant times did not, exist.

[2] The "Ace Hotel" would ultimately be named the "Sister City Hotel."

8

with Paz (Omnia), retaining consultants, working with lawyers and consultants to comply with EB-5 requirements, working on Manhattan Fund's financing documents, marketing materials, immigration arrangements, and other documentation, finding additional investor opportunities, and being actively involved in just about every aspect of the project. Corbrus developed a PowerPoint presentation to help 8BC and Omnia sell the Ace Hotel Project to investors in China. Corbrus also managed efforts on the ground in the U.S. coordinating, reviewing, and providing input on the drafting of numerous important documents including, for example, private placement memorandum, limited partnership agreement, subscription agreement, loan and security agreement, escrow agreement, regional center agreement, economic job impact analysis, EB-5 business plan, development budget capital stack (equity and debt), land title and closing documents, construction permits, construction contracts, construction schedule, architectural plans and renderings, corporate structure, entity registrations, management agreement, management biographies, target employment area letter, hotel 5-year pro forma, and hotel feasibility study.

### D. Plaintiff Corbrus Retains Jeffer Mangles, Holmes, and Pardee to Represent Corbrus

41. On August 6, 2015, Corbrus retained Defendants Jeffer Mangles and Holmes (a Jeffer Mangles partner) to represent Corbrus in connection with the Ace Hotel EB-5 offering. Pardee was the Jeffer Mangles associate working on the matter. As Corbrus' attorneys, Jeffer Mangles, Holmes, and Pardee were required by the California Rules of Professional Conduct to:

a. Avoid engaging in activity potentially adverse to Corbrus without first fully informing Corbrus of all adverse consequences and obtaining Corbrus' *informed* written consent (Rule 3-300);

b. Avoid representation of interests reasonably foreseeably adverse to Corbrus without first fully informing Corbrus of all adverse consequences and obtaining Corbrus' *informed* written consent (Rule 3-310);

9

c.     Avoid accepting or continuing representation of any client related to the Manhattan Fund if that client's interests potentially or actually conflicted with Corbrus' interests without first fully informing Corbrus of all adverse consequences and obtaining Corbrus' *informed* written consent (Rule 3-310); and

d.     Keep Corbrus reasonably informed about significant developments relating to the representation, including promptly complying with reasonable requests for information and copies of significant documents (Rule 3-500).

### E.     Plaintiff Corbrus' Continued Contributions to the Manhattan Fund

42.     In September 2015, Chang (Corbrus) executed a number of official documents and agreements as Manhattan Fund's "Managing Director" and "Managing Member." Holmes, Pardee, and Jeffer Mangels filed a number of these documents and used Chang's Social Security Number to obtain Employer Identification Numbers (EINs) for the Manhattan Fund general and limited partnerships.

43.     On or about September 21, 2015, Chang (Corbrus) attempted to bring additional EB-5 investors to the Manhattan Fund in addition to the investors Kim (8BC) was attempting to secure. Kim (8BC) as a 50% partner quickly blocked that effort.

44.     That same day, Kim (8BC) attempted to change the terms of the partnership agreement with Corbrus to gain more control, but Chang (Corbrus) did not allow it.

45.     On September 25, 2015, Kim again attempted to give himself and 8BC greater control and ownership of the Manhattan Fund, but Chang (Corbrus) pointed out that the two had agreed to an equally controlled co-partnership with proceeds to be distributed in accordance with parties' agreed upon terms. (*See supra* ¶ 36-37). Holmes (Corbrus' attorney) was privy to the email exchange in which this conflict arose, but Holmes did nothing to advise her client (Corbrus) on the matter or even flag the conflict of interest.

### F.     Kim (8BC) and Paz's (Omnia) Fraud Scheme to Induce Corbrus Out of Its Partnership in the Manhattan Fund

46.     Between May and September 2015, Kim (8BC) and Paz (Omnia) had

*Fraud Complaint*

developed a close relationship and planned on doing future EB-5 projects together as envisioned by the Manhattan Fund partnership between Corbrus and 8BC.  The relationship was the direct result of Chang's (Corbrus) hard work and hustle in finding the right developer for the Partnership and cultivating the relationship and projects related thereto.  Therefore, 8BC's NDNCAs, partnership, and joint venture with Corbrus required that neither party circumvent the other on EB-5 projects with Paz (Omnia).  Kim (8BC) and Paz (Omnia), however, sought to cut out Chang (Corbrus) and thereby secure for themselves a greater piece of the pie.

47.    Between October 2 and 5, 2015, Kim (8BC) devised a scheme to defraud Chang (Corbrus) and made an agreement with Paz (Omnia) to execute the scheme in clear violation of the NDNCAs and duty of loyalty to the partnership, and inspite of the fact that Corbrus had invested tremendous effort for the Partnership.

48.    The object of the fraud scheme was to cut out Corbrus from the Manhattan Fund Partnership by convincing Chang (Corbrus) that it was better for Corbrus to *not* be a partner on the Manhattan Fund, but to instead be paid as a consultant by Paz on the Omnia side.

49.    Over the course of months, Kim (8BC) and Paz (Omnia) assured Chang (Corbrus) that Kim would forgo earnings on the 8BC and Manhattan Fund side of the project so that Corbrus could continue to be made whole by Paz on the Omnia side as agreed to by Kim (8BC) in First and Second NDNCAs.  As it turned out, however, the entire discourse was a charade and fraud designed to induce Corbrus into giving up its partnership place the Manhattan Fund without any compensation.

50.    Kim (8BC) and Paz (Omnia) aided and abetting one another to execute the fraud scheme by engaging in numerous acts using the wire facilities of the United States.  Holmes and Jeffer Mangles (Corbrus' lawyers) also aided and abetted the scheme by intentionally concealing material information from Corbrus and abandoning Corbrus for the more lucrative representation opportunities with 8BC and Omnia despite obvious

*Fraud Complaint*

conflicts of interest.  Kim (8BC), Paz (Omnia), and Holmes (Jeffer Mangles) engaged in the following material acts and omissions in furtherance of the fraud scheme:

      a.   Between October 2 and 5, 2015, Kim (8BC) had phone conversations with Chang (Corbrus) discussing the structure of their co-equal partnership.  Kim attempted to convince Chang that it would be easier for Kim to close the deal with certain EB-5 sales agents if Corbrus was not named as a partner on the Manhattan Fund EB-5 loan offering paperwork, because foreign sales agents would have questions about Corbrus and answering those questions would delay the project.  According to Kim, leaving Corbrus off the paperwork would allow the project to move faster.  During these phone conversations Kim (8BC) promised repeatedly that he and Paz (Omnia) could establish an arrangement for Corbrus by which Corbrus would essentially receive the same (or equivalent) benefits that it was entitled to as a partner on the Manhattan Fund. Kim (8BC) assured Chang (Corbrus) that pursuant to the parties NDNCA and partnership agreement, the benefits due Corbrus would not be circumvented in any way and Kim (8BC) would make sure of that.

      b.   On October 5, 2015, Kim (8BC) sent Chang (Corbrus) an email following up on their phone conversations that Kim (8BC) would ensure that all documentation required to protect Corbrus' interest would be duly executed and that Corbrus would not be left out of the deal.  None of this was true, however.  Kim (8BC) was intentionally making false promises to induce Corbrus out of its place as a Manhattan Fund partner with no intention of keeping those promises.

      c.   On October 6, 2015, Kim (8BC) sent Paz (Omnia) an email copying Chang (Corbrus) pretending to negotiate a deal with Paz on Corbrus' behalf whereby Corbrus would be made whole as a "consultant" on the Omnia side for giving up its Manhattan Fund partnership.

      d.   Thereafter, between October 6 and 19, Kim (8BC) and Paz (Omnia) engaged in a series of sham negotiations with Chang (Corbrus) over the phone and email

*Fraud Complaint*

to induce Chang to give up Corbrus' Manhattan Fund partnership rights.  Kim and Paz applied tremendous pressure and gave rosy false assurances to Chang during their phone conversations.  Some examples follow below.

e.       On October 12, 2015, Kim (8BC) and Paz (Omnia) exchanged emails copying Chang (Corbrus), engaging in sham negotiations in furtherance of the fraud scheme, discussing an arrangement to ensure Corbrus rights were protected but actually never intending to keep the arrangement.  The email was intended to induce Chang into a false sense of security, and it had that effect.

f.       On October 13, 2015, Paz (Omnia) sent an email to Kim (8BC) and Chang (Corbrus), continuing to engage in sham negotiations with the same intention purpose, and effect.

g.       On October 15, 2015, Kim (8BC) sent an email to Paz (Omnia), copying and Chang (Corbrus), seemingly negotiating with Omnia on Corbrus' behalf, but actually continuing to engage in the sham.

h.       On October 18, 2015, Kim (8BC) had a call with Chang (Corbrus), pressuring Chang to give up his partnership in the Manhattan Fund while assuring Chang that Kim (as Chang's partner) would not allow Chang to be circumvented or cut short in any way on Omnia's side.  The series of calls and emails over time had the intended effect of inducing Chang into a false sense of security.

i.       On October 19, 2015, Chang (Corbrus) met with Paz in person.  At the meeting, in furtherance of Kim's fraud scheme, Paz assured Chang that Chang (Corbrus) would be made whole by Paz if Corbrus resigned as a Manhattan Fund partner.  Paz (Omnia) followed up that meeting with an agreement over text and email to compensate Corbrus (on terms acceptable to Corbrus) if Corbrus relinquished its position as a Manhattan Fund partner.  Paz (Omnia) also agreed to a continuing consulting relationship by which Corbrus would be made whole on the Manhattan Fund's ongoing relationship with Paz on other Omnia projects.  Paz (Omnia) agreed that a more formal

*Fraud Complaint*

consulting agreement reflecting the parties' agreed upon terms would be executed as soon as the rush of the Ace Hotel EB-5 financing offering documents was over. At the time, Chang had no idea that Paz never intended to follow through with the deal. He only intended to help Kim (8BC) dispose of Corbrus as Kim's partner. After the discussion with Paz, Chang (Corbrus) had a call with Kim (8BC) during which Kim assured Chang that Kim would not allow Corbrus to be circumvented or cut short in any way by Paz or Omnia, and that Corbrus should leave the partnership with full confidence that Kim (8BC) and Paz (Omnia) would work together to ensure that Corbrus received its compensation due under the Manhattan Fund partnership and joint venture.

j.      From October 19 to 25, 2019, Kim (8BC) and Paz (Omnia) had conversations with Chang (Corbrus), insisting that Corbrus give up its partnership interest in the Manhattan Fund *first* due to the rush of the EB-5 loan offering documents, marketing materials, immigration filing package, and other documentation needing to be drafted quickly. Kim and Paz insisted that the drafting of the extensive documentation was time sensitive and that as soon as the Manhattan Fund EB-5 financing documents were executed, Corbrus' protective consulting agreement with Omnia would also be executed ensuring that Corbrus would receive the compensation due under the NDNCA and Manhattan Fund partnership agreement.

k.      Throughout these negotiations, neither Kim (8BC) nor Paz (Omnia) ever intended to pay Corbrus. Rather, Kim and Paz engaged in sham negotiations designed to give Chang (Corbrus) a false sense of security only to defraud him out of his rights as a Manhattan Fund partner.

l.      On October 25, 2019, induced by Kim (8BC) and Paz's (Omnia) false promises and assurances, Corbrus sent its lawyers (Holmes, Pardee, and Jeffer Mangles) an email stating Corbrus' intention to resign as a Manhattan Fund partner per discussions with the project team, Kim and Paz. That week, Holmes and Pardee had discussions with Kim, Paz, and Chang on the matter of Corbrus' resignation from the

14

Manhattan Fund partnership.  Kim, Paz, and Chang communicated to Holmes and Pardee that as a condition of Corbrus' resignation, the Jeffer Mangles' lawyers (Corbrus' lawyers) would need to draft a consulting agreement between Corbrus and Omnia to ensure that Corbrus' compensation due under the Manhattan Fund partnership would remain more or less intact.  Kim and Paz never intended on moving forward with this consulting agreement and Holmes never intended on drafting it.  Nevertheless, they all intentionally allowed Chang (Corbrus) to go on believing that Corbrus' rights would be fully protected, only to pull the rug out from under Corbrus when it was too late.

m.     Moreover,  despite being *Corbrus'* lawyers owing Corbrus a fiduciary duty, Holmes and Pardee of Jeffer Mangels: (i) did not advise Corbrus of the potential pitfalls of resigning as a Manhattan Fund partner; (ii) did not in any way protect Corbrus' interest in the partnership in drafting the EB-5 loan offering documents; (iii) did not disclose to Corbrus Jeffer's intention to completely abandon Corbrus; (iv) did not disclose to Corbrus that they would go on to represent interests adverse to Corbrus in the same matter (or obtain Corbrus' *informed* written consent to do so); and most of all, (iv) Holmes actively aided and abetted Kim and Paz's fraud scheme by affirmatively concealing the fact the Jeffer Mangles lawyers were not going draft any agreement protecting Corbrus' rights while allowing Corbrus (their client) to go on believing that such an agreement would be drafted.

n.     On or about October 25, 2015, Holmes (Corbrus' lawyer) and Kim (Corbrus' partner) privately discussed behind Chang's back Holmes' intention to abandon Corbrus in favor of 8BC as well as her intention to *not* draft any agreement protecting Corbrus' rights.  Holmes and Kim (both Corbrus' fiduciaries) kept this very material information secret from Chang (Corbrus) until the loan documents were executed and it was too late for Corbrus to object.  On information and belief, injury from Holmes' participation in the fraud, breach of fiduciary duty, and professional negligence did not occur until on or about the end of 2017 and Corbrus did not learn of Holmes' active

*Fraud Complaint*

participation in the Kim's scheme until June 2019 when these willfully concealed details of the fraud and negligence were coincidentally disclosed to Corbrus.

o. On information and belief, between October 25 and December 1, 2015, Pardee also learned and came to understand that the Jeffer Mangles' attorneys would not be drafting an agreement to protect Corbrus' rights. Pardee, however, did not act to protect Corbrus' rights or even flag the issue for Corbrus, choosing to conceal it instead. On information and belief, injury from Pardee's negligence did not occur until on or about the end of 2017 and Corbrus did not learn of Pardee's negligent breach of fiduciary duty until June 2019 when these willfully concealed details of the fraud and negligence were coincidentally disclosed to Corbrus.

p. Based on the belief that his partner (Kim), his lawyers (Holmes, Pardee, and Jeffer Mangles), and his business associate Paz were all being honest and forthright in their express and implied promises and commitments, Chang (Corbrus) resigned from the Manhattan Fund partnership and allowed the EB-5 loan offering documents to be drafted without Corbrus' mention. Corbrus was supposed to be kept in the loop on the execution of the loan documents, but was deliberately cut out by Kim, Paz, and Holmes.

q. Throughout the month of November 2015, while the EB-5 loan offering was being finalized, Kim (8BC), Paz (Omnia), and Holmes (Jeffer Mangles) continued to allow Corbrus to falsely believe that Corbrus' agreement was going to be drafted and executed once the rush on the EB-5 loan offering piece was brought under control. They strung Corbrus along in this fashion throughout November 2015 so that Corbrus would not derail the EB-5 loan offering process by insisting on its rights.

r. On November 13, 2015, Chang (Corbrus) emailed Holmes (Jeffer Mangles) (Corbrus' attorneys), Kim (8BC) (Corbrus' business partner), and Paz (Omnia) (Corbrus' business associate) asking for the status of the protective consulting agreement that was promised to Corbrus. No one, *not even Corbrus' own lawyer, Holmes*, timely

*Fraud Complaint*

responded to the email.  Instead, Holmes, Kim, and Paz quietly continued to work on executing the EB-5 loan documents keeping Corbrus in the dark about their intentions to cut Corbrus out.

s.     On November 24, 2015, in furtherance of the fraud scheme and in order to keep stringing Chang (Corbrus) along, Paz sent an email to Holmes copying Chang inquiring about Corbrus' consulting agreement.  Instead of responding to Chang and Paz, Holmes secretly sent Kim (8BC) an email confirming again that Holmes would not be drafting any such agreement.  Holmes and Kim continued to keep Chang (Corbrus) completely in the dark about it.  Paz also kept silent knowing full well that no protective consulting agreement would ever be executed.

t.     On December 1, 2015, after stringing Corbrus along for months through the fraud scheme and immediately after the Manhattan Fund EB-5 loan agreement was fully executed with Corbrus officially cut out, Kim (8BC) informed Chang (Corbrus) *for the first time* that the Manhattan Fund EB-5 loan agreement had been fully executed, that Corbrus was not a part of it, that Kim (8BC) and Holmes (Jeffer Mangles) would have nothing to do with any protective consulting agreement between Corbrus and Omnia, and that Corbrus should work directly with Omnia on whatever consulting agreement they would reach.  Holmes and Paz were copied on the email and neither of them did anything to intervene or protect Corbrus' rights as they were promised.

u.     Immediately after Kim's (8BC) December 1st email, Chang (Corbrus) responded protesting that Corbrus' resignation from the Manhattan Fund partnership was contingent upon all parties working together to execute Corbrus' protective consulting agreement with Omnia.  No one responded.  Instead, as planned, Paz (Omnia) proceeded to give Chang (Corbrus) the run-around.  Meanwhile, Corbrus' partner (Kim) and lawyer (Holmes) moved on with one another completely abandoning Corbrus. Holmes abandoned Corbrus without even so much as a letter terminating representation. The abandonment was uninformed, unilateral, and deceptive.

*Fraud Complaint*

51.     Corbrus had little legal recourse at the time because no payments were not yet due and so actual injury had not yet occurred.  Payments would not become due and actual injury would not occur until the Manhattan Fund EB-5 loan was actually funded *and* disbursed, which, in the normal course, would take approximately two or more years depending on a number of project-specific factors, including, for example, the speed of the raise, the project's financing needs, the borrower's ability to meet its loan obligations, etc.

52.     On November 7, 2017, Chang (Corbrus) sent Kim (8BC) an email inquiring about the funding status of the Manhattan Fund EB-5 project(s) with Omnia.  On November 13, 2017, Kim responded refusing to provide any information on the basis of Corbrus' resignation from the Manhattan Fund, which was fraudulently induced by Kim's own scheme.

53.     On November 20, 2017, Chang (Corbrus) sent Kim (8BC) a follow up email reminding Kim of the parties' non-circumvention agreement and partnership along with Kim and Paz's assurances to Chang that Corbrus' interests would be protected.  Kim again refused to provide any information on the basis of the fraudulently induced resignation.

54.     On September 23, 2018, Corbrus emailed its attorney Holmes (Jeffer Mangles) informing Holmes that Corbrus believed it had been defrauded by Kim (8BC) and Paz (Omnia), and requesting all files and communications concerning Jeffer Mangles' work on the Manhattan Fund projects with 8BC and Omnia.  Holmes did not respond, continuing to actively conceal Kim's fraud scheme along with the Jeffer Mangles attorneys' own fraud and negligence.  On September 28, 2018, Corbrus sent Holmes a follow-up email, still with no response.  On October 10, 2018, Corbrus sent Holmes another follow-up email, still with no response.

55.     It was not until June 2019 that Corbrus was coincidentally provided information from which Corbrus learned that Holmes, Pardee, and Jeffer Mangles' were themselves involved in Kim's scheme, Holmes engaging in fraud, negligence, and breach

*Fraud Complaint*

of fiduciary duty, and Pardee engaging in at least negligence and breach of fiduciary duty.

56.     Holmes and Jeffer Mangles continue to represent 8BC on matters related to Manhattan Fund.  As Corbrus' attorneys (whether current or former), Holmes and Jeffer Mangles understand of the history of the case and their own involvement in it.  Therefore, even as Holmes continues to conceal the fraud scheme, at the very least, she has a duty to cease representation of 8BC, and disclose to Corbrus when the Manhattan Fund Companies were funded and when and on what terms those EB-5 funds were disbursed. Holmes' continuing fiduciary duty to Corbrus as well as Kim's fraud scheme in this case eviscerate any claim of privilege.  Nevertheless, Holmes continues to breach her fiduciary duty to Corbrus and continues to actively conceal the full scope of the fraud scheme by her continued refusal to provide material information and her continued representation of 8BC, a company in a clear adversarial relationship to Corbrus.

57.     To date, Plaintiff Corbrus does not know precisely when the Manhattan Fund EB-5 loan was actually funded or disbursed, and damages began to accrue. However, Plaintiff is informed and believes that loan has been funded and funds have been disbursed.  Plaintiff is further informed and believes that the loan was probably funded at the end of 2017 (sometime in or about December 2017), and that significant payments are due to Plaintiff that have not been paid.

58.     Plaintiff is further informed and believes that Paz (Omnia) has borrowed tens of millions of dollars in EB-funds from the Manhattan Fund to purportedly finance at least one (but potentially two or more) of Omnia's multimillion dollar real estate projects, and, per EB-5 Program requirements, the funds continue to be lent out for development, accruing interest to which Plaintiff Corbrus is entitled under the Manhattan Fund partnership and joint venture.[3]   On information and belief, to date, Plaintiff Corbrus projects its losses in interest, fees, equity, and other compensation directly and proximately resulting from Defendants' tortious conduct to be at least $14.7

---

[3] Corbrus is also entitled to any other development opportunities introduced to 8BC by Corbrus under the parties' NDNCAs, including all projects with Paz and/or Omnia.

19

million and continuing to accrue over time.

### G.    Continued Extortionate Behavior by Paz (Omnia)

59.    Paz (Omnia) was initially introduced to Chang (Corbrus) by Hakan Haskalp, who was and continues to be a business associate of Chang (Corbrus).  Paz had agreed to pay Haskalp a broker's fee (1% of the total raise) for introducing him a significant financing source, Corbrus.  Chang (Corbrus) then introduced Paz (Omnia) to various financing options including the EB-5 Program.

60.    At all times relevant, Paz (Omnia) has known that Haskalp and Chang are business associates who do business together.

61.    Paz has refused to pay Haskalp his full 1% fee, holding back a significant portion of that fee demanding that Haskalp first lean on Chang (Corbrus) to provide Paz and Omnia a full release of legal claims for Paz's part in the schemes described herein.

62.    Haskalp, however, maintains that the broker's fee due to him is completely separate and apart from any monies due to Chang (Corbrus).

63.    Paz's (Omnia) actions are extortionate and interfere with the business relationship between Chang (Corbrus) and Haskalp.  The inappropriate demands also evidence Paz's consciousness of guilt.

## VI.    DISCOVERY RULE & FRAUDULENT CONCEALMENT

### A.    Discovery Rule

64.    Plaintiff did not discover and could not have discovered through the exercise of reasonable diligence the true nature and full scope of Defendants' tortious conduct that gives rise to the claims raised herein, because Defendants willfully and intentionally concealed and continue to conceal material information relating to their tortious conduct, thus tolling any otherwise applicable statute of limitations.

65.    Plaintiff did not discover and could not have discovered through the exercise of reasonable diligence Holmes' active involvement in the fraud and active concealment of her negligence and significant breaches of fiduciary duty until June 2019 when material

*Fraud Complaint*

information sufficiently supporting the claims coincidentally came to Plaintiff's attention, thus tolling any otherwise applicable statute of limitations.

66.    Plaintiff did not discover and could not have discovered through the exercise of reasonable diligence Pardee's willful concealment of his negligence and significant breaches of fiduciary duty until June 2019 when material information sufficiently supporting the claims coincidentally came to Plaintiff's attention, thus tolling any otherwise applicable statute of limitations.

### B.    Fraudulent Concealment

67.    Under the fraudulent concealment doctrine, the causes of action alleged herein did or will only accrue upon discovery of the true nature of the fraud and other violations perpetrated by Defendants.

68.    All Defendants willfully concealed from Plaintiffs material information required for the prosecution of Plaintiffs' claims.  Defendants took active and affirmative steps to hide the true character, quality, nature, and extent of their tortious acts. Plaintiffs did not discover and could not have discovered through the exercise of reasonable diligence, the fraud scheme until June 2019 and still have not discovered its full scope because Defendants continue to conceal material information.

69.    Defendants are under a continuous duty to disclose to Plaintiffs the true character, quality, and nature of their tortious acts against Plaintiff.

## VII.   PLAINTIFFS' CLAIMS FOR RELIEF

### A.    FIRST CLAIM FOR RELIEF: FRAUD & DECEIT
### (Conspiracy and Aiding & Abetting)

*(Against Defendants 8th Bridge Inc., 8th Bridge LLC, Kim,*

*Omnia Ltd., Omnia LLC, Paz, Jeffer Mangles, and Holmes)*

70.    Plaintiff realleges and incorporates by reference, in this claim, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

*Fraud Complaint*

71.     Plaintiff brings this fraud and deceit claim against Defendants 8th Bridge Inc., 8th Bridge LLC, Kim, Omnia Ltd., Omnia LLC, Paz, Jeffer Mangles, and Holmes (for purposes of this claim for relief, "Defendants").

72.     At all relevant times alleged in this Complaint, Defendants actively engaged in, participated in, agreed to, aided and abetted, conspired in, and/or furthered a fraudulent scheme, whereby Defendants deliberately and fraudulently induced Plaintiff into a false sense of security to relinquish its rightful partnership position in the Manhattan Fund Companies (as more fully set forth above (¶¶ 46-58), and incorporated herein by reference), which conduct constitutes fraud and deceit. Plaintiff's will was overborne by Defendants' fraud.

73.     Defendants' numerous misrepresentations made in furtherance of their fraud and deceit (detailed in ¶¶ 46-58) constituted malice as intending to cause and recklessly disregarding sure and significant injury to Plaintiff and as despicable conduct with a willful and conscious disregard of Plaintiff's rights.

74.     Defendants' numerous misrepresentations made in furtherance of their fraud and deceit (detailed in ¶¶ 46-58) constituted oppression as despicable conduct that subjected Plaintiff to cruel and unusual hardship in conscious disregard of Plaintiff's rights.

75.     Plaintiff reasonably relied on Defendants' misrepresentations (detailed in ¶¶ 46-58) and was fraudulently induced into giving up its partnership place in the Manhattan Fund Companies.

76.     As a result, Defendants' intentional, willful, and malicious fraud and deceit directly, proximately, and substantially caused Plaintiffs to suffer significant injury and damages and continue to accrue.

WHEREFORE, Plaintiff prays for relief as set forth below.

**B.    SECOND CLAIM FOR RELIEF: FRAUDULENT CONCEALMENT (CONSTRUCTIVE FRAUD)**

**(Conspiracy and Aiding & Abetting)**

*Fraud Complaint*

(*Against Defendants 8th Bridge Inc., 8th Bridge LLC, Kim, Jeffer Mangles, and Holmes*)

77.    Plaintiff realleges and incorporates by reference, in this claim, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

78.    Plaintiff brings this fraudulent concealment/constructive fraud claim against 8th Bridge Inc., 8th Bridge LLC, Kim, Jeffer Mangles, and Holmes (for purposes of this claim for relief, "Defendants").

79.    At all relevant times alleged in this Complaint, Defendants 8th Bridge Inc., 8th Bridge LLC, and Kim were in a partnership and joint venture with Plaintiff; Defendants Jeffer Mangles and Holmes were Plaintiff's attorneys.  Defendants were thus in a fiduciary relationship with Plaintiff—that is, in a position of special knowledge and trust with the opportunity to take undue advantage of and exercise undue influence over Plaintiffs.  Defendants owed Plaintiff a fiduciary duty to be honest and not conceal material information from or defraud Plaintiff.

80.    As detailed above in ¶¶ 46-58, Defendants actively engaged in, participated in, agreed to, aided and abetted, conspired in, and/or furthered a fraudulent scheme to induce Plaintiff into giving up its rightful partnership position in the Manhattan Fund Companies, which conduct constitutes fraudulent concealment and constructive fraud.

81.    As detailed above in ¶¶ 46-58, Defendants failed to willfully disclose numerous material facts and/or made numerous affirmative misrepresentations to Plaintiff deliberating providing false assurance concerning the protection of Plaintiff's compensation rights as a Manhattan Fund partner.

82.    Plaintiff did not know of the concealed facts and did not understand or appreciate the fraud being perpetrated by Defendants and was in fact fraudulently induced by Defendants willful concealments and misrepresentations into giving up its rightful partnership position in the Manhattan Fund Companies.  Had Plaintiffs known the truth, Plaintiff would not have resigned its partnership rights to the Manhattan Fund

23

Companies.  But Plaintiff's will was overborne by Defendants' fraud.

83.    Defendants' numerous material omissions and misrepresentations made in furtherance of their fraudulent concealment scheme (detailed in ¶¶ 46-58) constituted malice as intending to cause and recklessly disregarding sure and significant injury to Plaintiff and as despicable conduct with a willful and conscious disregard of Plaintiff's rights.

84.    Defendants' numerous material omissions and misrepresentations made in furtherance of their fraudulent concealment scheme (detailed in ¶¶ 46-58) constituted oppression as despicable conduct that subjected Plaintiff to cruel and unusual hardship in conscious disregard of Plaintiff's rights.

85.    Plaintiff reasonably relied on Defendants' numerous material omissions and misrepresentations (detailed in ¶¶ 46-58) and was induced into giving up its rightful partnership position in the Manhattan Fund Companies.

86.    Defendants' fraudulent concealment and constructive fraud directly, proximately, and substantially caused Plaintiffs to suffer significant injury and damages that continue to accrue.

WHEREFORE, Plaintiff prays for relief as set forth below.

## C.    THIRD CLAIM FOR RELIEF: NEGLIGENT MISREPRESENTATION

*(Against Defendants 8th Bridge Inc., 8th Bridge LLC, Kim,*

*Omnia Ltd., Omnia LLC, Paz, Jeffer Mangles, Holmes, Pardee)*

87.    Plaintiff realleges and incorporates by reference, in this claim, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

88.    Plaintiff brings this negligent misrepresentation claim for relief against 8th Bridge Inc., 8th Bridge LLC, Kim, Omnia Ltd., Omnia LLC, Paz, Jeffer Mangles, Holmes, and Pardee (for purposes of this claim for relief, "Defendants").

89.    Defendants knowingly engaged in acts involving negligent

24

*Fraud Complaint*

misrepresentations and negligent material omissions to Plaintiff's detriment (as detailed in ¶¶ 46-58). Defendants knew or should have reasonably known that their negligent misrepresentations and negligent material omissions would harm Plaintiff.

90. Nevertheless, Defendants intended for Plaintiff to rely on their negligent misrepresentations and negligent material omissions (as detailed in ¶¶ 46-58).

91. Defendants' negligent misrepresentations and negligent material omissions induced Plaintiff to relinquish its rightful partnership position in the Manhattan Fund Companies (as detailed in ¶¶ 46-58).

92. Plaintiffs did reasonably rely on Defendants' negligent misrepresentations and negligent material omissions Defendants Jeffer Mangles, Holmes, and Pardee's negligent misrepresentations and negligent material omissions kept Plaintiff from discovering the true nature of their misconduct until June 2019 (as detailed in ¶¶ 46-58). As a result, Defendants' negligent misrepresentations and negligent material omissions directly, proximately, and substantially caused Plaintiff to suffer significant damages accruing to date.

93. Defendants Jeffer Mangles, Holmes, and Pardee's negligent misrepresentations and negligent material omissions kept Plaintiff from discovering the true nature of their misconduct until June 2019 (as detailed in ¶¶ 46-58).

WHEREFORE, Plaintiff prays for relief as set forth below.

**D.    FOURTH CLAIM FOR RELIEF: BREACH OF FIDUCIARY DUTY**

*(Against Defendants 8th Bridge Inc., 8th Bridge LLC, Kim,*

*Jeffer Mangles, Holmes, and Pardee)*

94. Plaintiff realleges and incorporates by reference, in this claim for relief, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

95. Plaintiff brings this breach of fiduciary duty claim for relief against Defendants 8th Bridge Inc. and 8th Bridge LLC ("8BC"), Kim, Jeffer Mangles, Holmes,

*Fraud Complaint*

and Pardee (for purposes of this claim for relief, "Defendants").

96.     Defendants 8BC and Kim owed a fiduciary duty to Plaintiff as Plaintiff's business partner and joint venture partner in the Manhattan Fund partnership and joint venture.  Part of that fiduciary duty included a duty to not take actions to circumvent Plaintiff's rights in the partnership and joint venture.  The non-circumvention agreement was memorialized in two agreements, the First and Second NDNCA.

97.     Defendants 8BC and Kim breached their fiduciary duty by devising and executing a scheme to deliberately and fraudulently induce Plaintiff into a false sense of security to relinquish its rightful partnership position in the Manhattan Fund Companies (as more fully set forth above (¶¶ 46-58).

98.     Defendants 8BC and Kim's breach of fiduciary duty directly, proximately, and substantially caused Plaintiff to suffer significant injury and damages that continue to accrue (¶¶ 46-58).

99.     Defendants Jeffer Mangles, Holmes, and Pardee (the "Attorney Defendants") owed a fiduciary duty to Plaintiff as Plaintiff's lawyers.  As attorney fiduciaries, some of the duties the Attorney Defendants owed Plaintiff are described above in ¶ 41.  As detailed in the preceding paragraphs (specifically ¶¶ 50(l)-(u), and 54-56), the Attorney Defendants were completely derelict with respect to their fiduciary duties.

100.    Defendants Holmes and Jeffer Mangles breached and continue to breach their fiduciary duty to Corbrus in a number of ways, including, *inter alia*:

a.      Aiding and abetting Kim's fraud scheme by intentionally and willfully concealing material information in order to help accomplish the fraud (*supra* ¶¶ 50(l)-(u), and 54-56);

b.      Continuing to aid and abet Kim's concealment of the fraud scheme and Jeffer Mangles' and Holmes' part in it (*supra* ¶ 56);

c.      Negligently failing to disclose important material information, allowing Corbrus to be defrauded (*supra* ¶¶ 50(l)-(u) and 54-56)

26

d.     Failing to obtain Corbrus' *informed* written consent with respect to several issues as required by the Rules of Professional Conduct (*supra* ¶¶ 50(l)-(o));

e.     Continuing to refuse to provide material information to Corbrus in violation of the Rules of Professional Conduct (*supra* ¶ 54, 56);

f.     Continuing to represent 8BC knowing that 8BC is in a clear adversarial relationship to Corbrus on the same matter on which Holmes and Jeffer Mangles represented Corbrus (*supra* ¶ 56).

101.   Defendant Pardee breached his fiduciary duty to Corbrus in a number of ways, including, *inter alia*:

a.     Negligently failing to disclose important material information, allowing Corbrus to be defrauded (*supra* ¶¶ 50(l)-(u) and 55); and

b.     Failing to obtain Corbrus' *informed* written consent with respect to several issues as required by the Rules of Professional Conduct (*supra* ¶¶ 50(l)-(o)).

102.   The Attorney Defendants' breach of fiduciary duty directly, proximately, and substantially caused Plaintiff to suffer significant injury and damages that continue to accrue.  (*Supra* ¶¶ 46-58).

103.   On information and belief, the injury from the Attorney Defendants' breach of fiduciary duty did not occur until on or about the end of 2017 and Corbrus did not learn of the Attorney Defendants' breach of fiduciary duty until June 2019 when the willfully concealed details of the fraud and negligence were coincidentally disclosed to Corbrus.

WHEREFORE, Plaintiff prays for relief as set forth below.

## E.     FIFTH CLAIM FOR RELIEF: PROFESSIONAL NEGLIGENCE

### (*Against Defendants Jeffer Mangles, Holmes, and Pardee*)

104.   Plaintiff realleges and incorporates by reference, in this claim for relief, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

105.   Plaintiff brings this professional negligence claim for relief against

*Fraud Complaint*

Defendants Jeffer Mangles, Holmes, and Pardee (for purposes of this claim for relief, "the Attorney Defendants").

106.   Defendants Jeffer Mangles, Holmes, and Pardee (the "Attorney Defendants") have a duty to use such skill, prudence, and diligence as members of the legal profession commonly possess and exercise, in providing legal services to Plaintiff.

107.   Some of the duties the Attorney Defendants owed Plaintiff are described above in ¶ 41.  As detailed in the preceding paragraphs (specifically ¶¶ 50(l)-(u), and 54-56), the Attorney Defendants were negligent with respect to their professional duties to Plaintiff.

108.   Defendants Holmes and Jeffer Mangles were and continue to be professionally negligent in a number of ways, including, *inter alia*:

a.   Negligently failing to disclose important material information, allowing Corbrus to be defrauded (*supra* ¶¶ 50(l)-(u) and 54-56)

b.   Failing to obtain Corbrus' *informed* written consent with respect to several issues as required by the Rules of Professional Conduct (*supra* ¶¶ 50(l)-(o));

c.   Continuing to refuse to provide material information to Corbrus in violation of the Rules of Professional Conduct (*supra* ¶ 54, 56);

d.   Continuing to represent 8BC knowing that 8BC is in a clear adversarial relationship to Corbrus on the same matter on which Holmes and Jeffer Mangles represented Corbrus (*supra* ¶ 56).

109.   Defendant Pardee was professionally negligent in a number of ways, including, *inter alia*:

a.   Negligently failing to disclose important material information, allowing Corbrus to be defrauded (*supra* ¶¶ 50(l)-(u) and 55); and

b.   Failing to obtain Corbrus' *informed* written consent with respect to several issues as required by the Rules of Professional Conduct (*supra* ¶¶ 50(l)-(o)).

110.   The Attorney Defendants' professional negligence directly, proximately, and

*Fraud Complaint*

substantially caused Plaintiff to suffer significant injury and damages that continue to accrue.  (*Supra* ¶¶ 46-58).

111.   On information and belief, the injury from the Attorney Defendants' professional negligence did not occur until on or about the end of 2017 and Corbrus did not learn of the Attorney Defendants' professional negligence until June 2019 when the willfully concealed details of the fraud and negligence were coincidentally disclosed to Corbrus.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### F.   SIXTH CLAIM FOR RELIEF: BREACH OF CONTRACT

(*Against Defendants 8th Bridge Inc., 8th Bridge LLC, and Kim*)

112.   Plaintiff realleges and incorporates by reference, in this claim for relief, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

113.   Plaintiff brings this breach of contract claim for relief against Defendants 8th Bridge Inc. and 8th Bridge LLC ("8BC") and Kim (for purposes of this claim for relief, "Defendants").

114.   Defendants signed a non-circumvention agreement with Plaintiff pursuant to which Defendants and Plaintiff established their Manhattan Fund partnership and joint venture on which Plaintiff expended considerable resources, including securing the Omnia client for the partnership.  (*Supra* ¶¶ 31-45).

115.   Defendants breached agreement by devising and executing a scheme to deliberately and fraudulently induce Plaintiff into a false sense of security to relinquish its rightful partnership position in the Manhattan Fund Companies (as more fully set forth above (¶¶ 46-58)).

116.   Defendants' breach directly, proximately, and substantially caused Plaintiff to suffer significant injury and damages that continue to accrue (¶¶ 46-58).

WHEREFORE, Plaintiff prays for relief as set forth below.

*Fraud Complaint*

### G.   SEVENTH CLAIM FOR RELIEF: VIOLATIONS OF RICO

(*Against Defendants 8th Bridge Inc., 8th Bridge LLC, and Kim*)

117.   Plaintiff realleges and incorporates by reference, in this claim for relief, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

118.   As alleged herein, Plaintiff brings this claim pursuant to 18 U.S.C. §§ 1962(c) and 1964 of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against Defendants 8th Bridge Inc. and 8th Bridge LLC ("8BC") and Kim (for purposes of this claim for relief, "Defendants").

119.   Among the unlawful activities prohibited under RICO is wire fraud in violation of 18 U.S.C. § 1343, as enumerated in 18 U.S.C. § 1961.

120.   Section 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore . . . and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).

121.   Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

122.   For purposes of this RICO claim:

a.   Plaintiff is a "person," as that term is defined in 18 U.S.C. § 1961(3), that was injured in its business or property as a result of Defendants' wrongful conduct.

b.   Defendant Kim is, and at all relevant times was, a "person" within the meaning of 18 U.S.C. § 1961(3).

c.   8th Bridge Inc. and 8th Bridge LLC (alter egos of one another, as alleged above) are enterprises as that term is defined in 18 U.S.C. § 1961(4) (collectively,

*Fraud Complaint*

the "8BC Enterprise").

       d.     By engaging in EB-5 financing projects that span both nationally and internationally, the activities of the 8BC Enterprise affect interstate and foreign commerce.

    123.    Defendant Kim is engaged in a pattern of racketeering using his 8BC Enterprise as follows:

       a.     As alleged the preceding paragraphs, Kim devised a scheme to defraud Plaintiff by making false promises and assurances, and did defraud Plaintiff using the 8BC Enterprise; in doing so, Kim used the wire facilities of the United States in violation of 18 U.S.C. § 1343.  (*See supra* First and Second Claims for Relief).

       b.     The First Amended Complaint in the matter of *Choi, et al. v. 8th Bridge Capital Inc., et al.* (Case No. 17-CV-8958-CAS (AFMx)) (the "Choi Complaint"), (attached hereto as Exhibit 1), is incorporated by reference into this claim for relief, and each and every allegation in the Choi Complaint is hereby incorporated with the same force and effect as though fully set forth herein.  As alleged in the Choi Complaint, Kim devised a scheme to defraud the plaintiff in that case by making false promises and assurances, and did defraud the plaintiff in that case using the 8BC Enterprise; on information and belief, in doing so, Kim used the wire facilities of the United States in violation of 18 U.S.C. § 1343.

       c.     Kim controls the 8BC Enterprise and conducts the Enterprise's activities through a pattern of wire fraud.  By engaging in two known overlapping wire fraud schemes, Kim has demonstrated that defrauding joint venture partners is a regular way of business for him and wire fraud schemes threaten repetition.

       d.     Kim's wire fraud schemes have the same or similar purpose, result, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events in that Kim has used the same 8BC RICO Enterprise and method of commission (wire fraud) to defraud two distinct EB-

31

5 joint venture partners out of their rightful position and compensation in EB-5 funding projects.

      e.    As a result of his pattern of racketeering activity, Kim has unfairly reaped substantial profits from EB-5 ventures that rightfully belong to his victims.

124. Defendants' RICO violations directly, proximately, and substantially caused Plaintiff to suffer significant injury and damages that continue to accrue. (*Supra* ¶¶ 46-58).

WHEREFORE, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant judgment against Defendants as follows:

1. Compensatory damages in an amount according to proof;

2. Restoration of Corbrus' partnership position in the Manhattan Fund Companies;

3. Disgorgement of assets according to proof;

4. Costs, restitution, and multiple damages under state law;

5. Treble damages under RICO;

6. Punitive and exemplary damages under state law;

7. Any and all applicable statutory and civil penalties;

8. Pre- and post-judgment interest on any amounts awarded;

9. An award of attorneys' fees and costs, including expert costs;

10. A declaration that all applicable statutes of limitations are tolled under the discovery rule or due to the fraudulent concealment alleged in this Complaint, and that Defendants are estopped from relying on any statute of limitations as a defense;

11. An order enjoining Defendants from dissipation of assets and fraudulent transfer to avoid judgment;

12. Leave to amend this Complaint to conform to the evidence produced in

*Fraud Complaint*

discovery and at trial; and

13.   Such other and further relief as the Court deems just and proper.

## VIII.  <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a jury trial on all triable issues.


Dated:  November 27, 2019                     Respectfully submitted,


                                              <u>/s/ Yasin M. Almadani</u>
                                              YASIN M. ALMADANI
                                              ALMADANI LAW

                                              *Attorney for Plaintiff*

33

*Fraud Complaint*

# Exhibit 1

1 | GREGG A. RAPOPORT, APLC
2 | Gregg A. Rapoport (SBN 136941)
  | 444 S. Flower St. Suite 1700
3 | Los Angeles, California 90071
  | Tel.  213-358-7220; Fax 213-478-0955
4 | gar@garlaw.us

5 | Attorney for Plaintiffs
  | MOSES CHOI and
6 | SOUTHEAST REGIONAL CENTER, LLC

7

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

| | |
|---|---|
| MOSES CHOI, an individual; and SOUTHEAST REGIONAL CENTER, LLC, a Georgia limited liability company, | **Case No. 2:17-cv-8958-CAS(AFMx)** |
| | **FIRST AMENDED COMPLAINT FOR:** |
| Plaintiffs, | |
| vs. | 1) **DECLARATORY JUDGMENT;** |
| 8TH BRIDGE CAPITAL, INC., a California corporation; YOUNG HUN KIM, an individual; 8TH BRIDGE CAPITAL, LLC, a California limited liability company; MANHATTAN REAL ESTATE FUND GP, LLC, a Delaware limited liability company; MANHATTAN REAL ESTATE FUND, LP, a Delaware limited partnership; MANHATTAN REAL ESTATE FUND II, LP, a Delaware limited partnership; MANHATTAN REAL ESTATE EQUITY FUND, LP, a Delaware limited partnership; and PATRICK JONGWON CHANG, an individual, | 2) **BREACH OF JOINT VENTURE PARTNERSHIP AGREEMENT;** |
| | 3) **ENFORCEMENT OF RIGHTS UNDER THE REVISED UNIFORM PARTNERSHIP ACT;** |
| | 4) **BREACH OF FIDUCIARY DUTY;** |
| | 5) **FRAUDULENT CONCEALMENT;** |
| | 6) **CONSTRUCTIVE FRAUD;** |
| | 7) **CONVERSION;** |
| | 8) **VIOLATION OF THE DEFENSE OF TRADE SECRETS ACT;** |
| Defendants. | 9) **VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT;** |

-1-

(continued)

**10)   JUDICIAL DISSOLUTION;**

**11)   BREACH OF CONTRACT TO FORM JOINT VENTURE;**

**12)   BREACH OF FIDUCIARY DUTY;**

**13) PROMISSORY ESTOPPEL;**

**14)   VIOLATION OF CALIFORNIA BUS. & PROF. CODE § 17200;**

**15) AN ACCOUNTING; and**

**16)   QUANTUM MERUIT**

**DEMAND FOR JURY TRIAL**

Plaintiffs MOSES CHOI ("Choi") and SOUTHEAST REGIONAL CENTER, LLC ("SRC") (together, "Plaintiffs") hereby complain of Defendants 8TH BRIDGE CAPITAL, INC., YOUNG HUN KIM, 8TH BRIDGE CAPITAL, LLC, MANHATTAN REAL ESTATE FUND GP, LLC, MANHATTAN REAL ESTATE FUND, LP, MANHATTAN REAL ESTATE FUND II, LP, MANHATTAN REAL ESTATE EQUITY FUND, LP, and PATRICK CHANG (collectively, "Defendants"), and allege as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over Plaintiffs' state law based claims pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs on the one hand, and Defendants on the other, and more than $75,000 in controversy in this action, exclusive of interest and costs.

2.     The Court has subject matter jurisdiction over Plaintiffs' federal trade secret claim pursuant to 18 U.S.C. §§ 1836 et seq. and 28 U.S.C. §§ 1331 and

1343, and further has supplemental jurisdiction over the state law claims alleged pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District, or a substantial part of property that is the subject of the action is situated in this District, and because at least one of the Defendants resides in this judicial district.

## NATURE OF THE ACTION

4. This action arises from disputes between members of a joint venture involved in the business of marketing federally-approved EB-5 projects to potential immigrant investors, primarily in Asia. As set forth below, Plaintiff Choi invested more than $500,000 of his personal funds, devoted more than 18 months of his own and his company's time and effort, and provided access to their own proprietary and confidential extensive network of foreign immigration agents, as well as the assistance of their own paid expert advisor, in a joint venture with Defendants YOUNG HUN KIM ("Kim") and his wholly-owned company, 8TH BRIDGE CAPITAL, INC. ("8th Bridge Inc."), to cooperatively market EB-5 projects to targeted investors in China, South Korea, Vietnam, and elsewhere.

5. Defendants Kim and 8th Bridge Inc. requested and received these contributions of money from Choi, and contributions of time, effort, and proprietary information from Choi and SRC and, largely as a result thereof, secured the funding of a successful EB-5 project, yielding to 8th Bridge Inc. substantial ongoing management and other fees.

6. Having secured this investor funding, and having begun receiving these fees, Kim and 8th Bridge Inc. thereupon froze Plaintiffs out by transferring partnership assets to third parties, by refusing to recognize Plaintiffs' right to a share in profits, by refusing to allow them to continue to be involved with or benefit from the EB-5 project, by denying them access to the book and records of

the joint venture or the project, by disavowing and denying having formed any joint venture, and/or by purporting to rescind the joint venture without cause.

7.      Plaintiffs now allege claims seeking relief in the form of damages, imposition of a constructive trust on revenues obtained from the joint venture, an injunction, appointment of a receiver, restitution, and an accounting.

## **THE PARTIES / DIVERSITY**

8.      Plaintiff SRC is a Georgia limited liability company with its principal place of business in the State of Georgia.

9.      Plaintiff Choi is an individual with his residence and domicile in the State of Georgia, and is the sole member of Plaintiff SRC.

10.     Defendant Kim is an individual with his residence and domicile in the State of California, within this judicial district.

11.     Defendant 8TH BRIDGE CAPITAL, INC. ("8th Bridge Inc.") is a California corporation formed in 2009, with its principal place of business within this judicial district.

12.     Defendant 8TH BRIDGE CAPITAL, LLC ("8th Bridge LLC") is a California limited liability company, formed on or about December 21, 2016, with its principal place of business within this judicial district.

13.     Defendant Kim is and at all relevant times was sole shareholder and principal officer of 8th Bridge Inc., and the sole member and manager of Defendant 8th Bridge LLC.

14.     MANHATTAN REAL ESTATE FUND GP, LLC ("MRE Fund GP") is a Delaware limited liability company, formed on or about September 16, 2015, with its principal place of business in the State of California, within this judicial district.

15.     On information and belief, Defendant 8th Bridge LLC is the sole member of MRE Fund GP.

16.     MANHATTAN REAL ESTATE FUND, LP ("MRE Fund LP") is a Delaware limited partnership, formed on September 15, 2015, with its principal place of business in the State of California, within this judicial district.  None of the limited partners of MRE Fund LP is a citizen of the State of Georgia or a U.S. citizen domiciled abroad.

17.     MANHATTAN REAL ESTATE FUND II, LP ("MRE Fund II LP") is a Delaware limited partnership, formed on June 30, 2017, with its principal place of business in the State of California, within this judicial district. None of the limited partners of MRE Fund II LP is a citizen of the State of Georgia or a U.S. citizen domiciled abroad.

18.     MANHATTAN REAL ESTATE EQUITY FUND, LP ("MRE Equity Fund LP") is a Delaware limited partnership, formed on June 30, 2017, with its principal place of business in the State of California, within this judicial district. None of the limited partners of MRE Equity Fund LP is a citizen of the State of Georgia or a U.S. citizen domiciled abroad.

19.     MRE Fund GP is the general partner of MRE Fund LP, MRE Fund II LP, and MRE Equity Fund, and is owned and controlled by 8th Bridge Inc.

20.     Defendant PATRICK JONGWON CHANG ("Chang") is an individual who is domiciled in in the State of California, within this judicial district.

21.     Plaintiffs are informed and believe that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and that the acts of each Defendant are legally attributable to each of the other Defendants.

22.     Whenever herein an act or omission of Defendant is alleged, the allegation shall be deemed to mean and include an allegation that Defendant acted or omitted to act through its authorized officers, directors, members, managers, agents, servants, and/or employees, acting within the ordinary course and scope of

their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporate or business entity.

## ALTER EGO RELATIONSHIPS

23.     On information and belief, there has existed a unity of interest and ownership between and among Defendants Kim, 8th Bridge Inc., 8th Bridge LLC, and MRE Fund GP, such that any individuality and separateness between or among them has ceased, and such that each is the alter ego of the other; in that:

a.     Kim has at relevant times completely controlled, led, dominated, managed and operated 8th Bridge Inc., 8th Bridge LLC, and MRE Fund GP, has intermingled his assets with their assets, and has intermingled the assets of each of them with those of the other, to suit his and their convenience.

b.     Kim has at relevant times used the assets of 8th Bridge Inc., 8th Bridge LLC, and MRE Fund GP for his own use, and has caused or will cause their assets to be transferred to him and to one another without adequate consideration.

c.     8th Bridge Inc., 8th Bridge LLC, and MRE Fund GP each is, and at relevant times was, a mere shell and sham without sufficient capital or assets, or its capitalization is and was trifling, compared with the business to be done and the risks of loss attendant thereto.

d.     8th Bridge Inc., 8th Bridge LLC, and MRE Fund GP each is, and at relevant times was, a mere shell, instrumentality, and conduit through which Kim carried on his businesses, exercising complete control and dominance of 8th Bridge Inc., 8th Bridge LLC, and MRE Fund GP to such an extent that any individuality or separateness between and among them does not, and at all relevant times did not, exist.

FIRST AMENDED COMPLAINT

e.    8th Bridge Inc., 8th Bridge LLC, and MRE Fund GP each is and at relevant times was intended and used by Kim as a device to avoid the imposition of liability, and for the purpose of substituting a financially insolvent company in his place.

f.    Adherence to the fiction of the separate existences of Kim, 8th Bridge Inc., 8th Bridge LLC, and MRE Fund GP as distinct persons and legal entities would permit an abuse of the corporate privilege and would sanction fraud and promote injustice; in that, 8th Bridge Inc., 8th Bridge LLC, and MRE Fund GP each has distributed or will distribute a substantial portion of its assets to Kim and/or to the other without adequate consideration, all for the purpose of avoiding and preventing attachment and execution by creditors of Kim, 8th Bridge Inc., 8th Bridge LLC, and MRE Fund GP, including Plaintiffs, thereby rendering Kim, 8th Bridge Inc., 8th Bridge LLC, and MRE Fund GP insolvent and unable to meet their obligations.

## COMMON ALLEGATIONS

### A.    THE EB-5 IMMIGRANT INVESTOR PROGRAM

24.    Plaintiff Choi formed SRC in 2009 to serve as a "regional center" under the federal "EB-5 Program" and "EB-5 Immigrant Investor Program," administered by the U.S. Citizenship and Immigration Services ("USCIS").

25.    The EB-5 Program was created by Congress in 1990 to stimulate the economy through job creation and capital investment by foreign investors.  The term "EB-5" is an acronym for the 10,000 "Employment-Based Fifth Preference" visas that USCIS grants each year to program participants and their spouses and unmarried children, enabling them to apply for permanent residency in the United States.  Since its inception, the EB-5 Program has enabled U.S. businesses to raise billions of dollars in investment capital from foreign investors.

FIRST AMENDED COMPLAINT

26.     Under federal law, to obtain an EB-5 visa, foreign investors must invest a minimum of $1,000,000 in capital in a USCIS-approved new commercial enterprise, or a minimum of $500,000 in capital in an approved new enterprise within a high-unemployment or rural area, known as a "Targeted Employment Area" (or "TEA").  The enterprise may be formed to conduct any lawful for-profit business, but must directly create full-time jobs for at least ten qualifying employees.

27.     The EB-5 Immigrant Investor Program was established in 1992 to set aside EB-5 visas for EB-5 Program participants who invest in commercial enterprises associated with "regional centers," which are for-profit entities approved by USCIS to pool investment capital based on specific project proposals located within the regional center's geographic territory.

28.     Regional centers facilitate greater investment volume because new project enterprises they create are permitted to count full-time positions created either directly or indirectly by the enterprise toward the ten-employee job creation requirement.

29.     Regional centers may create projects using either an "equity model," by which investors invest in ownership of a business, or a "loan model," in which investors invest in and receive interest revenue from a limited partnership entity created for the purpose of funding an approved project through financing arranged with the project's developer, with the regional center receiving a management fee.

30.     Regional centers cultivate and rely heavily upon their relationships with intermediary immigration agents, located in the countries where potential immigrant investors live, to identify and market the investment vehicles to these investors and their spouses.

FIRST AMENDED COMPLAINT

### B. PLAINTIFFS' EXPERIENCE IN THE EB-5 REGIONAL CENTER BUSINESS

31.     Plaintiff Moses Choi has a Business degree from New York University and more than seven years of experience as an investment banker, having worked for Wall Street firms in their New York City, Hong Kong, and South Korean offices.

32.     SRC received approval from USCIS to operate as a regional center in 2010.  SRC has sponsored several approved EB-5 projects through which it has provided approximately $35 million in financing for the expansion of automotive manufacturing businesses in rural parts of Georgia and Alabama.

33.     Over the course of several years, Choi and SRC have cultivated and developed a valuable network of local immigration agents across China and South Korea.  These agents are subject to non-disclosure agreements and contract with SRC to identify potential investors and facilitate SRC's marketing efforts.

34.     Choi and SRC further developed a valuable ongoing relationship with an expert advisor (the "Advisor"), a former official with USCIS, who advised SRC extensively with EB-5 compliance issues in order to gain approval of proposed projects from that agency, as well as in the marketing of SRC's projects to potential foreign investors.

### C. FORMATION OF A JOINT VENTURE RELATIONSHIP AMONG CHOI, SRC, KIM AND 8TH BRIDGE INC.

35.     In or about early 2015, Choi and Kim met and began a series of discussions about working together to apply their combined experience and contacts gained from working in the EB-5 field and in investment banking, real estate finance, and foreign marketing.

36.     A few months later, Choi and Kim, on behalf of their respective companies, SRC and 8th Bridge Inc., agreed to maintain confidentiality and

executed a Mutual Non-Disclosure Agreement (the "NDA") "to explore a business opportunity under which each may disclose Confidential Information to the other." A true copy of the NDA is attached hereto as **Exhibit A**, and its terms incorporated here as though set forth in full.

37.     At or about that time, and pursuant to these agreements, Choi provided Kim with a proprietary list of SRC's local immigration agents in China.

38.     In or about early September 2015, Choi and Kim met in Los Angeles to discuss forming a joint venture to develop new EB-5 real estate project proposals, using either SRC or other regional centers approved for the geographic areas in which the projects would be located.

39.     After that meeting, Choi and Kim confirmed their mutual desire to work together and began, both individually and through SRC and 8th Bridge Inc., respectively, to carry on as co-owners as business for profit, while deferring the creation of a formal written agreement.

40.     By October 2015, Choi had begun providing financial support, and he and SRC had begun providing marketing, advisory, and logistics support, all on an ongoing basis to Kim and 8th Bridge Inc., under the belief that the four had formed a joint venture partnership.

41.     On October 6, 2015, Kim confirmed in writing that he shared this belief, and proposed to formalize a five-year "Collaboration Agreement" under which Choi would make the initial capital contribution to cover business expenses, and the parties would "work together … by sharing each Party's expertise and experiences to capture future business opportunities," while sharing profits through a holding company. Kim further proposed to pursue a number of EB-5 projects, including one under development by Kim in New York City for the development of the Ace Hotel (the "Ace Hotel Project") (for which he had already formed MRE Fund GP), and two others under development by Kim in Los Angeles.

**D.**   **PLAINTIFFS' CONTRIBUTIONS TO THE JOINT VENTURE RELATIONSHIP**

42.     In or about September 2015, Kim and Choi began coordinating the marketing efforts in Asia for EB-5 projects, primarily the Ace Hotel Project, for which Kim asked Choi to help in meetings with local immigration agents and prospective investors in Asia.

43.     Kim further requested that SRC's then-employee, Defendant Patrick Chang, work with 8th Bridge Inc. to prepare marketing materials for the Ace Hotel Project.

44.     From September 2015 through April 2017, Plaintiffs regularly participated with Kim and 8th Bridge Inc. in the management and control of the joint venture.

45.     In or about October 2015, Choi wired $50,000 to 8th Bridge Inc. to cover the cost of opening an office for 8th Bridge Inc. in Los Angeles, paying its employees, and producing company brochures.

46.     In late October 2015, 8th Bridge Inc. sought assistance from Choi and SRC in preparing its business plan, economic analysis, private placement memorandum, and limited partnership agreement for the Ace Hotel Project.

47.     In early November 2015, at Kim's suggestion, the developer of the Ace Hotel Project invited Choi and SRC's expert Advisor to participate in creating a promotional videotape event for the project.

48.     In November 2015, Choi and Kim traveled at Choi's expense to China, where they met with SRC's local immigration agency, primarily to promote the Ace Hotel Project.

49.     In early November 2015, Kim sent SRC the final loan documents for the Ace Hotel Project for SRC's review.

50.     In late November 2015, at Kim's request, SRC provided its comments on a proposed timeline for the marketing of the Ace Hotel Project to immigrant investors.

51.     In early December 2015, Kim emailed Choi to urge him to finalize a written partnership agreement, stating that "we need to organize the company structure among entities and employees," suggesting places and locations for a "company retreat," and asking Choi to help "organize our plans and goals for 2016 before the company retreat so [that] we can share our company values and directions to the others."

52.     At the request of Kim, Choi continued through March 2017 to provide financial support, and SRC continued to provide administrative support, to Kim and 8th Bridge Inc. to operate 8th Bridge Inc. as the face of the joint venture, pay for Kim's travel expenses, and pay for marketing expenses for the Ace Hotel Project, as well as other EB-5 projects controlled by 8th Bridge Inc.

53.     From January 2016 through March 2017, Choi and Kim conducted a "road show" on behalf of the joint venture, at Choi's expense, attending numerous meetings with local immigration agencies and potential individual investors in various cities in China, Vietnam, and South Korea, primarily to promote the Ace Hotel Project.

54.     For the purpose of these meetings, in or about January 2016, Kim had business cards printed for Choi and Chang, who were both then formally employed by SRC, showing Choi as the Managing Director of 8th Bridge Inc. and Chang as an Associate of 8th Bridge Inc.

55.     When dealing with local immigration agencies in Asia, Kim routinely referred to Choi as a "member" or "Managing Director" of 8th Bridge Inc.

56.     Choi regularly signed agreements on behalf of MRE Fund GP, which was in charge of the Ace Hotel Project.

57.     During this same period, SRC's expert Advisor participated in several of the marketing presentations in Asia, primarily on behalf of the Ace Hotel Project.

58.     Choi also arranged meetings for Kim to meet Choi's business contacts in the United States, to further the interests of the joint venture.

59.     During this period, Plaintiffs, their expert Advisor, and Defendants Kim and 8th Bridge Inc., routinely participated in regular "internal conference calls" and exchanges of task lists and status reports to go over their combined efforts on behalf of the joint venture, primarily to market the Ace Hotel Project.

60.     In or about early 2016, at Kim's request, SRC sent Chang from Atlanta, Georgia to Los Angeles to work fulltime on behalf of the joint venture with Kim and 8th Bridge Inc., while continuing to pay Chang a salary.

61.     In April 2016, Choi signed a lease for an apartment in downtown Los Angeles for 8th Bridge Inc. to use for workspace and living space for Chang while he worked with Kim and 8th Bridge Inc.0on marketing the Ace Hotel Project.

62.     In all, Choi advanced more than $500,000 in expenditures and transfers to 8th Bridge Inc., and he and SRC devoted thousands of man-hours and access to their own valuable proprietary and confidential network of agents and their expert Advisor, all for the purpose of furthering the objectives of their joint venture with Kim and 8th Bridge.

E.     **FORMATION OF MRE FUND GP FOR THE ACE HOTEL PROJECT**

63.     On information and belief, on September 16, 2015, Kim formed Defendant MRE Fund GP in Delaware, for the purpose of creating one or more limited partnerships to operate as investment vehicles under the EB-5 program for the financing of the development of the Ace Hotel Project.

64.    On information and belief, on October 25, 2015, Kim executed, on behalf of 8th Bridge Inc., an Operating Agreement for MRE Fund GP which stated that 8th Bridge Inc. would serve as its sole member and manager, with Kim as its President.  At the time, Kim did not disclose to Plaintiffs that MRE Fund GP was under his sole control, and falsely told Plaintiffs that the Operating Agreement was "not available yet."

65.    On or about November 5, 2015, 8th Bridge Inc. and SRC jointly produced, for MRE Fund GP, a Confidential Private Offering Memorandum and business plan for MRE Fund LP, stating that it was a new EB-5 commercial enterprise intending to raise up to $20 million in capital from 40 foreign investors to loan to Omnia Group, Ltd., a part owner and developer of the Ace Hotel Project.

66.    The Ace Hotel Project was structured to yield origination, marketing, and success fees to MRE Fund GP, as well as interest to MRE Fund LP of 4.32% for five years (with 3.25% payable quarterly after funding, and the balance deferred until maturity), with up to two one-year extension options at an interest rate of 4.82%.

67.    The interest proceeds received by MRE Fund LP were to be distributed to the limited partner investors and to the general partner, MRE Fund GP.

68.    By late 2016, and largely as the result of Choi's financial investment and Plaintiffs' extensive efforts to market the Ace Hotel Project, 8th Bridge Inc. had secured the investors it needed to fund the project.

69.    On information and belief, in or about late 2016, MRE Fund LP disbursed loan proceeds to Omnia Group, Ltd., and since then has been receiving quarterly interest payments from the borrower.

70.     On information and belief, MRE Fund GP to date has received in excess of $1,000,000 in interest, management fees and other compensation from the Ace Hotel Project.

## F.     **DEFENDANTS' DISAVOWAL AND DENIAL, OR RESCISSION WITHOUT CAUSE, OF THE JOINT VENTURE**

71.     In or about early 2017, Kim began to take steps to carry out a plan to disavow and deny, or rescind without cause, the joint venture with Choi and SRC so that he would not be required to share the profits from the Ace Hotel Project and other EB-5 projects developed using Choi's money and his and SRC's time and resources.

72.     On information and belief, in or about early 2017, Kim secretly caused the membership interest of 8th Bridge Inc. in MRE Fund GP to be transferred to 8th Bridge LLC.

73.     In January 2017, Kim asked Choi to work with him to organize their relationship "once and for all," falsely implying that the relationship had not already been formed.  Until they figured out "the future budget plan" and what expenses had been covered by SRC for 8th Bridge Inc., Kim asked Choi to "stop funding" 8th Bridge Inc.

74.     In early February 2017, SRC requested that 8th Bridge Inc. provide a copy of its bookkeeping records on a monthly basis.  Kim and 8th Bridge Inc. ignored the request.

75.     In February 2017, Kim confirmed to Choi that while he was committed to their partnership, he needed better communication with Choi to "firm up" that commitment.

76.     In March 2017, Kim sent Choi $200,000, purportedly as partial repayment or a refund of his "funding" to 8th Bridge Inc., and stated that "As to our partnership terms, many … questions are still … unanswered."

77.     In March 2017, Kim falsely accused Choi of undermining efforts to market 8th Bridge Inc.'s EB-5 projects by encouraging a local agency in Vietnam to market SRC's own EB-5 project.

78.     In April 2017, Kim informed Choi that he had decided to "stop putting my effort to find a resolution to or prolonged cooperation terms," indicating that Kim was either denying the existence of a joint venture, or rescinding it.

79.     In or about June 2017, 8th Bridge Inc. hired Defendant Chang to work directly for it fulltime.  SRC requested that Chang not do so and that he refrain from disclosing any of SRC's confidential information, but Chang proceeded to become employed by 8th Bridge Inc.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment --
### Against Kim and 8th Bridge Inc.)

80.     Plaintiffs incorporate the allegations set forth in the preceding paragraphs as though set forth fully in this paragraph.

81.     An actual and justiciable controversy, within the meaning of 28 U.S.C. § 2201, exists between Plaintiffs on the one hand and Defendants Kim and 8th Bridge Inc. on the other hand, concerning the existence of a joint venture agreement between and among them.

82.     Plaintiffs contend they are entitled to a declaratory judgment establishing that, by their statements and conduct as alleged above, the parties orally and impliedly formed an association to carry on as co-owners a single business enterprise for profit, to share profits and losses, and to participate in the management and control of the business, which constituted a partnership in the form of a joint venture under California law, Corporations Code §§ 16100 et seq., the objective of which was to use Choi's funds, and Choi's and SRC's efforts and resources, cooperatively to market the Ace Hotel Project initially, as well as

potentially a number of other EB-5 investment projects thereafter, to target investors through local immigration agencies in Asia and elsewhere, and then share in the profits from these projects once funded.

83.     On information and belief, Defendants deny such allegations.

## SECOND CLAIM FOR RELIEF

### (Breach of Joint Venture Partnership Agreement --
### Against Kim and 8th Bridge Inc.)

84.     Plaintiffs incorporate the allegations set forth in the preceding paragraphs as though set forth fully in this paragraph.

85.     Plaintiffs have fully performed all of their material obligations under the joint venture agreement, or such obligations were excused.

86.     Defendants have breached the terms of the joint venture agreement by their conduct as alleged above.

87.     As a direct and foreseeable result of Defendants' breach of the Agreement, Plaintiffs suffered and are entitled to recover their actual and foreseeable consequential damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### (Enforcement of Rights Under the Revised Uniform Partnership Act --
### Against Kim and 8th Bridge Inc.)

88.      Plaintiffs incorporate the allegations set forth in the preceding paragraphs as though set forth fully in this paragraph.

89.     Pursuant to California Corporations Code § 16405, Plaintiffs bring this claim to enforce their rights under the Revised Uniform Partnership Act, including:

(1)     Their rights under § 16401(b) to their joint venture partnership accounts and a share of the joint venture's profits;

(2)     Choi's rights under § 16401(c) to reimbursement for payments by Choi made in the ordinary course of the business of the joint venture partnership or for the preservation of its business or property;

(3)     Choi's rights under § 16401(d) to reimbursement for advances to the joint venture partnership beyond the amount of capital Choi agreed to contribute;

(4)     Choi's rights under § 16401(e) to interest on amounts recoverable under §§ 16401(c) and (d);

(5)     Their rights under § 16401(f) to equal management and conduct of the joint venture partnership;

(6)     Their rights under § 16403(b) to access to the books and records of the joint venture partnership from September 2015 to the time of judgment;

(7)     Their rights under § 16403(c) to access to any information concerning the joint venture partnership's business and affairs reasonably required for the proper exercise of Plaintiffs' rights and duties under the joint venture agreement or California partnership law;

(8)     Their rights under § 16403(c) to reasonable and proper access to any other information concerning the joint venture partnership's business and affairs from September 2015 to the time of judgment;

(9)     Their rights under § 16404 to have Defendants Kim and 8th Bridge Inc. account to the joint venture and hold as trustee for it any property, profit, or benefit derived by them in the conduct of the joint venture business or derived from a use by them of joint venture property or information, including the appropriation of a partnership opportunity;

(10)    Their rights under § 16404 to have Defendants Kim and 8th Bridge Inc. refrain from competing with the joint venture in the conduct of partnership business;

(11)   Their rights under § 16404 to have Defendants Kim and 8th Bridge Inc. discharge their duties to the joint venture and Plaintiffs and exercise any rights consistently with their obligation of good faith and fair dealing; and

(12)   Their rights under § 16807(b) to a settlement of all partnership accounts.

90.   Plaintiffs are entitled to an order enforcing the foregoing rights.

**<ins>FOURTH CLAIM FOR RELIEF</ins>**

**(Breach of Fiduciary Duty --**

**Against Kim, 8th Bridge Inc., and Chang)**

91.   Plaintiffs incorporate the allegations set forth in the preceding paragraphs as though set forth fully in this paragraph.

92.    As joint venture partners, Defendants Kim and 8th Bridge Inc. owed fiduciary duties of loyalty and care to Plaintiffs and to the joint venture.

93.   Kim and 8th Bridge Inc. breached their fiduciary duties to Plaintiffs by the following acts, among others:

(1)   Withholding financial information from Plaintiffs regarding the revenues received by MRE Fund GP from the Ace Hotel Project;

(2)   Placing MRE Fund GP under the sole control of 8th Bridge Inc. and Kim, without transferring any shares in 8th Bridge Inc. to Plaintiffs, and without disclosing that fact from Plaintiffs;

(3)   Transferring 8th Bridge Inc.'s interest in MRE Fund GP to 8th Bridge LLC, while concealing that fact from Plaintiffs;

(4)   Disavowing and denying the existence of the joint venture or rescinding it without cause;

(5)   Converting joint venture assets to their own use;

(6)   Depriving Plaintiffs of possession of the joint venture business;

(7)   Purporting to repay or refund a portion of Choi's financial investment rather than recognizing Plaintiffs' right to share in the joint venture's profits;

(8)   Inducing Defendant Chang to resign from SRC to become employed directly by 8th Bridge Inc.;

(9)   Misappropriating Plaintiffs' confidential and proprietary information; and

(10)   Failing to disclose their intent to disavow and deny the existence of the joint venture or rescind it without cause, upon the funding of the Ace Hotel Project.

94.   As a direct and proximate result of the foregoing breach of fiduciary duties, Plaintiffs suffered damages in an amount to be proven at trial in this matter.

95.   Defendants and their employees, authorized by officers, directors, or managing agents of Kim and 8th Bridge Inc., undertook this conduct intentionally, fraudulently, maliciously and with reckless disregard for Plaintiffs' welfare, always placing their own interests in maximizing profits ahead of Plaintiffs' welfare and of Plaintiffs' rights and entitlement to be dealt with in a lawful manner in these transactions.  As a result, Defendants, and each of them, should be made to pay exemplary damages in an amount sufficient to deter them in the future from engaging in the conduct and omissions complained of herein.

## FIFTH CLAIM FOR RELIEF
### (Fraudulent Concealment --
### Against Kim, 8th Bridge Inc., and Chang)

96.   Plaintiffs incorporate the allegations set forth in the preceding paragraphs as though set forth fully in this paragraph.

97.   Defendants Kim and 8th Bridge Inc. owed Plaintiffs fiduciary duties to disclose all material facts relating to the joint venture.

98.     Defendants Kim and 8th Bridge Inc. intentionally failed to disclose to Plaintiffs, at any time prior to entering into the joint venture or thereafter, that they planned to disavow and deny the existence of the joint venture or rescind it without cause, upon the funding of the Ace Hotel Project.

99.     Defendants Kim and 8th Bridge Inc. further intentionally failed to disclose to Plaintiffs that they had placed MRE Fund GP under their sole control.

100.    Defendants Kim and 8th Bridge Inc. further intentionally failed to disclose to Plaintiffs that they had transferred 8th Bridge Inc.'s interest in MRE Fund GP to 8th Bridge LLC.

101.    These undisclosed facts were important to Plaintiffs but known only to Defendants Kim and 8th Bridge Inc. and could not have been discovered by Plaintiffs.

102.    Defendants Kim and 8th Bridge Inc. intended to deceive Plaintiffs by concealing these facts from Plaintiffs and thereby inducing Choi to continue to invest substantial money, and inducing Choi and SRC to continue to invest substantial time, effort and proprietary and confidential information, in the joint venture.

103.    Had Plaintiffs known that Kim and 8th Bridge Inc. planned to disavow and deny the existence of the joint venture or rescind it without cause upon the funding of the Ace Hotel Project, Plaintiffs would not have entered into the joint venture, Choi would not have invested his money, and Choi and SRC would not have invested their time, effort and proprietary and confidential information, in the joint venture.

104.    Had Plaintiffs known that Kim and 8th Bridge Inc. had placed MRE Fund GP under their sole control, Choi would not have continued to invest his money, and Choi and SRC would not have continued to invest their money, time, effort and proprietary and confidential information, in the joint venture.

FIRST AMENDED COMPLAINT

105.   Had Plaintiffs known that Kim and 8th Bridge Inc. had transferred 8th Bridge Inc.'s interest in MRE Fund GP to 8th Bridge LLC, Choi would not have continued to invest his money, and Choi and SRC would not have continued to invest their time, effort and proprietary and confidential information, in the joint venture.

106.   On information and belief, Defendant Chang, while employed by SRC and thus under a fiduciary duty to SRC, learned information from Kim and 8th Bridge Inc. that made or should have made him aware that Kim and 8th Bridge Inc. planned to disavow and deny the existence of the joint venture or rescind it without cause, upon the funding of the Ace Hotel Project.

107.   On information and belief, Defendant Chang, while employed by SRC and thus under a fiduciary duty to SRC, learned information from Kim and 8th Bridge Inc. that made or should have made him aware that Kim and 8th Bridge had placed MRE Fund GP under their sole control.

108.   On information and belief, Defendant Chang, while employed by SRC and thus under a fiduciary duty to SRC, learned information from Kim and 8th Bridge Inc. that made or should have made him aware that Kim and 8th Bridge had transferred 8th Bridge Inc.'s interest in MRE Fund GP to 8th Bridge LLC.

109.   On information and belief, Chang intentionally failed to disclose to SRC what he had learned about the undisclosed intentions and actions of Kim and 8th Bridge Inc., with the intent to continue working for 8th Bridge Inc. and living in Los Angeles.

110.   On information and belief, Kim and 8th Bridge Inc. conspired with Chang, and Chang aided and abetted Kim and 8th Bridge Inc., to breach their fiduciary duties to Plaintiffs.

111.   Choi was harmed by the loss of his money, and Choi and SRC were harmed by the loss of their time, effort, and proprietary and confidential

information they invested in the joint venture, while ignorant of the true facts that were concealed from them.

112.   Plaintiffs' harm, as alleged above, was substantially caused by Defendants' fraudulent concealment, as alleged herein.

113.   Based on the foregoing, Plaintiffs are entitled to damages, according to proof.

114.   Defendants and their employees, authorized by officers, directors, or managing agents of Kim and 8th Bridge Inc., undertook this conduct intentionally, fraudulently, maliciously and with reckless disregard for Plaintiffs' welfare, always placing their own interests in maximizing profits ahead of Plaintiffs' welfare and of Plaintiffs' rights and entitlement to be dealt with in a lawful manner in these transactions.  As a result, Defendants, and each of them, should be made to pay exemplary damages in an amount sufficient to deter them in the future from engaging in the conduct and omissions complained of herein.

## **SIXTH CLAIM FOR RELIEF**
### **(Constructive Fraud --**
### **Against Kim, 8th Bridge Inc., 8th Bridge LLC, MRE Fund GP, MRE Fund LP, MRE Fund II LP, and MRE Equity Fund)**

115.   Plaintiffs incorporate the allegations set forth in the preceding paragraphs as though set forth fully in this paragraph.

116.   By their statements and conduct, as alleged above, Plaintiffs became joint venturers with Defendants Kim and 8th Bridge Inc., with each owing the other fiduciary duties of loyalty and care.

117.   By failing to disclose their intent to disavow and deny or rescind the joint venture without cause upon the funding of the Ace Hotel Project, Kim and 8th Bridge Inc. breached their fiduciary duties of disclosure of relevant matters arising from the relationship, inducing Plaintiffs' justifiable, reasonable, and prejudicial reliance, as alleged above.

118.   By placing MRE Fund GP under their sole control, and by failing to disclose that they had done so, Kim and 8th Bridge Inc. breached their fiduciary duties of loyalty and of disclosure of relevant matters arising from the relationship, inducing Plaintiffs' justifiable, reasonable, and prejudicial reliance, as alleged above.

119.   By failing to disclose that they had transferred 8th Bridge Inc.'s interest in MRE Fund GP to 8th Bridge LLC, Kim and 8th Bridge Inc. breached their fiduciary duties of disclosure of relevant matters arising from the relationship, inducing Plaintiffs' justifiable, reasonable, and prejudicial reliance, as alleged above.

120.   As a direct and proximate result of the foregoing breach of fiduciary duties, Plaintiffs suffered damages in an amount to be proven at trial in this matter.

121.   Defendants Kim and 8th Bridge Inc., and their employees, authorized by officers, directors, or managing agents of Kim and 8th Bridge Inc., undertook this conduct intentionally, fraudulently, maliciously and with reckless disregard for Plaintiffs' welfare, always placing their own interests in maximizing profits ahead of Plaintiffs' welfare and of Plaintiffs' rights and entitlement to be dealt with in a lawful manner in these transactions.  As a result, Kim and 8th Bridge Inc., and each of them, should be made to pay exemplary damages in an amount sufficient to deter them in the future from engaging in the conduct and omissions complained of herein.

122.   The foregoing conduct justifies the imposition of a permanent injunction to restrain Defendants from distributing and receiving the proceeds of the joint venture without first accounting to Plaintiffs for their share of profits.

123.   The foregoing conduct justifies the imposition of a constructive trust, with Defendants as constructive trustees with a duty to transfer to Plaintiffs their share of profits from the joint venture.

124.   By reason of their joint venture, as alleged herein, Plaintiffs have a joint interest with Defendants Kim, 8th Bridge Inc., and 8th Bridge LLC, in MRE Fund GP.

125.   Plaintiffs' interest in MRE Fund GP is in danger of being lost, removed, or materially injured, and a receivership is necessary to preserve the property held and received by MRE Fund GP and preserve the rights of Plaintiffs thereto.

126.   Plaintiffs are entitled to the appointment of a receiver, pursuant to Code of Civil Procedure § 564, to hold the interests of MRE Fund GP and manage and control its affairs for the benefit of Plaintiffs and the other joint venturers.

## SEVENTH CLAIM FOR RELIEF
### (Conversion --
### Against Kim, 8th Bridge Inc., 8th Bridge LLC, and MRE Fund GP)

127.   Plaintiffs incorporate the allegations set forth above as though set forth fully in this paragraph.

128.   As joint venture partners, Plaintiffs were entitled to their share of the joint venture's property, assets, and profits.

129.   On information and belief, Defendants Kim, 8th Bridge Inc., 8th Bridge LLC, and MRE Fund GP have wrongfully taken possession of interest payments and management fees rightfully belonging to the joint venture, and have failed and refused to return those funds.

130.   As a direct and proximate result of the foregoing conversion, Plaintiffs suffered damages in an amount to be proven at trial in this matter.

131.   Defendants and their employees, authorized by officers, directors, or managing agents of Kim, 8th Bridge Inc., 8th Bridge LLC, and MRE Fund GP, undertook this conduct intentionally, fraudulently, maliciously and with reckless disregard for Plaintiffs' welfare, always placing their own interests in maximizing profits ahead of Plaintiffs' welfare and of Plaintiffs' rights and entitlement to be

dealt with in a lawful manner in these transactions.  As a result, Defendants, and each of them, should be made to pay exemplary damages in an amount sufficient to deter them in the future from engaging in the conduct and omissions complained of herein.

132.   The foregoing conduct justifies the imposition of a constructive trust, with Defendants as constructive trustees with a duty to transfer to Plaintiffs their share of profits from the joint venture.

## **EIGHTH CLAIM FOR RELIEF**

### **(Violation of the Defend Trade Secrets Act --**

### **Against Kim, 8th Bridge Inc., 8th Bridge LLC, and Chang)**

133.   Plaintiffs incorporate the allegations set forth above as though set forth fully in this paragraph.

134.   Plaintiffs own and possess certain confidential, proprietary, and trade secret information, comprising the identities and contact information for an extensive network of local immigration agents in various cities in China, South Korea, and Vietnam.

135.   Plaintiffs have developed and used this information in conducting foreign commerce, in connection with SRC's role as a regional center under the federal "EB-5 Program" and "EB-5 Immigrant Investor Program," as well as in connection with Choi's development of EB-5 programs outside of SRC's region.

136.   Plaintiffs have committed significant time and resources to create and develop this information.

137.   This information derives independent economic value from not being generally known to, and no being readily ascertainable through proper means by, other persons who could obtain economic value from the disclosure or use of the information.

138.    Plaintiffs have taken reasonable measures to keep this information secret and confidential, including but not limited to by requiring the agents

themselves, as well as contractors, consultants, potential business partners such as Kim and 8th Bridge Inc., and employees such as Chang, to sign non-disclosure agreements.

139.   After May 11, 2016, in violation of Plaintiffs' rights, Defendants Kim and 8th Bridge Inc. misappropriated and used Plaintiffs' confidential, proprietary, and trade secret information to market Defendants' own EB-5 projects in Asia, while secretly intending to disavow and deny, or rescind, the joint venture for which the information was disclosed, as well as later using that information without Plaintiffs' knowledge or consent, having already disavowed and denied the joint venture, or rescinded it without cause.

140.   In or about June 2017, in violation of Plaintiffs' rights, Defendant Chang became employed directly by 8th Bridge Inc., and transferred Plaintiffs' confidential, proprietary, and trade secret information to that company, to Kim, and possibly to others, in violation of Chang's NDA with SRC.

141.   Defendants' misappropriation of Plaintiffs' confidential, proprietary, and trade secret information was in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836.

142.   Defendants' misappropriation of Plaintiffs' confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

143.   On information and belief, if Defendants are not enjoined, Defendants will continue to misappropriate and use Plaintiffs' trade secret information for their own benefit and to Plaintiffs' detriment.

144.   As a direct and proximate result of Defendants' misappropriation, Plaintiffs have suffered and are threatened with financial injury in an amount that will be proven at trial.  Plaintiffs have also incurred, and will continue to incur, additional costs and expenses, including attorney's fees, as a result of Defendants' misappropriation.

145.   As a further proximate result of the misappropriation and use of Plaintiffs' trade secrets, Defendants have been unjustly enriched, and Plaintiffs are entitled to disgorgement to that extent.

146.   As the direct and proximate result of Defendants' conduct, Plaintiffs have suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.  Because Plaintiffs' remedy at law is inadequate, Plaintiffs seek, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect their confidential, proprietary, and trade secret information and to protect other legitimate business interests.  Plaintiffs' business operates in a competitive market and will continue to suffer irreparable harm absent injunctive relief.

147.   Defendants undertook this conduct willfully and maliciously, and as a result are liable for Plaintiffs' attorney's fees.

148.   Defendants and their employees, authorized by officers, directors, or managing agents of Kim and 8th Bridge Inc., undertook this conduct intentionally, fraudulently, maliciously and with reckless disregard for Plaintiffs' welfare, always placing their own interests in maximizing profits ahead of Plaintiffs' welfare and of Plaintiffs' rights and entitlement to be dealt with in a lawful manner in these transactions.  As a result, Defendants, and each of them, should be made to pay exemplary damages in an amount sufficient to deter them in the future from engaging in the conduct and omissions complained of herein.

### NINTH CLAIM FOR RELIEF

**(Violation of the California Uniform Trade Secrets Act --**
**Against Kim, 8th Bridge Inc., 8th Bridge LLC, and Chang)**

149.   Plaintiffs incorporate the allegations set forth above as though set forth fully in this paragraph.

150.   Plaintiffs own and possess certain confidential, proprietary, and trade secret information as to the identities and contact information for its extensive network of local immigration agencies and agents in various cities in China, South Korea, and Vietnam, which information constitutes trade secrets as defined by California's Uniform Trade Secrets Act.

151.   Plaintiffs have committed significant time and resources to create and develop this information.

152.   This information derives independent economic value from not being generally known to, and no being readily ascertainable through proper means by, other persons who could obtain economic value from the disclosure or use of the information.

153.   Plaintiffs have taken reasonable measures to keep this information secret and confidential, including but not limited to by requiring the agencies themselves, contractors, consultants, potential business partners such as Kim and 8th Bridge Inc., and employees such as Chang, to sign non-disclosure agreements.

154.   Defendants knew or should have known under the circumstances that the information misappropriated by Defendants were trade secrets.

155.   Defendants misappropriated and threaten to further misappropriate trade secrets by acquiring trade secrets by improper means, and by using the trade secrets to market Defendants' own EB-5 projects in Asia, both prior to April 2017 (while secretly intending to rescind without cause, or disavow and deny the existence of the joint venture for which the information was disclosed), and thereafter (using that information without Plaintiffs' knowledge or consent, having already rescinded the joint venture without cause or having already disavowed and denied it).

156.   In or about June 2017, in violation of Plaintiffs' rights, Defendant Chang became employed directly by 8th Bridge Inc., and transferred Plaintiffs'

confidential, proprietary, and trade secret information to that company, to Kim, and possibly to others, in violation of Chang's NDA with SRC.

157.   As a direct and proximate result of Defendants' misappropriation, Plaintiffs have suffered and are threatened with financial injury in an amount that will be proven at trial.  Plaintiffs have also incurred, and will continue to incur, additional costs and expenses, including attorney's fees, as a result of Defendants' misappropriation.

158.   As a further proximate result of the misappropriation and use of Plaintiffs' trade secrets, Defendants have been unjustly enriched, and Plaintiffs are entitled to disgorgement to that extent.

159.   As the direct and proximate result of Defendants' conduct, Plaintiffs have suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.  Because Plaintiffs' remedy at law is inadequate, Plaintiffs seek, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect their confidential, proprietary, and trade secret information and to protect other legitimate business interests.  Plaintiffs' business operates in a competitive market and will continue to suffer irreparable harm absent injunctive relief.

160.   Defendants undertook this conduct willfully and maliciously, and as a result are liable for Plaintiffs' attorney's fees.

161.   Defendants and their employees, authorized by officers, directors, or managing agents of Kim and 8th Bridge Inc., undertook this conduct intentionally, fraudulently, maliciously and with reckless disregard for Plaintiffs' welfare, always placing their own interests in maximizing profits ahead of Plaintiffs' welfare and of Plaintiffs' rights and entitlement to be dealt with in a lawful manner in these transactions.  As a result, Defendants, and each of them, should

be made to pay exemplary damages in an amount sufficient to deter them in the future from engaging in the conduct and omissions complained of herein.

## TENTH CLAIM FOR RELIEF
### (Judicial Dissolution --
### Against Kim and 8th Bridge Inc.)

162.   Plaintiffs incorporate the allegations set forth in the preceding paragraphs as though set forth fully in this paragraph.

163.   As a result of the conduct of Defendants Kim and 8th Bridge Inc., as alleged herein, the economic purpose of the joint venture is likely to be unreasonably frustrated.

164.   As alleged herein, Defendants Kim and 8th Bridge Inc. have engaged in conduct relating to the joint venture business that makes it not reasonably practicable to carry on the business in partnership with these Defendants.

165.   It is not otherwise reasonably practicable to carry on the joint venture business in conformity with the joint venture agreement.

166.    Plaintiffs are entitled to a judicial dissolution of the joint venture, pursuant to California Corporations Code § 16801.

## ELEVENTH CLAIM FOR RELIEF
### (Breach of Contract to Form Joint Venture --
### Against Kim and 8th Bridge Inc.)

167.   Plaintiffs incorporate the allegations set forth in paragraphs 1-79 as though set forth fully in this paragraph.

168.    An agreement to form a joint venture was formed either expressly or impliedly by the parties' conduct, as alleged herein, among Choi, SRC, Kim, and 8th Bridge Inc.

169.   The objective of the agreement to form a joint venture was to create an enterprise to cooperatively market the Ace Hotel Project, as well as potentially a number of other EB-5 investment projects thereafter, to target investors through

local immigration agencies in Asia, India, and Latin America, and then share in the profits from these projects.

170.   Plaintiffs have fully performed all of their material obligations under the agreement to form a joint venture, or such obligations were excused.

171.   Defendants have breached the terms of the agreement by their conduct as alleged above.

172.   As a direct and foreseeable result of Defendants' breach of the Agreement, Plaintiffs suffered and are entitled to recover their actual and foreseeable consequential damages in an amount to be proven at trial.

## TWELFTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty --
### Against Kim, 8th Bridge Inc., and Chang)

173.   Plaintiffs incorporate the allegations set forth in paragraphs 1-79 and 167-172 as though set forth fully in this paragraph.

174.   Having entered into a contract to form a joint venture with Plaintiffs, Kim and 8th Bridge Inc. owed fiduciary duties of loyalty and care to Plaintiffs.

175.   Kim and 8th Bridge Inc. breached their fiduciary duties to Plaintiffs by the following acts, among others:

(1)     Withholding financial information from Plaintiffs regarding the revenues received by MRE Fund GP from the Ace Hotel Project;

(2)     Placing MRE Fund GP under the sole control of 8th Bridge Inc. and Kim, without transferring any shares in 8th Bridge Inc. to Plaintiffs, and without disclosing that while concealing that fact from Plaintiffs;

(3)     Transferring 8th Bridge Inc.'s interest in MRE Fund GP to 8th Bridge LLC, while concealing that fact from Plaintiffs;

(4)     Converting the proposed joint venture's assets to their own use;

(5)     Depriving Plaintiffs of possession of the proposed joint venture business;

(6)     Purporting to repay or refund a portion of Choi's financial investment rather than recognizing Plaintiffs' right to share in the proposed joint venture's profits;

(7)     Inducing Defendant Chang to resign from SRC to become employed directly by 8th Bridge Inc.;

(8)     Misappropriating Plaintiffs' confidential and proprietary information; and

(9)     Failing to disclose their intent to disavow the proposed joint venture upon the funding of the Ace Hotel Project.

176.    As a direct and proximate result of the foregoing breach of fiduciary duties, Plaintiffs suffered damages in an amount to be proven at trial in this matter.

177.    Defendants and their employees, authorized by officers, directors, or managing agents of Kim and 8th Bridge Inc., undertook this conduct intentionally, fraudulently, maliciously and with reckless disregard for Plaintiffs' welfare, always placing their own interests in maximizing profits ahead of Plaintiffs' welfare and of Plaintiffs' rights and entitlement to be dealt with in a lawful manner in these transactions.  As a result, Defendants, and each of them, should be made to pay exemplary damages in an amount sufficient to deter them in the future from engaging in the conduct and omissions complained of herein.

## THIRTEENTH CLAIM FOR RELIEF

### (Promissory Estoppel --

### Against Kim and 8th Bridge Inc.)

178.    Plaintiffs incorporate the allegations set forth in paragraphs 1-79 as though set forth fully in this paragraph.

179.    Over the course of their working relationship, Defendants Kim and 8th Bridge Inc. made clear and unambiguous promises to Plaintiffs that their

-33-

continued collaborative efforts and Choi's continued funding of those efforts would result in shared profits.

180.   It was foreseeable to Kim and 8th Bridge Inc. that Plaintiffs would rely on these promises.

181.   Plaintiffs reasonably relied on these promises in their conduct as alleged herein.

182.   As a direct and foreseeable result of that reliance, Plaintiffs have been injured by having been deprived of the expected share of the profits from their efforts and Choi's financial investment, and are entitled to recover their actual and foreseeable consequential damages in an amount to be proven at trial.

## FOURTEENTH CLAIM FOR RELIEF

### (Violation of California Bus. & Prof. Code § 17200 --
### Against Kim, 8th Bridge Inc., 8th Bridge LLC, and Chang)

183.   Plaintiffs incorporate the allegations set forth in the preceding paragraphs as though set forth fully in this paragraph.

184.   Defendants engaged in unlawful, fraudulent and unfair business acts and practices. Such acts and practices include, but are not limited to, misappropriating Plaintiffs' confidential and proprietary trade secret information, as well as wrongfully depriving Plaintiffs of their rightful ownership interest in the joint venture.

185.   Defendants' business acts and practices were unlawful and fraudulent; in that a reasonable person would likely be deceived by their material concealment; in that Defendants have acquired and used Plaintiffs' confidential and proprietary trade secret information through material misrepresentations and omissions; and in that Defendants have unlawfully and fraudulently deprived Plaintiffs of their rightful ownership interest in the joint venture.

186.   Defendants' business acts and practices were unfair; in that the substantial harm suffered by Plaintiffs outweighs any justification that Defendants may have for engaging in those acts and practices.

187.   Plaintiffs have been harmed as a result of Defendants' unlawful, unfair, and fraudulent business acts and practices. Plaintiffs are entitled to (a) recover restitution, including without limitation, all benefits that Defendants received as a result of their unlawful, unfair, and fraudulent business acts and practices and (b) an injunction restraining Defendants from engaging in further acts of unfair competition, as alleged herein.

## FIFTEENTH CLAIM FOR RELIEF
### (Accounting --
### Against Kim, 8th Bridge Inc., 8th Bridge LLC, MRE Fund GP, MRE Fund LP, MRE Fund II LP, and MRE Equity Fund)

188.   Plaintiffs incorporate the allegations set forth in the preceding paragraphs as though set forth fully in this paragraph.

189.   Based on the facts alleged above, Plaintiffs are entitled to an accounting by Defendants of all financial transactions relating to the business of the joint venture, including the operation and financial transactions of 8th Bridge Inc., 8th Bridge LLC, MRE Fund GP, MRE Fund LP, MRE Fund II LP, and MRE Equity Fund, and any EB-5 investment projects of these entities since September 2015.

## SIXTEENTH CLAIM FOR RELIEF
### (Quantum Meruit --
### Against Kim and 8th Bridge Inc.)

190.   Plaintiffs incorporate the allegations set forth in paragraphs 1-79 as though set forth fully in this paragraph.

191.    Plaintiffs performed services for Defendants Kim and 8th Bridge Inc. at their request, as alleged herein, the reasonable value of which can be determined.

192.    Plaintiffs have not been paid for these services, and are entitled to damages or restitution in an amount sufficient reasonably to compensate them therefor.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully prays the Court enter judgment in their favor and against Defendants as follows:

1.      Judgment in Plaintiffs' favor and against Defendants on all claims for relief alleged herein;

2.      For damages in an amount to be proven at trial, but not less than $3,000,000;

3.      For restitution, as alleged;

4.      For imposition of a constructive trust, as alleged;

5.      For an order enforcing Plaintiffs' rights, as alleged;

6.      For preliminary and permanent injunctive relief;

7.      For the appointment of a receiver to operate MRE Fund GP;

8.      For an accounting as alleged;

9.      For punitive damages;

10.     For costs of suit, including attorney's fees to the extent allowed by law;

11.     For prejudgment interest; and

1

12.     For such other and further relief as the Court may deem to be just and

2

proper.

3

Dated:  December 22, 2017

4

LAW OFFICES OF GREGG A. RAPOPORT, APLC

5

s/ *Gregg A. Rapoport*          _

6

Gregg A. Rapoport

7

Attorney For Plaintiffs
MOSES CHOI and

8

SOUTHEAST REGIONAL CENTER, LLC

9

**<u>DEMAND FOR JURY TRIAL</u>**

10

Plaintiffs hereby demand a trial by jury in this action.

11

Dated:  December 22, 2017

12

GREGG A. RAPOPORT, APLC

13

s/ *Gregg A. Rapoport*          _

14

Gregg A. Rapoport

15

Attorney For Plaintiffs
MOSES CHOI and

16

SOUTHEAST REGIONAL CENTER, LLC

17

18

19

20

21

22

23

24

25

26

27

28

# Mutual Non-Disclosure Agreement

This Mutual Non Disclosure Agreement dated the 26 day of August , 2015 is between 8th Bridge Capital herein, ("8BC"), a California Incorporated Company, with a physical address of 9107 Wilshire Blvd., Suite 720 Beverly Hills, CA 90210 and _____
Southeast Regional Center, LLC _____ (herein "Company"), with a physical address of 4197 Pleasant Hill Rd Suite 100, Duluth GA, 30096 _____.

I.    PURPOSE: 8BC and the Company wish to explore a business opportunity under which each may disclose Confidential Information to the other.

II.   DEFINITION: "Confidential Information" means any information, technical data or knowhow disclosed by either party to the other party, either directly or indirectly, in writing, orally or by inspection of tangible objects including, without limitation, that which relates to research, product plans, products, services, customers, markets, software, developments, inventions, processes, designs, drawings, engineering, hardware configuration information, marketing or finances, which Confidential Information is designated in writing to be confidential or proprietary, or if given orally, is confirmed in writing within 30 days of such disclosure, as having been disclosed as confidential or proprietary. Confidential Information does not include information, technical data or know-how which: (i) was publicly known and made generally available in the public domain prior to the time of disclosure by the disclosing party; (ii) becomes publically known and made generally available after disclosure by the disclosing party to the receiving party through no action or inaction of the receiving party; (iii) is already in the possession of the receiving party at the time of disclosure by the disclosing party as shown by the receiving party's files and records prior to the time of disclosure; (iv) is obtained by the receiving party form a third party without a breach of such third party's obligations of confidentiality; or (v) is independent developed by the receiving party without use of or reference to the disclosing party's Confidential Information, as shown by documents and other competent evidence in the receiving party's possession.

III.  NON-DISCLOSURE OF CONFIDENTIAL INFORMATION: 8BC and the Company agree not to use the Confidential Information disclosed to it by the other party for its own use or for any purpose except to carry out discussions concerning, and the undertaking of any business relationship between the two. Neither party will disclose any Confidential Information of the other party to third parties except those directors, officers, employees, consultant and agents who are required to have the information in order to carry out the discussion of the contemplated business Each party agrees that if will take all reasonable measures to protect the secrecy of and avoid disclosure or use of Confidential Information of the other party in order to prevent It from falling into the public domain or the possession of person other those persons authorized hereunder to have any such information, which measures shall include the highest degree of care that either party utilize to protect its own Confidential Information of a similar nature. Each party agrees to notify the other party in writing of any misuse or misappropriation of such Confidential Information of the other party that may come to its attention.

IV.   NON-CIRCUMVENTION: 8BC and the Company (including its officers, directors, agents, associates and any related parties) hereby agree that they will not, directly or indirectly, contact, deal with or otherwise become involved with any entity or any other entities or parties introduced, directly or indirectly, by or through the other party, its officers,

directors, agents or associates, for the purpose of avoiding the payment to the each other of profit, fees or otherwise, without specific written approval of the other party.

V.    MANDATORY DISCLOSURE: In the event that either party or their respective directors, officers, employees, consultants or agents are asked or required by legal process to disclose any of the Confidential Information of the other party, the party asked or required to make such disclosure shall give prompt notice so that the other party may seek a protective order to other appropriate relief. In the event that such protective order is not obtained, the party required to make such disclosure shall disclose only that portion of the Confidential Information that its counsel advises that it is legally required to disclose.

VI.    NO OBLIGATION: Nothing herein shall obligate either party to proceed with any transaction between them, and each party reserve the right, in its sole discretion, to terminate the discussions contemplated by this Agreement concerning the business opportunity.

VII.    NO WARRANTY: All confidential information is provided "as is". Each party makes no warranties, express, implied or otherwise, regarding its accuracy, completeness or performance.

VIII.    RETURN OF MATERIALS: Any materials or documents which have been furnished by one party to the other shall be and remained the property of the disclosing party and the business opportunity has been rejected or concluded.

IX.    NO LICENSE GRANTED: Nothing in this Agreement is intended to grant any rights to either party under any patent, copyright, trade secret or other intellectual property right, nor shall this Agreement grant either party any rights in or to the other party's Confidential Information, expect the limited right to review such Confidential Information solely for the purpose of determining whether to enter into the proposed business relationship between the parties.

X.    TERM: The obligations hereunder with respect to all Confidential Information shall continue in full force and effect for a period of two (2) years from the date of disclosure of such Confidential Information.

XI.    GOVERNING LAW AND JURIDICTION: This agreement shall be government by and construed and enforced in accordance with the internal law of the State of California, and shall be binding upon the parties hereto in the United States and worldwide. The federal and state courts within the State of California shall have exclusive jurisdiction to adjudicate any dispute arising out of this Agreement.

XII.    REMEDIES: Each party agrees that its obligations hereunder are necessary and reasonable in order to protect the other party and the other party's business, and expressly agrees that monetary damages would be inadequate to compensate the other party for any breach by either party of any covenants and agreements set forth herein. Accordingly, each party agrees and acknowledges that any such violation or threatened violation will cause irreparable injury to the other party and that, in addition, any other remedies that may be available in law, in equity or otherwise, the other party shall be entitled to obtain injunctive relief against the threatened breach of this Agreement or the continuation of any such breach.

XIII.   ASSIGNMENT: 8BC and the Company agree that they will not assign or transfer any rights or obligations under this Agreement without the prior written consent of the other party. Any such assignment or transfer is void.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the ___ day of _____ 2015.

**8th Bridge Capital**

Signature:

Young Kim

Name:

**The Company**

Signature

Moses Choi

Name: