UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 27, 2020 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Yasin Almadani | Howard Fredman |
| | Russell Selmont |

**Proceedings:**     TELEPHONE HEARING ON PAZ DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT (Dkt. [62], filed June 12, 2020)

## I.    INTRODUCTION AND BACKGROUND

The Court previously set out the factual and procedural background of this case in its April 20, 2020 order, dkt. 51 ("MTD Order"), and in its May 4, 2020 order, dkt. 53 ("Arbitration Order"). For that reason, the Court only sets forth those facts necessary to resolve defendants David Paz ("Paz"), Omnia Group, Ltd., and Omnia Properties, LLC's (collectively, "the Paz defendants") motion to dismiss.

The Court held a hearing on July 27, 2020. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

### A.    Corbrus Files this Action

Plaintiff Corbrus, LLC ("Corbrus") filed this action against the Paz defendants and a number of other defendants on November 30, 2019. Dkt. 1. Corbrus thereafter filed a first amended complaint on December 12, 2019. Dkt. 7 ("FAC"). The FAC asserted claims against the Paz defendants for: (1) fraud and deceit; and (2) negligent misrepresentation. See generally Id. The gravamen of Corbrus' claims is that in 2015, its principal, Fu-Shen Chang ("Chang"), entered into a partnership, known as "the Manhattan Fund," with defendant Young Kim ("Kim") and Kim's 8th Bridge companies, to provide EB-5 financing for the Paz defendants' real estate projects, including the Ace Hotel in New York City. Id. According to Corbrus, however, Kim and Paz fraudulently induced Corbrus to resign its partnership interest in the Manhattan Fund in October 2015, representing that Corbrus would be made whole by being paid as a consultant. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 27, 2020 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

### B. The Court Dismisses the FAC Without Prejudice

The Court dismissed without prejudice Corbrus' claims against the Paz defendants on April 20, 2020. See MTD Order. With respect to Corbrus' fraud and deceit claim, the Court noted that, pursuant to California law, "a defrauded party has three years from the occurrence of the fraud to file a civil action against the defrauding party." Id. at 6 (internal citation omitted). The Court concluded that Corbrus' fraud and deceit claim began to run when the Paz defendants allegedly and "fraudulently induced Corbrus to resign its partnership interest in the Manhattan Fund, which Corbrus did, in fact, do on October 25, 2015." Id. at 7.

After determining that Corbrus' alleged fraud and deceit claim began to run in October 2015, the Court next found that there was no basis for tolling pursuant to either the delayed discovery rule or the doctrine of fraudulent concealment. MTD Order at 7. The Court noted that: (1) after resigning from the Manhattan Fund in October 2015 under the assumption that a consulting agreement from the Paz defendants would be forthcoming, Corbrus inquired as to the status of the consulting agreement in December of 2015, but "no one responded"; and (2) Corbrus then waited until November 2017 to inquire with Kim about the status of the Manhattan Fund's projects with Paz defendants and Corbrus' anticipated consulting agreement. Id. at 9 (internal citations and alteration omitted). The Court reasoned that "Corbrus does not meaningfully explain the almost *two-year* delay between December 2015, when Corbrus last inquired about the status of its consulting agreement (but did not receive a response), and November 2017, the next time that Corbrus inquired about the Manhattan Fund, Omnia projects, and Corbrus' still, as-of-yet consummated consulting agreement." Id. (emphasis in original). The Court rejected Corbrus' argument that it had no reason to inquire about its situation until late 2017 because, according to Corbrus, "that is the first time that payments from the Paz defendants would have become due to Corbrus pursuant to the parties' alleged consulting agreement[.]" Id. at 7–8 n.2. The Court explained that "that does not explain why Corbrus justifiably believed that it had any entitlement to those monies given that the Paz defendants never responded to Corbrus' December 2015 inquiry regarding Corbrus' consulting agreement." Id. at 9. "Put differently, when Corbrus resigned its partnership interest in the Manhattan Fund in October 2015 based on the Paz defendants' alleged representations that the Paz defendants would compensate Corbrus by executing a consulting agreement with Corbrus, the Paz defendants' *failure to respond* to Corbrus' December 2015 inquiries on the subject should have placed Corbrus on notice that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 27, 2020 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

something was potentially amiss." Id. at 10 (emphasis in original). The Court likewise concluded that "Corbrus' negligent misrepresentation claim against the Paz defendants, based on the same allegations, is likewise time-barred under either the two-year or three-year statute of limitations periods which govern negligent misrepresentation claims." MTD Order at 12.

### C. Corbrus Files the SAC

Corbrus thereafter filed the operative second amended complaint on May 20, 2020, asserting a total of fifteen claims for relief. Dkt. 55 ("SAC"). The SAC asserts the following claims against the Paz defendants: (1) intentional misrepresentation; (2) fraudulent concealment; (3) negligent misrepresentation; (4) breach of fiduciary duty; (5) breach of contract; (6) breach of the implied covenant of good faith and fair dealing; and (7) restitution for unjust enrichment.[1] See generally SAC.

#### 1. The First NDNCA

The SAC alleges that on April 13, 2015, Corbrus and 8th Bridge entered into the first non-disclosure and non-circumvention agreement ("the First NDNCA") "to explore joint venture and partnership opportunities to finance large real estate development projects, including providing EB-5 Program financing." SAC ¶ 31. According to Corbrus, "[t]he First NDNCA prohibited [8th Bridge] from disclosing any proprietary or confidential information about potential real estate development projects presented by Corbrus and/or circumventing Corbrus on those projects—that is, the agreement prevented Corbrus and [8th Bridge] from taking actions for the purpose of avoiding payment to one another for projects and joint ventures under the NDNCA." Id. ¶ 33.

#### 2. The Second NDNCA

The SAC also alleges that on April 30, 2015, Corbrus and 8th Bridge "entered into a second NDNCA . . . that allowed the two companies to continue exploring financing projects on which to partner together with the continued agreement that neither would disclose proprietary information or circumvent the other on projects the two companies were exploring pursuant to their NDNCAs." SAC ¶ 34. "In other words, the agreement

---

[1] Corbrus brings three separate counts for breach of contract and three separate counts for breach of the implied covenant of good faith and fair dealing. See FAC ¶¶ 121–161.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | CIVIL MINUTES – GENERAL | | 'O' |
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 27, 2020 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

prevented Corbrus and [8th Bridge] from taking actions for the purpose of avoiding payment to one another for projects and joint ventures pursued under the NDNCA." Id.

The SAC further alleges that "[b]etween approximately April and June 2015, Corbrus proposed additional projects" including "real estate projects in New York City . . . being developed by Paz (Omnia) that Chang (Corbrus) introduced to Kim . . . under the parties' NDNCAs." SAC ¶ 35. According to Corbrus, in June 2015, Corbrus and 8th Bridge "agreed in writing to a joint venture and partnership, which would lend EB-5 funds to various projects including one or more of Paz's projects." Id. ¶ 36. Pursuant to the parties' agreement, "EB-5 investors would fund the Manhattan Fund, and the Manhattan Fund would in turn serve as a lender to Paz and Omnia, and other such projects that the Manhattan Fund would pursue." Id. Corbrus and 8th Bridge agreed to split the proceeds from the first of the Paz defendant's projects as follows: (a) of the 3% origination fee, Corbrus would collect 2% and 8th Bridge would collect 1%; (b) Corbrus would be entitled to 20% of the interest accrued for the life of the Manhattan Fund and 8th Bridge would be entitled to 80% of the interest accrued; and (c) all other compensation, including, *inter alia*, equity, equity reward, or equity-reward-like compensation, would be split equally between Corbrus and 8th Bridge. Id. ¶ 37. "Under this agreement, the $20M loan for the Ace Hotel Project . . . would cost Omnia $8.65M, with $2.55M to Corbrus and $6.1M to [8th Bridge] over the course of the loan." Id. ¶ 37(d).

   3.   **The Agreement Between the Paz Defendants and the Manhattan Fund**

Corbrus alleges that on July 12, 2015, the Paz defendants entered into a written agreement with the Manhattan Fund ("July 12, 2015 Agreement") concerning the Manhattan Fund's financing of the Paz defendants': (1) Ace Hotel project; and (2) the 54th St. Condominium Project. SAC ¶ 38. As part of this agreement, "Omnia also entered into a non-circumvention agreement whereby Omnia specifically agreed not to engage in actions for the purpose of avoiding payment to Corbrus and/or" 8th Bridge. Id. ¶ 41(d).

   D.   **Corbrus Resigns from the Manhattan Fund**

Corbrus alleges that between July 2015 and November 2015, "Corbrus expended considerable time and effort on the Manhattan Fund on just about every aspect of the Ace Hotel Project financing, including, *inter alia*, providing advice and expertise, negotiating terms with Paz (Omnia), retaining consultants, working with lawyers and consultants to comply with EB-5 requirements, and managing efforts on the ground in the U.S. coordinating, reviewing, and providing input on the drafting of numerous important

Case 2:19-cv-10182-CAS-AFM   Document 68   Filed 07/27/20   Page 5 of 18   Page ID #:1209

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 27, 2020 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

documents[.]" SAC ¶ 44. During this time, Kim, Paz, and their respective companies—8th Bridge and Omnia—"developed a close relationship and planned on doing future EB-5 projects together as envisioned by the Manhattan Fund partnership between Corbrus and [8th Bridge]." SAC ¶ 51. However, despite the First and Second NDNCAs between Corbrus and 8th Bridge, as well as the July 12, 2015 agreement between 8th Bridge, Corbrus, and the Paz defendants, Kim and the Paz defendants ultimately "sought to cut Corbrus (Chang) out of the Manhattan Fund partnership and thereby secure for themselves a greater piece of the pie[.]" Id.

According to Corbrus, Kim and Paz devised a scheme "to cut out Corbrus from the Manhattan Fund Partnership by convincing Chang (Corbrus) that it was better for Corbrus to *not* be a partner on the Manhattan Fund, but to instead be paid as a consultant by Paz on the Omnia side." SAC ¶ 53. "Over the course of months," Kim and Paz "assured Chang (Corbrus) that Kim would forgo earnings on the [8th Bridge] and Manhattan Fund side of the project so that Corbrus could continue to be made whole by Paz on the Omnia side—essentially that Corbrus would not be circumvented as agreed to . . . in the parties' agreements." Id. ¶ 54. In essence, Corbrus alleges that it was told "that it would be easier for Kim to close the deal with certain EB-5 sales agents if Corbrus was not named as a partner on the Manhattan Fund EB-5 loan paperwork, because foreign sales agents would have questions about Corbrus, and answering those questions would delay the project," but that Kim assured Corbrus "that pursuant to the parties' NDNCAs and partnership/joint venture, the benefits due [to] Corbrus would not be circumvented in any way and that Kim . . . would make sure of that." Id. ¶ 55(a).

Corbrus further asserts that 8th Bridge and the Paz defendants continued to pressure Corbrus to resign its partnership interest in the Manhattan Fund throughout October 2015, assuring Corbrus that it would be made whole. See FAC ¶ 55. Ultimately, Corbrus alleges that the parties entered into a three-way agreement providing that in return for Corbrus' resigning its partnership interest in the Manhattan Fund: (1) the Paz defendants would pay Corbrus "$1.9m in total: $1.2M (including $300K origination fee and $900K equity kicker) upon the first funding and disbursement of the loan . . . plus $100K per year for seven years thereafter;" (2) the Paz defendants "agreed to enter into a continuing consulting relationship with Corbrus by which Corbrus would be made whole with respect to the Manhattan Fund's ongoing relationship with Omnia on other Omnia projects"; (3) the Paz defendants would execute this "more formal consulting agreement . . . after the rush of the Ace Hotel EB-5 financing documents was over." Id. ¶ 55(i)(k). Corbrus thereafter resigned from the Manhattan Fund on October 25, 2015. Id. ¶ 55(n).

Case 2:19-cv-10182-CAS-AFM   Document 68   Filed 07/27/20   Page 6 of 18   Page ID #:1210

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 27, 2020 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

### E.   Corbrus' Subsequent Discussions with 8th Bridge and the Paz Defendants

After Corbrus resigned its partnership interest in the Manhattan Fund, 8th Bridge "informed Chang (Corbrus) . . . that the Manhattan Fund EB-5 loan agreement had been executed." SAC ¶ 55(v). "Kim left Corbrus with the impression that Kim . . . would no longer be helping Corbrus but that Corbrus would still receive its compensation in due course by working directly with Omnia." Id. Paz was "copied on the email" but "kept silent." Id. Corbrus responded to 8th Bridge's December 1, 2015 communication, reminding Kim and the 8th Bridge defendants "that Corbrus' resignation from the Manhattan Fund partnership was contingent upon all parties working together to ensure that Corbrus received the compensation it was promised." Id. ¶ 55(w). After Corbrus' response, the Paz defendants "continued to placate and deceive Chang about Corbrus' future compensation." Id.

"Between approximately December 2 and 4, 2015, Paz (Omnia) had discussions with Chang (Corbrus) about consulting work Corbrus would be doing for Omnia." SAC ¶ 59. According to Corbrus, "Paz also reassured . . . that Corbrus would be paid on the Ace Hotel deal once the EB-5 loan was secured." Id. Between December 8, 2015 and December 22, 2015, the Paz defendants "continued to give Corbrus a false sense of security" that "Corbrus would be compensated on the EB-5 deal, and that [the Paz defendants] would enter into a separate consulting agreement with Corbrus on other projects." Id. ¶ 60. The Paz defendants made similar representations on December 22, 2015, and on December 23, 2015. Id. ¶¶ 61–62. "Between approximately January 10 and March 13, 2016, Paz continued to have similar discussions with Chang . . . to deceive Chang that Corbrus would be compensated as promised. Chang (Corbrus) was left with the impression that Corbrus should wait for the EB-5 loan to be funded and disbursed, because that is when its payment would become due, and that Paz would continue to consider Corbrus for additional consulting project[s]." Id. ¶ 63. According to Corbrus, the Paz defendants "led Corbrus to believe that [they] and Corbrus would execute a consulting agreement when the appropriate project presented itself." Id.

"Between March 2016 and November 2017, Corbrus waited for the EB-5 loan to be funded and disbursed." SAC ¶ 64. "During this time," it "was not aware of any source of public information, news articles or otherwise, that would provide the status of the Ace Hotel EB-5 loan." Id. Nonetheless, "Corbrus made diligent monthly to bi-monthly efforts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 27, 2020 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

to check in with Paz's business associate to learn whether the loan had been funded and disbursed in order to know whether payment to Corbrus had become due." Id.

In early November 2017, however, "Corbrus learned for the first time that the Ace Hotel EB-5 loan may have been funded and disbursed." SAC ¶ 65. "Immediately," on November 7, 2017, "Chang (Corbrus) sent Kim ([8th Bridge]) an email inquiring about the status of the Ace Hotel EB-5 loan." Id. ¶ 66. Kim responded on November 13, 2017, "refusing to provide any information on the basis of Corbrus' resignation from the Manhattan Fund[.]" Id. Corbrus further asserts that on November 20, 2017, "Chang (Corbrus) sent Kim . . . a follow up email reminding Kim of the parties' non-circumvention agreement and partnership along with Kim and Paz's assurances to Chang that Corbrus' interests would be protected. Kim again refused to provide any information on the basis of" Corbrus' resignation from the Manhattan Fund. Id. ¶ 67.

Additional requests for information in September 2018 and October 2018 to Corbrus' previous counsel at the Jeffer Mangels law firm proved unfruitful. SAC ¶ 68. Corbrus avers that it was not until February 21, 2020, during this litigation, that Corbrus "learn[ed] precisely when the Manhattan Fund EB-5 loan was actually funded and disbursed[.]" Id. ¶ 71.

F. The Paz Defendants' Present Motion to Dismiss

The Paz defendants filed the present motion to dismiss on June 12, 2020. Dkt. 62 ("Mot."). Corbrus filed an opposition on July 6, 2020. Dkt. 65 ("Opp."). The Paz defendants filed a reply on July 13, 2020. Dkt. 66 ("Reply").

II. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under 12(b)(6), a district court should dismiss a claim if "there is a 'lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 27, 2020 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

In considering a 12(b)(6) motion, a court must accept as true all material allegations in the complaint, and all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1988). A court must read the complaint in the light most favorable to the non-movant. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a 12(b)(6) motion into a motion for summary judgment, the court cannot consider material outside of the complaint, such as facts presented in briefs, affidavits, or discovery materials. In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). However, a court may consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be granted freely. Fed. R. Civ. P. 15(a). However, the court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III.   DISCUSSION

The Paz defendants seek dismissal of Corbrus' claims primarily "on the grounds that the action is barred . . . by the applicable statutes of limitations for promissory fraud and negligent misrepresentation, fiduciary breach, tortious interference with contract and/or inducing a breach of contract, breach of the covenant of good faith and fair dealing and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 27, 2020 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

unjust enrichment[.]" Mot. at 1. "In a federal court proceeding, state law determines when the statute of limitations begins to run on state claims." Soundgarden, et al. v. UMG Recordings, Inc., 19-cv-05449-JAK-JPR, 2020 WL 1815855, at *11 (C.D. Cal. Apr. 6, 2020) (internal citation and alterations omitted). The Court thus looks to California law.

"Generally, a claim accrues at the time the injury occurs. An exception to this is the discovery rule which postpones accrual of a claim until the plaintiff discovers or has reason to discover the injury." Parrish v. Nat'l Football League Players Ass'n, 534 F. Supp. 2d 1081, 1089 (N.D. Cal. 2007). "Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." Keilholtz v. Lennox Hearth Prod. Inc., No. 08-cv-00836-CW, 2009 WL 2905960, at *3 (N.D. Cal. Sept. 8, 2009). "A party seeking to invoke the delayed discovery rule must, however, establish: (a) lack of knowledge; (b) lack of means of obtaining knowledge such that in the exercise of reasonable diligence, the facts could not have been discovered at an earlier date; and (c) how and when the party actually discovered the fraud." Gen. Bedding Corp. v. Echevarria, 947 F.2d 1395, 1397 (9th Cir. 1991).

"A close cousin of the discovery rule is the well accepted principle of fraudulent concealment." Bernson v. Browning-Ferris Indus., 7 Cal. 4th 926, 931 (1994) (internal citation and alteration omitted). "Succinctly stated, the rule of fraudulent concealment provides that a "defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations." Garamendi v. SDI Vendome S.A., 276 F. Supp. 2d 1030, 1041 (C.D. Cal. 2003) (internal citation and alteration omitted). The party seeking to invoke the doctrine of fraudulent concealment "must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." Cassis v. Sun Life Assurance Co. of Canada (U.S.), No. 17-cv-0148-DOC-KES, 2018 WL 1358971, at *14 (C.D. Cal. Jan. 18, 2018) (internal citation and quotation marks omitted). "A plaintiff must affirmatively excuse his failure to discover the fraud within three years by showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry." Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1024 (9th Cir. 2008).

With these principles in mind, the Court considers the parties' arguments in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 27, 2020 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

### A. Intentional Misrepresentation, Fraudulent Concealment, and Negligent Misrepresentation Claims

In its prior order dismissing the FAC without prejudice, the Court determined that "[t]he gravamen of Corbrus'" fraud and negligent misrepresentation claims "is that in October 2015, 8th Bridge and the Paz defendants induced Corbrus to resign its partnership interest in the Manhattan Fund based on a promise that Corbrus would be awarded a consulting agreement, but that the Paz defendants never intended to, or did, in fact, execute a consulting agreement with Corbrus after Corbrus resigned its partnership interest in the Manhattan Fund on October 25, 2015." MTD Order at 7. The Court therefore concluded that "the Paz defendants' alleged fraud and deceit was 'complete' when they fraudulently induced Corbrus to resign its partnership interest in the Manhattan Fund, which Corbrus did . . . on October 25, 2015." Id. The Court likewise determined that the FAC provided no basis for the Court to apply the delayed discovery rule or the doctrine of fraudulent concealment because "Corbrus does not meaningfully explain the almost *two-year* delay between December 2015, when Corbrus last inquired about the status of its consulting agreement (but did not receive a response), and November 2017, the next time that Corbrus inquired about the Manhattan Fund, Omnia projects, and Corbrus' still, as-of-yet consummated consulting agreement." Id. at 9 (emphasis in original).

Here, Corbrus' intentional misrepresentation claim, as pled in the SAC, alleges that Kim, Kim's 8th Bridge companies, and the Paz defendants "convinced [Corbrus] that it was best for the joint venture that [Corbrus] resigned its interest in the Manhattan Fund and that [Corbrus] would be compensated according to the parties' agreement after the EB-5 loan was funded and dispersed." SAC ¶ 83. Corbrus asserts, however, that "[t]his was a false representation and Defendants knew it, because Defendants' actual intent was to cut [Corbrus] out." Id. Similarly, Corbrus' fraudulent concealment claims allege that Kim, Kim's 8th Bridge companies, and the Paz defendants engaged in "a fraudulent scheme to induce [Corbrus] into giving up its rightful partnership position in the Manhattan Fund Companies," but that Corbrus "was in fact fraudulently induced by Defendants . . . into giving up its rightful partnership position in the Manhattan Fund Companies." Id. ¶¶ 91, 94. Corbrus' negligent misrepresentation claim likewise asserts that "Defendants' negligent misrepresentations and negligent material omissions induced [Corbrus] to relinquish its rightful partnership position in the Manhattan Fund Companies for a promise of future payments that Defendants should have known were never going to be made." Id. ¶ 113. The gravamen of these claims, then, is that in the time leading up to October 2015,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 27, 2020 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

the Paz defendants and 8th Bridge made representations to Corbrus which induced Corbrus to resign its partnership interest in the Manhattan Fund, which Corbrus did, in fact, do on October 25, 2015. Because the locus of these claims is Corbrus' October 25, 2015 resignation from the Manhattan Fund, the Court concludes that October 25, 2015, is the date that Corbrus' intentional misrepresentation, fraudulent concealment, and negligent misrepresentation claims first began to run.

Taking Corbrus' allegations in the SAC as true, however, the SAC provides a basis for finding, at the pleading stage, that the statute of limitations was tolled until, at least, November 2017. The Court's order dismissing the FAC without prejudice concluded that the FAC "does not meaningfully explain the almost two-year delay between December 2015, when Corbrus last inquired about the status of its consulting agreement (but did not receive a response), and November 2017, the next time that Corbrus inquired about the Manhattan Fund, Omnia projects, and Corbrus' still, as-of-yet consummated consulting agreement." MTD Order at 9. The SAC contains additional allegations which indicate that: (1) between December 2015 and March 2016, the Paz defendants continued to represent to Corbrus that despite resigning from the Manhattan Fund Corbrus would nonetheless be compensated for its work regarding the Ace Hotel project once the EB-5 loan for the project was fully funded from foreign investors and then disbursed to the Paz defendants; (2) Corbrus exercised diligence by making "monthly to bi-monthly efforts to check in with Paz's business associate to learn whether the loan had been funded and disbursed in order to know whether payment to Corbrus had become due"; and (3) Corbrus made further inquiries in November 2017, which is around the time that Corbrus' expected its first payment would come due. See FAC ¶¶ 59–65. Put differently, because of the Paz defendants' alleged representations between December 2015 and March 2016 that Corbrus would be compensated once the EB-5 loan for the Ace Hotel project was funded and disbursed, Corbrus had no reason to suspect anything was amiss until the EB-5 loan was funded and disbursed—an event that Corbrus alleges it first came to believe may have happened in November 2017. See Rosas v. BASF Corp., 236 Cal. App. 4th 1378, 1390 (2015) ("Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that . . . someone has done something wrong to her.").

Whether Corbrus should have—or actually—discovered the factual bases for its intentional misrepresentation, fraudulent concealment, and negligent misrepresentation claims prior to November 2017 is a question of fact that the Court cannot decide at the pleading stage. See Eidson v. Medtronic, Inc., 40 F. Supp. 3d 1202, 1218 (N.D. Cal. 2014) ("The question [of] when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 27, 2020 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

the evidence can support only one reasonable conclusion."). Because the SAC alleges facts sufficient to find, at the pleading stage, that Corbrus' intentional misrepresentation, fraudulent concealment, and negligent misrepresentations claims were tolled until November 2017, and because these claims are subject to a three-year limitations period, the Court cannot conclude, at this juncture, that these claims are time-barred.[2]

### B. Breach of Contract and Breach of Implied Covenant Claims

Corbrus brings three separate claims for breach of contract and three separate claims for breach of the implied covenant of good faith and fair dealing. See FAC ¶¶ 121–161. Corbrus asserts one count of breach of contract and one count for breach of the implied covenant corresponding to the First NDNCA, the Second NDNCA, and the July 12, 2015 Agreement, respectively. Id.

#### 1. Claims Based on July 12, 2015 Agreement

Corbrus' claims for breach of contract and breach of the implied covenant based on the July 12, 2015 Agreement allege that: (1) Corbrus, 8th Bridge, and the Paz defendants "entered into a written non-circumvention agreement . . . on July 12, 2015, under which they all agreed to not engage in actions for the purpose of avoiding payment to one another"; and (2) that the Paz defendants breached and frustrated Corbrus' rights under the agreement by "devising and executing a scheme to deliberately and fraudulently induce [Corbrus] into a false sense of security to relinquish its rightful partnership position in the Manhattan Fund Companies in [a] three-way deal for a false promise of future payments

---

[2] "Under California Code of Civil Procedure § 338, a defrauded party has three years from the occurrence of the fraud to file a civil action against the defrauding party." Manlin v. Ocwen Loan Servicing, LLC, No. 16-cv-06625-AB-KS, 2017 WL 8180779, at *3 (C.D. Cal. Dec. 7, 2017). Courts have applied either a two-year or three-year statute of limitations period to negligent misrepresentation claims depending on the nature of the allegations which form the basis for the negligent misrepresentation claim. See Ferguson v. JPMorgan Chase Bank, N.A., No. 2:14-cv-00328-KJM, 2014 WL 2118527, at *6 (E.D. Cal. May 21, 2014). Because Corbrus' negligent misrepresentation claims are based on the Paz defendants' alleged deceit, the Court applies a three-year limitations period to Corbrus' negligent misrepresentation claim. See Id. at *7 (applying three-year limitations period to negligent misrepresentation claim because it "is based on the same facts as the intentional misrepresentation claim . . . and is based in fraud.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 27, 2020 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

when the EB-5 loan was funded and disbursed." SAC ¶¶ 137–38, 157–59. The Paz defendants assert that Corbrus' claims are time-barred.[3]

In California, "[a]ctions for breach of a written contract are subject to a four-year limitations period[.]" Martins v. Nw. Dev. Co., No. 18-cv-1731-AJB-LL, 2020 WL 1508426, at *4 (S.D. Cal. Mar. 27, 2020) (citing Cal. Civ. Proc. § 337(1)). "A breach of contract action accrues at the time of breach even if the injured party is unaware of the breach or of his right to sue." Feimster v. Wright, No. 5:10-cv-03330-EJD, 2012 WL 993619, at *2 (N.D. Cal. Mar. 23, 2012). "The statute of limitations for breach of the implied covenant of good faith and fair dealing in contract law is four years."[4] James E. Roberts-Obayashi Corp. v. Steadfast Ins. Co., No. 05-cv-02079-MJJ, 2005 WL 8162747, at *4 (N.D. Cal. July 29, 2005).

Here, the parties dispute when the statute of limitations for Corbrus' claims for breach of contract and breach of the implied covenant based on the July 12, 2015 Agreement began to run. The Court notes, however, that "[a] cause of action for breach of contract does not accrue before the time of breach." Romano v. Rockwell Internat., Inc., 14 Cal. 4th 479, 488 (1996). Assuming—with respect to Corbrus' breach of contract and breach of the implied covenant claims based on the July 12, 2015 Agreement—that the "breach" was the Paz defendants' failure to pay Corbrus the monies Corbrus alleges it was owed under that agreement (and despite resigning from the Manhattan Fund), Corbrus

---

[3] The Paz defendants' motion seeks dismissal of these claims on the sole basis that these claims are time-barred. See Mot. In their reply brief, however, the Paz defendants also argue that the Paz defendants did not breach the terms of the July 12, 2015 Agreement, thereby defeating Corbrus' claims for breach of contract and breach of the implied covenant that are based on that agreement. Because the Paz defendants raised the issue of the July 12, 2015 Agreement's terms for the first time in reply, the Court does not consider, at this juncture, the Paz defendants' arguments on this issue. See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); accord Signal Hill Serv., Inc. v. Macquarie Bank Ltd., No. 11-cv-01539-MMM-JEM, 2013 WL 12244286, at *4 (C.D. Cal. Feb. 19, 2013) ("when a reply raises new matter, the district court has two permissible choices—it can permit a surreply or refrain from considering the arguments newly raised").

[4] Corbrus appears to confirm that its claims for breach of the implied covenant sound in contract, rather than in tort. See Opp. at 15 n.5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 27, 2020 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

brought these claims well within the applicable four-year limitations period.[5] The Paz defendants urge that "[t]he harm that Corbrus suffered was failure to receive a consulting agreement as allegedly promised; the claim therefore accrued no later than December 1, 2015," because "at least as of December 1, 2015," Corbrus "knew and appreciated that he was getting the 'run around[.]'" Mot. at 10. Even if the Court were to consider the Paz defendants' failure to execute one or more consulting agreements with Corbrus by December 1, 2015, as the "breach" for the purposes of these claims, Corbrus timely filed suit by initiating this action on November 30, 2019.

### 2. Claims Based on the First and Second NDNCAs

Corbrus also asserts claims for breach of contract and breach of the implied covenant against the Paz defendants based on their alleged roles in "aiding and abetting" or "inducing" 8th Bridge to breach the First and Second NDNCAs. Opp. at 15–16.

With respect to Corbrus' "inducement" theory, "California law has long recognized a cause of action against a defendant who, without a privilege to do so, intentionally induces a third person to breach his contract with another." Los Angeles Airways, Inc. v. Davis, 687 F.2d 321, 325 (9th Cir. 1982). Indeed, California law recognizes a separate tort claim for intentional interference with a contract which requires: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc., 766 F.3d 1002, 1006 (9th Cir. 2014) (internal citation omitted). The statute of limitations for such a claim is two years. Curley v. Wells Fargo & Co., No. 13-cv-03805-NC, 2014 WL 2187037, at *5 (N.D. Cal. May 23, 2014) (internal citations omitted). "The interference claim accrues from the date of the wrongful act, which can be no later 'than the actual breach of the

---

[5] Corbrus alleges that it "believed that the loan had been funded and disbursed in or about November 2017," therefore triggering the Paz defendants' obligations to pay Corbrus pursuant to the terms of the July 12, 2015 Agreement. SAC ¶ 71. In connection with the Paz defendants' previous motion to dismiss, the Paz defendants submitted a declaration from Paz, who attests that the EB-5 loan was funded and disbursed no later than November 18, 2016. See Dkt. 34-1. Because Corbrus filed suit on November 30, 2019, these claims are timely using either the November 2016 or November 2017 dates as the accrual date.

Case 2:19-cv-10182-CAS-AFM   Document 68   Filed 07/27/20   Page 15 of 18   Page ID #:1219

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 27, 2020 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

contract by the party who was wrongfully induced to breach.'" Curley, 2014 WL 2187037, at *5 (citing Trembath v. Digardi, 43 Cal.App.3d 834, 836 (1974)).

In the alternative, Corbrus' claims against the Paz defendants for breach of contract and breach of the implied covenant based on the First and Second NDNCAs allege that the Paz defendants "aided and abetted" 8th Bridge's purported breaches of those contracts' terms and implied covenants. SAC ¶¶ 126, 133, 146, 153. "California has adopted the common law rule for subjecting a defendant to liability for aiding and abetting a tort." Casey v. U.S. Bank Nat. Assn., 127 Cal. App. 4th 1138, 1144 (2005). And, "[t]he statute of limitations for a cause of action for aiding and abetting a tort generally is the same as the underlying tort." Am. Master Lease LLC v. Idanta Partners, Ltd., 225 Cal. App. 4th 1451, 1478 (2014). Other courts determined that California law does not permit a stranger to a contract to be held liable for breach of contract pursuant to an "aiding and abetting" theory. See, e.g., whiteCryption Corp. v. Arxan Techs., Inc., No. 15-cv-00754-WHO, 2015 WL 3799585, at *4 (N.D. Cal. June 18, 2015) ("Arxan provided no authority, and I am aware of none, recognizing a cause of action for aiding and abetting a breach of contract under California law."); Gamache v. Airbnb, Inc., No. A146179, 2017 WL 3431651, at *5 (Cal. Ct. App. Aug. 10, 2017) (unpublished opinion) (rejecting plaintiffs' argument that it could assert a claim for breach of the covenant of quiet enjoyment pursuant to "aiding and abetting" theory, reasoning that "the covenant of quiet enjoyment sounds in contract").

During the hearing, Corbrus' counsel indicated that, in light of the foregoing, Corbrus did not oppose—as against the Paz defendants only—dismissal of Corbrus' sixth and seventh claims for breach contract and Corbrus' ninth and tenth claims for breach of the implied covenant of good faith and fair dealing. The Court therefore **DISMISSES** these claims.

### C. Breach of Fiduciary Duty Claim

Corbrus also asserts a claim for breach of fiduciary duty against the Paz defendants. See SAC ¶¶ 115–20. Corbrus alleges that Kim and his 8th Bridge companies "owed a fiduciary duty to [Corbrus] as [its] business and joint venture partner in the Manhattan Fund" and that "[p]art of that fiduciary duty included a duty not to take actions to circumvent [Corbrus'] rights in the partnership and joint venture." SAC ¶ 117. Corbrus further avers that Kim and 8th Bridge "breached their fiduciary duty by devising and executing a scheme to deliberately and fraudulently induce [Corbrus] into a false sense of security to relinquish its rightful partnership position in the Manhattan Fund Companies for a false promise of future payments after the EB-5 loan was funded and dispersed." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 27, 2020 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

¶ 118. According to Corbrus, the Paz defendants "aided and abetted the breach of fiduciary duty" by: (1) "providing substantial assistance by participating [in] the fraudulent disussions [sic] to lend additional legitimacy and help [8th Bridge] convince [Corbrus] that the false promises were genuine"; and (2) "intentionally concealing material facts and affirmatively misrepresenting other facts in furtherance of [8th Bridge's] scheme to defraud its partner." SAC ¶ 119.

"The statute of limitations for breach of fiduciary duty is three years or four years, depending on whether the breach is fraudulent or nonfraudulent." Am. Master Lease LLC, 225 Cal. App. 4th at 1479. "The limitations period is three years . . . for a cause of action for breach of fiduciary duty where the gravamen of the claim is deceit, rather than the catchall four-year limitations period that would otherwise apply." Fuller v. First Franklin Fin. Corp., 216 Cal. App. 4th 955, 963 (2013). Moreover, "[t]he statute of limitations for a cause of action for aiding and abetting a tort generally is the same as the underlying tort." Am. Master Lease LLC, 225 Cal. App. 4th at 1478.

The Court has already determined, with respect to Corbrus' intentional misrepresentation, fraudulent concealment, and negligent misrepresentation claims against the Paz defendants, that although those claims were "complete" in October 2015, Corbrus has adequately alleged a basis for finding, at the pleading stage, that the three-year statute of limitations applicable to those claims was tolled until, at least, November 2017. Because Corbrus' breach of fiduciary duty claim against the Paz defendants is based on similar allegations and subject to the same three-year statute of limitations period, the Court declines to dismiss this claim as time-barred at this juncture.[6]

---

[6] Corbrus argues that the four-year limitations period should apply to its breach of fiduciary duty claim because in cases where a fiduciary duty claim "sound[s] both in contract and tort (fraud)," California law permits a plaintiff "to elect the contract theory and obtain the benefit of the *four-year* limitations period." Opp. at 16–17 (emphasis in original). The Court need not decide, at this juncture, whether the three-year or the four-year limitations period governs Corbrus' breach of fiduciary duty claim. That is because the Court has already concluded that the SAC adequately alleges a basis for concluding the breach of fiduciary duty claim is not time-barred, even were the Court to apply the three-year limitations period.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 27, 2020 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

### D. Unjust Enrichment Claim

Corbrus also asserts a claim for unjust enrichment, seeking restitution in the form of "disgorge[ement of] all payments, commissions, profits, benefits, and other compensation obtained by Defendants, and each of them, f[or] their wrongful conduct." SAC ¶¶ 162–66. "The limitations period for unjust enrichment depends on the statute of limitations governing the underlying claim." Wu v. Sunrider Corp., No. 17-cv-04825-DSF-SS, 2018 WL 6266577, at *5 (C.D. Cal. May 22, 2018).

Here, Corbrus' unjust enrichment claim alleges that defendants' "unlawful and deceptive actions . . . induced Corbrus into a false sense of security to relinquish its rightful partnership position in the Manhattan Fund Companies in [a] three-way deal for a false promise of future payments when the EB-5 loan was funded and disbursed." SAC ¶ 165. The Court therefore concludes that Corbrus' unjust enrichment claim sounds in fraud and is therefore subject to a three-year statute of limitations period. See BASF Corp. v. Cesare's Collision Repair & Towing, Inc., 364 F. Supp. 3d 1115, 1122 (E.D. Cal. 2019) ("California law provides a three-year limitations period for unjust enrichment claims . . . based on fraud or mistake[.]").

The Court has already concluded that the SAC provides a basis for finding, at the pleading stage, that the three-year limitations period applicable to Corbrus' intentional misrepresentation, fraudulent concealment, and negligent misrepresentation claims against the Paz defendants was tolled until, at least, November 2017. Because Corbrus' unjust enrichment claim against the Paz defendants is based on similar allegations and subject to the same three-year statute of limitations period, the Court declines to dismiss this claim as time-barred at this juncture.

### IV. CONCLUSION

In accordance with the foregoing, the Court orders as follows:

1. The Court **DENIES** the Paz defendants' motion to dismiss Corbrus' first claim for intentional misrepresentation, second claim for fraudulent concealment, third claim for fraudulent concealment, fourth claim for negligent misrepresentation, fifth claim for breach of fiduciary duty, and twelfth claim for unjust enrichment. The Court also **DENIES** the Paz defendants' motion to dismiss Corbrus' eighth claim for breach of contract and eleventh claim for breach of the implied covenant of good faith and fair dealing, which are based on the July 12, 2015 Agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 27, 2020 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

2. The Court **DISMISSES** Corbrus' sixth claim for breach of contract and ninth claim for breach of the implied covenant of good faith and fair dealing, which are based on the First NDNCA. The Court also **DISMISSES** Corbrus' seventh claim for breach of contract and tenth claim for breach of the implied covenant of good faith and fair dealing, which are based on the second NDNCA.

IT IS SO ORDERED.

                                                 00 : 07
Initials of Preparer      CMJ