UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | December 30, 2020 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

Present: The Honorable    **CHRISTINA A. SNYDER**

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:     Attorneys Present for Defendants:

Not Present     Not Present

**Proceedings:** (IN CHAMBERS) - PAZ DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS (Dkt. [76], filed November 11, 2020)

## I. INTRODUCTION AND BACKGROUND

The Court finds this motion appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. Local Rule 7-15.

The Court previously set out the factual and procedural background of this case in its April 20, 2020 order, dkt. 51 ("MTD Order"), its May 4, 2020 order, dkt. 53 ("Arbitration Order"), and its July 27, 2020 order. Dkt. 70 ("MTD SAC Order"). For that reason, the Court only sets forth those facts necessary to resolve defendants David Paz ("Paz"), Omnia Group, Ltd., and Omnia Properties, LLC's (collectively, "the Paz defendants") motion for partial judgment on the pleadings.

Plaintiff Corbrus, LLC ("Corbrus") filed this action against the Paz defendants and a number of other defendants on November 30, 2019. Dkt. 1. Corbrus filed the operative second amended complaint on May 20, 2020, asserting a total of fifteen claims for relief. Dkt. 55 ("SAC"). The SAC asserts the following claims against the Paz defendants: (1) intentional misrepresentation; (2) fraudulent concealment; (3) negligent misrepresentation; (4) breach of fiduciary duty; (5) breach of contract; (6) breach of the implied covenant of good faith and fair dealing; and (7) restitution for unjust enrichment.[1] See generally SAC. The gravamen of Corbrus' complaint is that in 2015, its principal, Fu-Shen Chang

---

[1] Corbrus brings three separate counts for breach of contract and three separate counts for breach of the implied covenant of good faith and fair dealing. See FAC ¶¶ 121–161.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | December 30, 2020 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

("Chang"), entered into a partnership, known as "the Manhattan Fund," with defendant Young Kim ("Kim") and Kim's 8th Bridge companies, to provide EB-5 financing for the Paz defendants' real estate projects, including the Ace Hotel in New York City. Id. According to Corbrus' allegations, however, Kim and Paz fraudulently induced Corbrus to resign its partnership interest in the Manhattan Fund in October, 2015, representing that Corbrus would be made whole by being paid as a consultant. Id.

The Court issued an order denying the Paz defendants' motion to dismiss the SAC on July 27, 2020. MTD SAC Order. The Paz defendants filed an answer on August 14, 2020. Dkt. 75 ("Answer").

The Paz defendants filed the present motion for partial judgment on the pleadings on November 11, 2020. Dkt. 76 ("Mot."). Corbrus filed an opposition on November 30, 2020. Dkt. 77 ("Opp."). The Paz defendants filed a reply on December 7, 2020. Dkt. 78 ("Reply").

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.     Relevant Allegations

### a.  The NDCAs First NDNCA

The SAC alleges that on April 13, 2015, Corbrus and 8th Bridge entered into the first non-disclosure and non-circumvention agreement ("the First NDNCA") "to explore joint venture and partnership opportunities to finance large real estate development projects, including providing EB-5 Program financing." SAC ¶ 31. Corbrus alleges that "[t]he First NDNCA prohibited [8th Bridge] from disclosing any proprietary or confidential information about potential real estate development projects presented by Corbrus and/or circumventing Corbrus on those projects—that is, the agreement prevented Corbrus and [8th Bridge] from taking actions for the purpose of avoiding payment to one another for projects and joint ventures under the NDNCA." Id. ¶ 33.

### b.  The Second NDNCA

The SAC also alleges that on April 30, 2015, Corbrus and 8th Bridge "entered into a second NDNCA . . . that allowed the two companies to continue exploring financing projects on which to partner together with the continued agreement that neither would disclose proprietary information or circumvent the other on projects the two companies were exploring pursuant to their NDNCAs." SAC ¶ 34. "In other words, the agreement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | December 30, 2020 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

prevented Corbrus and [8th Bridge] from taking actions for the purpose of avoiding payment to one another for projects and joint ventures pursued under the NDNCA." Id.

The SAC further alleges that "[b]etween approximately April and June[,] 2015, Corbrus proposed additional projects" including "real estate projects in New York City . . . being developed by Paz (Omnia) that Chang (Corbrus) introduced to Kim . . . under the parties' NDNCAs." SAC ¶ 35. Corbrus avers that, in June, 2015, Corbrus and 8th Bridge "agreed in writing to a joint venture and partnership, which would lend EB-5 funds to various projects including one or more of Paz's projects." Id. ¶ 36. Pursuant to the parties' agreement, Corbrus alleges that "EB-5 investors would fund the Manhattan Fund, and the Manhattan Fund would in turn serve as a lender to Paz and Omnia, and other such projects that the Manhattan Fund would pursue." Id. Corbrus and 8th Bridge allegedly agreed to split the proceeds from the first of the Paz defendant's projects as follows: (a) of the 3% origination fee, Corbrus would collect 2% and 8th Bridge would collect 1%; (b) Corbrus would be entitled to 20% of the interest accrued for the life of the Manhattan Fund and 8th Bridge would be entitled to 80% of the interest accrued; and (c) all other compensation, including, *inter alia*, equity, equity reward, or equity-reward-like compensation, would be split equally between Corbrus and 8th Bridge. Id. ¶ 37. "Under this agreement, the $20M loan for the Ace Hotel Project . . . would cost Omnia $8.65M, with $2.55M to Corbrus and $6.1M to [8th Bridge] over the course of the loan." Id. ¶ 37(d).

### c. The Agreement Between the Paz Defendants and the Manhattan Fund

Corbrus alleges that on July 12, 2015, the Paz defendants entered into a written agreement with the Manhattan Fund ("July 12, 2015 Agreement") concerning the Manhattan Fund's financing of the Paz defendants': (1) Ace Hotel project; and (2) the 54th St. Condominium Project. SAC ¶ 38. As part of this agreement, Corbrus alleges that "Omnia also entered into a non-circumvention agreement whereby Omnia specifically agreed not to engage in actions for the purpose of avoiding payment to Corbrus and/or" 8th Bridge. Id. ¶ 41(d).

### d. Corbrus Resigns from the Manhattan Fund

Corbrus alleges that between July, 2015 and November, 2015, "Corbrus expended considerable time and effort on the Manhattan Fund on just about every aspect of the Ace Hotel Project financing, including, *inter alia*, providing advice and expertise, negotiating terms with Paz (Omnia), retaining consultants, working with lawyers and consultants to comply with EB-5 requirements, and managing efforts on the ground in the U.S. coordinating, reviewing, and providing input on the drafting of numerous important

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | December 30, 2020 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

documents[.]" SAC ¶ 44. During this time, Kim, Paz, and their respective companies—8th Bridge and Omnia—allegedly "developed a close relationship and planned on doing future EB-5 projects together as envisioned by the Manhattan Fund partnership between Corbrus and [8th Bridge]." SAC ¶ 51. However, Corbrus alleges that despite the First and Second NDNCAs between Corbrus and 8th Bridge, as well as the July 12, 2015 agreement between 8th Bridge, Corbrus, and the Paz defendants, Kim and the Paz defendants ultimately "sought to cut Corbrus (Chang) out of the Manhattan Fund partnership and thereby secure for themselves a greater piece of the pie[.]" Id.

Corbrus further alleges that Kim and Paz devised a scheme "to cut out Corbrus from the Manhattan Fund Partnership by convincing Chang (Corbrus) that it was better for Corbrus to *not* be a partner on the Manhattan Fund, but to instead be paid as a consultant by Paz on the Omnia side." SAC ¶ 53. "Over the course of months," Kim and Paz allegedly "assured Chang (Corbrus) that Kim would forgo earnings on the [8th Bridge] and Manhattan Fund side of the project so that Corbrus could continue to be made whole by Paz on the Omnia side—essentially that Corbrus would not be circumvented as agreed to . . . in the parties' agreements." Id. ¶ 54. In essence, Corbrus alleges that it was told "that it would be easier for Kim to close the deal with certain EB-5 sales agents if Corbrus was not named as a partner on the Manhattan Fund EB-5 loan paperwork, because foreign sales agents would have questions about Corbrus, and answering those questions would delay the project," but that Kim assured Corbrus "that pursuant to the parties' NDNCAs and partnership/joint venture, the benefits due [to] Corbrus would not be circumvented in any way and that Kim . . . would make sure of that." Id. ¶ 55(a).

Corbrus further alleges that 8th Bridge and the Paz defendants continued to pressure Corbrus to resign its partnership interest in the Manhattan Fund throughout October, 2015, assuring Corbrus that it would be made whole. See FAC ¶ 55. Ultimately, Corbrus alleges that the parties entered into a three-way agreement providing that in return for Corbrus' resigning its partnership interest in the Manhattan Fund: (1) the Paz defendants would pay Corbrus "$1.9m in total: $1.2M (including $300K origination fee and $900K equity kicker) upon the first funding and disbursement of the loan . . . plus $100K per year for seven years thereafter;" (2) the Paz defendants "agreed to enter into a continuing consulting relationship with Corbrus by which Corbrus would be made whole with respect to the Manhattan Fund's ongoing relationship with Omnia on other Omnia projects"; (3) the Paz defendants would execute this "more formal consulting agreement . . . after the rush of the Ace Hotel EB-5 financing documents was over." Id. ¶ 55(i)(k). Corbrus alleges that it thereafter resigned from the Manhattan Fund on October 25, 2015. Id. ¶ 55(n).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | December 30, 2020 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

### e. Corbrus' Subsequent Discussions with 8th Bridge and the Paz Defendants

Corbrus alleges that after it resigned its partnership interest in the Manhattan Fund, 8th Bridge "informed Chang (Corbrus) . . . that the Manhattan Fund EB-5 loan agreement had been executed." SAC ¶ 55(v). "Kim left Corbrus with the impression that Kim . . . would no longer be helping Corbrus but that Corbrus would still receive its compensation in due course by working directly with Omnia." Id. Paz was allegedly "copied on the email" but "kept silent." Id. Corbrus alleges that it responded to 8th Bridge's December 1, 2015 communication, reminding Kim and the 8th Bridge defendants "that Corbrus' resignation from the Manhattan Fund partnership was contingent upon all parties working together to ensure that Corbrus received the compensation it was promised." Id. ¶ 55(w). After Corbrus' response, the Paz defendants allegedly "continued to placate and deceive Chang about Corbrus' future compensation." Id.

"Between approximately December 2 and 4, 2015, Paz (Omnia) had discussions with Chang (Corbrus) about consulting work Corbrus would be doing for Omnia." SAC ¶ 59. Corbrus avers that "Paz also reassured . . . that Corbrus would be paid on the Ace Hotel deal once the EB-5 loan was secured." Id. Corbrus further alleges that between December 8, 2015 and December 22, 2015, the Paz defendants "continued to give Corbrus a false sense of security" that "Corbrus would be compensated on the EB-5 deal, and that [the Paz defendants] would enter into a separate consulting agreement with Corbrus on other projects." Id. ¶ 60. The Paz defendants allegedly made similar representations on December 22, 2015, and on December 23, 2015. Id. ¶¶ 61–62. "Between approximately January 10 and March 13, 2016, Paz continued to have similar discussions with Chang . . . to deceive Chang that Corbrus would be compensated as promised. Chang (Corbrus) was left with the impression that Corbrus should wait for the EB-5 loan to be funded and disbursed, because that is when its payment would become due, and that Paz would continue to consider Corbrus for additional consulting project[s]." Id. ¶ 63. Corbrus alleges that the Paz defendants "led Corbrus to believe that [they] and Corbrus would execute a consulting agreement when the appropriate project presented itself." Id.

"Between March 2016 and November 2017, Corbrus waited for the EB-5 loan to be funded and disbursed." SAC ¶ 64. "During this time," Corbrus alleges that is "was not aware of any source of public information, news articles or otherwise, that would provide the status of the Ace Hotel EB-5 loan." Id. Nonetheless, Corbrus avers that it "made diligent monthly to bi-monthly efforts to check in with Paz's business associate to learn whether the loan had been funded and disbursed in order to know whether payment to Corbrus had become due." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | December 30, 2020 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

Corbrus alleges that in early November, 2017, it "learned for the first time that the Ace Hotel EB-5 loan may have been funded and disbursed." SAC ¶ 65. "Immediately," on November 7, 2017, "Chang (Corbrus) sent Kim ([8th Bridge]) an email inquiring about the status of the Ace Hotel EB-5 loan." Id. ¶ 66. Kim allegedly responded on November 13, 2017, "refusing to provide any information on the basis of Corbrus' resignation from the Manhattan Fund[.]" Id. Corbrus further alleges that on November 20, 2017, "Chang (Corbrus) sent Kim . . . a follow up email reminding Kim of the parties' non-circumvention agreement and partnership along with Kim and Paz's assurances to Chang that Corbrus' interests would be protected. Kim allegedly again refused to provide any information on the basis of Corbrus' resignation from the Manhattan Fund. Id. ¶ 67.

Corbrus avers that additional requests for information in September, 2018 and October, 2018 to Corbrus' previous counsel at the Jeffer Mangels law firm proved unfruitful. SAC ¶ 68. Corbrus further avers that it was not until February 21, 2020, during this litigation, that Corbrus "learn[ed] precisely when the Manhattan Fund EB-5 loan was actually funded and disbursed[.]" Id. ¶ 71.

### III. LEGAL STANDARD

A motion for judgment on the pleadings may be brought "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012). A motion for judgment on the pleadings "provides a vehicle for summary adjudication on the merits, after the pleading. are closed but before trial, which may save the parties needless and often considerable time and expense which otherwise would be incurred during discovery and trial." Judge Virginia A. Phillips & Judge Karen L. Stevenson, Federal Civil Procedure Before Trial, § 9:316 (The Rutter Group 2019).

In deciding a motion for judgment on the pleadings, the court generally is limited to the pleadings and may not consider extrinsic evidence. See Fed. R. Civ. P. 12(c) (stating that a Rule 12(c) motion for judgment on the pleadings should be converted into a Rule 56 motion for summary judgment if matters outside the pleadings are considered by the court). A district court may, however, consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, a district court may consider a document if the complaint "necessarily relie[s]" on it, and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | December 30, 2020 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

authenticity of the document is not challenged. Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).

Although Rule 12(c) contains no mention of leave to amend, "courts generally have discretion in granting 12(c) motions with leave to amend, particularly in cases where the motion is based on a pleading technicality." In re Dynamic Random Access Memory Antitrust Litig., 516 F. Supp. 2d 1072, 1084 (N.D. Cal. 2007). There is a strong policy in favor of allowing amendment, unless amendment would be futile, results from bad faith or undue delay, or will unfairly prejudice the opposing party. Id. (internal citation omitted).

## IV. DISCUSSION

The Paz defendants seek partial judgment on the pleadings with respect to the eighth and eleventh claims of the SAC on the grounds that Corbrus has not stated a claim for breach of the non-circumvention clause of the July 12, 2015 Agreement or breach of the implied covenant that is based on that agreement. The Paz defendants contend that Corbrus fails to state a claim for two reasons: (a) because the non-circumvention clause of the July 15, 2015 Agreement unambiguously prohibits dealings or involvement with third parties, but does not prohibit dealings with 8th Bridge or Corbrus; and (b) because "the Paz defendants in fact entered into the very loan agreement contemplated by the Letter of Intent/Term sheet with the Manhattan Fund Partnership." Mot. at 2. In support of the Paz defendants' contention that interpretation of the non-circumvention clause according to customary trade usage establishes that the clause unambiguously does not prohibit dealings with 8th Bridge or Corbrus, the motion relies on an expert declaration submitted by Gary M. Tenzer. See Mot. at 13-15; Dkt. 76-1 ("Tenzer Decl.").

### a. Extrinsic Evidence

Corbrus objects to consideration of Tenzer's expert report on the grounds that it is extrinsic evidence that is not appropriately considered on a Rule 12(c) motion. The Court agrees. "Judgment on the pleadings is "improper when the district court goes beyond the pleadings," and relies on extrinsic evidence "to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment." Shame on You Prods., Inc. v. Elizabeth Banks, 120 F. Supp. 3d 1123, 1146 (C.D. Cal. 2015), aff'd sub nom. Shame on You Prods., Inc. v. Banks, 690 F. App'x 519 (9th Cir. 2017). Tenzer's expert report is extrinsic evidence upon which Corbrus cannot rely at the pleadings stage. See id. at n. 129 ("the expert report […] is extrinsic to the complaint and not properly taken into account in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | December 30, 2020 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

deciding a motion for judgment on the pleadings.") Accordingly, the Court will not consider the Tenzer expert report in ruling on the motion for judgment on the pleadings.[2]

Instead, the Court limits its inquiry to the pleadings and the text of the July 12, 2015 Agreement, the accuracy of which the parties do not dispute and upon which Corbrus's breach of contract claims necessarily relies. See SAC ¶¶ 39, 137, 157; Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Connecticut, No. 2:20-CV-04423-AB-SK, 2020 WL 5938689, at *3 (C.D. Cal. Oct. 2, 2020) (considering text of insurance policy on Rule 12(b)(6) motion because plaintiffs claim necessarily relied on the terms of the policy); Morgan v. Capitol Indem. Corp., No. C17-0754-JCC, 2017 WL 2717576, at *2 (W.D. Wash. June 23, 2017) (breach of contract claim necessarily relied on "a 1998 contract and a 2011 contract" that were "specifically refer[ed] to" in the compliant, such that it was "proper for the Court to consider them" at the pleadings stage).

b. Failure to State a Claim

To the extent that the Paz defendants contend that the SAC fails to plead a reasonable interpretation of the plain language of the non-circumvention clause, that argument is unavailing. To state a claim for breach of contract under California law, a party must plead: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011) (internal citation omitted). At the pleading stage, "[w]hen reviewing whether a plaintiff has properly stated a cause of action for breach of contract, we must determine whether the alleged agreement is 'reasonably susceptible' to the meaning ascribed to it in the complaint." Hervey v. Mercury Casualty Co., 185 Cal. App. 4th 954, 964 (2010) (emphasis added) (citation omitted). "So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement." Marzec v. California Pub. Employees Ret. Sys., 236 Cal. App. 4th 889, 909 (2015) (citing Aragon-Haas v. Family Security Ins. Servs., Inc., 231 Cal. App. 3d 232, 239 (1991)). Where the terms of the policy are unambiguous, the Court will not infer a limitation on defendants which is not supported by

---

[2] Likewise, because it would not be appropriate for Corbrus to present extrinsic evidence in support of its contract claims at the pleadings stage, the Court disregards the Paz defendants' contentions that there is "no material conflict in the extrinsic evidence" with respect to the non-circumvention clause. Such an argument is more appropriately considered on a motion for summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | December 30, 2020 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

the language of the policy. See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2015) 4:11 ("'Clear and explicit' policy language governs.") (quoting Powerme Oil Co., Inc. v. Super. Ct., 37 Cal. 4th 377. 390 (2005)).

As such, to withstand a motion for judgment on the pleadings, Corbrus's complaint must contain allegations that set forth a "reasonable interpretation" of the non-circumvention clause. See Klein v. Chevron U.S.A., Inc., 202 Cal. App. 4th 1342, 1385, 137 (2012). As relevant for purposes of this motion, the non-circumvention clause provides:

> 8BC, Corbrus and the Sponsor (including its officers, directors, agents, associates and any related parties) hereby agree that they will not, directly or indirectly, contact, deal with or otherwise become involved with <u>any entity</u> **or** <u>any other entities or parties</u> introduced, directly or indirectly, by or through the other party, its officers, agents or associates, for the purpose of avoiding the payment to each other of profit, fee or otherwise, without specific written approval of the other party.

Dkt. 77-1 at 8 (emphasis added). In its opposition, Corbrus argues that the language in the non-circumvention clause unambiguously "prohibited Omnia, [8th Bridge], and Corbrus from dealing with '*any* entity,' including with one another to cut each other out" and at minimum that its "interpretation of the agreement as pled is reasonable." Opp'n at 8-9. The Court agrees that the non-circumvention agreement is at least "reasonably susceptible" to the meaning ascribed to it in Corbrus' complaint—that the parties "all agreed not to engage in actions for the purpose of avoiding payment to one another." SAC ¶¶ 41(d), 137, 157.

In addition, Corbrus has sufficiently pled a breach of that alleged contractual obligation. Corbrus's second amended complaint alleges that the Paz defendants entered into the "written non-circumvention agreement" with Corbrus on July 12, 2015, after which Corbrus "expended considerable resources for the Manhattan Fund partnership and joint venture" in performance of the agreement. Id. ¶ 137. Corbrus alleges that the Paz defendants breached the non-circumvention clause by "devising and executing a scheme" with 8th Bridge to induce Corbrus to relinquish its position in the Manhattan Fund in exchange for "a false promise of future payments when the EB-5 loan was funded and disbursed." Id. ¶ 138. More specifically, Corbrus alleges that the Paz defendants and 8th Bridge acted together to pressure Corbrus to resign its partnership in the Manhattan Fund and persuaded Corbrus "that it would be easier for Kim to close the deal with certain EB-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | December 30, 2020 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

5 sales agents if Corbrus was not named as a partner on the EB-5 loan paperwork" and Corbrus instead entered an agreement with the Manhattan Fund to be compensated as a consultant. Id. ¶¶ 53-55. Corbrus alleges that it in fact resigned its partnership interest in the Manhattan Fund on October 25, 2015, in reliance on those representations by the Paz defendants and 8th Bridge. Id. ¶ 55(n), 58. Corbrus further alleges that its efforts to seek further information to learn "whether payment to Corbrus had become due" after the EB-5 loan was funded and dispersed in 2017, including a reminder of the parties' non-circumvention agreement, were rebuffed by the Paz defendants and 8th Bridge "on the basis of Corbrus's resignation from the Manhattan Fund, which was fraudulently induced by" 8th Bridge and the Paz defendants. Id. ¶¶ 67-68. To date, Corbrus avers that it has not received the funds it alleges it is owed by the Manhattan Fund. Id. ¶¶ 72.

Accordingly, the Court concludes that Corbrus has alleged facts sufficient to state a claim for breach of contract.[3]

## V. CONCLUSION

In accordance with the foregoing, the Court **DENIES** the Paz defendants' motion for partial judgment on the pleadings.

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Preparer | CMJ |

---

[3] Because the Paz defendants challenge Corbrus's claim for breach of the implied covenant only on the grounds that Corbrus has not adequately pled breach of contract, the Court analyzes both claims together for purposes of this motion. See Mot. at 2.