UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:     Attorneys Present for Defendants:
Yasin Almadani     Pooja Nair
    Howard Fredman

**Proceedings:**    TELEPHONE HEARING RE: 8TH BRIDGE DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS (Dkt. [112], filed March 12, 2021)

## I. INTRODUCTION AND BACKGROUND

The Court previously set out the factual and procedural background of this case in its April 20, 2020 order, dkt. 51 ("MTD Order"), its May 4, 2020 order, dkt. 53 ("Arbitration Order"), and its July 27, 2020 order. Dkt. 70 ("MTD SAC Order"). For that reason, the Court only sets forth those facts necessary to resolve defendants Young Hun Kim ("Kim"), 8th Bridge Capital, Inc., 8th Bridge Capital, LLC's (collectively, "the 8th Bridge defendants" motion for judgment on the pleadings.

Plaintiff Corbrus, LLC ("Corbrus") filed this action against the 8th Bridge defendants and a number of other defendants on November 30, 2019. Dkt. 1. Corbrus filed the operative second amended complaint on May 20, 2020, asserting a total of fifteen claims for relief. Dkt. 55 ("SAC"). The SAC asserts the following claims against the 8th Bridge defendants: (1) intentional misrepresentation; (2) fraudulent concealment; (3) negligent misrepresentation; (4) breach of fiduciary duty; (5) breach of contract; (6) breach of the implied covenant of good faith and fair dealing;[1] (7) restitution for unjust enrichment, and (8) violation of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), 1964. See generally SAC. The gravamen of Corbrus' complaint is that in 2015, its principal, Fu-Shen Chang ("Chang"), entered into a

---

[1] Corbrus brings two separate counts for fraudulent concealment, three separate counts for breach of contract, and three separate counts for breach of the implied covenant of good faith and fair dealing. See FAC ¶¶ 89–108, 121–161.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

partnership, known as "the Manhattan Fund," with defendant Kim and Kim's 8th Bridge companies, to provide EB-5 financing for real estate projects developed by defendants David Paz ("Paz"), Omnia Group, Ltd., and Omnia Properties, LLC ("the Paz defendants"), including the Ace Hotel in New York City. Id. According to Corbrus' allegations, however, Kim and Paz fraudulently induced Corbrus to resign its partnership interest in the Manhattan Fund in October, 2015, representing that Corbrus would be made whole by being paid as a consultant. Id.

The 8th Bridge defendants answered the SAC on June 3, 2020. Dkts. 57-59.

The 8th Bridge defendants filed the present motion for judgment on the pleadings on March 12, 2021. Dkt. 112 ("Mot."). Corbrus filed an opposition on March 22, 2021. Dkt. 126 ("Opp'n."). The 8th Bridge defendants filed a reply on March 29, 2021. Dkt. 133 ("Reply").

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. Relevant Allegations

### a. The NDCAs First NDNCA

The SAC alleges that on April 13, 2015, Corbrus and 8th Bridge entered into the first non-disclosure and non-circumvention agreement ("the First NDNCA") "to explore joint venture and partnership opportunities to finance large real estate development projects, including providing EB-5 Program financing." SAC ¶ 31. Corbrus alleges that "[t]he First NDNCA prohibited [8th Bridge] from disclosing any proprietary or confidential information about potential real estate development projects presented by Corbrus and/or circumventing Corbrus on those projects—that is, the agreement prevented Corbrus and [8th Bridge] from taking actions for the purpose of avoiding payment to one another for projects and joint ventures under the NDNCA." Id. ¶ 32. Subsequently, between approximately April 13 and April 20, 2015, Corbrus and 8th Bridge engaged in discussions regarding a group of potential development projects introduced by Corbrus. Id. ¶ 33.

### b. The Second NDNCA

The SAC also alleges that on April 30, 2015, Corbrus and 8th Bridge "entered into a second NDNCA . . . that allowed the two companies to continue exploring financing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

projects on which to partner together with the continued agreement that neither would disclose proprietary information or circumvent the other on projects the two companies were exploring pursuant to their NDNCAs." SAC ¶ 34. "In other words, the agreement prevented Corbrus and [8th Bridge] from taking actions for the purpose of avoiding payment to one another for projects and joint ventures pursued under the NDNCA." Id.

The SAC further alleges that "[b]etween approximately April and June[,] 2015, Corbrus proposed additional projects" including "real estate projects in New York City . . . being developed by Paz (Omnia) that Chang (Corbrus) introduced to Kim . . . under the parties' NDNCAs." SAC ¶ 35. Corbrus avers that, in June, 2015, Corbrus and 8th Bridge "agreed in writing to a joint venture and partnership, which would lend EB-5 funds to various projects including one or more of Paz's projects." Id. ¶ 36. Pursuant to the parties' agreement, Corbrus alleges that "EB-5 investors would fund the Manhattan Fund, and the Manhattan Fund would in turn serve as a lender to Paz and Omnia, and other such projects that the Manhattan Fund would pursue." Id. Corbrus and 8th Bridge allegedly agreed to split the proceeds from the first of the Paz defendant's projects as follows: (a) of the 3% origination fee, Corbrus would collect 2% and 8th Bridge would collect 1%; (b) Corbrus would be entitled to 20% of the interest accrued for the life of the Manhattan Fund and 8th Bridge would be entitled to 80% of the interest accrued; and (c) all other compensation, including, *inter alia*, equity, equity reward, or equity-reward-like compensation, would be split equally between Corbrus and 8th Bridge. Id. ¶ 37. "Under this agreement, the $20M loan for the Ace Hotel Project . . . would cost Omnia $8.65M, with $2.55M to Corbrus and $6.1M to [8th Bridge] over the course of the loan." Id. ¶ 37(d).

### c. The Agreement Between the Paz Defendants and the Manhattan Fund

Corbrus alleges that on July 12, 2015, the Paz defendants entered into a written agreement with the Manhattan Fund ("July 12, 2015 Agreement") concerning the Manhattan Fund's financing of the Paz defendants': (1) Ace Hotel project; and (2) the 54th St. Condominium Project. SAC ¶ 38. As part of this agreement, Corbrus alleges that "Omnia also entered into a non-circumvention agreement whereby Omnia specifically agreed not to engage in actions for the purpose of avoiding payment to Corbrus and/or" 8th Bridge. Id. ¶ 41(d).

### d. Corbrus Resigns from the Manhattan Fund

Corbrus alleges that between July 2015 and November 2015, "Corbrus expended considerable time and effort on the Manhattan Fund on just about every aspect of the Ace

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | April 12, 2021 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

Hotel Project financing, including, *inter alia*, providing advice and expertise, negotiating terms with Paz (Omnia), retaining consultants, working with lawyers and consultants to comply with EB-5 requirements, and managing efforts on the ground in the U.S. coordinating, reviewing, and providing input on the drafting of numerous important documents[.]" SAC ¶ 44. Corbrus alleges that its efforts included an attempt to bring additional EB-5 investors to the Manhattan Fund. Id. ¶ 48. On September 21, 2015, those additional investors were blocked by Kim, who allegedly also made an unsuccessful attempt to change the terms of the partnership agreement between 8th Bridge and Corbrus to gain more control over the Manhattan fund. Id. ¶¶ 40-49. Corbrus alleges that on September 25, 2015, Kim again unsuccessfully "attempted to give himself and [8th Bridge] greater control and ownership of the Manhattan Fund." Id. ¶ 50.

Between May and September 2016, Kim, Paz, and their respective companies—8th Bridge and Omnia—allegedly "developed a close relationship and planned on doing future EB-5 projects together as envisioned by the Manhattan Fund partnership between Corbrus and [8th Bridge]." SAC ¶ 51. However, Corbrus alleges that despite the First and Second NDNCAs between Corbrus and 8th Bridge, as well as the July 12, 2015 agreement between 8th Bridge, Corbrus, and the Paz defendants, Kim and the Paz defendants ultimately "sought to cut Corbrus (Chang) out of the Manhattan Fund partnership and thereby secure for themselves a greater piece of the pie[.]" Id.

Corbrus further alleges that Kim and Paz devised a scheme "to cut out Corbrus from the Manhattan Fund Partnership by convincing Chang (Corbrus) that it was better for Corbrus to *not* be a partner on the Manhattan Fund, but to instead be paid as a consultant by Paz on the Omnia side." SAC ¶¶ 52-53. "Over the course of months," Kim and Paz allegedly "assured Chang (Corbrus) that Kim would forgo earnings on the [8th Bridge] and Manhattan Fund side of the project so that Corbrus could continue to be made whole by Paz on the Omnia side—essentially that Corbrus would not be circumvented as agreed to . . . in the parties' agreements." Id. ¶ 54. In essence, Corbrus alleges that it was told "that it would be easier for Kim to close the deal with certain EB-5 sales agents if Corbrus was not named as a partner on the Manhattan Fund EB-5 loan paperwork, because foreign sales agents would have questions about Corbrus, and answering those questions would delay the project," but that Kim assured Corbrus "that pursuant to the parties' NDNCAs and partnership/joint venture, the benefits due [to] Corbrus would not be circumvented in any way and that Kim . . . would make sure of that." Id. ¶ 55(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

Corbrus further alleges that 8th Bridge and the Paz defendants continued to pressure Corbrus to resign its partnership interest in the Manhattan Fund via email and telephone calls throughout October 2015, assuring Corbrus that it would be made whole. See FAC ¶ 55. Corbrus alleges that the 8th Bridge defendants made a number of "false promises" and engaged in "sham negotiations" with the Paz defendant during this period, including through: (1) an October 5, 2015 email where Kim allegedly falsely promised that "Corbrus would not be left out of the deal if it were to resign its position;" and (2) a series of emails and telephone calls between October 6 and October 19, 2015 during which the 8th Bridge and Paz defendants allegedly pretended to engage in negotiations regarding an "arrangement to ensure Corbrus' rights were protected" to "induce[] Chang into a false sense of security" so that Chang would give up Corbrus' Manhattan Fund partnership rights. Id. ¶ 55(b)-(h). Ultimately, Corbrus alleges that the parties entered into a three-way agreement providing that in return for Corbrus' resigning its partnership interest in the Manhattan Fund: (1) the Paz defendants would pay Corbrus "$1.9m in total: $1.2M (including $300K origination fee and $900K equity kicker) upon the first funding and disbursement of the loan . . . plus $100K per year for seven years thereafter;" (2) the Paz defendants "agreed to enter into a continuing consulting relationship with Corbrus by which Corbrus would be made whole with respect to the Manhattan Fund's ongoing relationship with Omnia on other Omnia projects"; (3) the Paz defendants would execute this "more formal consulting agreement . . . after the rush of the Ace Hotel EB-5 financing documents was over." Id. ¶ 55(i)(k). Corbrus alleges that it thereafter resigned from the Manhattan Fund on October 25, 2015. Id. ¶ 55(n).

### e. Corbrus' Subsequent Discussions with 8th Bridge and the Paz Defendants

Corbrus alleges that after it resigned its partnership interest in the Manhattan Fund, 8th Bridge and Paz continued to "string[] Chang (Corbrus) along," including by sending a November 24, 2015 email to Corbrus' legal counsel "inquiring about Corbrus' consulting agreement" and "giving the impression that the deal was still on." Id. ¶ 55(u). On December 1, 2015, Kim "informed Chang (Corbrus) . . . that the Manhattan Fund EB-5 loan agreement had been executed." SAC ¶ 55(v). "Kim left Corbrus with the impression that Kim . . . would no longer be helping Corbrus but that Corbrus would still receive its compensation in due course by working directly with Omnia." Id. Paz was allegedly "copied on the email" but "kept silent." Id. Corbrus alleges that it responded to 8th Bridge's December 1, 2015 communication, reminding Kim and the 8th Bridge defendants "that Corbrus' resignation from the Manhattan Fund partnership was contingent upon all parties working together to ensure that Corbrus received the compensation it was

Case 2:19-cv-10182-CAS-AFM   Document 158   Filed 04/12/21   Page 6 of 16   Page ID #:2720

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                     'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

promised." Id. ¶ 55(w). After Corbrus' response, the Paz defendants allegedly "continued to placate and deceive Chang about Corbrus' future compensation." Id.

"Between approximately December 2 and 4, 2015, Paz (Omnia) had discussions with Chang (Corbrus) about consulting work Corbrus would be doing for Omnia." SAC ¶ 59. Corbrus avers that "Paz also reassured . . . that Corbrus would be paid on the Ace Hotel deal once the EB-5 loan was secured." Id. Corbrus further alleges that between December 8, 2015 and December 22, 2015, the Paz defendants "continued to give Corbrus a false sense of security" that "Corbrus would be compensated on the EB-5 deal, and that [the Paz defendants] would enter into a separate consulting agreement with Corbrus on other projects." Id. ¶ 60. The Paz defendants allegedly made similar representations on December 22, 2015, and on December 23, 2015. Id. ¶¶ 61–62. "Between approximately January 10 and March 13, 2016, Paz continued to have similar discussions with Chang . . . to deceive Chang that Corbrus would be compensated as promised. Chang (Corbrus) was left with the impression that Corbrus should wait for the EB-5 loan to be funded and disbursed, because that is when its payment would become due, and that Paz would continue to consider Corbrus for additional consulting project[s]." Id. ¶ 63. Corbrus alleges that the Paz defendants "led Corbrus to believe that [they] and Corbrus would execute a consulting agreement when the appropriate project presented itself." Id.

"Between March 2016 and November 2017, Corbrus waited for the EB-5 loan to be funded and disbursed." SAC ¶ 64. "During this time," Corbrus alleges that is "was not aware of any source of public information, news articles or otherwise, that would provide the status of the Ace Hotel EB-5 loan." Id. Nonetheless, Corbrus avers that it "made diligent monthly to bi-monthly efforts to check in with Paz's business associate to learn whether the loan had been funded and disbursed in order to know whether payment to Corbrus had become due." Id.

Corbrus alleges that in early November 2017, it "learned for the first time that the Ace Hotel EB-5 loan may have been funded and disbursed." SAC ¶ 65. "Immediately," on November 7, 2017, "Chang (Corbrus) sent Kim ([8th Bridge]) an email inquiring about the status of the Ace Hotel EB-5 loan." Id. ¶ 66. Kim allegedly responded on November 13, 2017, "refusing to provide any information on the basis of Corbrus' resignation from the Manhattan Fund[.]" Id. Corbrus further alleges that on November 20, 2017, "Chang (Corbrus) sent Kim . . . a follow up email reminding Kim of the parties' non-circumvention agreement and partnership along with Kim and Paz's assurances to Chang that Corbrus'

Case 2:19-cv-10182-CAS-AFM Document 158 Filed 04/12/21 Page 7 of 16 Page ID #:2721

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

interests would be protected. Kim allegedly again refused to provide any information on the basis of Corbrus' resignation from the Manhattan Fund. Id. ¶ 67.

Corbrus avers that additional requests for information in September 2018 and October 2018 to Corbrus' previous counsel at the Jeffer Mangels law firm proved unfruitful. SAC ¶ 68. Corbrus further avers that it was not until February 21, 2020, during this litigation, that Corbrus "learn[ed] precisely when the Manhattan Fund EB-5 loan was actually funded and disbursed[.]" Id. ¶ 71.

### a. The Choi Matter

Corbrus alleges that during and subsequent to their interactions with Corbrus, the 8th Bridge defendants formulated a scheme to defraud a second set of potential EB-5 joint venture partners, Moses Choi ("Choi") and Southeast Regional Center ("SRC") (collectively, the "Choi parties"). The SAC incorporates by reference the complaint in the matter of Choi, et al. v. 8th Bridge Capital Inc., et al. (Case No. 17-CV-8958-CAS (AFMx)) (the "Choi Complaint"), with respect to Corbrus' RICO claim. Id. ¶ 187(b). Corbrus alleges that the Choi Complaint alleges that Kim "devised a scheme to defraud [the Choi parties] (also a joint venture partner of Kim and 8BC) by making false promises and assurances" and did defraud them through means including wire communications. Id.

As relevant for purposes of the present motion, the Choi Complaint alleges the following facts.

The Choi parties allege that in 2015, Choi and SRC formed a joint venture with Kim and 8th Bridge to market EB-5 projects. Case No. 2:17-cv-08958 ("Choi ECF") No. 8 ("FAC") ¶ 4. The Choi and 8th Bridge parties allegedly met in Los Angeles in September 2015 to discuss forming a joint venture and subsequently confirmed their mutual desire to work together and began, both individually and through SRC and 8th Bridge, to carry on as co-owners of a business for profit. Id. ¶¶ 38–39. On October 6, 2015, Kim proposed to formalize a five-year "Collaboration Agreement" under which Choi would make an initial capital contribution and the parties would work together on EB-5 projects while sharing profits through a holding company, including the Ace Hotel project and two other real estate projects under development by Kim in Los Angeles. Id. ¶ 41. In December 2015,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

Kim emailed Choi to urge him to finalize a written partnership agreement in order to "organize the company." Id. ¶ 51.

Choi parties allege that between 2015 and 2017, Choi invested more than $500,000 of his own personal funds to cover the joint venture's business and marketing expenses, including the cost of opening an office for 8th Bridge in Los Angeles. Id. ¶¶ 4, 45. The Choi parties allege that in early 2017, Kim "froze [Choi] out" transferred the joint venture's assets to third parties, and refused to recognize the Choi parties' partnership interest. Id. ¶¶ 6, 71–79. Kim allegedly reached out to Choi in January 2017 to ask him to "work with him to organize their relationship 'once and for all'" and asked Choi to stop funding 8th Bridge projects until the partnership's budget and plans were finalized. Id. ¶¶ 73, 75. Choi further alleges that in March 2017, Kim returned $200,000 to Choi as partial repayment of funding Choi had previously provided, and that in April 2017 Kim informed Choi that he intended to stop pursuing "prolonged cooperation terms" with the Choi parties, which Choi alleges "indicate[d] that Kim was either denying the existence of a joint venture, or rescinding it." Id. ¶ 76, 78.

On March 27, 2021, the Choi parties filed a first amended third party counterclaim in this action, alleging a single claim for violation of RICO. Dkt. 131.

### III. LEGAL STANDARD

A motion for judgment on the pleadings may be brought "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012). A motion for judgment on the pleadings "provides a vehicle for summary adjudication on the merits, after the pleading. are closed but before trial, which may save the parties needless and often considerable time and expense which otherwise would be incurred during discovery and trial." Judge Virginia A. Phillips & Judge Karen L. Stevenson, Federal Civil Procedure Before Trial, § 9:316 (The Rutter Group 2019).

In deciding a motion for judgment on the pleadings, the court generally is limited to the pleadings and may not consider extrinsic evidence. See Fed. R. Civ. P. 12(c) (stating that a Rule 12(c) motion for judgment on the pleadings should be converted into a Rule 56 motion for summary judgment if matters outside the pleadings are considered by the court). A district court may, however, consider documents "whose contents are alleged in a

Case 2:19-cv-10182-CAS-AFM   Document 158   Filed 04/12/21   Page 9 of 16   Page ID #:2723

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

complaint and whose authenticity no party questions, but which are not physically attached to the pleading." Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, a district court may consider a document if the complaint "necessarily relie[s]" on it, and the authenticity of the document is not challenged. Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).

Although Rule 12(c) contains no mention of leave to amend, "courts generally have discretion in granting 12(c) motions with leave to amend, particularly in cases where the motion is based on a pleading technicality." In re Dynamic Random Access Memory Antitrust Litig., 516 F. Supp. 2d 1072, 1084 (N.D. Cal. 2007). There is a strong policy in favor of allowing amendment, unless amendment would be futile, results from bad faith or undue delay, or will unfairly prejudice the opposing party. Id. (internal citation omitted).

## IV. DISCUSSION

The 8th Bridge defendants seek partial judgment on the pleadings with respect to the fifteenth claim of the SAC on the grounds that Corbrus has not stated a RICO claim. The 8th Bridge defendants contend that Corbrus fails to state a RICO claim for three reasons: (1) because Corbrus' SAC fails to adequately plead wire fraud as a predicate act; (2) because Corbrus fails to allege a pattern of racketeering activity pursuant to 18 U.S.C. § 1962(c); and (3) because Corbrus fails to allege a concrete financial loss caused by the alleged violation of § 1962, pursuant to 18 U.S.C. § 1964(c). See Mot. at 1.

Corbrus alleges a RICO violation based on predicate acts of wire fraud. See SAC ¶ 187. To establish a civil RICO claim, a plaintiff must show: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." Just Film, Inc. v. Buono, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks omitted); see also 18 U.S.C. § 1962(c)-(d). "Racketeering activity," as applicable to this case, is defined as "any act which is indictable under ... section 1343 (relating to wire fraud)." Id. § 1961(1)(B). Where, as here, the racketeering activity alleged is fraudulent conduct, such as wire fraud, "the heightened pleading requirements of Rule 9(b) apply to the predicate acts." Ahmadi Abhari v. Victory Park Cap. Advisors, No. CV 20-05734 PA (MAAx), 2020 WL 7346676, at *4 (C.D. Cal. Nov. 16, 2020).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | April 12, 2021 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

### a. Corbrus has not established "racketeering activity"

Corbrus alleges that the 8th Bridge defendants engaged in predicate racketeering activity by "us[ing] the wire facilities of the United States in violation of 18 U.S.C. § 1343." SAC ¶ 187. More specifically, Corbrus alleges that in the fall of 2015, Kim offered a series of false promises and assurances intended to induce Corbrus to resign its partnership in the Manhattan project over the telephone and via email. Id. ¶ 55, 187(a). Corbrus further alleges that the Choi complaint alleges that Kim devised a scheme to defraud the Choi parties by offering "false promises and assurances" via wire communications. Id. ¶ 187(b). The 8th Bridge defendants argue that Corbrus' racketeering claim should be dismissed because Corbrus's allegations "are not of any indictable criminal activity on the part of [the 8th Bridge defendants], but instead of common law fraud and breach of contract between alleged business partners." Mot. at 3. In support of that position, the 8th Bridge defendants argue that that the wire fraud statute punishes "wrongful transfers of property from the victim to the wrongdoer" and that Corbrus has not alleged that any money or property was wrongfully transferred as a result of the 8th Bridge defendants' allegedly deceptive wire communications. Id. at 5.

RICO was "intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." Oscar v. Univ. Students Coop. Assn., 965 F.2d 783, 786 (9th Cir.1992), abrogated on other grounds by Diaz v. Gates, 420 F.3d 897 (9th Cir.2005). As such, civil RICO is not intended "merely to compensate victims" but rather to "turn them into prosecutors, private attorney generals, dedicated to eliminating racketeering activity." Ahmadi Abhari, 2020 WL 7346676 at *5 (quoting Rotella v. Wood, 528 U.S. 549, 557 (2000)). Here, Corbrus alleges that 8th Bridge has engaged in racketeering activity by committing predicate acts of wire fraud, in violation of 18 U.S.C. § 1343. "The elements of wire fraud are: (1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) specific intent to defraud." United States v. Jinian, 725 F.3d 954, 960 (9th Cir. 2013).

A civil RICO plaintiff's "fraud theory requires them to show more than a business deal gone bad for economic and non-fraudulent reasons." Eclectic Properties E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014) (affirming dismissal of RICO complaint that "purported to allege intentional [wire] fraud" in the conduct of sale-leaseback property transactions). As such, a civil RICO complainant must establish "specific intent to defraud" by "showing the existence of a plausible fraudulent scheme." Id. Where, as here, the defendant engages in "facially legitimate" commercial dealings and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | April 12, 2021 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

transactions and "otherwise act[s] as [a] routine participant[] in American commerce," the Ninth Circuit has explained that "a significant level of factual specificity is required to allow a court to reasonably infer" that the defendant's commercial dealings are "plausibly part of a fraudulent scheme" for purposes of pleading a RICO claim. Id. Not only must the factual allegations in the complaint "support a plausible inference that [defendant] had the required specific intent to defraud," they must also "tend to exclude the alternative explanation that the transaction were merely a group of business deals gone bad." Id. at 1000; see also In re Century Aluminum Co. Secs. Litig., 729 F.3d 1104 (9th Cir.2013).

Here, Corbrus alleges that the 8th Bridge defendants engaged in a fraudulent scheme involving predicate acts of wire fraud because, in October and November 2015, the 8th Bridge defendants engaged in repeated email and telephone communications with Corbrus regarding an arrangement under which Corbrus would resign its partnership in the Manhattan project and instead be paid for its efforts via a consulting agreement. See SAC ¶¶ 52-55. Although the SAC includes numerous assertions that the 8th Bridge and Paz defendants engaged in a "charade and fraud designed to induce Chang (Corbrus) into giving up Corbrus' partnership interest," including by making assurances "with no intention of keeping those promises" and engaging in "sham negotiations" via email, those allegations of intent are mere conclusions that are unsupported by non-conclusory factual allegations. The facts alleged demonstrate that negotiations regarding Corbrus' consulting role were ongoing for several months, but negotiations broke down in late 2015 and ultimately did not result in an executed consulting agreement. See SAC ¶ 55 (b)-(w). Beyond articulating Corbrus' suspicions about the timing of the 8th Bridge defendants' communications with Corbrus regarding the potential consulting agreement and the 8th Bridge defendants' failure to respond to certain communications, the only fact the SAC raises to demonstrate intent is an allegation that "Kim sent an email to the group giving the impression that the [consulting] deal was still on" after receiving an email from Corbrus' counsel stating that it "would not be drafting any such agreement." SAC ¶ 21.

While it may be the case that 8th Bridge misrepresented its intentions to Corbrus or breached an agreement with Corbrus by failing to come to terms regarding Corbrus's role as a contractor, the facts that Corbrus alleges do not "tend to exclude" the explanation that Corbrus's RICO claim arises from a straightforward "business deal[] gone bad" rather than a scheme conducted with "specific intent to defraud."[2] See Eclectic Properties E., LLC,

---

[2] The 8th Bridge defendants further contend that the SAC fails to plead predicate acts of wire fraud because there is no allegation that "money or property was transferred to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

751 F.3d at 997; see also Ahmadi Abhari, 2020 WL 7346676, at *6 (dismissing RICO claim because alleged misrepresentations in business transactions did not rise to the level of "racketeering activity"); Spotlight Ticket Mgmt., Inc. v. StubHub, Inc., No. CV 19-10791 PA (JCX), 2020 WL 4342260, at *5 (C.D. Cal. May 22, 2020) ("The Court is not inclined to expand the reach of the RICO statute by permitting all allegations of 'broken promises' in failed business transactions to constitute 'racketeering activity'") (internal quotations omitted); Manos v. MTC Fin., Inc., No. SACV 16-01142-CJC (KESx), 2018 WL 6220051, at *7 (C.D. Cal. Apr. 2, 2018), aff'd, 773 F. App'x 452 (9th Cir. 2019) (explaining that a civil RICO plaintiff may not state a claim "by simply artfully pleading what is essentially a breach of contract claim").[3]

Accordingly, the Court finds that Corbrus' fails to plead racketeering activity sufficient to state a viable civil RICO claim.

### b. Corbrus has not established a pattern of racketeering activity

Even assuming *arguendo* that Corbrus could adequately plead predicate racketeering activity, Corbrus's RICO claim fails because Corbrus does not sufficiently allege a *pattern*

---

[8th Bridge Defendants]" as a result of the allegedly fraudulent wire communications. In so arguing, the 8th Bridge defendants rely on the Ninth Circuit's recent decision in United States v. Miller, which held that "wire fraud requires the intent to deceive and cheat—in other words, to deprive the victim of money or property by means of deception." 953 F.3d 1095, 1103 (9th Cir. 2020), cert. denied, No. 20-5840, 2021 WL 78268 (U.S. Jan. 11, 2021). However, the SAC includes an allegation that Corbrus was induced by the 8th Bridge defendants email representations to resign its ownership interest in the Manhattan Fund, which—while intangible—is "something valuable" within the meaning of the wire fraud statute. SAC ¶ 55(n); Miller, 953 F.3d at 1101. In addition, to the extent that the 8th Bridge defendants contend that the present case stands on all fours with United States v. Walters, 997 F.2d 1219 (7th Cir. 1993), the Court notes that Walters involved a scheme to defraud the NCAA by inducing *third parties* to enter contractual relationships in violation of the NCAA rules, rather than to induce the NCAA itself to surrender something of value.
[3] Likewise, to the extent incorporated into Corbrus' complaint, the facts alleged in the Choi complaint—including allegations that Kim communicated with Choi in January 2017 regarding steps to finalize those parties' joint venture agreement and ultimately returned $200,000 to Choi as repayment due to a breakdown in cooperation—are more suggestive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

of racketeering activity. To allege a pattern of racketeering activity, a plaintiff must allege "at least two acts of racketeering activity," 18 U.S.C. § 1961(5), as well as "a relationship between the predicates and of the threat of continuing activity," Howard v. Am. Online Inc., 208 F.3d 741, 750 (9th Cir. 2000) (quotation marks, citations, and brackets omitted) (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229 (1989)). The threat of continuing activity is also known as the continuity requirement. "Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H.J., 492 U.S. at 241.

> To satisfy the continuity requirement, Plaintiffs must prove either a series of related predicates extending over a substantial period of time, i.e., closed-ended continuity, or past conduct that by its nature projects into the future with a threat of repetition, i.e., open-ended continuity.

Howard, 208 F.3d at 750.

The Supreme Court has "stressed the importance of the finding of a 'pattern of racketeering activity,' as distinguished from just a finding of the commission of two of the predicate acts." Jarvis v. Regan, 833 F.2d 149, 153 (9th Cir. 1987). Accordingly, "[t]his circuit has adopted a test for pattern which inquires whether the predicate acts are sporadic or isolated. If they are isolated and sporadic, then they cannot form a 'pattern.'" Durning v. Citibank, Int'l, 990 F.2d 1133, 1138 (9th Cir. 1993). Even where a defendant "may have committed numerous related predicate acts," a RICO claim is appropriately dismissed where those acts "arose from a single, isolated event." Id. at 1139.

Corbrus does not squarely contend that the 8th Bridge defendants' alleged scheme had closed-ended continuity. See SAC ¶ 187 (c) (alleging only that the purported wire fraud scheme is a "regular way of doing business [that] threaten[s] repetition"). The Court concludes that closed-end continuity is lacking here, for two reasons. First, the 8th Bridge defendants' alleged predicate acts against Corbrus took place over a period no longer than several months, spanning from approximately September 2015, through December 2015. Corbrus does not allege that it was the victim of predicate acts over a substantial period of time and therefore has not alleged closed-ended continuity with respect to its own dealings with the 8th Bridge defendants. See Metcalf v. Death Row Records, Inc., Case No. 03-cv-

---

of an ordinary breakdown in contractual business relations than a scheme to engage in racketeering activity. See Choi FAC ¶¶ 73-78.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | April 12, 2021 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

1250-SC, 2003 WL 22097336, at *3 (N.D. Cal. Sept. 4, 2003) (Because defendants' conduct occurred over a span of "months", Plaintiff could not establish closed-ended continuity). Second, Corbrus does not sufficiently allege that the facts it incorporates from the Choi complaint demonstrate ongoing racketeering activity that is more than "sporadic."[4] To the contrary, as the 8th Bridge defendants note, the referenced allegations do not assert that the 8th Bridge defendants engaged in predicate acts of racketeering with respect to the Choi parties, much less a pattern of such activity that falls into a "series of related predicates." See Mot. at 6; Choi FAC; see also Prime Partners IPA of Temecula, Inc. v. Chaudhuri, No. 5:11-CV-01860-ODW, 2012 WL 1669726, at *7 (C.D. Cal. May 14, 2012) (finding that neither of "two alleged criminal enterprises had closed-ended continuity").

Corbrus also fails to allege open-ended continuity. As an initial matter, as discussed above, Corbrus' allegations regarding the conduct at issue in *Choi* are not sufficient to establish a pattern of wire fraud schemes, such that a threat of repetition could plausibly be inferred. Moreover, even if viewed as criminal frauds, the two alleged breakdowns in the proposed joint venture arrangements between Corbrus and 8th Bridge and between Choi and 8th Bridge are "insufficient to suggest [a] practice [that] ha[s] become a regular way of conducting business." Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1535 (9th Cir. 1992). Corbrus argues that its complaint and the Choi complaint collectively demonstrate that "one of Defendants' methods of doing business is to recruit and gain the trust of unwitting business partners and joint venturers by telling them half truths to take advantage of their" financial resources and business connections "with the intention to cut them out of compensation later." Opp'n at 16. However, Corbrus has not pled any facts to suggest that the 8th Bridge defendants will engage in similar conduct in the future, such as facts indicating that the 8th Bridge defendants continue to attempt to defraud Corbrus or Choi

---

[4] Corbrus cites to several filings in the Corbrus and Choi matters that are extrinsic to and not necessarily relied upon by the instant complaint, including the Choi parties third party counterclaim in this action alleging a RICO violation. Corbrus argues that its RICO claim is supported by the fact that the Choi parties have now alleged a RICO violation arising out of a joint venture agreement with 8th Bridge in the Choi parties first amended third party complaint in this action. Opp'n at 2; see generally dkt. 131. Leaving aside that the Choi allegations suffer from the same infirmities, because the Court may not consider material outside the pleadings in deciding a motion for judgment on the pleadings, the Court does not consider Corbrus' references to those filings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | April 12, 2021 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

or have targeted a new potential joint venture partner. Cf. Blech v. Gantman, No. 8:18-cv-02086-JLS (JDE), 2019 WL 3240111, at *7 (C.D. Cal. Apr. 24, 2019) (finding open-ended continuity where the complaint alleged an "ongoing loan-shark enterprise" that continued to make and seek to collect on usurious loans); see also Howard, 208 F.3d 741, 750 (affirming dismissal of RICO claims where plaintiffs "present no facts indicating that [a misleading advertising scheme] would continue into the future").

Accordingly, the Court finds that Corbrus fails to allege a pattern of racketeering activity that is sufficient to support its RICO claim. Because the Court finds that Corbrus fails to allege a pattern of racketeering activity, it declines to reach the 8th Bridge defendants argument that Corbrus has not alleged a concrete financial injury proximately caused by such a pattern.

For each of the reasons stated above, Corbrus' fifteenth claim for violation of RICO is **DISMISSED**.

### c. Leave to amend

Corbrus seeks leave to amend. Opp'n at 18. In their reply briefing, the 8th Bridge defendants argue that leave to amend should be denied because "the deadline to file amended pleadings has long since passed" and "given the proximity to trial, permitting Corbrus to belatedly amend its SAC at this stage would be highly prejudicial" to the 8th Bridge defendants. Reply at 14. The 8th Bridge defendants do not explain why they seek dismissal of this claim for the first time only on the eve of trial despite the Court's stated skepticism as to the viability of a RICO claim early on in these proceedings.

As a general matter, the Court is inclined to allow a plaintiff whose claims are dismissed via a motion for judgment on the pleadings the opportunity to amend. See Judge Virginia A. Phillips & Judge Karen L. Stevenson, Federal Civil Procedure Before Trial § 9:341.1 (The Rutter Group 2019) ("A dismissal without affording plaintiff an opportunity to amend to conform the allegations of the complaint to postfiling developments and evidence obtained during discovery may constitute an abuse of discretion.") (internal citations omitted). Here, in response to a question posed by the Court in its tentative order, Corbrus represented at oral argument that it is able to amend to allege additional facts that will state a viable RICO claim. Accordingly, although the Court acknowledges that this matter is in its final stages before trial, the Court will grant Corbrus leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | April 12, 2021 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** the 8th Bridge defendants' motion for partial judgment on the pleadings, with leave to amend as to the RICO claim only.

Corbrus shall file its amended pleading on or before **April 21, 2021**. Thereafter, the Court sets the following briefing schedule:

1. The 8th Bridge parties shall file any Rule 12 motion or responsive pleading on or before **May 3, 2021**. Any Rule 12 motion shall be noticed for hearing on **Monday, May 24, 2021** at **10:00 am**.

2. Corbrus shall file any opposition on or before **May 10, 2021**.

3. The 8th Bridge parties shall file any reply on or before **May 17, 2021**.

IT IS SO ORDERED.

|  |  | 00 | : | 15 |
|---|---|---|---|---|
|  | Initials of Preparer | | CMJ | |