ALMADANI LAW
Yasin M. Almadani, SBN 242798
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Ph: 949-877-7177
Fax: 949-877-8757
yma@lawalm.com

AI LAW, PLC
Ahmed Ibrahim, SBN 238739
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Ph.:  949-266-1240
Fax:  949-266-1280
aibrahim@ailawfirm.com

Attorneys for Plaintiff Corbrus, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORBRUS, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> 8TH BRIDGE CAPITAL, INC., a California corporation; et al., <br><br> Defendants, | Case No. 2:19-CV-10182-CAS (AFMx) <br><br> *Related to Case No: 2:17-CV-08958-CAS* <br><br> **THIRD AMENDED COMPLAINT** <br><br> HON. CHRISTINA A. SNYDER <br> United States District Judge <br><br> Action Filed:  November 30, 2019 <br><br> Trial Date:  July 27, 2021 |
| MOSES CHOI, et al., <br><br> Plaintiffs, <br><br> v. <br><br> 8TH BRIDGE CAPITAL, INC., a California corporation; et al., <br><br> Defendants. | |

1

## **<u>TABLE OF CONTENTS</u>**

I.  JURISDICTION AND VENUE ........................................................................ 1

II.  NATURE OF THE ACTION ........................................................................ 1

III.  PARTIES .................................................................................................. 2

A.  PLAINTIFF ................................................................................................. 2

B.  DEFENDANTS ........................................................................................... 2

IV.  ALTER EGO RELATIONSHIPS ................................................................ 3

V.  GENERAL ALLEGATIONS ....................................................................... 5

A.  THE EB-5 IMMIGRANT INVESTOR PROGRAM ........................................ 5

B.  THE JOINT VENTURE AND PARTNERSHIP AND NON-CIRCUMVENTION AGREEMENTS BETWEEN CORBRUS AND 8BC ........................................... 5

C.  THE NON-CIRCUMVENTION AGREEMENT BETWEEN OMNIA/PAZ, 8BC/KIM, AND CORBRUS/CHANG ............................................................. 8

D.  PLAINTIFF CORBRUS' CONTINUED CONTRIBUTIONS TO THE MANHATTAN FUND AND THE ACE HOTEL PROJECT ................................. 9

E.  8BC/KIM AND OMNIA/PAZ'S SCHEME TO DEFRAUD CORBRUS ......... 10

VI.  DISCOVERY RULE & FRAUDULENT CONCEALMENT ........................ 18

VII. CLAIMS FOR RELIEF .............................................................................. 19

VIII. PRAYER FOR RELIEF ............................................................................. 45

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THIRD AMENDED COMPLAINT**

Plaintiff CORBRUS, LLC ("Corbrus" or "Plaintiff") brings this Third Amended Complaint ("Complaint") demanding a jury trial against Defendants 8TH BRIDGE CAPITAL, INC., 8TH BRIDGE CAPITAL, LLC, YOUNG HUN KIM (collectively, "8BC/Kim"), OMNIA GROUP, LTD., OMNIA PROPERTIES LLC, DAVID PAZ (collectively, "Omnia/Paz") (all Defendants collectively, "Defendants").  Plaintiff alleges the following based upon information and belief and personal knowledge:

## I.   <u>JURISDICTION AND VENUE</u>

1.     This Court has subject matter jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff on the one hand, and Defendants on the other, and more than $75,000 is in controversy in this action, exclusive of interest and costs.

2.     This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331, based on the federal claims asserted under the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., and 18 U.S.C. §§ 1331, 1334, 1962, and 1964.

3.     This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because all of Plaintiff's state-law claims are derived from a common nucleus of operative facts and are of the kind Plaintiff would ordinarily expect to try in one judicial proceeding.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, or a substantial part of the property that is the subject of the action is situated in this District, and because at least one of the Defendants resides in this judicial district.

## II.   <u>NATURE OF THE ACTION</u>

5.     The "EB-5 Program" was created by Congress in 1990 to stimulate the economy through job creation and capital investment by foreign investors in exchange for visas and residency opportunities.

6.     Plaintiff Corbrus entered into a partnership and joint venture with

1

Defendants 8BC/Kim to locate and finance largescale real estate development projects using various financing options including the EB-5 Program.  For the EB-5 financing projects, the Corbrus and 8BC/Kim partnership and joint venture would serve as a bridge between American developers and EB-5 foreign investors to arrange, facilitate, and manage financing.

7.    However, after Plaintiff expended significant time and resources finding and cultivating lucrative business opportunities and developed one such opportunity (the Ace Hotel Project) into a mega client, working laboriously to structure the deal, 8BC/Kim with the assistance of Omnia/Paz carried out a wire fraud scheme to defraud Plaintiff out of its compensation due under the partnership and joint venture. 8BC/Kim went on to engage in a similar wire fraud scheme to defraud a subsequent partner, Moses Choi, and also engaged in additional wire fraud schemes to defraud foreign investors by affirmatively making material misrepresentations and concealing material information from them about backdoor deals and conflicts of interest. This suit alleges claims for fraud, negligent misrepresentation, breach of fiduciary duty, breach of contract, breach of covenant of good faith and fair dealing, unjust enrichment, and RICO violations.

## III.    PARTIES

### A.    Plaintiff

8.    Plaintiff CORBRUS, LLC ("Corbrus" or "Plaintiff") is a Delaware limited liability company. Corbrus' sole principal, Mr. Fu-Shen Chang ("Max Chang" or "Chang"), is a resident of the State of Washington.

### B.    Defendants

9.    Defendant 8TH BRIDGE CAPITAL, INC. ("8BC Inc.") is a California corporation formed in 2009, with its principal place of business within this judicial district.

10.    Defendant 8TH BRIDGE CAPITAL, LLC ("8BC LLC") is a California limited liability company formed in December 2016, with its principal place of business

within this judicial district.

11.    Defendant YOUNG HUN KIM ("Kim") is an individual with his residence and domicile in the State of California, within this judicial district.

12.    Upon information and belief, Defendant Kim is the sole owner of both Defendant 8th Bridge Inc. and Defendant 8th Bridge LLC (collectively, "8th Bridge Capital" or "8BC").  Kim simultaneously (and interchangeably) uses the 8BC companies as alter egos of one another and of himself to conduct financing projects.

13.    Defendant OMNIA GROUP, LTD. ("Omnia Ltd.") is a New York company.

14.    Defendant OMNIA PROPERTIES LLC ("Omnia LLC") is a New York limited liability company.

15.    Defendant DAVID PAZ ("Paz") is an individual with his residence and domicile in the State of New York.

16.    On information and belief, Defendant Paz is the controlling owner of both Defendant Omnia Ltd. and Defendant Omnia LLC (collectively, "Omnia").  Paz simultaneously (and interchangeably) uses the Omnia companies as alter egos of one another and of himself to conduct real estate development and financing projects.

17.    On information and belief, Paz merged Omnia Ltd. into Omnia LLC on or about June 6, 2017.

## IV.    ALTER EGO RELATIONSHIPS

18.    On information and belief, there has existed a unity of interest and ownership between and among Defendants Kim, 8BC Inc., and 8BC LLC such that any individuality and separateness between or among them has ceased, and such that each is the alter ego of the other; in that:

a.    Kim has at relevant times completely controlled, led, dominated, managed and operated 8BC Inc. and 8BC LLC, has intermingled his assets with their assets, and has intermingled the assets of each of them with those of the other, to suit his and their convenience;

b.    Kim has at relevant times used the assets of 8BC Inc. and 8BC LLC

for his own use, and has caused or will cause their assets to be transferred to him and to one another without adequate consideration;

        c.    8BC Inc. and 8BC LLC each is, and at relevant times was, a mere shell and sham without sufficient capital or assets, or its capitalization is and was trifling, compared with the business to be done and the risks of loss attendant thereto; and/or

        d.    8BC Inc. and 8BC LLC each is, and at relevant times was, a mere shell, instrumentality, and conduit through which Kim carried on his businesses, exercising complete control and dominance of 8BC Inc. and 8BC LLC to such an extent that any individuality or separateness between and among them does not, and at all relevant times did not, exist.

19.    On information and belief, there has existed a unity of interest and ownership between and among Defendants Paz, Omnia Ltd., and Omnia LLC such that any individuality and separateness between or among them has ceased, and such that each is the alter ego of the other; in that:

        a.    Paz has at relevant times completely controlled, led, dominated, managed and operated Omnia Ltd. and Omnia LLC, has intermingled his assets with their assets, and has intermingled the assets of each of them with those of the other, to suit his and their convenience;

        b.    Paz has at relevant times used the assets of Omnia Ltd. and Omnia LLC for his own use, and has caused or will cause their assets to be transferred to him and to one another without adequate consideration;

        c.    Omnia Ltd. and Omnia LLC each is, and at relevant times was, a mere shell and sham without sufficient capital or assets, or its capitalization is and was trifling, compared with the business to be done and the risks of loss attendant thereto; and/or

20.    Omnia Ltd. and Omnia LLC each is, and at relevant times was, a mere shell, instrumentality, and conduit through which Paz carried on his businesses, exercising complete control and dominance of Omnia Ltd. and Omnia LLC to such an extent that

any individuality or separateness between and among them does not, and at all relevant times did not, exist.

## V.     GENERAL ALLEGATIONS

### A.     The EB-5 Immigrant Investor Program

21.     The term "EB-5" denotes a category of U.S. visas known as "Employment-Based Fifth Preference" visas.  The United States permits foreign investors to obtain an EB-5 visa by investing: (i) a minimum of $1,000,000 in capital in a U.S. Citizenship and Immigration Services ("USCIS")-approved new commercial enterprise, or (ii) a minimum of $500,000 in capital in a USCIS-approved new enterprise within a high-unemployment or rural area, known as a "Targeted Employment Area."

22.     The enterprise may be formed to conduct any lawful for-profit business but must directly create full-time jobs for at least ten qualifying employees.

23.     EB-5 funds can be allocated only to programs specifically approved by the USCIS and cannot be diverted elsewhere.

24.     Ten thousand (10,000) EB-5 visas are granted each year, entitling visa holders to apply for permanent U.S. residency.

25.     Since its inception, the EB-5 Program has enabled U.S. businesses to raise billions of dollars in investment capital from foreign investors.

### B.     The Joint Venture and Partnership and Non-Circumvention Agreements Between Corbrus and 8BC

26.     Corbrus is a full-service real estate development and financing company that operates in, *inter alia*, the EB-5 financing space.

27.     The 8BC companies are real estate financing companies that operate in, *inter alia*, the EB-5 financing space.

28.      On or about April 13, 2015, Plaintiff Corbrus (through Chang) and Defendant 8BC (through Kim) entered into Non-Disclosure and Non-Circumvention Agreement (the "First NDNCA") (proposed by Corbrus) to explore joint venture and partnership opportunities to finance large real estate development projects, including

providing EB-5 Program financing.  Corbrus' primary part was to find large real estate development projects and 8BC's primary part was to cultivate investor interest, including interest among EB-5 investors by cultivating relationships with foreign investment sales agents.

29.    The First NDNCA prohibited 8BC from disclosing any proprietary or confidential information about potential real estate development projects presented by Corbrus and/or circumventing Corbrus on those projects—that is, the agreement prevented Corbrus and 8BC from taking actions for the purpose of avoiding payment to one another for projects and joint ventures pursued under the NDNCA.

30.    Between approximately April 13 and 30, 2015, Corbrus introduced to 8BC a number of potential development projects, which the two companies discussed extensively.

31.    On or about April 30, 2015, Corbrus and 8BC entered into a second NDNCA (proposed by 8BC) (the "Second NDNCA") that allowed the two companies to continue exploring financing projects on which to partner together with the continued agreement that neither would disclose proprietary information or circumvent the other on projects the two companies were exploring pursuant to their NDNCAs.  In other words, the agreement prevented Corbrus and 8BC from taking actions for the purpose of avoiding payment to one another for projects and joint ventures pursued under the NDNCAs.  The Second NDNCA provided that the "federal and state courts within the State of California shall have exclusive jurisdiction to adjudicate any dispute arising out of this Agreement."

32.    Between approximately April and June 2015, Corbrus proposed additional projects from coast to coast that Chang (Corbrus) and Kim (8BC) discussed.  Among those were real estate projects in New York City ("NYC") being developed by Omnia/Paz that Corbrus/Chang introduced to 8BC/Kim under the parties' NDNCAs. 8BC/Kim wanted very much to pursue these projects.

33.    Between approximately June 17 and 22, 2015, Plaintiff and 8BC/Kim

agreed in writing to a joint venture and partnership, which would lend EB-5 funds to various projects including one or more of Paz's projects.  The joint venture and partnership was strategically named the "Manhattan Real Estate Fund" (the "Manhattan Fund" or the "Partnership") by Corbrus/Chang, and was to be funded by a number of limited partnerships consisting of foreign investors.[1]  EB-5 investors would fund the Manhattan Fund, and the Manhattan Fund would in turn serve as a lender to Paz and Omnia, and other such projects that the Manhattan Fund would pursue.

34.    Corbrus and 8BC agreed to be *equal* partners in the Manhattan Fund, and agreed in writing to split the proceeds of the Omnia projects as follows:

a.    Of the 3% origination fee, Corbrus would collect 2%, and 8BC would collect 1%;

b.    Corbrus would be entitled to 20% of the interest accrued for the life of the Manhattan Fund and 8BC would be entitled to 80% of the interest accrued;

---

[1] On information and belief, there are a number of "Manhattan Real Estate Fund" entities and companies that raise and control EB-5 funds for Omnia Projects, which are covered under Corbrus' and 8BC's non-circumvention agreement and partnership.  Examples of these entities and companies include, The Manhattan Real Estate Corporation, Manhattan Real Estate Equity Fund, LP, Manhattan Real Estate Equity Fund GP, LLC, Manhattan Real Estate Fund II, LP, The Manhattan Real Estate Fund LLC, Manhattan Real Estate Fund, LP, Manhattan Real Estate Limited Partnership, Manhattan Real Estate Partners I, L.P.; these entities will be collectively referred to as the "Manhattan Fund Companies" or the "Manhattan Fund."  On information and belief, there has existed a unity of interest and ownership between and among Defendants Kim, 8BC, and the Manhattan Fund Companies such that any individuality and separateness between or among them has ceased, and such that each is the alter ego of the other; in that: (i) Kim and 8BC have at relevant times completely controlled, led, dominated, managed and operated the Manhattan Fund Companies, have intermingled their assets with the assets of the Manhattan Fund Companies, and have intermingled the assets of each of the Manhattan Fund Companies with those of the other Manhattan Fund Companies, to suit Kim, 8BC's, and the Manhattan Fund Companies' convenience; (ii) Kim and 8BC have at relevant times used the assets of the Manhattan Fund Companies interchangeably among the companies and for their own use, and have caused or will cause the Manhattan Fund Companies' assets to be transferred to Kim and/or 8BC and to one another without adequate consideration; (iii) the Manhattan Fund Companies have at relevant times each been treated by Kim and 8BC as mere shells and shams without sufficient capital or assets, or their capitalization is and was trifling, compared with the business to be done and the risks of loss attendant thereto; and/or (iv) the Manhattan Fund Companies have at relevant times each been treated by Kim and 8BC as mere shells, instrumentalities, and conduits through which Kim and 8BC carried on their businesses, exercising complete control and dominance of the Manhattan Fund Companies to such an extent that any individuality or separateness between and among them does not, and at all relevant times did not, exist.

-7-

c.     All other compensation, including but not limited to equity, equity reward, or equity-reward-like compensation, would be split equally between Corbrus and 8BC.

**C.     The Non-Circumvention Agreement Between Omnia/Paz, 8BC/Kim, and Corbrus/Chang**

35.     From approximately May to July 2015, Chang (Corbrus) and Kim (8BC) negotiated with Paz (Omnia) to provide EB-5 financing through the Manhattan Fund for two of Omnia's NYC real estate development projects: (1) the "Ace Hotel Project" and (2) the 54th St. Condominium Project (collectively, the "Omnia Projects").

36.     On or about July 12, 2015, Corbrus/Chang, 8BC/Kim, and Omnia/Paz entered into a written agreement with the Manhattan Fund Partnership concerning the Manhattan Fund's EB-5 financing of the Omnia Projects.

37.     This July 12, 2015 agreement with Omnia provided a number of terms, including a binding non-circumvention agreement that prohibited Omnia/Paz, 8BC/Kim, and Corbrus/Chang from dealing with any party or taking any actions for the purposes of avoiding payment to any party to the agreement.

38.     Omnia's Ace Hotel Project in NYC would be the first of the projects for which the Manhattan Fund would provide financing (the "Ace Hotel Project").[2]

39.     At the time of executing this agreement, Omnia (Paz) understood that Corbrus and 8BC were partners and joint venturers that owed one another a fiduciary duty.

40.     Pursuant to the agreement between the Manhattan Fund partners (Corbrus and 8BC) (described above in paragraph 34), 8BC and Corbrus would split their respective share of the monies and interests received from Omnia for the Ace Hotel Project as the EB-5 loan was disbursed, and Omnia paid its obligations under the loan.

---

[2] The "Ace Hotel" would later be named the "Sister City Hotel" for marketing purposes.

**THIRD AMENDED COMPLAINT**

### D.  Plaintiff Corbrus' Continued Contributions to the Manhattan Fund and the Ace Hotel Project

41.    From approximately July to November 2015, Corbrus expended considerable time and effort on the Manhattan Fund on just about every aspect of the Ace Hotel Project financing, including, among other things, providing advice and expertise, negotiating terms with Paz (Omnia), retaining consultants, working with lawyers and consultants to comply with EB-5 requirements, as well as managing efforts on the ground in the U.S., including coordinating, reviewing, and providing input on the drafting of numerous important documents such as the private placement memorandum, limited partnership agreement, subscription agreement, loan and security agreement, escrow agreement, regional center agreement, economic job impact analysis, EB-5 business plan, development budget capital stack (equity and debt), land title and closing documents, construction permits, construction contracts, construction schedule, architectural plans and renderings, corporate structure, entity registrations, management agreement, management biographies, target employment area letter, hotel 5-year pro forma, and hotel feasibility study.  Corbrus even developed a robust PowerPoint presentation to help 8BC/Kim sell the Ace Hotel Project to investors in China, which was then used to sell the project. Throughout the Ace Hotel Project Corbrus engaged a number of lawyers and consultants and interfaced with them on various action items related to the Ace Hotel Project.

42.    In September 2015, Chang (Corbrus) executed a number of official documents and agreements as Manhattan Fund's "Managing Director" and "Managing Member." The lawyers filed a number of these documents and used Chang's Social Security Number to obtain Employer Identification Numbers (EINs) for the Manhattan Fund Partnership.

43.    On or about September 21, 2015, Chang (Corbrus) even attempted to bring additional EB-5 investors to the Manhattan Fund in addition to the investors Kim (8BC) was attempting to secure.  Kim (8BC) as a 50% partner blocked that effort stating that it was 8BC's primary domain to secure investors.

-9-

**THIRD AMENDED COMPLAINT**

44.     In total, Corbrus expended approximately 790 man-hours of Chang's skilled labor and time and thousands of dollars in expenses in sourcing and structuring the Ace Hotel EB-5 Project for the benefit of the partnership and joint venture with 8BC.

**E.     8BC/Kim and Omnia/Paz's Scheme to Defraud Corbrus**

45.     However, as early as July 2015 (when Corbrus was doing significant work on the project), 8BC/Kim was in talks with Moses Choi of Southeast Regional Center ("SRC/Choi") behind Chang's back and unbeknownst to Chang, to partner up with Choi on the Ace Hotel Project despite already having a partner in Corbrus. (Doc. 131 ¶¶ 24(a)-(h), (k)-(l), (n)-(r).)[3] And, while continuing to use Corbrus' resources to structure the deal, Kim had already planned to cut Corbrus out of the deal entirely, telling Choi that SRC would be the new partner on the Ace Hotel Project. When Choi inquired about Corbrus, Kim assured Choi that Kim would make sure Corbrus was not a problem. Kim, however, kept these partnership talks with Choi concealed from Corbrus/Chang and, instead, devised and executed a fraud scheme with David Paz in October 2015 to circumvent Corbrus out of its compensation in violation of the non-circumvention agreements and fiduciary duties owed to Corbrus.

46.     The object of the fraud scheme was to cut out Corbrus from the Manhattan Fund Partnership by convincing Chang (Corbrus) that it was better for Corbrus to not be included as a partner on the Manhattan Fund, but Corbrus would still be paid by Paz as the parties had contemplated. Kim pressured and convinced Chang that the raise would go faster and smoother without Corbrus on the loan offering documentation while concealing his true intention of recruiting SRC/Choi with promises of compensation from the same pot. While providing false assurances and leading Corbrus to believe that Kim would do whatever it took to make sure Corbrus' compensation was protected, Kim was also actively taking part in drafting documents that siphoned Corbrus' compensation to 8BC/Kim. Omnia/Paz participated in the scheme because Paz saw an opportunity to

---

[3] The various cited paragraphs from PACER document 131 are incorporated herein by reference.

**THIRD AMENDED COMPLAINT**

defraud Corbrus out of millions and keep the money for himself.

47.     Over the month of October 2015, Kim (8BC) and Paz (Omnia) assured Chang (Corbrus) that Kim would forgo earnings on the 8BC and Manhattan Fund side of the project so that Corbrus could continue to be made whole by Paz on the Omnia side— essentially that Corbrus would not be circumvented as agreed to by Kim (8BC) and Paz (Omnia) in the parties' agreements.  As it turned out, however, the entire discourse by Kim (8BC) and Paz (Omnia) was a charade and fraud designed to circumvent Corbrus. Kim was actually having documents drafted to take Corbrus' share.

48.     Kim (8BC) and Paz (Omnia) aided and abetted one another to execute the fraud scheme by engaging in numerous acts using the interstate wire facilities of the United States as follows:

        a.      Between approximately October 2 and 5, 2015, Kim (8BC) had phone conversations with Chang (Corbrus) discussing the structure of their co-equal partnership.  Kim attempted to convince Chang that it would be easier for Kim to close the deal with certain EB-5 sales agents if Corbrus was not named as a partner on the Manhattan Fund EB-5 loan documentation, because foreign sales agents would have questions about Corbrus, and answering those questions would delay the project. According to Kim, leaving Corbrus off the documentation would allow the project to move faster.  During these phone conversations Kim (8BC) promised repeatedly that he and Paz (Omnia) could establish a three-way arrangement for Corbrus by which Corbrus would receive acceptably equivalent benefits that it was entitled to as a partner on the Manhattan Fund.  Kim (8BC) assured Chang (Corbrus) that pursuant to the parties' NDNCAs and partnership/joint venture, the benefits due Corbrus would not be circumvented in any way and that Kim (8BC) would make sure of that. *This was all fake, however*. What Kim misrepresented was that he was not planning to protect his partner Corbrus' interest at all, but rather planning to draft loan documents to siphon Corbrus' interests to itself after convincing Corbrus to not be included on the loan offering. What 8BC/Kim also concealed from Corbrus was that 8BC was imminently planning to partner

up with SRC/Choi by promising Choi significant sums from the same pot intended for Corbrus.

b.     On or about October 5, 2015, Kim (8BC) sent Chang (Corbrus) an email following up on their phone conversations where Kim (8BC) made the same false assurances.

c.     On or about October 6, 2015, Kim (8BC) sent Paz (Omnia) an email copying Chang (Corbrus) pretending to negotiate a three-way deal with Paz for Corbrus. This was part of a series of sham negotiations and pressure tactics deployed by 8BC/Kim and Omnia/Paz to mislead Corbrus into believing that Corbrus' full compensation would be protected by Kim and Paz.

d.     Thereafter, between October 6 and 19, 2015, Kim (8BC) and Paz (Omnia) engaged in a series of sham negotiations with Chang (Corbrus) over the phone and email to induce Chang to not be included as a named partner on the Manhattan Fund loan offering documents.  Kim and Paz applied tremendous pressure and gave rosy false assurances to Chang during their phone conversations about Corbrus' interests being protected.  Some examples are provided below.

e.     On or about October 12, 13, and 15, 2015, Kim (8BC) and Paz (Omnia) exchanged emails with Chang (Corbrus), engaging in sham negotiations in furtherance of the fraud scheme, discussing an arrangement to ensure Corbrus rights were protected but actually never intending to keep the arrangement.  These emails were intended to induce Chang into a false sense of security, and they had that effect.

f.     On or about October 18, 2015, Kim (8BC) had a call with Chang (Corbrus), pressuring Chang to agree to not be named as a partner in the Manhattan Fund loan documents while assuring Chang that Kim (as Chang's partner) would not allow Chang to be circumvented or cut short in any way in terms of Corbrus' compensation. The series of calls and emails over time had the intended effect of inducing Chang into a false sense of security.

g.     On or about October 19, 2015, Chang (Corbrus) met with Paz in

**THIRD AMENDED COMPLAINT**

person. At the meeting, in furtherance of the fraud scheme, Paz assured Chang that Chang (Corbrus) would be made whole by Paz if Corbrus gave up its right to be included a named Manhattan Fund partner on the loan documentation. Paz (Omnia) followed up by agreeing in writing over text and email to compensate Corbrus. After the discussion with Paz, Chang (Corbrus) had a call with Kim (8BC) during which Kim said Chang should agree to this deal and falsely reassured Chang that Kim (8BC) would not allow Corbrus to be circumvented or cut short in any way by Paz (Omnia), and that Corbrus should leave the partnership with full confidence that Kim (8BC) and Paz (Omnia) would work together to ensure that Corbrus received its compensation as promised and as agreed to under the non-circumvention agreements.

h. At the time, because of Kim (8BC) and Paz's (Omnia) reassurances, Chang (Corbrus) had no idea that Paz (Omnia) never intended to follow through with making payments to Corbrus under the new three-way agreement—that Paz (Omnia) intended only to help Kim (8BC) dispose of Corbrus and avoid payment to Corbrus, in breach of the non-circumvention agreement Omnia had executed on or about July 12, 2015, as well as the non-circumvention agreements 8BC had executed in April 2015.

i. In addition to paying Corbrus millions of dollars on the Ace Hotel Project, Paz (Omnia) also agreed to enter into a continuing consulting relationship with Corbrus on new projects by which Corbrus would be made whole with respect to the Manhattan Fund's ongoing relationship with Omnia on any new projects. Paz (Omnia) stated that a more formal consulting agreement reflecting this would be executed after the rush of the Ace Hotel EB-5 financing documents was over.

j. From approximately October 19 to 25, 2015, Kim (8BC) and Paz (Omnia) had phone conversations with Chang (Corbrus), insisting that Corbrus give up its partnership interest in the Manhattan Fund immediately due to the rush of the EB-5 loan offering documents, marketing materials, immigration filing package, and other documentation that needed to be drafted quickly. Kim and Paz insisted that the drafting of the extensive documentation was time sensitive, that Corbrus would definitely be paid

1  the compensation it was promised under the non-circumvention agreements when the
2  payments became due (that is, after loan disbursement), and that Corbrus would also
3  have additional consulting opportunities with Omnia. Throughout these sham
4  negotiations and representations, both Kim (8BC) and Paz (Omnia) knew that they were
5  planning to cut Corbrus of the deal entirely, but intentionally concealed this information
6  from Corbrus.

7          k.      On October 25, 2015, induced by Kim (8BC) and Paz's (Omnia) false
8  promises and assurances, Corbrus sent its lawyers an email stating Corbrus' intention to
9  not be included as a named partner on the Manhattan Real Estate Fund loan
10  documentation per discussions with "the project team" (meaning Kim (8BC) and Paz
11  (Omnia)).  That week, the Jeffer Mangles lawyers had discussions with Kim (8BC), Paz
12  (Omnia), and Chang (Corbrus) on the matter of Corbrus' resignation from the Manhattan
13  Fund partnership.  Kim (8BC), Paz (Omnia), and Chang (Corbrus) communicated to
14  Holmes and Pardee (Jeffer Mangels) that the Jeffer Mangels lawyers (Corbrus' lawyers)
15  would need to draft a consulting agreement between Corbrus and Omnia for as promised.
16  On or about the same day of this group conversation, Kim had private discussion with
17  Jeffer Mangels behind Chang's back where they discussed that they would be
18  abandoning Corbrus but never revealed this to Chang, which further showed Kim's
19  fraudulent intent.  The gist of this conversation was later memorialized in a private email
20  exchange between Kim and Jeffer Mangles on November 24, 2015.

21          l.      Based on the belief that his partner (Kim), his lawyers, and his
22  business associate (Paz) were all being honest and forthright in their express and implied
23  promises, commitments, covenants, and duties, Chang (Corbrus) agreed to allow the
24  Manhattan Real Estate Fund loan documentation to be drafted without Corbrus being
25  included as a named partner.

26          m.      Throughout the month of November 2015, while the EB-5 loan
27  offering was being finalized, 8BC/Kim and Omnia/Paz continued to allow Chang
28  (Corbrus) to falsely believe that Corbrus would be paid under the three-way deal and that

the continuing consulting agreement was going to be drafted and executed once the rush of the EB-5 loan offering was completed.

n.      On or about December 1, 2015, in response to Chang's inquiries about the loan status, Kim (8BC) informed Chang (Corbrus) that the Manhattan Fund EB-5 loan agreement had been executed.  Kim left Corbrus with the impression that Corbrus would receive its compensation in due course by working directly with Omnia/Paz. What Kim concealed from Chang, however, was that the loan agreement Kim had privately negotiated and drafted behind Corbrus' back actually gave 8BC what was supposed to be Corbrus' compensation.

o.      Thereafter, Paz (Omnia) continued to placate and deceive Chang about Corbrus' future compensation once the loan was funded and disbursed. And it was true that Corbrus could not expect any payment until it was due, which would occur after the loan was disbursed.  Chang (Corbrus) expected the payment to become due in the normal course in approximately two or more years depending on a number of EB-5 project-specific factors, including, for example, how fast the funds would be raised, the project's financing needs, the borrower's ability to meet its loan obligations, etc. Therefore, Corbrus was operating under the belief that Corbrus could not expect payment for giving up its Manhattan Fund interest until about December 2017 at the earliest. Adding to that, Paz continued to mislead Chang into believing that Corbrus would be paid after loan disbursement.

49.    Moreover, Kim and Paz were intentionally concealing material information from Corbrus (i.e., the fraudulent nature sham negotiations, 8BC's secret usurpation of payments due to Corbrus, 8BC's secret joint venture with Choi on the same project, and Paz's intention to not pay Corbrus), and because Paz was continuing to deceive Corbrus about its future compensation, Corbrus was intentionally being kept from discovering the breaches of contract and covenants and fiduciary duties, and attendant fraud.

50.    Between approximately December 2 and 4, 2015, Paz (Omnia) had discussions with Chang (Corbrus) about consulting work Corbrus would be doing for

-15-

Omnia.  Paz also reassured that Chang that Corbrus would be paid on the Ace Hotel deal once the EB-5 loan was secured.  These discussions lulled Corbrus into a false sense of security that it would be paid when the EB-5 loan was funded and disbursed.  However, it turned out that Omnia was simply stringing Chang along and had no intention of compensating Corbrus.

51.    The email discussions continued between December 8 and 13, 2015, and on or about December 15, 2015, Paz (Omnia) had in person discussions with Chang where Paz misled Chang to believe that Corbrus would be compensated on the EB-5 deal pursuant to the parties' non-circumvention agreement. They discussed that, because the non-circumvention agreement protected Corbrus' compensation on the Ace Hotel Project and because Corbrus' work was mostly front-loaded, a consulting agreement for the Ace Hotel Project did not make sense and was not necessary for Corbrus' compensation to be protected. However, Paz did agree that Omnia would enter into a consulting agreement with Corbrus on a new project when the appropriate project presented itself.

52.    On or about December 22 and 23, 2015, Paz (Omnia) and Chang (Corbrus) discussed additional projects on which Corbrus could be a consultant to Omnia. They also discussed the status of the Ace Hotel Project and Paz said that the project was on track. Paz left Chang with the impression that Corbrus would be paid its Ace-Hotel-related compensation when the loan was disbursed, which they both agreed could take two years or more. Paz never intended on paying Corbrus, however. It was all a fraud.

53.    Between approximately January 10 and March 13, 2016, Paz continued to have similar discussions with Chang as in the preceding paragraph to continue to deceive Chang that Corbrus would be compensated as promised.  Chang (Corbrus) was left with the impression that Corbrus should wait for the EB-5 loan to be funded and disbursed, because that is when its payment would become due, and that Paz would continue to consider Corbrus for additional consulting projects. During these conversations and similar conversations in the future, when Chang would inquire about the status of the Ace Hotel EB-5 loan, at times, Paz would make Chang feel guilty about asking about the

status of loan, stating that, in order for Chang to do well in this business and have a continuing relationship with Paz, Chang should show that he trusted Paz to inform Chang when the loan was funded. Paz made Chang feel small and paranoid, and made Chang feel like he was hurting his own reputation by inquiring about the status of the loan.

54.     Between March 2016 and November 2017, Corbrus waited for the EB-5 loan to be funded and disbursed.  During this time, Corbrus was not aware of any source of public information, news articles or otherwise, that would provide the status of the Ace Hotel EB-5 loan.  Chang does not recall seeing any news articles about the Ace Hotel Project.  Moreover, searching news articles about progress of the Ace Hotel construction project would be futile to learning the status of the *EB-5 loan* because the two were not necessarily correlated.  This is because the EB-5 loan comprised only 20% of the financing and the project's development could (and did) continue without the EB-5 funds.  In short, there was no source of public information that would inform Corbrus about the status of the EB-5 loan.  Therefore, Chang made diligent efforts to check in once a month to once every two months with Paz and/or his business associate, Hakan Haskalp, the broker who had referred the project to Corbrus and whose wife was the controller for Omnia, to learn whether the loan had been funded and disbursed in order to know whether payment to Corbrus would become due.

55.     In or about early November 2017, Corbrus learned for the first time from Paz's business associate, Mr. Haskalp, that the Ace Hotel EB-5 loan may have been funded and disbursed.  This matched up with Corbrus' expectation of the timing of the funding and disbursement, which Corbrus had expected would occur in or about December 2017.

56.     Immediately, thereafter on or about November 7 and 20, 2017, Chang (Corbrus) sent Kim (8BC) an email inquiring about the status of the Ace Hotel EB-5 loan.  In response to these emails, Kim did not provide any useful information, but he did continue to deceive Chang by making Chang believe that Kim would check with Paz to help Corbrus. However, instead of helping Corbrus like Kim led Corbrus to believe, Kim

**THIRD AMENDED COMPLAINT**

had discussions with Paz about damage control and how they needed to ensure that Corbrus was not "a threat" to Kim and Paz "like Northwind and Moses [Choi]."

57.    Plaintiff Corbrus did not learn precisely when the Manhattan Fund EB-5 loan was actually funded and disbursed, and thus when the first payment to Corbrus was missed until February 21, 2020, when Omnia revealed the information to Corbrus for the very first time in a court filing.  Before this, Plaintiff, through the exercise of diligence talking to Paz's business associate, believed that the loan had been funded and disbursed in or about November 2017.

58.    To date, Omnia has received approximately $29.5 million in funding from 8BC through the Manhattan Real Estate Fund for the Ace Hotel Project. Corbrus has received no compensation at all.

## VI.    <u>DISCOVERY RULE & FRAUDULENT CONCEALMENT</u>

59.    Here, because Defendants actively made misrepresentations to conceal material information and otherwise concealed material information from Plaintiff as part of their fraud scheme, Plaintiff was operating under the belief that its compensation was not due until approximately December 2017.  Moreover, Defendants continually led Plaintiff to believe that Plaintiff would be paid lulling Plaintiff into a false sense of security.  As detailed above, Plaintiff exercised diligence to keep apprised of when the EB-5 loan was funded and disbursed and to know when payment to Plaintiff would be due.  As soon as Plaintiff learned that payment may have become due (in November 2017), Plaintiff immediately inquired from Defendant Kim about the status of the loan.  Defendants, however, continued to conceal this information as Kim pretended like he was going to help but actually continued to conspire with Paz into December 2017 about how to eliminate Plaintiff as "a threat" like "Northwind and Moses [Choi]."  Therefore, Plaintiff did not discover and could not have discovered through the exercise of reasonable diligence the true nature and full scope of Defendants' tortious conduct that gives rise to the claims raised herein, because Defendants willfully and intentionally concealed and continue to conceal material information relating to their tortious conduct,

**THIRD AMENDED COMPLAINT**

thus tolling any otherwise applicable statute of limitations.

60.    Defendants are under a continuous duty to disclose to Plaintiff the true character, quality, and nature of their tortious acts against Plaintiff.

## VII.   CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### FRAUD (INTENTIONAL MISREPRESENTATION)
### (Aiding & Abetting)

*(Against All Defendants)*

61.    Plaintiff realleges and incorporates by reference, in this claim, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

62.    Plaintiff brings this intentional fraud claim against Defendants 8BC Inc., 8BC LLC, Kim, Omnia Ltd., Omnia LLC, and Paz (for purposes of this claim for relief, "Defendants").

63.    At all relevant times alleged in this Complaint, Defendants actively engaged in, participated in, agreed to, aided and abetted, and/or furthered an intentional fraudulent scheme, whereby Defendants deliberately and fraudulently induced Plaintiff into a false sense of security through false promises of future payment in order to circumvent Corbrus out of its compensation.  The 8BC and Omnia Defendants convinced Plaintiff that it was best for the partnership and joint venture that Plaintiff should allow the Manhattan Real Estate Fund loan documents to be drafted without Plaintiff being named as a partner, and that Plaintiff would be compensated as agreed upon after the EB-5 loan was funded and disbursed.  These were false representations and Defendants knew that they were false representations because Defendants' actual intent was to cut Plaintiff out as described above. *Supra* § V.E.

64.    At the times the promises and reassurances were made to Plaintiff, Defendants knew that they had no intention of following through, but Defendants nevertheless intended that Plaintiff rely on the false promises. Had Plaintiff known the

truth, Plaintiff would have insisted on being included as a named partner on the Manhattan Real Estate Fund loan documentation and would have insisted on being paid its full compensation when the loan was disbursed. But Defendants even concealed from Plaintiff when the loan was disbursed and misrepresented that the loan had not been disbursed.

65.    Plaintiff's will was overborne by Defendants' fraud and Plaintiff reasonably relied on the promises to Plaintiff's detriment and continues to be deprived of the compensation to which it was entitled.

66.    Defendants' numerous misrepresentations made in furtherance of their fraud and deceit constituted malice and despicable conduct as intending to cause significant injury to Plaintiff with a willful and conscious disregard of Plaintiff's rights.

67.    Defendants' numerous misrepresentations made in furtherance of their fraud and deceit constituted oppression and despicable conduct that subjected Plaintiff to cruel and unusual hardship in conscious disregard of Plaintiff's rights.

68.    As a result, Defendants' intentional, willful, and malicious fraud and deceit directly, proximately, and substantially caused Plaintiff to suffer significant injury and damages that continue to accrue.

WHEREFORE, Plaintiff prays for relief as set forth below.

### SECOND CLAIM FOR RELIEF

**FRAUD (CONCEALMENT)**
**(Aiding & Abetting)**

(*Against Defendants 8th Bridge Inc., 8th Bridge LLC, and Kim*)

69.    Plaintiff realleges and incorporates by reference, in this claim, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

70.    Plaintiff brings this fraud by concealment claim against 8BC Inc., 8BC LLC, and Kim (for purposes of this claim for relief, "Defendants").

71.    Defendants actively engaged in, participated in, agreed to, aided and abetted,

**THIRD AMENDED COMPLAINT**

and/or furthered a fraudulent scheme to induce into a false sense of security and circumvent Corbrus out of its compensation, which conduct constitutes fraudulent concealment.

72.   At all relevant times alleged in this Complaint, Defendants 8th Bridge Inc., 8th Bridge LLC, and Kim were in a partnership and joint venture with Plaintiff. These Defendants were thus in a fiduciary relationship with Plaintiff—that is, in a position of special knowledge and trust with the opportunity to take undue advantage of and exercise undue influence over Plaintiff.  Defendants owed Plaintiff a fiduciary duty to be honest with Plaintiff—to not conceal material information or defraud Plaintiff.

73.   Defendants failed to willfully disclose numerous material facts and/or made numerous affirmative misrepresentations to Plaintiff deliberately providing false assurances concerning future payment to Plaintiff in exchange for Plaintiff agreeing to not be included as a named partner on the EB-5 loan documentation. *Supra* § V.E.

74.   Plaintiff did not know of the concealed facts and did not understand or appreciate the fraud being perpetrated by Defendants and was in fact fraudulently induced by Defendants willful concealments and misrepresentations into a false sense of security and was subsequently circumvented when payment became due and Defendants did not pay Plaintiff but rather misled Plaintiff into believe that the loan had not yet been disbursed.  Had Plaintiff known the truth, Plaintiff would have insisted on being included as a named partner on the Manhattan Real Estate Fund loan documentation and would have insisted on being paid its full compensation when the loan was disbursed. But Defendants even concealed from Plaintiff when the loan was disbursed and misrepresented that the loan had not been disbursed.

75.   Defendants' numerous material omissions and misrepresentations made in furtherance of their fraudulent concealment scheme constituted malice as intending to cause and recklessly disregarding sure and significant injury to Plaintiff and as despicable conduct with a willful and conscious disregard of Plaintiff's rights.

76.   Defendants' numerous material omissions and misrepresentations made in

-21-

**THIRD AMENDED COMPLAINT**

furtherance of their fraudulent concealment scheme malice and despicable conduct as intending to cause significant injury to Plaintiff with a willful and conscious disregard of Plaintiff's rights.

77.     Defendants' numerous material omissions and misrepresentations made in furtherance of their fraudulent concealment scheme constituted oppression and despicable conduct that subjected Plaintiff to cruel and unusual hardship in conscious disregard of Plaintiff's rights.

78.     Defendants' fraud by concealment directly, proximately, and substantially caused Plaintiff to suffer significant injury and damages that continue to accrue.

WHEREFORE, Plaintiff prays for relief as set forth below.

## THIRD CLAIM FOR RELIEF

### FRAUD (CONCEALMENT)
### (Aiding & Abetting)

*(Against All Defendants)*

79.     Plaintiff realleges and incorporates by reference, in this claim, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

80.     Plaintiff brings this fraud by concealment claim against all Defendants (for purposes of this claim for relief, "Defendants").

81.     Defendants actively engaged in, participated in, agreed to, aided and abetted, and/or furthered a fraudulent scheme to induce into a false sense of security and circumvent Corbrus out of its compensation, which conduct constitutes fraudulent concealment.

82.     At all relevant times alleged in this Complaint, Defendants disclosed some facts to Plaintiff but intentionally and willfully failed to other disclose material facts, making their disclosure deceptive; Defendants also intentionally and willfully failed to disclose certain facts that were known only to them and that Plaintiff could not have discovered; Defendants also willfully prevented Plaintiff from discovering certain facts.

Defendants did all this by deliberately and fraudulently inducing Plaintiff into a false sense of security, intending all along to avoid payment to Plaintiff when it became due in the future. *Supra* § V.E.

83.     Plaintiff did not know of the concealed facts and did not understand or appreciate the fraud being perpetrated by Defendants and was in fact fraudulently induced by Defendants' willful concealments and misrepresentations into agreeing to have the Manhattan Real Estate Fund loan documentation drafted without Plaintiff being included as a named partner.  Had Plaintiff known the truth, Plaintiff would have insisted on being included as a named partner on the Manhattan Real Estate Fund loan documentation and would have insisted on being paid its full compensation when the loan was disbursed. But Defendants even concealed from Plaintiff when the loan was disbursed and misrepresented that the loan had not been disbursed.

84.     Defendants' numerous material omissions and misrepresentations made in furtherance of their fraudulent concealment scheme constituted malice as intending to cause and recklessly disregarding sure and significant injury to Plaintiff and as despicable conduct with a willful and conscious disregard of Plaintiff's rights.

85.     Defendants' numerous material omissions and misrepresentations made in furtherance of their fraudulent concealment scheme constituted oppression as despicable conduct that subjected Plaintiff to cruel and unusual hardship in conscious disregard of Plaintiff's rights.

86.     Plaintiff reasonably relied on Defendants' numerous material omissions and misrepresentations and was induced into giving up its rightful partnership position in the Manhattan Fund Companies.

87.     Defendants' fraudulent concealment and constructive fraud directly, proximately, and substantially caused Plaintiff to suffer significant injury and damages that continue to accrue.

WHEREFORE, Plaintiff prays for relief as set forth below.

# FOURTH CLAIM FOR RELIEF

## NEGLIGENT MISREPRESENTATION

### (*Against All Defendants*)

88.     Plaintiff realleges and incorporates by reference, in this claim, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

89.     Plaintiff brings this negligent misrepresentation claim for relief against all Defendants (for purposes of this claim for relief, "Defendants").

90.     As detailed above, at all times relevant to this Complaint, Defendants knowingly engaged in acts involving negligent misrepresentations and negligent material omissions to Plaintiff's detriment.  Defendants knew or should have reasonably known that their negligent misrepresentations and negligent material omissions would harm Plaintiff. *See supra* § V.E.

91.     Nevertheless, Defendants intended for Plaintiff to rely on their negligent misrepresentations and negligent material omissions.

92.     Defendants' negligent misrepresentations and negligent material omissions induced Plaintiff to induce Plaintiff into agreeing to have the Manhattan Real Estate Fund loan documentation drafted without including Plaintiff as a named partner for a promise of future payments that Defendants knew or should have known they were never going to make.

93.     Plaintiff did reasonably rely on Defendants' negligent misrepresentations and negligent material omissions that kept Plaintiff from discovering the true nature of their scheme until December 2017.  As a result, Defendants' negligent misrepresentations and negligent material omissions directly, proximately, and substantially caused Plaintiff to suffer significant damages that continue to accrue.

WHEREFORE, Plaintiff prays for relief as set forth below.

**THIRD AMENDED COMPLAINT**

1

### FIFTH CLAIM FOR RELIEF

2

### BREACH OF FIDUCIARY DUTY

3

### (Aiding & Abetting)

4

(*Against All Defendants*)

5   94.    Plaintiff realleges and incorporates by reference, in this claim for relief, each

6   and every allegation of the preceding paragraphs, with the same force and effect as

7   though fully set forth herein.

8   95.    Plaintiff brings this breach of fiduciary duty claim for relief against all

9   Defendants (for purposes of this claim for relief, "Defendants").

10   96.    The 8BC and Kim Defendants owed a fiduciary duty to Plaintiff as

11   Plaintiff's business and joint venture partner in the Manhattan Fund.  Part of that

12   fiduciary duty included a duty to not take actions to circumvent Plaintiff's rights in the

13   partnership and joint venture.  The non-circumvention agreement was memorialized in

14   three written agreements, the First and Second NDNCAs, and an additional written non-

15   circumvention agreement in July 2015 that was authored by the 8BC Defendants and

16   executed with Omnia in July 2015.  All Defendants were aware of the Partnership, the

17   non-circumvention agreement, and the fiduciary duty 8BC owed to Plaintiff.

18   97.    Defendants 8BC and Kim breached their fiduciary duty devising and

19   executing a scheme to deliberately and fraudulently induce Plaintiff into a false sense of

20   security to not be included as a named partner on the loan documentation, through false

21   promises of future payments that Defendants never intended on making.

22   98.    Defendants' breach of fiduciary duty directly, proximately, and substantially

23   caused Plaintiff to suffer significant injury and damages that continue to accrue.

24   WHEREFORE, Plaintiff prays for relief as set forth below.

25

26

27

28

**THIRD AMENDED COMPLAINT**

## SIXTH CLAIM FOR RELIEF

### BREACH OF CONTRACT
### (Aiding & Abetting)

(*Against 8BC Inc., 8BC LLC, and Kim*)

99.   Plaintiff realleges and incorporates by reference, in this claim for relief, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

100.   Plaintiff brings this breach of contract claim for relief against Defendants 8BC Inc., 8BC LLC, and Kim (for purposes of this claim for relief, "Defendants") and makes allegations at all times relevant to this Complaint.

101.   On or about April 13, 2015, Defendants 8BC and Kim entered into a written non-circumvention agreement with Plaintiff (the First NDNCA) under which they agreed to not engage in any actions with any party for the purpose of avoiding payment to one another. *Supra* § V.B.

102.   Pursuant to this agreement, Plaintiff expended considerable resources for Manhattan Fund partnership and joint venture, including securing the Omnia client for the Partnership and spent hundreds of hours and incurred thousands of dollars in expenses to structure the EB-5 financing deal from which Omnia received tens of millions of dollars in funding and has paid millions of dollars in various forms of compensation to the 8BC Defendants. *Supra* § V.D.

103.   Defendants breached said agreement devising and executing a scheme to deliberately and fraudulently induce Plaintiff into a false sense of security to not be included as a named partner on the loan documentation, through false promises of future payments by Omnia that Defendants knew were never going to be made. Defendants engaged in this scheme to circumvent Corbus and did circumvent out of its compensation in violation of said agreement. *Supra* § V.E.  In fact, Defendants even continuously concealed and mispresented the fact that payments had become due when they did become due, and Plaintiff learned of this a year later from Paz's business

associate through Plaintiff's own diligence.

104.   Defendants' breach of contract directly, proximately, and substantially caused Plaintiff to suffer significant injury and damages that continue to accrue.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SEVENTH CLAIM FOR RELIEF

### BREACH OF CONTRACT
### (Aiding & Abetting)

(*Against 8BC Inc., 8BC LLC, and Kim*)

105.   Plaintiff realleges and incorporates by reference, in this claim for relief, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

106.   Plaintiff brings this breach of contract claim for relief against Defendants 8BC Inc., 8BC LLC, and Kim (for purposes of this claim for relief, "Defendants") and makes allegations at all times relevant to this Complaint.

107.   On or about April 30, 2015, Defendants 8BC and Kim entered into a written non-circumvention agreement with Plaintiff (the Second NDNCA) under which they agreed to not engage in any actions with any party for the purpose of avoiding payment to one another. *Supra* § V.B.

108.   Pursuant to this agreement, Plaintiff expended considerable resources for Manhattan Fund partnership and joint venture, including securing the Omnia client for the Partnership and spent hundreds of hours and incurred thousands of dollars in expenses to structure the EB-5 financing deal from which Omnia received tens of millions of dollars in funding and has paid millions of dollars in various forms of compensation to the 8BC Defendants. *Supra* § V.D.

109.   Defendants breached said agreement by devising and executing a scheme to deliberately and fraudulently induce Plaintiff into a false sense of security to not be included as a named partner on the loan documentation, through false promises of future payments by Omnia that Defendants knew were never going to be made. Defendants

engaged in this scheme to circumvent Corbrus and did circumvent out of its compensation in violation of said agreement. *Supra* § V.E. In fact, Defendants even continuously concealed and mispresented the fact that payments had become due when they did become due, and Plaintiff learned of this a year later from Paz's business associate through Plaintiff's own diligence.

110. Defendants' breach of contract directly, proximately, and substantially caused Plaintiff to suffer significant injury and damages that continue to accrue.

WHEREFORE, Plaintiff prays for relief as set forth below.

## EIGHTH CLAIM FOR RELIEF

### BREACH OF CONTRACT
### (Aiding & Abetting)

(*Against All Defendants*)

111. Plaintiff realleges and incorporates by reference, in this claim for relief, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

112. Plaintiff brings this breach of contract claim for relief against Defendants 8BC Inc., 8BC LLC, Kim, Omnia Ltd., Omnia LLC, and Paz (for purposes of this claim for relief, "Defendants") and makes allegations at all times relevant to this Complaint.

113. On or about July 12, 2015, Omnia, Paz, 8BC, and Kim entered into a written non-circumvention agreement with Plaintiff under which they all agreed to not engage in any actions with any party for the purpose of avoiding payment to one another. *Supra* § V.C.

114. Pursuant to this agreement, Plaintiff expended considerable resources for Manhattan Fund partnership and joint venture, including securing the Omnia client for the Partnership and spent hundreds of hours and incurred thousands of dollars in expenses to structure the EB-5 financing deal from which Omnia received tens of millions of dollars in funding and has paid millions of dollars in various forms of compensation to the 8BC Defendants. *Supra* § V.D.

115.   Defendants breached said agreement by devising and executing a scheme to deliberately and fraudulently induce Plaintiff into a false sense of security to not be included as a named partner on the loan documentation, through false promises of future payments by Omnia that Defendants knew were never going to be made.  Defendants engaged in this scheme to circumvent Corbrus and did circumvent out of its compensation in violation of said agreement.  *Supra*  § V.E. In fact, Defendants even continuously concealed and mispresented the fact that payments had become due when they did become due, and Plaintiff learned of this a year later from Paz's business associate through Plaintiff's own diligence.

116.   Defendants' breach of contract directly, proximately, and substantially caused Plaintiff to suffer significant injury and damages that continue to accrue.

WHEREFORE, Plaintiff prays for relief as set forth below.

## NINTH CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (Aiding & Abetting)

(*Against 8BC Inc., 8BC LLC, and Kim*)

117.   Plaintiff realleges and incorporates by reference, in this claim for relief, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

118.   Plaintiff brings this breach of contract claim for relief against Defendants 8BC Inc., 8BC LLC, and Kim (for purposes of this claim for relief, "Defendants") and makes allegations at all times relevant to this Complaint.

119.   On or about April 13, 2015, Defendants 8BC and Kim entered into a written non-circumvention agreement with Plaintiff (the First NDNCA) under which they agreed to not engage in any actions with any party for the purpose of avoiding payment to one another.  *Supra* § V.B.

120.   Pursuant to this agreement, Plaintiff did all or substantially all of the significant things the contract required. That is, Plaintiff expended considerable resources

for Manhattan Fund partnership and joint venture, including securing the Omnia client for the Partnership and spent hundreds of hours and incurred thousands of dollars in expenses to structure the EB-5 financing deal from which Omnia received tens of millions of dollars in funding and has paid millions of dollars in various forms of compensation to the 8BC Defendants. *Supra* § V.D.

121.   The 8BC Defendants unfairly interfered with Plaintiff's right to receive benefits under the non-circumvention agreement.  They did this by devising and executing a scheme to deliberately and fraudulently induce Plaintiff into a false sense of security to not be included as a named partner on the loan documentation, through false promises of future payments by Omnia that Defendants knew were never going to be made. Defendants engaged in this scheme to circumvent Corbrus and did circumvent out of its compensation in violation of said agreement. *Supra* § V.E.  In fact, Defendants even continuously concealed and mispresented the fact that payments had become due when they did become due, and Plaintiff learned of this a year later from Paz's business associate through Plaintiff's own diligence.

122.   Defendants' breach of the covenant of good faith and fair dealing directly, proximately, and substantially caused Plaintiff to suffer significant injury and damages that continue to accrue.

WHEREFORE, Plaintiff prays for relief as set forth below.

## TENTH CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (Aiding & Abetting)

(*Against 8BC Inc., 8BC LLC, and Kim*)

123.   Plaintiff realleges and incorporates by reference, in this claim for relief, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

124.   Plaintiff brings this breach of contract claim for relief against Defendants 8BC Inc., 8BC LLC, and Kim (for purposes of this claim for relief, "Defendants") and

makes allegations at all times relevant to this Complaint.

125. On or about April 30, 2015, Defendants 8BC and Kim entered into a written non-circumvention agreement with Plaintiff (the Second NDNCA) under which they agreed to not engage in any actions with any party for the purpose of avoiding payment to one another. *Supra* § V.B.

126. Pursuant to this agreement, Plaintiff did all or substantially all of the significant things the contract required. That is, Plaintiff expended considerable resources for Manhattan Fund partnership and joint venture, including securing the Omnia client for the Partnership and spent hundreds of hours and incurred thousands of dollars in expenses to structure the EB-5 financing deal from which Omnia received tens of millions of dollars in funding and has paid millions of dollars in various forms of compensation to the 8BC Defendants. *Supra* § V.D.

127. The 8BC Defendants unfairly interfered with Plaintiff's right to receive benefits under the non-circumvention agreement. They did this by devising and executing a scheme to deliberately and fraudulently induce Plaintiff into a false sense of security to not be included as a named partner on the loan documentation, through false promises of future payments by Omnia that Defendants knew were never going to be made. Defendants engaged in this scheme to circumvent Corbrus and did circumvent out of its compensation in violation of said agreement. *Supra* § V.E. In fact, Defendants even continuously concealed and mispresented the fact that payments had become due when they did become due, and Plaintiff learned of this a year later from Paz's business associate through Plaintiff's own diligence.

128. Defendants' breach of the covenant of good faith and fair dealing directly, proximately, and substantially caused Plaintiff to suffer significant injury and damages that continue to accrue.

WHEREFORE, Plaintiff prays for relief as set forth below.

**THIRD AMENDED COMPLAINT**

## ELEVENTH CLAIM FOR RELIEF

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (Aiding & Abetting)

(*Against All Defendants*)

129.   Plaintiff realleges and incorporates by reference, in this claim for relief, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

130.   8BC Inc., 8BC LLC, Kim, Omnia Ltd., Omnia LLC, and Paz (for purposes of this claim for relief, "Defendants") and makes allegations at all times relevant to this Complaint.

131.   On or about July 12, 2015, Omnia, Paz, 8BC, and Kim entered into a written non-circumvention agreement with Plaintiff under which they all agreed to not engage in any actions with any party for the purpose of avoiding payment to one another.  *Supra* § V.C.

132.   Pursuant to this agreement, Plaintiff did all or substantially all of the significant things the contract required. That is, Plaintiff expended considerable resources for Manhattan Fund partnership and joint venture, including securing the Omnia client for the Partnership and spent hundreds of hours and incurred thousands of dollars in expenses to structure the EB-5 financing deal from which Omnia received tens of millions of dollars in funding and has paid millions of dollars in various forms of compensation to the 8BC Defendants.  *Supra* § V.D.

133.   Defendants unfairly interfered with Plaintiff's right to receive benefits under the non-circumvention agreement.  They did this by devising and executing a scheme to deliberately and fraudulently induce Plaintiff into a false sense of security to not be included as a named partner on the loan documentation, through false promises of future payments by Omnia that Defendants knew were never going to be made. Defendants engaged in this scheme to circumvent Corbrus and did circumvent out of its compensation in violation of said agreement.  *Supra* § V.E.  In fact, Defendants even

**THIRD AMENDED COMPLAINT**

continuously concealed and mispresented the fact that payments had become due when they did become due, and Plaintiff learned of this a year later from Paz's business associate through Plaintiff's own diligence.

134.   Defendants' breach of the covenant of good faith and fair dealing directly, proximately, and substantially caused Plaintiff to suffer significant injury and damages that continue to accrue.

WHEREFORE, Plaintiff prays for relief as set forth below.

## **TWELFTH CLAIM FOR RELIEF**

## **RESTITUTION FOR UNJUST ENRICHMENT**

(*Against All Defendants*)

135.   Plaintiff realleges and incorporates by reference, in this claim for relief, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

136.   Plaintiff brings this unjust enrichment claim for relief against 8BC, Kim, Omnia, and Paz, (for purposes of this claim for relief, "Defendants") and makes allegations at all times relevant to this Complaint.

137.   As detailed above, Defendants actively engaged in, participated in, agreed to, aided and abetted, conspired in, and/or furthered a scheme by which they were unjustly enriched to the detriment of Plaintiff.

138.   Pursuant to agreements between the parties, Plaintiff expended considerable resources for Manhattan Fund partnership and joint venture, including securing the Omnia client for the Partnership and spent hundreds of hours and incurred thousands of dollars in expenses to structure the EB-5 financing deal from which Omnia received tens of millions of dollars in funding and has paid millions of dollars in various forms of compensation to the 8BC Defendants. *Supra* § V.D.  C

139.   By their wrongful acts and omissions, Defendants, and each of them, were unjustly enriched at the expense of and to the detriment of Plaintiff and/or while Plaintiff was unjustly deprived.  That is, Defendants' unlawful and deceptive actions induced

Plaintiff into a false sense of security to not be included as a named partner on the loan documentation, through false promises of future payments by Omnia that Defendants knew were never going to be made.

140.   Plaintiff seeks restitution from Defendants, and each of them, and seeks an order of this Court disgorging all payments, commissions, profits, benefits, and other compensation obtained by Defendants, and each of them, that rightfully belongs to Plaintiff.

WHEREFORE, Plaintiff prays for relief as set forth below.

## THIRTEENTH CLAIM FOR RELIEF

### VIOLATIONS OF RICO

(*Against Defendants 8BC Inc., 8BC LLC, and Kim*)

141.   Plaintiff realleges and incorporates by reference, in this claim for relief, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

142.   As alleged herein, Plaintiff brings this claim pursuant to 18 U.S.C. §§ 1962(c) and 1964 of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against Defendants 8BC Inc. and 8BC LLC (collectively, "8BC") and Kim (for purposes of this claim for relief, "Defendants").

143.   Among the unlawful activities prohibited under RICO is wire fraud in violation of 18 U.S.C. § 1343, as enumerated in 18 U.S.C. § 1961.

144.   Section 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore . . . and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).

145.   Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful

1    debt."  18 U.S.C. § 1962(c).

2         146.   For purposes of this RICO claim:

3              a.      Plaintiff is a "person," as that term is defined in 18 U.S.C. § 1961(3),

4    that was injured in its business or property as a result of Defendants' wrongful conduct.

5              b.      Defendant Kim is, and at all relevant times was, a "person" within the

6    meaning of 18 U.S.C. § 1961(3).

7              c.      8BC Inc. and 8BC LLC (alter egos of one another, as alleged above)

8    are enterprises as that term is defined in 18 U.S.C. § 1961(4) (collectively, the "8BC

9    Enterprise").

10             d.      By engaging in EB-5 financing projects that span both nationally and

11   internationally, the activities of the 8BC Enterprise affect interstate and foreign

12   commerce.

13        147.   Defendant Kim is engaged in a pattern of racketeering using the 8BC

14   Enterprise as follows:

15               **The Wire Fraud Scheme on Corbrus (Oct. 2015 – Nov. 2017)**

16        148.   As alleged above, Kim devised a scheme to defraud Plaintiff by making

17   false promises and assurances, and did defraud Plaintiff using the 8BC Enterprise and in

18   conducting its affairs; in doing so, Kim used the wire facilities of the United States in

19   violation of 18 U.S.C. § 1343.  (*See supra* First, Second, and Third Claims for Relief).

20        149.   From April 2015 to November 2015, Corbrus expended approximately 790

21   man-hours of Chang's skilled labor and time and thousands of dollars in expenses in

22   sourcing and structuring the Ace Hotel EB-5 Project for the benefit of the partnership and

23   joint venture with 8BC. *Supra* §§ V.B-D.

24        150.   However, as early as July 2015 (when Corbrus was doing significant work

25   on the project), 8BC/Kim was in talks with Moses Choi of Southeast Regional Center

26   ("SRC/Choi") behind Chang's back and unbeknownst to Chang, to partner up with Choi

27   on the Ace Hotel Project despite already having a partner in Corbrus. (Doc. 131 ¶¶ 24(a)-

28

(h), (k)-(l), (n)-(r).)[4]  And, while continuing to use Corbrus' resources to structure the deal, Kim had already planned to cut Corbrus out of the deal entirely, telling Choi that SRC would be the new partner on the Ace Hotel Project. When Choi inquired about Corbrus, Kim assured Choi that Kim would make sure Corbrus was not a problem. Kim, however, kept these partnership talks with Choi concealed from Corbrus/Chang and, instead, devised and executed a fraud scheme with David Paz in October 2015 to circumvent Corbrus out of its compensation in violation of the non-circumvention agreements and fiduciary duties owed to Corbrus.

151.  The object of the fraud scheme was to cut out Corbrus from the Manhattan Fund Partnership by convincing Chang (Corbrus) that it was better for Corbrus to *not* be included as a partner on the Manhattan Fund, but Corbrus would still be paid by Paz as the parties had contemplated. Kim pressured and convinced Chang that the raise would go faster and smoother without Corbrus on the loan offering documentation while concealing his true intention of recruiting SRC/Choi with promises of compensation from the same pot. While providing false assurances and leading Corbrus to believe that Kim would do whatever it took to make sure Corbrus' compensation was protected, Kim was also actively taking part in drafting documents that siphoned Corbrus' compensation to 8BC/Kim. Omnia/Paz participated in the scheme because Paz saw an opportunity to defraud Corbrus out of millions and keep they money for himself.

152.  Over the month of October 2015, Kim (8BC) and Paz (Omnia) assured Chang (Corbrus) that Kim would forgo earnings on the 8BC and Manhattan Fund side of the project so that Corbrus could continue to be made whole by Paz on the Omnia side— essentially that Corbrus would not be circumvented as agreed to by Kim (8BC) and Paz (Omnia) in the parties' agreements.  As it turned out, however, the entire discourse by Kim (8BC) and Paz (Omnia) was a charade and fraud designed to circumvent Corbrus. Kim was actually having documents drafted to take Corbrus' share.

---

[4] The various cited paragraphs from PACER document 131 are incorporated herein by reference.

**THIRD AMENDED COMPLAINT**

153.   Kim (8BC) and Paz (Omnia) aided and abetted one another to execute the fraud scheme by engaging in numerous acts using the interstate wire facilities of the United States as follows:

a.   Between approximately October 2 and 5, 2015, Kim (8BC) had phone conversations with Chang (Corbrus) discussing the structure of their co-equal partnership.  Kim attempted to convince Chang that it would be easier for Kim to close the deal with certain EB-5 sales agents if Corbrus was not named as a partner on the Manhattan Fund EB-5 loan documentation, because foreign sales agents would have questions about Corbrus, and answering those questions would delay the project. According to Kim, leaving Corbrus off the documentation would allow the project to move faster.  During these phone conversations Kim (8BC) promised repeatedly that he and Paz (Omnia) could establish a three-way arrangement for Corbrus by which Corbrus would receive acceptably equivalent benefits that it was entitled to as a partner on the Manhattan Fund.  Kim (8BC) assured Chang (Corbrus) that pursuant to the parties' NDNCAs and partnership/joint venture, the benefits due Corbrus would not be circumvented in any way and that Kim (8BC) would make sure of that. *This was all fake, however.* What Kim misrepresented was that he was not planning to protect his partner Corbrus' interest at all, but rather planning to draft loan documents to siphon Corbrus' interests to itself after convincing Corbrus to not be included on the loan offering. What 8BC/Kim also concealed from Corbrus was that 8BC was imminently planning to partner up with SRC/Choi by promising Choi significant sums from the same pot intended for Corbrus.

b.   On or about October 5, 2015, Kim (8BC) sent Chang (Corbrus) an email following up on their phone conversations where Kim (8BC) made the same false assurances.

c.   On or about October 6, 2015, Kim (8BC) sent Paz (Omnia) an email copying Chang (Corbrus) pretending to negotiate a three-way deal with Paz for Corbrus. This was part of a series of sham negotiations and pressure tactics deployed by 8BC/Kim

**THIRD AMENDED COMPLAINT**

and Omnia/Paz to mislead Corbrus into believing that Corbrus' full compensation would be protected by Kim and Paz.

      d.     Thereafter, between October 6 and 19, 2015, Kim (8BC) and Paz (Omnia) engaged in a series of sham negotiations with Chang (Corbrus) over the phone and email to induce Chang to not be included as a named partner on the Manhattan Fund loan offering documents.  Kim and Paz applied tremendous pressure and gave rosy false assurances to Chang during their phone conversations about Corbrus' interests being protected.  Some examples are provided below.

      e.     On or about October 12, 13, and 15, 2015, Kim (8BC) and Paz (Omnia) exchanged emails with Chang (Corbrus), engaging in sham negotiations in furtherance of the fraud scheme, discussing an arrangement to ensure Corbrus rights were protected but actually never intending to keep the arrangement.  These emails were intended to induce Chang into a false sense of security, and they had that effect.

      f.     On or about October 18, 2015, Kim (8BC) had a call with Chang (Corbrus), pressuring Chang to agree to not be named as a partner in the Manhattan Fund loan documents while assuring Chang that Kim (as Chang's partner) would not allow Chang to be circumvented or cut short in any way in terms of Corbrus' compensation. The series of calls and emails over time had the intended effect of inducing Chang into a false sense of security.

      g.     On or about October 19, 2015, Chang (Corbrus) met with Paz in person.  At the meeting, in furtherance of the fraud scheme, Paz assured Chang that Chang (Corbrus) would be made whole by Paz if Corbrus gave up its right to be included a named Manhattan Fund partner on the loan documentation. Paz (Omnia) followed up by agreeing in writing over text and email to compensate Corbrus.  After the discussion with Paz, Chang (Corbrus) had a call with Kim (8BC) during which Kim said Chang should agree to this deal and falsely reassured Chang that Kim (8BC) would not allow Corbrus to be circumvented or cut short in any way by Paz (Omnia), and that Corbrus should leave the partnership with full confidence that Kim (8BC) and Paz (Omnia) would

**THIRD AMENDED COMPLAINT**

work together to ensure that Corbrus received its compensation as promised and as agreed to under the non-circumvention agreements.

h.     At the time, because of Kim (8BC) and Paz's (Omnia) reassurances, Chang (Corbrus) had no idea that Paz (Omnia) never intended to follow through with making payments to Corbrus under the new three-way agreement—that Paz (Omnia) intended only to help Kim (8BC) dispose of Corbrus and avoid payment to Corbrus, in breach of the non-circumvention agreement Omnia had executed on or about July 12, 2015, as well as the non-circumvention agreements 8BC had executed in April 2015.

i.     In addition to paying Corbrus millions of dollars on the Ace Hotel Project, Paz (Omnia) also agreed to enter into a continuing consulting relationship with Corbrus on new projects by which Corbrus would be made whole with respect to the Manhattan Fund's ongoing relationship with Omnia on any new projects.  Paz (Omnia) stated that a more formal consulting agreement reflecting this would be executed after the rush of the Ace Hotel EB-5 financing documents was over.

j.     From approximately October 19 to 25, 2015, Kim (8BC) and Paz (Omnia) had phone conversations with Chang (Corbrus), insisting that Corbrus give up its partnership interest in the Manhattan Fund immediately due to the rush of the EB-5 loan offering documents, marketing materials, immigration filing package, and other documentation that needed to be drafted quickly.  Kim and Paz insisted that the drafting of the extensive documentation was time sensitive, that Corbrus would definitely be paid the compensation it was promised under the non-circumvention agreements when the payments became due (that is, after loan disbursement), and that Corbrus would also have additional consulting opportunities with Omnia. Throughout these sham negotiations and representations, both Kim (8BC) and Paz (Omnia) knew that they were planning to cut Corbrus of the deal entirely, but intentionally concealed this information from Corbrus.

k.     On October 25, 2015, induced by Kim (8BC) and Paz's (Omnia) false promises and assurances, Corbrus sent its lawyers an email stating Corbrus' intention to

**THIRD AMENDED COMPLAINT**

not be included as a named partner on the Manhattan Real Estate Fund loan documentation per discussions with "the project team" (meaning Kim (8BC) and Paz (Omnia)).  That week, the Jeffer Mangles lawyers had discussions with Kim (8BC), Paz (Omnia), and Chang (Corbrus) on the matter of Corbrus' resignation from the Manhattan Fund partnership.  Kim (8BC), Paz (Omnia), and Chang (Corbrus) communicated to Holmes and Pardee (Jeffer Mangels) that the Jeffer Mangels lawyers (Corbrus' lawyers) would need to draft a consulting agreement between Corbrus and Omnia for as promised. On or about the same day of this group conversation, Kim had private discussion with Jeffer Mangels behind Chang's back where they discussed that they would be abandoning Corbrus but never revealed this to Chang, which further showed Kim's fraudulent intent.  The gist of this conversation was later memorialized in a private email exchange between Kim and Jeffer Mangels on November 24, 2015.

l.     Based on the belief that his partner (Kim), his lawyers, and his business associate (Paz) were all being honest and forthright in their express and implied promises, commitments, covenants, and duties, Chang (Corbrus) agreed to allow the Manhattan Real Estate Fund loan documentation to be drafted without Corbrus being included as a named partner.

m.     Throughout the month of November 2015, while the EB-5 loan offering was being finalized, 8BC/Kim and Omnia/Paz continued to allow Chang (Corbrus) to falsely believe that Corbrus would be paid under the three-way deal and that the continuing consulting agreement was going to be drafted and executed once the rush of the EB-5 loan offering was completed.

n.     On or about December 1, 2015, in response to Chang's inquiries about the loan status, Kim (8BC) informed Chang (Corbrus) that the Manhattan Fund EB-5 loan agreement had been executed.  Kim left Corbrus with the impression that Corbrus would receive its compensation in due course by working directly with Omnia/Paz. What Kim concealed from Chang, however, was that the loan agreement Kim had privately negotiated and drafted behind Corbrus' back actually gave 8BC what

was supposed to be Corbrus' compensation.

154.   Thereafter, Paz (Omnia) continued to placate and deceive Chang about Corbrus' future compensation once the loan was funded and disbursed.

155.   Corbrus was never paid. In fact, Defendants even continuously concealed and mispresented the fact that payments had become due when they did become due, and Plaintiff learned of this a year later from Paz's business associate through Plaintiff's own diligence.

### The Wire Fraud Scheme on SRC/Choi (Oct. 2015 – Jan. 2017)

156.   After Corbrus/Chang had expended considerable resources (hundreds of hours) to source the Ace Hotel Project for the Manhattan Fund Partnership with 8BC, 8BC began having discussions with SRC/Choi behind Chang's back to cut Chang out and bring in Choi. (Doc. 131 ¶¶ 24(a)-(h), (k)-(l), (n)-(r).) Kim then proceeded to execute the fraud scheme on Corbrus, described in the preceding paragraphs, to cut Corbrus out and recruit Choi as the new partner/joint venturer.

157.   Kim continued to exploit Choi for money and resources, and had Choi wire hundreds of thousands of dollars for 8BC's benefit under the guise of pursuing a "partnership." Kim solicited the money over the course of twelve (12) interstate wire transfers that spanned from October 13, 2015 to January 17, 2017, into 8BC Inc.'s bank account.

158.   During this time, Kim continued to let Choi believe that Choi would be compensated as a partner in the Ace Hotel project, and Kim continued to engage in the fraud as long as Kim needed Choi.

159.   But just like with Plaintiff Corbrus, when SRC/Choi outlived their usefulness to 8BC/Kim, Kim put the final touches on his fraud scheme by secretly opening up a new company (8BC LLC) and new bank accounts at a new bank in December 2016 and transferred 8BC Inc.'s assets into the new company and its bank accounts behind Choi's back. Kim did this because Choi was aware of 8BC Inc. and its bank accounts and Kim wanted to cut off Choi completely by transferring everything

**THIRD AMENDED COMPLAINT**

over to a new company and new bank of which Choi would not be aware. Interestingly, Kim sent an email as late as January 3, 2017 (after having secretly opened the new accounts to circumvent Choi), to keep stringing Choi along and continue collecting money from Choi in pursuit of the joint venture, all the while intending to walk away with the fruits of the Ace Hotel Project without compensating Choi for Choi's contributions, just like Kim had done to Corbrus. Once the transfers were complete and Kim had walked away with the company, Kim abandoned Choi like he had abandoned Corbrus.

### **The Wire Fraud Scheme on EB-5 Applicants (Mar. 2019 – Nov. 2019)**

160.   On October 1, 2017, Kim directed a Private Placement Memorandum to be authored to raise additional EB-5 funds for the Ace Hotel Project (the "PPM"). This PPM was presented to potential EB-5 applicants to convince them to give 8BC/Kim money ($550,000 a piece) for the Ace Hotel Project. The applicants were led to believe that the primary purpose of the PPM was to give them full disclosure so that they could make an informed decision about allocating their funds to the Ace Hotel EB-5 Project. Of high importance, the potential applicants were entitled to know about all of Kim's compensation and any conflicts of interest Kim might have that could potentially prevent him from serving the applicants' interests and protecting their funds, as Kim was the fund manager.

161.   From March 2019 through November 2019, 8BC/Kim actively recruited potential applicants on the basis of this PPM. In the PPM, Kim made the representation that the "General Partner," i.e., Kim, was not "affiliated with, or related to, Omnia in any manner whatsoever" and did not "have any interest in the Project" other than a small 3% equity interest. This was blatantly false and Kim knew it. Because in reality, Kim was planning to and did leverage the EB-5 loans to acquire approximately 25% of David Paz's company that held a 37% equity interest in the Ace Hotel Project, which amounts to millions of dollars equity interest in the Ace Hotel for Kim. Kim acquired this millions of dollars in interest for a mere $10 in consideration. Paz oddly agreed to hold a "note" in

**THIRD AMENDED COMPLAINT**

the amount of $4.5 million (the exact amount of the 2019 EB-5 raise) at a rate of 4.37% (the exact percentage of the 2019 EB-5 raise) with an agreement to not collect any interest on the loan until an essentially indefinite maturity date, which was set as: (i) whenever the hotel was sold by Paz; (ii) when Kim decided to pay; or (iii) "twenty-one (21) years from the death of the last to die of President Obama's children." This agreement immediately gave Kim millions in equity in the Manhattan Ace Hotel that would certainly appreciate considerably, and Kim could hold this interest almost indefinitely. This was nothing other than a secret equity reward of millions covertly given to Kim for the Ace Hotel EB-5 funding. The deal was purposely structured in a manner to be hidden from everyone.[5]  In order to keep the deal concealed, Kim even went out of his way to acquire this 25% interest in Paz's company in the name of another non-EB-5 company (Maru Assets, LLC) despite the fact that the acquisition was clearly related to the EB-5 loans.

162.   Furthermore, not only did Kim hide this compensation from the EB-5 applicants who were entitled to know it before giving Kim their money, he also hid the fact that he had become part developer in the Project by virtue of his 25% acquisition of Paz's company when the PPM led applicants to believe that Kim did not have any significant interest in the Project. This created an enormous conflict of interest putting the applicant's money at greater risk by having the manager of the funds also secretly becoming the borrower. That is, by acquiring a significant equity stake on the borrower's side, Kim could potentially benefit from a default on the loan, and all his EB-5 applicants were entitled to know this since they had trusted Kim with their money based on the representations (or misrepresentations) he had made to them in the PPM.

163.   In total, Kim actively recruited nine (9) applicants under this false pretense and caused at least nine international wire transfers each of approximately $550,000. Kim also allowed the remaining forty-nine (49) applicants already in the program to go

---

[5] Defendants withheld from production the documents that reflected this clandestine deal until they were forced to produce the documents when its details came up in the deposition of an 8BC 30(b)(6) witness (not Kim).

on believing that Kim has a very minimal personal interest in the Ace Hotel Project when this is far from true. This is fraud on these applicants, and they continue to sit on a potential default time bomb without having been apprised of the risks they have actually assumed.

164.   Based on the foregoing, it is apparent that Kim controls the 8BC Enterprise and conducts the Enterprise's activities through a pattern of wire fraud.  By engaging in three known wire fraud schemes spanning from October 2015 through April 2020, Kim has been engaged in a pattern of wire fraud through 8BC (i.e., racketeering activity) for years, which establishes both open- and closed-ended continuity. Indeed, just the first two fraud schemes perpetrated on Corbrus and Choi that spanned from October 2015 through January 2017 by themselves establish closed-ended continuity,[6] not to mention the fraud perpetrated on the EB-5 applicants in 2019. Moreover, Kim's conduct demonstrates that defrauding people through his 8BC enterprise time and again is a regular way of business for Kim and his continuous wire fraud schemes throughout the years with multiple victims shows that the wire fraud schemes threaten repetition, establishing open-ended continuity.

165.   Kim's wire fraud schemes have the same or similar purpose, result, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events in that Kim has used the same 8BC Enterprise and method of commission (wire fraud) to defraud two distinct EB-5 joint venture partners (Plaintiff in this case and the plaintiff in the Choi case) out of their rightful compensation in the Ace Hotel EB-5 Project, and to also defraud numerous individuals who Kim recruited into the EB-5 program without properly informing them of the attendant risks and instead falsely representing and hiding his compensation and conflict of interest in soliciting their money.

---

[6] *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995) (A thirteen-month period is "a substantial period of time" for purposes of closed-ended continuity, but even less than a year may be sufficient, because continuity is a "flexible" concept); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987) (thirteen-month embezzlement scheme sufficient to establish pattern).

166.   As a result of his pattern of racketeering activity, Kim has unfairly reaped substantial revenue from the Ace Hotel Project, a significant portion of which rightfully belongs to Plaintiff Corbrus. In addition to not receiving the compensation Corbrus is entitled to under 8BC and Corbrus' partnership, joint venture, and non-circumvention agreements, Corbrus has also suffered significant losses in form of nearly 790 man-hours of skilled labor and time and thousands of dollars in company expenses incurred for the benefit of the Ace Hotel Project. Defendants' RICO violations thus directly, proximately, and substantially caused Plaintiff to suffer significant injury and damages that continue to accrue.

WHEREFORE, Plaintiff prays for relief as set forth below.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant judgment against Defendants as follows:

1.      Compensatory damages in an amount according to proof;

2.      Disgorgement of assets according to proof;

3.      Costs, restitution, and multiple damages under state law;

4.      Treble damages under RICO;

5.      Punitive and exemplary damages under state law;

6.      Any and all applicable statutory and civil penalties;

7.      Pre- and post-judgment interest on any amounts awarded;

8.      An award of attorneys' fees and costs, including expert costs;

9.      A declaration that all applicable statutes of limitations are tolled under the discovery rule and/or the fraudulent concealment doctrine as alleged in this Complaint, and that Defendants are estopped from relying on any statute of limitations as a defense;

10.     An order enjoining Defendants from dissipation of assets and fraudulent transfer to avoid judgment;

11.     Leave to amend this Complaint to conform to the evidence produced in

-45-
**THIRD AMENDED COMPLAINT**

1    discovery and at trial; and

2          12.    Such other and further relief as the Court deems just and proper.

3

4                              **<u>JURY DEMAND</u>**

5          Plaintiff hereby demands a trial by jury on all triable issues.

6

7

8    Dated:  April 21, 2021                ALMADANI LAW

9                                          By:      */s/ Yasin M. Almadani*
10                                                 Yasin M. Almadani, Esq.

11
                                           AI LAW, PLC
12

13                                         By:      */s/ Ahmed Ibrahim*
                                                   Ahmed Ibrahim, Esq.
14

15                                         Attorneys for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD AMENDED COMPLAINT**