**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:19-cv-10182-CAS(AFMx) | | Date | July 1, 2021 |
|---|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      (IN CHAMBERS) - 8th BRIDGE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 172, filed May 3, 2021)

PAZ DEFENDANT'S NOTICE OF JOINDER IN 8TH BRIDGE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 173, filed May 3, 2021)

## I.     INTRODUCTION

Plaintiff Corbrus, LLC ("Corbrus") filed this action against defendants Young Hun Kim ("Kim"), 8th Bridge Capital, Inc., and 8th Bridge Capital, LLC (collectively, the "8th Bridge defendants"); and defendants David Paz ("Paz"), Omnia Group, Ltd., and Omnia Properties, LLC (collectively, "the Paz defendants"); and a number of other defendants on November 30, 2019. Dkt. 1. On July 30, 2020, the Court consolidated this action for trial with an earlier action brought by Moses Choi ("Choi") and Southeast Regional Center, LLC ("SRC") (collectively, the "Choi parties"). Dkt. 71; see also Case No. 2:17-cv-08958 ("Choi dkt."), dkt. 199. Corbrus' claims arise out of an agreement made in 2015, on its behalf, by its principal, Fu-Shen Chang ("Chang"), to enter into a partnership, known as "the Manhattan Fund," with the 8th Bridge defendants to provide EB-5 financing for the Paz defendants' real estate projects, including the Ace Hotel in New York City. See generally dkt. 163 ("TAC"). According to Corbrus, however, Kim and Paz fraudulently induced Corbrus to relinquish its partnership interest in the Manhattan Fund in October 2015, by falsely representing that Corbrus would be made whole by being paid as a consultant. Id.

### A.     The Paz Defendants' Motions to Dismiss

Prior to the order of consolidation, Corbrus filed a first amended complaint in its action on December 12, 2019. Dkt. 7. The 8th Bridge defendants answered on February

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | | Date | July 1, 2021 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | | |

24, 2020. Dkts. 36-38. On February 21, 2020, the Paz defendants filed a motion to dismiss. Dkt. 34. On April 20, 2020, the Court granted the motion to dismiss and dismissed Corbrus' claims against the Paz defendants, without prejudice. Dkt. 51. The Court concluded that the statute of limitations on Corbrus' fraud and deceit claim began to run in October 2015, and that Corbrus failed to adequately alleged a basis for tolling pursuant to either the delayed discovery rule or the doctrine of fraudulent concealment. Dkt. 51 at 7.

Corbrus filed a second amended complaint on May 20, 2020, asserting a total of 15 claims for relief. Dkt. 55 ("SAC"). On June 12, 2020, the Paz defendants filed a motion to dismiss the second amended complaint, arguing primarily that Corbrus' action is barred by the applicable statutes of limitations. Dkt. 62 at 1. On July 27, 2020, the Court granted in part and denied in part the Paz defendants' motion to dismiss, concluding that the second amended complaint provided a basis for finding, at the pleading stage, that the relevant statutes of limitations were tolled until November 2017. Dkt. 68 at 11.

B.      The 8th Bridge Parties' Motion for Judgment on the Pleadings

On March 12, 2021, the 8th Bridge defendants filed a motion for partial judgment on the pleadings as to the fifteenth claim for relief asserted in Corbrus' second amended complaint, for violation of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), 1964. Dkt. 112. On April 12, 2021, the Court granted the motion for partial judgment on the pleadings, with leave to amend as to the RICO claim only, finding that the SAC failed to allege sufficient facts to plead racketeering activity or a pattern of racketeering activity to support its RICO claim. Dkt. 158 ("Prior Order").

Corbrus subsequently filed its operative third amended complaint on April 21, 2021, asserting thirteen claims for relief for: (1) intentional misrepresentation, against all defendants; (2) fraud by concealment, against the 8th Bridge defendants; (3) fraud by concealment, against all defendants; (4) negligent misrepresentation, against all defendants; (5) breach of fiduciary duty, against all defendants; (6) breach of contract, against the 8th Bridge defendants; (7) breach of contract, against the 8th Bridge defendants; (8) breach of contract, against all defendants; (9) breach of the covenant of good faith and fair dealing, against the 8th Bridge defendants, (10) breach of the covenant of good faith and fair dealing, the 8th Bridge defendants; (11) breach of the covenant of good faith and fair dealing, against all defendants; (12) unjust enrichment, against all defendants, and (13) violation of RICO, against the 8th Bridge defendants. Dkt. 163 ("TAC").

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
|----------|------------------------|------|--------------|
| Title    | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

### C.     The Present Motion

On May 3, 2021, the 8th Bridge defendants filed a motion for partial summary judgment, dkt. 171 ("MSJ"), along with a statement of undisputed facts, dkt. 171-6 ("SUF). The Paz defendants filed a joinder in the 8th Bridge defendants' motion for partial summary judgment on May 3, 2021.  Dkt. 173 ("Joinder").  On May 24, 2021, Corbrus filed oppositions to the 8th Bridge defendants' motion for partial summary judgment, dkt. 195 ("MSJ Opp'n"), and the Paz defendants' joinder, dkt. 193 ("Joinder Opp'n").  Corbrus also filed a statement of genuine disputes of material fact ("GDF") and statement of additional material facts ("SAMF"), dkt. 198, and objections to defendants' declaration evidence, dkt. 194.  Dkt. 200.  On June 7, 2021, the Paz defendants filed an omnibus reply in support of the motion for partial summary judgment, dkt. 205 ("MSJ Reply"), and a response to Corbrus' evidentiary objections, dkt. 205-2.

On May 25, 2021, Corbrus and the 8th Bridge parties notified the Court that they had reached a settlement agreement.  On June 15, 2021, Corbrus and the 8th Bridge defendants stipulated to a dismissal with prejudice of all claims against the 8th Bridge defendants in this action; all claims against the Paz defendants remain pending before the Court.[1]

The Court held a hearing on the motion for summary judgment with respect to the Paz defendants on June 21, 2021.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.     Background

### a.  Motion for Partial Summary Judgment

The following facts are not meaningfully disputed and are set forth for purposes of background.    Unless otherwise noted, the Court references only facts that are uncontroverted and as to which evidentiary objections have been overruled.

---

[1] In light of the dismissal of all claims against the 8th Bridge defendants, the 8th Bridge defendants' motion to dismiss the thirteenth claim in the third amended complaint, dkt. 171, is **DENIED AS MOOT**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
|----------|-------------------------|------|--------------|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

### a. The Agreements Between the Parties

On July 12, 2015, the 8th Bridge, Paz, and Corbrus signed a Letter of Intent and Term Sheet, which set forth the terms and conditions under which those parties would work together on two separate projects: (1) the Ace Hotel Project, for the development of the Ace Hotel in Manhattan; and (2) a separate condominium development project, termed the "54th St. Project."[2] SUF ¶¶ 45, 48. The July 12, 2015 Term sheet includes a clause stating that it supersedes all prior understandings between the parties, and a non-circumvention provision that prohibits the parties from directly or indirectly seeking to avoid payment to each other. SUF ¶¶ 47, 49, 50. Corbrus was a party to the July 12, 2015 Letter of Intent and Term Sheet and alleges that it relied on the Term Sheet in its interactions with the 8th Bridge and Paz defendants. SUF ¶ 46.

The July 12, 2015 Letter of Intent and Term Sheet attaches a Gantt bar chart projecting the schedule for certain events related to the Manhattan Fund (the "Gantt chart"), which projects loan disbursements to the Manhattan Fund beginning in 2016.[3] Chang testified that he received the Gantt chart and understood it to "project[] possibly that the second tranche may start disbursement as soon as 2016, last week in February, though I

---

[2] The 8th Bridge and Corbrus parties also agreed to two Non-Disclosure and Non-Circumvention Agreements ("NDCAs") on April 13, 2015 and April 30, 2015. See SUF ¶¶ 43, 44, 51. It is undisputed the Paz defendants were not party to those earlier agreements.

[3] The Court **OVERRULES** Corbrus' authentication and relevancy objections to this document. See dkt. 194 No. 1. First, the version of this document that is attached to the Term Sheet is marked with document identifier number "CORBRUS_000236," which is consistent with the labeling that Corbrus has used when producing other documents in this litigation, indicating that Corbrus produced the Gantt chart. Dkt. 172-5 at 19; see also McQueeney v. Wilmington Tr. Co., 779 F.2d 916, 929 (3d Cir. 1985) (determining that plaintiff's production of documents was "probative" on issue of authentication). Second, the Court finds the Gantt Chart relevant to the question of Chang's expectations as to disbursement of the loan proceeds. In addition, the Court **OVERRULES** Corbrus' hearsay objection to this document, to the extent that it is introduced to demonstrate the Gantt Chart's effect on Chang, rather than for its truth.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

think it would be April." SUF ¶ 26. Chang further testified that he understood that he would be paid by Paz "once the EB-5 loan has been paid [and] disbursed." SUF ¶ 27.

### b. Corbrus Resigns from the Manhattan Fund

In early October 2015, it was decided that Corbrus would not be listed as a co-general partner on the Ace Hotel project and that Corbrus would instead work as a consultant for the Paz defendants on the borrower side of the EB-5 transaction.[4] SUF ¶ 5. On October 13, 2015, Chang and Paz exchanged text messages in which Paz wrote "I feel that the terms are very harsh" as proposed by Kim, and Chang responded "I agree, let me get you out and move to the next loan." SUF ¶ 52. On October 14, 2015, Chang emailed Paz regarding a proposal from Kim as to the loan payment model, writing: "Speaking as your consultant, I know its getting pricy and as I said, I can find cheaper money if you like to explore this option […] If you decide to switch horse [sic], then you and I have to take over the GP role."[5] SUF ¶ 55. On October 19, 2015, Chang emailed Paz with another compensation proposal, writing: "Before I talk to Young [Kim], here are my thoughts. I think if everyone takes a half step back, we can wrap this up. Young wants to market this as a 5 year term loan, so on paper let's give him 0.5% penalty for year 6 and 7. He is taking more equity ($1.2mm vs $800k early at year 2, so he should not take the whole 1% in his pocket." SUF ¶ 56. Chang testified that he did not recall speaking to Kim about these separate conversations with Paz. SUF ¶ 54.

On October 19, 2015, Chang and Paz agreed that Corbrus would be paid $1.2 million upon disbursement of the loan, and an additional $100,000 per year for seven years thereafter.[6] SUF ¶ 7. On October 25, 2015, Chang sent an email to a thread including Paz and Kim stating: "Per discussions among the project team, Corbrus shall resign from GP role from the EB-5 LP." SUF ¶ 8. Paz testified that weeks later, he changed his mind

---

[4] The parties frequently refer to Corbrus and Chang interchangeably in their filings and testimony. The court assumes, however, that the parties intend to refer to Corbrus when addressing the general partnership interest, because Corbrus is the entity listed as a general partner by the July 12, 2015 Letter of Intent and Term Sheet. See dkt. 17-5 at 14-15.

[5] Corbrus' argument that defendants' reliance on this email is misplaced does not create a triable issue as to the existence of this email or its contents. See GDF ¶ 55.

[6] Corbrus disputes this fact, but cites to no evidence that is sufficient to raise a triable issue of fact as to the financial terms of Chang's agreement with Paz. See GDF ¶ 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

about the October 19, 2015 agreement with Corbrus, after determining that the $1.9 million he had agreed to pay was excessive.  SUF ¶ 9.

On November 13, 2015, Orly Hazan ("Hazan") and Hakan Haskalp ("Haskalp") held a meeting with Chang at Paz's offices in New York City, during which Corbrus' compensation was discussed.  SUF ¶¶ 12–15.  Later that day, Chang contacted Kim regarding the meeting with Hazan via text message, telling Kim "I think we have a big issue."  SUF ¶ 17.  Chang also emailed Cathy DeBono, 8th Bridge's corporate counsel, asking: "is my consulting agreement ready for review, I believe the language will more or less mirror the equity reward agreement between Omnia and 8BC […] Among the 3 parties, I think it would be prudent that we execute all documents together to make the deal binding."  Dkt. 172-5 at 56; SUF ¶ 18.

On November 24, 2015, Kim emailed Chang regarding the equity award agreement.  SUF ¶ 19.  On November 25, 2015, Kim's associate Alex Youm emailed Chang the 8th Bridge Equity Sharing Agreement, at Chang's request.  SUF ¶ 20.

On December 1, 2015, Chang sent Paz a draft "EB-5 Consulting Service Agreement," which included provisions addressing Corbrus' compensation for its work on the Ace Hotel Project.  SUF ¶ 21.  The proposed agreement provides that "CORBRUS shall receive a Consulting Fee of One Hundred Fifty Thousand Dollars ($150,000) per year for five (5) years from OMNIA" and, further, that upon funding of the EB-5 loan, "OMNIA shall share with CORBURS [sic] an amount equal to Two Percent (2%) of the equity interest in the Project or a cash equivalent of One Million and Two Hundred Thousands Dollars ($1,200,000).").  Dkt. 172-3 at 53; SUF ¶ 21.  On the same day, Chang emailed Paz, Kim, and DeBono stating that he was not aware that the EB-5 loan agreement had been executed and explaining: "My condition of not serving as GP is CONTINGENT upon the consulting agreement being executed with David and also proper releasing of Corbrus."  SUF ¶ 22.  Chang testified that he would not have relinquished Corbrus' role as co-general partner based on nothing more than a request or instruction from Kim, SUF ¶ 60, and instead relied on his "agreement for compensation […] with Young and David [reached] on October 19, 2015," under which Corbrus would be compensated by Paz.  SUF ¶ 10, 61-6.

On December 2, 2015, Chang sent Paz an email attaching two new proposed "Chang-Omnia" Mutual NDCAs, one for the "Ace condo project," and the other for the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

"54th project," without including Kim on the email.[7]  SUF ¶ 58. On December 8, 2015, Paz emailed Chang to propose two one-page agreements regarding Corbrus' compensation for the "eb-5 raise commission agreement" and the possible joint "54 st" project.  SUF ¶ 23.  Chang rejected each of Paz's proposed agreements.  SUF ¶ 23.

### c. Corbrus' Subsequent Interactions with 8th Bridge and the Paz Defendants

Corbrus claims that between March 2016 and November 2017, it "made diligent efforts to check in once a month to once every two months with Paz and/or his business associate, Hakan Haskalp, the broker who referred the project to Corbrus and whose wife was the controller for Omnia, to learn whether the loan had been funded and disbursed in order to know when payment to Corbrus would become due." SUF ¶ 28 (quoting dkt. 172-4 at 34).  Corbrus also checked in by phone with Kim several times in October, November, and December 2015.  SUF ¶ 32.

Chang testified that between 2016 and 2017, he relied on Haskalp and Haskalp's wife as a source of information as to when the loan would be disbursed.  SUF ¶ 29.  In 2017, Haskap responded to an inquiry from Chang and informed him that the loan funds had been disbursed and Paz had received $12.5 million.[8]  SUF ¶ 31.  Halskap testified that, beginning in 2015, Chang frequently complained to him that he felt Corbrus had been treated unfairly on the Ace Hotel Project but remained "hopeful" regarding Corbrus' business relationship with Paz.  SUF ¶¶ 35-37.  Haskalp testified that during that period, Chang expressed concern that Paz would not pay what Corbrus was owed from the Ace Hotel Project because he "was concerned and angry and frustrated because [Corbrus was] pushed out by Young and [Paz] together" and "was really wondering why [is Corbrus] pushed out, what is going on."  SUF ¶¶ 38, 39.  Haskalp further testified that at some time during the November 2015 meeting with Hazan and the loan disbursement, Chang told him he was considering retaining counsel to go after Kim and Paz, and that in Haskalp and Chang's business "until the last minute, you always keep your goodwill."  SUF ¶¶ 40-41.

---

[7] The Court **OVERRULES** Corbrus' authentication and foundation objections to this email. This document is marked "Corbrus_000959" which is consistent with the labeling that Corbrus has used when producing other documents in this litigation, indicating that Corbrus produced this document.  Dkt. 172-4 at 53; see also McQueeney 779 F.2d at 929.
[8] The parties dispute the exact date on which this disclosure occurred.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
|----------|-------------------------|------|--------------|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

The first payment on the EB-5 Ace Hotel loan was disbursed on November 17, 2016. Dkt. 34-1; SUF ¶ 42.

On November 6, 2017, Chang sent an email to Kim stating "[i]t has been almost two years since we have spoken last. I am writing this email to inquire about the funding status of the Manhattan Real Estate Fund, LP to Omnia Group." SUF ¶ 34. Chang requested a set of the Manhattan Fund's accounting and loan transaction documents, in connection with his inquiry. See Id.

## III.   LEGAL STANDARDS

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out "specific facts showing a genuine issue for trial" in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
|----------|-------------------------|------|--------------|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

## IV.  DISCUSSION

On May 3, 2021, the Paz defendants, who are the sole remaining defendants in this litigation, filed a notice of joinder as to the 8th Bridge defendants' motion for partial summary judgment, joining in the 8th Bridge defendants arguments "that Corbrus's claims against them are time-barred and that Corbrus cannot prove its breach of contract [or] breach of the covenant of good faith and fair dealing" claims.  Joinder at 2.  The Paz defendants' joinder applies to each of the claims Corbrus has asserted against the Paz defendants in this action.  Id.

In addition, the Paz defendants' notice of joinder asserts additional arguments that: (1) no circumvention in breach of the July 12, 2015 letter could have occurred, because Corbrus voluntarily resigned as a general partner; (2) the non-circumvention clause was a "no-shopping" provision, and did not prevent "the borrower from doing business with the lending entity after one of its general partners resigned; and (3) "Corbrus understood that it was perfectly appropriate for Chang to compete with Kim/8th Bridge" for Paz's business after agreeing to become a consultant on the Ace Hotel project.  See Joinder at 3-4. However, the Paz defendants do not cite to any undisputed facts—as articulated in the 8th Bridge defendants' statement of undisputed facts or in a separate statement of undisputed facts—in support of these additional arguments, nor do they otherwise point to record evidence sufficient to demonstrate a triable issue of material fact as to these contentions.[9] Accordingly, the Court finds that the Paz defendants fail in the first instance to carry their burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of these additional arguments. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Federal Rule of Civil Procedure 56 ("A party asserting that a fact cannot be or is genuinely disputed must support

---

[9] In their reply brief, the Paz defendants argue that the Court should not discount these additional arguments because the Paz defendants are entitled to rely on 8th Bridge's statement of undisputed facts. However, the Paz defendants did not identify any specific evidence put forward by 8th Bridge's statement of undisputed facts upon which the additional arguments rely.  The defect in this instance is that the Paz defendants' Joinder identifies no specific undisputed evidence in support of its arguments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

that assertion by citing to particular parts of materials in the record …."); C.D. Cal. Local Rule 56-1 (requiring the party moving for summary judgment to "set forth the material facts as to which the moving party contends there is no genuine dispute" by lodging a "Statement of Uncontroverted Facts and Conclusions of Law.").

Accordingly, the question presently before the Court is whether the Paz defendants are entitled to summary judgment either on the grounds that each of Corbrus's claims are barred by the relevant statutes of limitations, or on the ground that Corbrus cannot demonstrate breach of contract as a matter of law. The Court addresses each argument in turn.

### A. Statute of Limitations

The Paz defendants seek summary judgment on the ground that each of Corbrus' claims against them are barred by the relevant statute of limitations. The Paz defendants contend that Corbrus filed this action on November 30, 2019, more than four years after Corbrus resigned as a general partner in the Manhattan Fund, and more than three years after the EB-5 loan was disbursed in November 2016. MSJ at 9, 14. Specifically, the Paz defendants argue that Corbrus was placed on notice "that he was defrauded and circumvented out of his agreed upon Ace Hotel project compensation" as of "two separate incidents [that were] sufficient to put it on notice of harm in November 2015 and December 2015," and therefore that each of Corbrus' tort and contract claims accrued at that time.[10] MSJ at 13. In addition, the Paz defendants contend that Corbrus should have known he was harmed after the EB-5 "loans were disbursed in mid-November 2016, more than three years before this lawsuit was filed." MSJ at 17.

In opposition, Corbrus argues that none of its claims against the Paz defendants accrued "until November 6, 2017, when [Chang] first learned that the loan for the Ace Hotel project may have been funded and, yet he had not been paid the compensation which

---

[10] The Paz defendants appear to concede that none of Corbrus' claims accrued when it resigned as a general partner in the Manhattan Fund on October 25, 2015. See MSJ at 12-13. However, even assuming the injury or breach took place on October 25, 2015, material factual disputes exist as to whether the Paz and 8th Bridge defendants fraudulently concealed their circumvention of Corbrus's role and their intentions to avoid paying the fees Corbrus claims it is owed that would preclude a determination that Corbrus' claims are time-barred as a matter of law. See generally, infra.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

he was owed." MSJ Opp'n at 11. Corbrus explains that each of its claims allege that it was "circumvented and defrauded out of […] compensation [Corbrus] was expecting from sourcing and structuring a complex EB-5 loan project [and that] was supposed to be triggered upon disbursement of the loan [Corbrus] helped arrange." Id. at 9.

Each of Corbrus' claims against the Paz defendants—for intentional misrepresentation, fraudulent concealment, negligent misrepresentation, breach of fiduciary duty, breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment—arises under California law. In a federal court action, "[s]tate law determines when the statute of limitations begins to run on state claims." Hubbard v. Municipality of Metro. Seattle, 42 F.3d 1400 (9th Cir. 1994) (citing Norco Const., Inc. v. King County, 801 F.2d 1143, 1145 (9th Cir.1986)). The Court thus looks to California law to resolve the present motion.

### a. Applicable Limitations Periods

In California, "the nature of the right sued upon, not the form of action or the relief demanded, determines the applicability of the statute of limitations." Jefferson v. J.E. French Co., 54 Cal.2d 717, 718, 7 Cal.Rptr. 899, 355 P.2d 643 (1960). As such, the relevant question in determining the applicable statute of limitations period is "to identify the nature of the cause of action, i.e. the 'gravamen' of the cause of action […] [neither] the form of action nor the relief demanded determines the applicability of the statute of limitations" under California law. Thomson v. Canyon, 198 Cal. App. 4th 594, 606, 129 Cal. Rptr. 3d 525, 534 (2011).

### i. Fraud-Based Claims

Under California Code of Civil Procedure § 338, claims for "actual fraud [including] causes of action based on fraudulent concealment" are subject to a three-year statute of limitations period. See Stueve Bros. Farms, LLC v. Berger Kahn, 222 Cal. App. 4th 303, 321, 166 Cal. Rptr. 3d 116, 130 (2013). Courts have applied either a two-year or three-year statute of limitations period to negligent misrepresentation claims, depending on the nature of the allegations which form the basis for the negligent misrepresentation claim. William L. Lyon & Assocs., Inc. v. Superior Ct., 204 Cal. App. 4th 1294, 1313, 139 Cal. Rptr. 3d 670, 684 (2012), as modified on denial of reh'g (May 11, 2012). If considered a negligence claim, then a claim for negligent misrepresentation is subject to a two-year limitations period. Id. If the negligent misrepresentation claim is considered a fraud claim,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
|----------|--------------------------|------|--------------|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

then a three-year statute of limitations applies. Id. Here, consistent with its determination at the motion to dismiss stage, because Corbrus' negligent misrepresentation claims are based on the Paz defendants' alleged fraud, the Court applies a three-year limitations period to Corbrus' negligent misrepresentation claim.

Accordingly, the limitations period applicable to Corbrus' first, third, and fourth claims is three years.

### ii.  Contract-Based Claims

In California, actions for breach of a written contract are subject to a four-year limitations period. Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1387, 11 Cal. Rptr. 3d 412, 421 (2004) (quoting Cal. Civ. Proc. § 337(1)). Likewise, the limitations period for a contract claim for breach of the implied covenant of good faith and fair dealing is four years. Archdale v. Am. Internat. Specialty Lines Ins. Co., 154 Cal. App. 4th 449, 479, 64 Cal. Rptr. 3d 632, 658 (2007).

Accordingly, the limitations period applicable to Corbrus' eighth and eleventh claims is four years.

### iii.  Breach of Fiduciary Duty

"The statute of limitations for breach of fiduciary duty is three years or four years, depending on whether the breach is fraudulent or nonfraudulent." Am. Master Lease LLC, 225 Cal. App. 4th at 1479. "The limitations period is three years ... for a cause of action for breach of fiduciary duty where the gravamen of the claim is deceit, rather than the catchall four-year limitations period that would otherwise apply." Fuller v. First Franklin Fin. Corp., 216 Cal. App. 4th 955, 963 (2013). Moreover, "[t]he statute of limitations for a cause of action for aiding and abetting a tort generally is the same as the underlying tort." Am. Master Lease LLC, 225 Cal. App. 4th at 1478.

Here, Corbrus argues that the Court should apply a four-year limitations period to its "fifth claim for breach of fiduciary duty because in cases where the claim sounds in both tort and contract, California permits the party to elect a remedy and applies the appropriate limitations period." MSJ Opp'n at 12 (quoting Solomon v. N. Am. Life & Cas. Ins. Co., 151 F.3d 1132, 1137-38 (9th Cir. 1998). The Court observes that Corbrus' claim against the Paz defendants for aiding and abetting the 8th Bridge defendants' breach of fiduciary duty is founded on allegations of deceit, see TAC ¶ 97 (alleging that the 8th Bridge

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
|----------|-------------------------|------|--------------|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

defendants "breached their fiduciary duty [by] devising and executing a scheme to deliberately and fraudulently induce" Corbrus to resign its partnership interest in the Manhattan Fund), and, as a general matter, the "limitations period is three years… for a cause of action for breach of fiduciary duty where the gravamen of the claim is deceit." See Fuller, 216 Cal. App. 4th at 963, 163.

### iv. Unjust Enrichment

The limitations period applicable to a claim for unjust enrichment varies according to the statute of limitations governing the underlying claim. When a claim for unjust enrichment is founded on a quasi-contract theory, courts apply Cal. Civ. Proc. Code § 339(1), which imposes a two-year limitations period for any "action upon a contract, obligation or liability not founded upon an instrument of writing." See H. Russell Taylor's Fire Prevention Serv., Inc. v. Coca Cola Bottling Corp., 99 Cal. App. 3d 711, 721 n.5 (1979). On the other hand, a claim for unjust enrichment "on the ground of fraud or mistake" is subject to a three-year limitations period pursuant to Cal. Civ. Proc. Code § 338(d). Fed. Deposit Ins. Corp. v. Dintino, 167 Cal. App. 4th 333, 347, 84 Cal. Rptr. 3d 38, 50 (2008). Here, Corbrus' unjust enrichment claim alleges that defendants' "unlawful and deceptive actions ... induced Corbrus into a false sense of security to not be included as a named partner on the loan documentation, through false promises of future payments by Omnia that [d]efendants knew were never going to be made." TAC ¶ 139. The Court therefore concludes, consistent with its finding at the motion to dismiss stage, that Corbrus' unjust enrichment claim sounds in fraud and is therefore subject to a three-year statute of limitations period. See id. (unjust enrichment action "in the form of a common count to recover money or other benefit obtained by mistake is governed by the three-year statute of limitations for actions based on fraud or mistake.").

### b. Discovery Rule

"Generally, a claim accrues at the time the injury occurs. An exception to this is the discovery rule which postpones accrual of a claim until the plaintiff discovers or has reason to discover the injury." Parrish v. Nat'l Football League Players Ass'n, 534 F. Supp. 2d 1081, 1089 (N.D. Cal. 2007). "Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." Keilholtz v. Lennox Hearth Prod. Inc., No. 08-cv-00836-CW, 2009 WL 2905960, at *3 (N.D. Cal. Sept. 8, 2009) (quoting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL             'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

Grisham v. Philip Morris U.S.A., Inc., 40 Cal.4th 623, 634, 54 Cal.Rptr.3d 735, 151 P.3d 1151 (2007)).

"[D]elayed accrual under the discovery rule generally applies to most tort actions" and, in addition, "has been held applicable to certain types of breach of contract actions, such as those involving fraud or misrepresentation by the defendant." NBCUniversal Media, LLC v. Superior Ct., 225 Cal. App. 4th 1222, 1233, 171 Cal. Rptr. 3d 1, 9 (2014). Specifically, the discovery rule "may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discovered by plaintiffs until a future time." Apr. Enterprises, Inc. v. KTTV, 147 Cal. App. 3d 805, 832, 195 Cal. Rptr. 421, 437 (Ct. App. 1983).

A party seeking to invoke the delayed discovery rule must establish: "(a) lack of knowledge; (b) lack of means of obtaining knowledge such that in the exercise of reasonable diligence, the facts could not have been discovered at an earlier date; and (c) how and when the party actually discovered the [claim]." Gen. Bedding Corp. v. Echevarria, 947 F.2d 1395, 1397 (9th Cir. 1991). Under California law, "[t]he question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." Ovando v. Cty. of Los Angeles, 159 Cal. App. 4th 42, 61, 71 Cal. Rptr. 3d 415, 429 (2008).

Here, summary judgment is not appropriate on the ground that Corbrus' four-year or three-year claims are barred by the statute of limitations, because Corbrus has "come forward with evidence establishing […] triable issue[s] of fact with regard to whether the discovery rule applies." O'Connor v. Boeing N. Am., Inc., 311 F.3d 1139, 1150 (9th Cir. 2002).

As an initial matter, there are disputed issues of fact as to the content of communications that occurred between Corbrus and the Paz defendants on November 13, 2015 and between November 24 and December 8, 2015, and whether those communications should have put Corbrus on notice that it would not be paid. It is undisputed that on November 13, 2015, Chang met with Hazan and Haskalp at Paz's New York City offices. SUF ¶ 12. As support for their argument that Corbrus was on notice that it would not be compensated by the Paz defendants no later than December 2015, the Paz defendants offer Paz's testimony that he "said' to Chang in mid-November "It's not going to happen. This is ridiculous. You're not going to get paid a million-nine dollars for

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

working with me on paperwork for a period of nine weeks," which the Paz defendants contend is what Paz "asked [Hazan] to convey to [..] Chang in November 2015;" emails purporting to reflect the events of the November 13, 2015 meeting; and a November 13, 2015 text message sent by Chang to Kim stating "I think we have a big issue." See SUF ¶¶ 13-17. However, as Corbrus notes, the Paz defendants did not present any admissible evidence that establishes what Chang was told at the November 13, 2015 meeting.[11] Nor do the Paz defendants appear to contend that Paz himself met with Chang. Moreover, Haskalp and Chang each testified that following the November 13, 2015 meeting, Paz told them not to worry about Hazan because "she doesn't know what she's talking about." See dkt. 198-8 (Chang Depo.) at 81:20-82:4; dkt. 199-9 (Haskalp Depo.) at 125:2-17. Chang further testified that Paz told him "We have all the agreements written, we need you, you have a non-circumvent agreement with the project […] You're going to be paid." Chang Depo. at 82:5-10.

Likewise, the parties dispute whether Paz placed Chang on notice that Paz would not be compensating him on December 8, 2015. A December 8, 2015 email thread offered by the Paz defendants shows that Paz proposed two new one-page agreements to Chang regarding the EB-5 raise and work on the 54th street project, and Chang responded "I can't accept either of these […] [t]o move forward, we need to execute the agreements I sent you." Dkt. 172-5; SUF ¶ 23. However, Chang testified that in "early to mid-December" 2015 and again "towards Christmas time" Paz reassured him that "[w]e had a non-circumvention agreement for the Ace Hotel project. Again, I'm going to pay you when I get the money." Chang Depo. at 201:3-18, 212:20-213:18. Due to this conflicting evidence, the Court cannot conclude on this record, as a matter of law, that Corbrus should have been on notice that Paz did not intend to compensate it for the Ace Hotel project in November or December of 2015, or that a reasonable investigation would have revealed that information.

In addition, there are material factual disputes as to how Chang first learned that the EB-5 loan had been disbursed, what Chang was told by the Paz and 8th Bridge defendants

---

[11] Corbrus' hearsay objections to Exhibit 14 of the Selmont Declaration, see SUF 14, and the Haskalp Deposition Transcript at 52:7-16, see SUF 15, are **SUSTAINED**. Both documents contain double hearsay statements that are offered for the truth of the matters asserted, without establishing any exception that would allow them to be admitted for the truth.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
|----------|-------------------------|------|--------------|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

and their representatives before he learned that the loan had been disbursed, and whether Chang exercised reasonable diligence in seeking out information regarding the status of the loan. The Paz defendants contend that "at the latest, Chang should have known he was harmed when he was not timely paid" after "the loans were disbursed in mid-November 2016," arguing that Chang knew the loan was planned to be disbursed in 2016 and failed to "take any reasonable steps to determine when the loan was going to be disbursed after he resigned." MSJ at 17. As support, the Paz defendants offer the Gantt chart attached to the July 12, 2015 Letter of Intent and Term Sheet, which estimates that loan disbursements to the Manhattan Fund could occur in 2016,[12] and Haskalp's testimony that Chang complained to him that he was "treated unfairly" with respect to the Ace Hotel project between 2015 and 2017. See SUF ¶¶ 26, 38-41.

However, Corbrus offers evidence that would support a finding that the statute of limitations did not accrue until it learned that the EB-5 loan had been disbursed on November 6, 2017, despite reasonable diligence in pursuing information about its compensation. See GDF ¶ 34. In addition to his testimony that Paz confirmed that Corbrus would be paid in mid-December 2015, Chang further testified that Paz repeatedly reassured him that Corbrus would be compensated as promised once the loan was disbursed between December 2015 and November 2017. SAMF ¶¶ 10-11, 27. For instance, Chang testified that he had a face to face meeting with Paz in New York City in "summer or fall of 2016" during which he inquired with Paz about the status of the Ace Hotel project and whether the loan had been funded and "was told no" and that the loan was "still in the works [but] hasn't materialized yet;" Chang Depo. at 170:22-171:15, that on at least one other occasion in 2016, "after November of 2016," Chang asked Paz if the loan had been funded and Paz did not disclose that it had; Id. at 175:6-176:7, and that in 2017 Paz told him the loan was proceeding "slowly, but perhaps its coming." Id. at 303:9-15. There is evidence that Chang emailed Paz and Kim on March 14, 2016 to inquire about the status of the Ace Hotel Project and remind them of the parties' non-circumvention agreement, SAMF ¶ 13-14, and that, in response, Kim and Paz each telephoned Chang to reassure him that he would receive his full compensation and should wait for the loan to be disbursed. Id ¶ 16. In addition, Chang testified that he checked in with Haskalp, whom he understood to be a broker on the Ace

---

[12] Corbrus has offered an expert declaration from Michael G. Homeier opining that the dates projected by the Gantt chart are "unrealistic." See dkt. 195-2. Because the Court concludes here that factual disputes preclude summary judgment even considering Chang's receipt of the Gantt chart, it need not consider Corbrus' expert testimony at this juncture.

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
|----------|-------------------------|------|--------------|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

Hotel deal and Paz's business associate, "every couple months" between 2015 and 2017 and was repeatedly told that Haskalp would check in with Paz, but had "no confirmation that [Paz] got the EB-5 loan." Chang Depo. at 176:14-177:11; SAMF ¶¶ 29-31. Haskalp testified that even after he began receiving his brokerage fee on the loan in April 2017, see dkt. 209-2 (sealed), he did not disclose to Chang that the loan had been funded until November 6, 2017. Haskalp Depo. at 133:11-135:23; SAMF ¶ 35.

In light of this evidence and these disputed factual issues, the Court cannot, at this juncture, determine as a matter of law that Corbrus was on inquiry notice regarding its alleged injury in the form of non-payment before November 6, 2017—just over two years before this action was filed on November 30, 2019—or should be faulted for failing to exercise reasonable diligence to discover its injury sooner. See Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 808, 110 P.3d 914, 920 (2005) (plaintiff is "required to conduct a reasonable investigation *after becoming aware of an injury*, and [is] charged with knowledge of the information that *would have been revealed* by such an investigation.") (emphasis added).

### c. Fraudulent Concealment

"A close cousin of the discovery rule is the well accepted principle of fraudulent concealment." Bernson v. Browning-Ferris Indus., 7 Cal. 4th 926, 931 (1994) (internal citation and alteration omitted). "Succinctly stated, the rule of fraudulent concealment provides that a 'defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations'." Garamendi v. SDI Vendome S.A., 276 F. Supp. 2d 1030, 1041 (C.D. Cal. 2003) (quoting Bernson, 7 Cal. 4th at 931). The doctrine of fraudulent concealment is generally "available in all cases," see Regents of Univ. of California v. Superior Ct., 20 Cal. 4th 509, 533, 976 P.2d 808 (1999), including "actions based on negligence, malpractice, breach of written contract, and in various types of restitutionary actions brought under the common count to recover benefits tortuously acquired." Sears, Roebuck & Co. v. Blade, 139 Cal. App. 2d 580, 589, 294 P.2d 140, 145–46 (1956); see also Warner Constr. Corp. v. City of Los Angeles, 2 Cal. 3d 285, 293–94, 466 P.2d 996, 1001 (1970) (fraudulent concealment may form the basis for an action in tort or in contract).

The party seeking to invoke the doctrine of fraudulent concealment "must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

knowledge of facts sufficient to put him on inquiry." Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1024 (9th Cir. 2008) (quoting Baker v. Beech Aircraft Corp., 39 Cal.App.3d 315, 321, 114 Cal.Rptr. 171 (1974)). "A defendant's fraud in concealing a cause of action against him will toll the statute of limitations, and that tolling will last as long as a plaintiff's reliance on the misrepresentations is reasonable." Grisham, 40 Cal. 4th at 637.

Here, for the same reasons articulated with respect to the delayed discovery rule, see supra at IV.A.b, the Court finds that Corbrus has put forward evidence that is sufficient to raise triable issues of fact as to whether the Paz and 8th Bridge defendants "fraudulently concealed the existence of [its] cause[s] of action in such a way that [Corbrus], acting as a reasonable person, did not know of [their] existence," thereby tolling the statutes of limitations. See Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1060 (9th Cir. 2012). Specifically, Corbrus presents evidence that is sufficient to allow a reasonable trier of fact to conclude that it was not aware of its claims before November 2017, and that the Paz and 8th Bridge defendants covered up their circumvention of Corbrus and made misrepresentations in their communications with Chang that led Corbrus to believe it had not been circumvented and would be compensated in due course. Paz attested that "in November 2015, [he] made the decision not to pay [Corbrus]" its consulting fees. Dkt. 172-3. Corbrus counters with evidence that that Paz, Kim, and Haskalp each subsequently misrepresented to Corbrus that it would be paid according to the parties' agreement, and that Corbrus relied on those misrepresentations. That evidence includes Chang's testimony that Paz repeatedly affirmed to him that Corbrus was protected by the non-circumvention agreement and would be compensated once the loan was disbursed between December 2015 and 2017; SAMF ¶¶ 10-11; his testimony that Kim and Paz each responded to a March 14, 2016 status inquiry by telephoning him to provide assurances that Corbrus would be fully compensated; SAMF ¶¶ 13-14, 16; and Haskalp's testimony that he began receiving his brokerage fee on the loan in April 2017, but, despite regular inquiries from Chang, did not disclose that the loan had been funded until November 6, 2017. Haskalp Depo. at 133:11-135:23; SAMF ¶ 35.

As such, for this additional reason, disputed issues of material fact preclude the Court from granting summary judgment to the Paz defendants on the ground that Corbrus' claims are time-barred.

Accordingly, because there are triable issues of fact as to the applicability of the delayed discovery rule and the doctrine of fraudulent concealment, the Court **DENIES** the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

motion for summary judgement on the ground that Corbrus' claims against are barred by the statute of limitations.

### d. Breach of Contract

The Paz defendants also move for summary judgment as to Corbrus' contract claims, via joinder in the 8th Bridge defendants' motion, on the ground that Corbrus materially breached the non-circumvention clause contained in the July 12, 2015 Term Sheet by urging Paz to circumvent 8th Bridge in October 2015, and therefore is precluded from itself seeking to enforce the non-circumvention clause as a matter of law. MSJ at 27. In so arguing, the Paz defendants rely on California Civil Code § 1439, which provides: "[b]efore any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent therto imposed upon himself; and must be able and offer to fulfill all conditions concurrent so imposed upon him by the other party." The Paz defendants further contend in their reply brief that there is no evidence that the Paz defendants worked with the 8th Bridge defendants to circumvent Corbrus. Reply at 13-15.

Corbrus opposes the motion for summary judgment on its breach of contract claims against the Paz defendants, arguing both that Corbrus did not breach the non-circumvention provision, and that the Paz defendants' reliance on § 1439 is inapposite, because the non-circumvention clause does not impose any conditions precedent or conditions concurrent on the parties.[13] MSJ Opp'n at 30-32 (citing Bisno v. Douglas Emmett Realty Fund 1988,

---

[13] At the hearing, Corbrus argued for the first time that the Paz defendants lack standing to assert that they are excused from performance on the grounds that Corbrus breached the non-circumvention agreement. According to Corbrus, that is because the Paz defendants contend that Corbrus offered to circumvent the 8th Bridge defendants with the Paz defendants, rather than that Corbrus attempted to circumvent the Paz defendants. The Court is unpersuaded by that argument, because the gravamen of the Paz defendants' position is that Corbrus breached the non-circumvention agreement by attempting to interfere with the contractual relationship between the 8th Bridge and Paz defendants, including their compensation arrangements. Such interference potentially causes financial harm to each party to a non-circumvention agreement because it jeopardizes the negotiating relationship between all parties. See e.g., Raymat Materials, Inc. v. A & C Catalysts, Inc., No. C 13-00567 WHA, 2013 WL 5913778, at *3 (N.D. Cal. Oct. 31, 2013) (finding allegations that defendant "with full knowledge of the non-circumvention agreement,

| Case No. | 2:19-cv-10182-CAS(AFMx) | | Date | July 1, 2021 |
|---|---|---|---|---|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | | |

174 Cal. App. 4th 1534, 1554 (2009) (section 1439 "applies to conditions precedent to a contracting party's obligation to perform."). Corbrus argues that the non-circumvention clause is an independent covenant, such that the Paz defendants' "obligation to comply, i.e. to not circumvent another party, is independent of whether any of the other parties are complying or not." Id. at 30-31.

Breach of contract is an "unjustified or unexcused failure to perform a contract." Rest.2d, Contracts § 235(2). The elements required to establish a breach of contract are: "(1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis West Realty, LLC v. Goldman, 51 Cal.4th 811, 821 (2011). "It is well established that a breach of the implied covenant of good faith is a breach of the contract, and that breach of a specific provision of the contract is not a necessary prerequisite to a claim for breach of the implied covenant of good faith and fair dealing." Carson v. Mercury Ins. Co., 210 Cal. App. 4th 409, 429, 148 Cal. Rptr. 3d 518, 535 (2012).

Under California law, "the obligations of the parties to a contract are either dependent or independent." Colaco v. Cavotec SA, 25 Cal. App. 5th 1172, 1182, 236 Cal. Rptr. 3d 542, 552 (2018). A dependent obligation exists "when the performance by one party is a condition precedent to the other party's performance," whereas "where the covenants of a contract are to be performed at different times, they are independent." Id. at 1182-83. In the case of a dependent obligation, "one party is excused from its obligation to perform if the other party fails to perform." Id. at 1183; see also Brown v. Dillard's, Inc., 430 F.3d 1004, 1010 (9th Cir. 2005) (a "bedrock principle of California contract law is that '[h]e who seeks to enforce a contract must show that he has complied with *the conditions* and agreements of the contract on his part to be performed.") (emphasis added) (quoting Pry Corp. of Am. v. Leach, 177 Cal. App. 2d 632, 639 (1960)). However, where the parties obligations are independent, "the law is settled that […] the breach by one party of his

_____

engaged in negotiations intended to interfere with the contract that existed" between parties to a non-circumvention agreement sufficient to allege intentional interference); Goodrich Cap., LLC v. Vector Cap. Corp., No. 11 CIV. 9247 JSR, 2012 WL 4123401, at *4 (S.D.N.Y. June 26, 2012) (sustaining each plaintiff's breach of contract claim for violation of non-circumvention agreement based on allegations suggesting that plaintiff "restructured its transaction with [a target company] 'to avoid payment of fees' […] despite relying on [one plaintiff's] insights and strategies.").

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
|----------|--------------------------|------|--------------|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

covenant does not excuse the performance by the other party of his covenant or relieve him of liability for damages for a breach thereof." Colaco, 24 Cal. App. 5th at 1183 (collecting cases).

"Whether specific contractual obligations are independent or dependent is a matter of contract interpretation based on the contract's plain language and the parties' intent." Id. California courts are reluctant "[t]o construe covenants as dependent" because to do so "is to work a forfeiture as to one party, and no obligation of a contract is to be regarded as a condition precedent unless made so by express terms or necessary implication." Verdier v. Verdier, 133 Cal. App. 2d 325, 334, 284 P.2d 94, 100 (1955). "The rule is that provisions of a contract will not be construed as conditions precedent in the absence of language plainly requiring such construction." Rubin v. Fuchs, 1 Cal. 3d 50, 53, 459 P.2d 925, 928 (1969). "Instead, whenever possible the courts will construe promises in a bilateral contract as mutually dependent and concurrent." Id; see also Southland Corp. v. Emerald Oil Co., 789 F.2d 1441, 1444 (9th Cir. 1986) (same). Where, as here, the parties do not offer extrinsic evidence as to the interpretation of the contract, the Court looks to its plain language. See Banning Ranch Conservancy v. Superior Ct., 193 Cal. App. 4th 903, 915, 123 Cal. Rptr. 3d 348, 356 (2011).

The non-circumvention clause contained in the June 12, 2015 Letter of Intent and Term sheet provides as follows:

> 8BC, Corbrus, and the Sponsor [the Omnia Group] (including its officers, directors, agents, associates and any related parties) hereby agree that they will not, directly or indirectly, contact, deal with or otherwise become involved with any entity or any other entities or parties introduced, directly or indirectly, by or through the other party, its officers, agents or associates, for the purpose of avoiding the payment to each other of profit, fee or otherwise, without specific written approval of the other party.

SUF ¶ 49.

Corbrus argues both that the non-circumvention clause does not impose any condition precedent, because none of its "language makes any party's obligation to refrain from circumventing the other *conditional upon* the other party refraining from acts constituting circumvention," and that it does not create any "mutually dependent" concurrent condition, or obligations "to be performed at the same time." MSJ Opp'n at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

30-31 (emphasis in original). The Paz defendants do not squarely address Corbrus' arguments as to whether the non-circumvention clause imposes conditions, except to argue generally that a "[b]reach by one party to a contract of an important condition excuses the other party from performance under California law," and as such that "if the non-circumvention clause […] was binding on Paz" Chang's conduct barred Corbrus from enforcing the non-circumvention clause against Paz. Reply at 9 (citing James Stewart Entertainment, LLC v. L&M Racing LLC., 2014 WL 12742612, at *12 (CD Cal., 2014) and collecting cases).

Here, while the Court agrees with Corbrus that the non-circumvention clause does not contain any express condition precedent, it appears to the Court that the July 12, 2015 Letter of Intent and Term Sheet is a bilateral contract that imposes concurrent conditions on the parties. See Bleecher v. Conte, 29 Cal. 3d 345, 350, 698 P.2d 1154 (1981) ("A bilateral contract is one in which there are mutual promises given in consideration of each other"). Importantly, the July 12, 2015 Letter of Intent and Term Sheet provides, by its own terms, that only "the obligations contained in the paragraphs entitled 'Confidentiality', 'Non-circumvention', [..] and 'Governing Law'"[14] are "Binding Obligations" that are enforceable against the parties, and does not provide for any consideration outside those three paragraphs. Dkt. 172-5. As such, to the extent enforceable, the agreement must rest on consideration in the form of the parties' mutual promises to refrain from circumventing the others and to keep certain information confidential.[15] See id. at 350 ("[w]hen the parties attempt ... to make a contract where promises are exchanged as the consideration, the promises must be mutual in obligation. In other words, for the contract to bind either party, both must have assumed some legal obligations. Without this mutuality of obligation, the agreement lacks consideration and no enforceable contract has been created.") (quoting Mattei v. Hopper, 51 Cal. 2d 119, 122, 330 P.2d 625 (1958)). The promises contained in the July 15, 2015 Letter of Intent and Term Sheet thus appear "mutually dependent, each promise given in consideration for the other" and "due at the same time—" throughout the effectiveness of the agreement— thereby imposing concurrent obligations on the parties. See Katemis v. Westerlind, 120 Cal. App. 2d 537, 545, 261 P.2d 553 (1953) (finding that escrow agreement requiring simultaneous performance imposed concurrent conditions);

---

[14] "Exclusivity" is also listed as a "Binding Obligation," but the agreement contains no "Exclusivity" clause.

[15] Neither party contends that the July 12, 2015 Letter of Intent and Term Sheet is unenforceable due to a lack of consideration.

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
|----------|-------------------------|------|--------------|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

see also Rubin, 1 Cal. 3d at 53. Accordingly, the Court concludes that the non-circumvention clause imposes concurrent obligations, such that "one party is excused from its obligation to perform if the other party fails to perform." See Colaco, 24 Cal. App. 5th at 1183.

Nonetheless, summary judgment on Corbrus' contract claims is not warranted, because there are triable issues of material fact that preclude the Court from finding that Corbrus may not seek to enforce the non-circumvention clause as a matter of law.

As an initial matter, there is disputed evidence as to whether Corbrus breached the non-circumvention clause in the fall of 2015. The Paz defendants argue that Corbrus breached the non-circumvention clause through communications encouraging the Paz defendants to avoid working with the 8th Bridge defendants and instead pursue cheaper funding from an alternate EB-5 lender, and by urging Paz to pay the 8th Bridge defendants less under the parties' agreements. MSJ at 24-25. As support for their position, the Paz defendants offer a September 2015 text message in which Chang proposed a buyer for the 54th St. project, and series of October 2015 communications between Chang and Paz, including text messages in which Chang responded to a comment from Paz that "the terms are very harsh" by saying "I agree, let me get you out and move to the next loan," SUF ¶ 52; and emails in which Chang wrote "I can find cheaper money if you like to explore this option […] if you decide to switch horse [sic], then you and I have to take over the GP role;" SUF ¶ 55, and proposed revisions to the parties compensation arrangements. SUF ¶ 56. In response, Corbrus offers Chang's testimony that his overtures to Paz were intended to further the "three way" negotiation between Corbrus, 8th Bridge, and Paz regarding Corbrus' compensation and "give[] Young a little pressure" as part of that negotiation. Chang Depo. at 261:20-262:9.[16] Chang also testified that he never intended to force Young out of the GP position because "I just want the funds to be raise[d] as quickly as I can" and that his proposed revisions to the compensation arrangement were intended as a compromise wherein all three parties would take less to make a deal happen. Chang Depo. at 282:24-285:13. Corbrus also points to other statements in the communications upon

---

[16] The Paz defendants have objected to the Chang declaration's discussion of these documents as in conflict with Chang's deposition testimony, because the declaration provides more detail regarding Chang's negotiation strategy. Because the Court relies only on Chang's deposition testimony here, it need not determine whether Chang's declaration is sufficient to raise a triable issue of fact.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

which the Paz defendants rely, noting that each side-communication between Paz and Chang includes a statement indicating that Kim's sign-off would be needed. See GDF ¶¶ 55-56. As such, genuine disputes of fact preclude the Court from determining that Corbrus contacted Paz for purpose of avoiding payment to the 8th Bridge defendants or otherwise breached the parties' non-circumvention agreement.

Moreover, on the present record, the Court is unable determine as a matter of law that the Paz defendants did not breach the non-circumvention clause. Corbrus alleges that the Paz defendants breached the non-circumvention agreement and aided and abetted the 8th Bridge defendants' breach by participating in a "scheme to deliberately and fraudulently induce Plaintiff into a false sense of security to not be included as a named partner on the loan documentation, through false promise of future payments by Omnia that [d]efendants knew were never going to be made." TAC ¶ 115. Corbrus alleges that defendants intended to and "did circumvent [Corbrus] out of its compensation" in violation of the non-circumvention clause, via the alleged scheme. Id. Here, although the Paz defendants contend that "no evidence" demonstrates that Paz or Omnia breached the non-circumvention agreement and point in their reply to Chang's testimony that he was not aware of emails sent between Kim and Paz, see Reply at 14, Corbrus has come forward with documents and testimony that are sufficient to raise a triable issue of fact as to the Paz defendants' conduct. Documents in the record establish that Paz was actively involved in "three way" negotiations with Kim and Chang in the weeks leading up to Chang's resignation from the Manhattan Fund—and Paz's subsequent decision not to compensate Corbrus, see e.g dkt. 172-3 at 18-21; GDF ¶ 55. The Paz defendants signed the loan documentation directing the entire origination fee to the 8th Bridge defendants, despite later assuring Chang that Corbrus' interests and compensation were protected. See Dkts. 209-4 (sealed) and 209-5 (sealed). And Chang testified that during a face-to-face conversation, Paz "encouraged" him that "for the best of the raise, he'd like me to – he asked me to be a team player essentially, to help" by resigning as a general partner, "and Young was [also] saying it would help with the raise." Chang Depo. at 123:2-24. In addition, Corbrus offers a January 11, 2018, email from Kim to Paz, in which Kim asked: "Has Max [Chang] not reached out to you at all since? I don't want Max to be a threat to you and I again like Northwind and Moses." Dkt. 209-3 (sealed); GDF ¶ 89. Although sent well after the alleged breach of the non-circumvention agreement, Paz and Kim's discussion of Chang potentially becoming a "threat […] again" would allow a reasonable trier of fact to conclude that there were communications between Paz and Kim about taking actions adverse to Corbrus' interest in being compensated for the EB-5 loan raise. As such,

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-10182-CAS(AFMx) | Date | July 1, 2021 |
|----------|-------------------------|------|--------------|
| Title | CORBRUS, LLC v. 8TH BRIDGE CAPITAL, INC. ET AL. | | |

the Court concludes that summary judgment is not warranted on the grounds that the Paz defendants did not breach the agreement.

In light of the foregoing, the Court **DENIES** the motion for summary judgement as to Corbrus' contract claims.

## V.     CONCLUSION

In accordance with the foregoing, the Paz defendants' motion for summary judgment is **DENIED**.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |