UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Ahmed Ibrahim | Howard Fredman |
| Yasin Almadani | Michael Sohigian |

**Proceedings:**   RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW AND ALTERNATIVE MOTION FOR NEW TRIAL AND
MOTION TO REDUCE AND REMIT DUPLICATIVE DAMAGE
VERDICTS (Dkt. 338, filed on JULY 18, 2022)

## I.    INTRODUCTION

Plaintiff Corbrus, LLC ("Corbrus") filed this action against defendants Young Hun
Kim ("Kim"), 8th Bridge Capital, Inc., and 8th Bridge Capital, LLC (collectively, the
"8th Bridge defendants" or "8BC"); and defendants David Paz ("Paz"), Omnia Group,
Ltd., and Omnia Properties, LLC (collectively, "Paz defendants" or "defendants"); and a
number of other defendants on November 30, 2019. Dkt. 1. On July 30, 2020, the Court
consolidated this action for trial with an earlier action brought by Moses Choi ("Choi")
and Southeast Regional Center, LLC ("SRC") (collectively, the "Choi parties") against
Kim, 8th Bridge Capital, Inc., and 8th Bridge Capital, LLC. Dkt. 71; see also Case No.
2:17-cv-08958 ("Choi dkt."), dkt. 199. Corbrus' claims arise out of an agreement made
in 2015, on its behalf, by its principal, Fu-Shen Chang ("Chang"), to enter into a
partnership, known as "the Manhattan Fund," with the 8th Bridge defendants to provide
EB-5 financing for the Paz defendants' real estate projects, including the Ace Hotel in
New York City. See generally dkt. 163. According to Corbrus, however, Kim and Paz
fraudulently induced Corbrus to relinquish its partnership interest in the Manhattan Fund
in October 2015, by falsely representing that Corbrus would be made whole by being
paid as a consultant. Id.

Corbrus filed its operative third amended complaint, ("TAC"), on April 21, 2021,
asserting a total of thirteen claims for relief. On May 25, 2021, Corbrus and the 8th

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

Bridge parties notified the Court that they had reached a settlement agreement. On June 15, 2021, Corbrus and the 8th Bridge defendants stipulated to a dismissal with prejudice of all claims against the 8th Bridge defendants in this action. Dkt. 214. As such, the Paz defendants are the only remaining defendants in this action. In the TAC, Corbrus asserts the following claims against the Paz defendants: (1) intentional misrepresentation; (2) fraud by concealment; (3) negligent misrepresentation; (4) breach of fiduciary duty; (5) breach of contract; (6) breach of the covenant of good faith and fair dealing; and (7) unjust enrichment.

On June 28, 2021, Corbrus filed a motion to exclude the expert testimony of Gary M. Tenzer, among other motions. Dkt. 223. Corbrus argued that Tenzer's testimony should be excluded because: (1) no expert testimony is needed to interpret a non-circumvention agreement in the parties' Term Sheet because the agreement is not ambiguous; (2) the extrinsic evidence supports Corbrus' interpretation of the contract; (3) Tenzer is not qualified to serve as an expert because he has 'little to no experience in EB-5 lending;" and (4) Tenzer's opinions are speculative and lack a sufficient evidentiary basis. Id. On August 9, 2021, the Court held a hearing on the matter and denied Corbrus' motion to exclude Tenzer's testimony. Dkt. 260. The Court declined to rule on the claimed ambiguity of the agreement and on whether extrinsic evidence favors Corbrus' interpretation of the contract, finding that these arguments were inappropriately raised in a Daubert motion to exclude expert testimony. Id. at 6. The Court concluded that Tenzer was sufficiently qualified to testify and that the claimed unreliability of Tenzer's testimony was a question for the jury to consider, not a ground for exclusion. Id. at 6-7.

On June 21, 2022, the jury trial commenced and lasted nine days. Dkts. 303, 321. At trial, Corbrus pursued the following claims against defendants: (1) fraud based on intentional misrepresentations through false promise; (2) fraudulent concealment; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; and (5) unjust enrichment. Dkt. 294. On July 5, 2022, defendants made an oral motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on the grounds that plaintiff's fraud claims were barred by the statute of limitations and that plaintiff did not believe the non-circumvention agreement to be binding. Transcript. July 5, 2022, at 6-7.

On July 5, 2022, the jury returned a verdict in favor of plaintiff on every issue. Dkt. 329. On the special verdict form, the jury answered the questions below as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

<u>Question No. 1:</u> Did David Paz, Omnia Group, and Omnia Properties owe any obligation not to circumvent Corbrus' right to receive payment so long as Manhattan Real Estate Fund was the lender on the Ace Hotel project? (check one)

  <u>X</u>        Yes

  <u>    </u>        No

<u>Question No. 2:</u> On Plaintiff Corbrus' claim for breach of the non-circumvention agreement against Defendants David Paz, Omnia Group, and Omnia Properties, we find in favor of: (check one)

  <u>X</u>        Plaintiff Corbrus and against Defendants David Paz, Omnia Group, and Omnia Properties

  <u>    </u>        Defendants David Paz, Omnia Group, and Omnia Properties, and against Plaintiff Corbrus

<u>Question No. 3:</u> State the amount of compensatory damages, if any, you award to Plaintiff Corbrus against Defendants David Paz, Omnia Group, and Omnia Properties on the claim for breach of contract:

<u>$2,388,586</u>

<u>Question No. 4:</u> Do you find Plaintiff Corbrus is entitled to prejudgment interest on its claim for breach of contract? (check one)

  <u>X</u>  Yes  <u>    </u>  No

<u>Question No. 5:</u> Did David Paz, Omnia Group, and Omnia Properties owe any obligation not to circumvent Corbrus' right to receive payment so long as Manhattan Real Estate Fund was the lender on the Ace Hotel project? (check one)

  <u>X</u>  Yes

  <u>    </u>  No

<u>Question No. 6:</u> On Plaintiff Corbrus' claim for breach of the implied covenant of good faith and fair dealing based on the non-circumvention agreement against Defendants David Paz, Omnia Group, and Omnia Properties, we find in favor of: (check one)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-10182-CAS(AFMx) | Date | September 13, 2022 |
|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

  X   Plaintiff Corbrus and against Defendants David Paz, Omnia Group, and Omnia Properties

____ Defendants David Paz, Omnia Group, and Omnia Properties, and against Plaintiff Corbrus

Question No. 7:  State the amount of compensatory damages, if any, you award to Plaintiff Corbrus against Defendants David Paz, Omnia Group, and Omnia Properties on the claim for breach of the implied covenant of good faith and fair dealing:

$500,000

Question No. 8:  Do you find Plaintiff Corbrus entitled to prejudgment interest on its claim for breach of the implied covenant of good faith and fair dealing?  (check one)

____ Yes   X   No

Question No. 9:  On Plaintiff Corbrus' claim for fraud based on a false promise against Defendants David Paz, Omnia Group, and Omnia properties, we find in favor of: (check one)

  X   Plaintiff Corbrus and against Defendants David Paz, Omnia Group, and Omnia Properties

____ Defendants David Paz, Omnia Group, and Omnia Properties, and against Plaintiff Corbrus

Question No. 10:  State the amount of compensatory damages, if any, you award to Plaintiff Corbrus against Defendants David Paz, Omnia Group, and Omnia Properties on the claim for fraud based on a false promise:

$350,000

Question No. 11:  Do you find Plaintiff Corbrus is entitled to prejudgment interest on its claim for fraud based on a false promise?  (check one)

____ Yes   X   No

Question No. 12:  With respect to Defendants David Paz, Omnia Group, and Omnia Properties' conduct for which you found in favor of Plaintiff Corbrus on the fraud

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

based on a false promise claim, did Plaintiff Corbrus prove by clear and convincing evidence that the Defendants engaged in the conduct with malice, oppression, or fraud?

  <u>X</u>  Yes  ____  No

<u>Question No. 13:</u>  Was the conduct constituting malice, oppression, or fraud committed by David Paz?

  <u>X</u>  Yes  ____  No

<u>Question No. 14:</u>  Was the conduct constituting malice, oppression, or fraud committed by David Paz acting as an officer, director, or managing agent of defendant Omnia Group, Ltd., which was merged into Omnia Properties, LLC?

  <u>X</u>  Yes  ____  No

<u>Question No. 15:</u>  On Plaintiff Corbrus' claim for concealment against Defendants David Paz, Omnia Group, and Omnia Properties, we find in favor of:  (check one)

  <u>X</u>  Plaintiff Corbrus and against Defendants David Paz, Omnia Group, and Omnia Properties

____  Defendants David Paz, Omnia Group, and Omnia Properties, and against Plaintiff Corbrus

<u>Question No. 16:</u>  State the amount of compensatory damages, if any, you award to Plaintiff Corbrus against Defendants David Paz, Omnia Group, and Omnia Properties on the claim for concealment:

<u>$250,000</u>

<u>Question No. 17:</u>  Do you find Plaintiff Corbrus is entitled to prejudgment interest on its claim for concealment?  (check one)

____  Yes  <u>X</u>  No

<u>Question No. 18:</u>  With respect to Defendants David Paz, Omnia Group, and Omnia Properties' conduct for which you found in favor of Plaintiff Corbrus on the concealment claim, did Plaintiff Corbrus prove by clear and convincing evidence that the Defendants engaged in the conduct with malice, oppression, or fraud?

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|----------|--------------------------|------|---------------------|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

__X__  Yes  ____  No

Question No. 19:  Was the conduct constituting malice, oppression, or fraud committed by David Paz?

__X__  Yes  ____  No

Question No. 20:  Was the conduct constituting malice, oppression, or fraud committed by David Paz acting as an officer, director, or managing agent of Defendant Omnia Group, Ltd., which was merged into Omnia Properties, LLC?

__X__  Yes  ____  No

Question No. 21:  On Plaintiff Corbrus' claim for unjust enrichment against Defendants David Paz, Omnia Group, and Omnia Properties, we find in favor of:  (check one)

__X__   Plaintiff Corbrus and against Defendants David Paz, Omnia Group, and Omnia Properties

____   Defendants David Paz, Omnia Group, and Omnia Properties, and against Plaintiff Corbrus

Question No. 22:  State the amount of compensatory damages, if any, you award to Plaintiff Corbrus against Defendants David Paz, Omnia Group, and Omnia Properties on the claim for unjust enrichment:

$250,000

Question No. 23:  Do you find Plaintiff Corbrus is entitled to prejudgment interest on its claim for unjust enrichment?  (check one)

____   Yes  __X__  No

/ / /

/ / /

/ / /

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                          **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

Question No. 24:  As concerning Plaintiff Corbrus' claims for fraud by false promise, concealment, and unjust enrichment, have Defendants David Paz, Omnia Group, and Omnia Properties proven that Corbrus did not file those claims within the statute of limitations?  (check one)

\_\_\_   Yes

\_X\_   No

Question No. 25:  Has Corbrus proven that its claims for fraud by false promise, concealment, and unjust enrichment were filed in a timely fashion as a result of fraudulent concealment by Defendants David Paz, Omnia Group, and Omnia Properties, or because Corbrus did not discover the facts constituting Defendants' fraud despite reasonable diligence?

\_X\_   Yes

\_\_\_   No

Question No. 26:  Did Plaintiff Corbrus (Max Chang) engage in unconscionable or bad faith conduct that prejudicially affected the rights of Defendants David Paz, Omnia Group, or Omnia Properties such that it would be unfair to grant relief to Plaintiff against these Defendants?  (check one)

\_\_\_   Yes

\_X\_   No

Dkt. 329.

Following return of the verdict, the parties stipulated that defendants would pay punitive damages in the amount of $1,000,000 if the fraud or concealment verdicts were sustained.  On July 14, 2022, plaintiff filed a notice of lodging of a proposed judgment seeking $3,723,024.  Dkt. 335.

On July 18, 2022, defendants filed a renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), an alternative motion for a new trial pursuant to Federal Rule of Civil Procedure 59, and a motion to reduce and remit duplicative damage verdicts.  Dkt. 338.  On August 22, 2022, plaintiff filed oppositions to defendants' motions.  Dkts. 364, 366.  On August 29, 2022, defendants filed replies in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|----------|-------------------------|------|--------------------|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

support of their renewed motion for judgment as a matter of law, alternative motion for a new trial, and motion to reduce and remit duplicative damage verdicts. Dkts. 367, 368.

On September 12, 2022, the Court held a hearing on defendants' motions. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

The following background is taken from the Court's July 1, 2021, order denying the Paz defendants' partial motion for summary judgment. Dkt. 226. In that order, the Court outlined facts that were not meaningfully disputed and referenced only facts that are uncontroverted, citing to the parties' statement of undisputed facts, dkt. 171-6. These facts are set forth only for the purposes of background.

On July 12, 2015, 8th Bridge, Paz, and Corbrus signed a Letter of Intent and Term Sheet, which set forth the terms and conditions under which those parties would work together on two separate projects: (1) the Ace Hotel Project, for the development of the Ace Hotel in Manhattan; and (2) a separate condominium development project, termed the "54th St. Project."[1] Dkt. 226 at 4. The July 12, 2015, Term Sheet includes a clause stating that it supersedes all prior understandings between the parties, and a non-circumvention provision that prohibits the parties from directly or indirectly seeking to avoid payment to each other. The non-circumvention clause provides as follows:

8BC, Corbrus, and the Sponsor [the Omnia Group] (including its officers, directors, agents, associates and any related parties) hereby agree that they will not, directly or indirectly, contact, deal with or otherwise become involved with any entity or any other entities or parties introduced, directly or indirectly, by or through the other party, its officers, agents or associates, for the purpose of avoiding the payment to each other of profit, fee or otherwise, without specific written approval of the other party.

---

[1] The 8th Bridge and Corbrus parties also agreed to two Non-Disclosure and Non-Circumvention Agreements ("NDCAs") on April 13, 2015, and April 30, 2015. See Dkt. 226 at 4. It is undisputed the Paz defendants were not party to those earlier agreements.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|----------|--------------------------|------|---------------------|
| Title    | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

Id. at 23.  Corbrus was a party to the July 12, 2015 Letter of Intent and Term Sheet and alleges that it relied on the Term Sheet in its interactions with the 8th Bridge and Paz defendants.  Id. at 4.

The July 12, 2015 Letter of Intent and Term Sheet attaches a chart, (which the parties refer to as the "Gantt chart"), projecting the schedule for certain events related to the Manhattan Fund, which projects loan disbursements to the Manhattan Fund beginning in 2016.  Chang testified that he received the Gantt chart and understood it to "project[] possibly that the second tranche may start disbursement as soon as 2016, last week in February, though I think it would be April."  Chang further testified that he understood that he would be paid by Paz "once the EB-5 loan has been paid [and] disbursed."  Id. at 4–5.[2]

### A.    Corbrus Resigns from the Manhattan Fund

In early October 2015, it was decided that Corbrus would not be listed as a co-general partner on the Ace Hotel project and that Corbrus would instead work as a consultant for the Paz defendants on the borrower side of the EB-5 transaction.  On October 19, 2015, Chang and Paz agreed that Corbrus would be paid $1.2 million upon disbursement of the loan, and an additional $100,000 per year for seven years thereafter. On October 25, 2015, Chang sent an email to a group of recipients including Paz and Kim stating: "Per discussions among the project team, Corbrus shall resign from GP role from the EB-5 LP."  Paz testified that weeks later, he changed his mind about the October 19, 2015 agreement with Corbrus, after determining that the $1.9 million he had agreed to pay was excessive.  Id. at 5–6.

On November 13, 2015, Orly Hazan ("Hazan") and Hakan Haskalp ("Haskalp") held a meeting with Chang at Paz's offices in New York City, during which Corbrus' compensation was discussed.  Later that day, Chang contacted Kim regarding the meeting with Hazan via text message, telling Kim "I think we have a big issue."  Chang also emailed Cathy DeBono, 8th Bridge's corporate counsel, asking: "is my consulting

---

[2]  The parties frequently refer to Corbrus and Chang interchangeably in their filings and testimony.  The Court assumes, however, that the parties intend to refer to Corbrus when addressing the general partnership interest, because Corbrus is the entity listed as a general partner by the July 12, 2015 Letter of Intent and Term Sheet.  See dkt. 17-5 at 14-15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

agreement ready for review, I believe the language will more or less mirror the equity reward agreement between Omnia and 8BC […] Among the 3 parties, I think it would be prudent that we execute all documents together to make the deal binding." Id. at 6.

On December 1, 2015, Chang sent Paz a draft "EB-5 Consulting Service Agreement," which included provisions addressing Corbrus' compensation for its work on the Ace Hotel Project. The proposed agreement provides that "CORBRUS shall receive a Consulting Fee of One Hundred Fifty Thousand Dollars ($150,000) per year for five (5) years from OMNIA" and, further, that upon funding of the EB-5 loan, "OMNIA shall share with CORBURS [sic] an amount equal to Two Percent (2%) of the equity interest in the Project or a cash equivalent of One Million and Two Hundred Thousands Dollars ($1,200,000).""). On the same day, Chang emailed Paz, Kim, and DeBono stating that he was not aware that the EB-5 loan agreement had been executed and explaining: "My condition of not serving as GP is CONTINGENT upon the consulting agreement being executed with David and also proper releasing of Corbrus." Chang testified that he would not have relinquished Corbrus' role as co-general partner based on nothing more than a request or instruction from Kim, and instead relied on his "agreement for compensation […] with Young and David [reached] on October 19, 2015," under which Corbrus would be compensated by Paz. Id. at 6.

On December 8, 2015, Paz emailed Chang to propose two one-page agreements regarding Corbrus' compensation for the "eb-5 raise commission agreement" and the possible joint "54 st" project. Chang rejected each of Paz's proposed agreements. Id. at 6–7.

**B.     Corbrus' Subsequent Interactions with 8th Bridge and the Paz Defendants**

Corbrus claims that between March 2016 and November 2017, it "made diligent efforts to check in once a month to once every two months with Paz and/or his business associate, Haskalp, the broker who referred the project to Corbrus and whose wife was the controller for Omnia, to learn whether the loan had been funded and disbursed in order to know when payment to Corbrus would become due." Corbrus also checked in by phone with Kim several times in October, November, and December 2015. Id. at 7.

Chang testified that between 2016 and 2017, he relied on Haskalp and Haskalp's wife as a source of information as to when the loan would be disbursed. In 2017,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | | Date | September 13, 2022 |
|---|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | | |

Haskalp responded to an inquiry from Chang and informed him that the loan funds had been disbursed and Paz had received $12.5 million. Haskalp testified that, beginning in 2015, Chang frequently complained to him that he felt Corbrus had been treated unfairly on the Ace Hotel Project but remained "hopeful" regarding Corbrus' business relationship with Paz. Haskalp testified that during that period, Chang expressed concern that Paz would not pay what Corbrus was owed from the Ace Hotel Project because he "was concerned and angry and frustrated because [Corbrus was] pushed out by Young and [Paz] together" and "was really wondering why [is Corbrus] pushed out, what is going on." Haskalp further testified that at some time during the November 2015 meeting with Hazan and the loan disbursement, Chang told him he was considering retaining counsel to go after Kim and Paz, and that in Haskalp and Chang's business "until the last minute, you always keep your goodwill." Id. at 7.

The first payment on the EB-5 Ace Hotel loan was disbursed on November 17, 2016. Id. at 8

On November 6, 2017, Chang sent an email to Kim stating "[i]t has been almost two years since we have spoken last. I am writing this email to inquire about the funding status of the Manhattan Real Estate Fund, LP to Omnia Group." Chang requested a set of the Manhattan Fund's accounting and loan transaction documents, in connection with his inquiry. Id. at 8.

## III. DISCUSSION

### A.     Rule 50(b) Renewed Motion for Judgment as a Matter of Law

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. . . ." Fed. R. Civ. P. 50(a)(1); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 139, 149 (2000). If the court does not grant a motion for judgment as a matter of law pursuant to Rule 50(a), a party may file a renewed motion for judgment as a matter of law after the trial. Fed. R. Civ. P. 50(b). It is well-settled that the standard for judgment as a matter of law is the same as the standard for summary judgment. Reeves, 530 U.S. at 150 (citing Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 250-52 (1986)).

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                  'O'

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|----------|--------------------------|------|---------------------|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997); see also Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994) (articulating the same standard in the context of a directed verdict). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

In a motion for summary judgment, a court must review the record "taken as a whole." Matsushita, 475 U.S. at 587. Similarly, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. Reeves, 530 U.S. at 150. In so doing, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Id. (citations omitted); see also Berry, 39 F.3d at 1057. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 447 U.S. at 255. Thus, although the court should review the record as a whole, it must disregard all

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|----------|--------------------------|------|---------------------|
| Title    | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

evidence favorable to the moving party that the jury is not required to believe. <u>Reeves</u>, 530 U.S. at 151 (citing 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529 at 299 (2d ed. 1995)). In other words, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." <u>Reeves</u>, 530 U.S. at 151 (citing Wright & Miller, supra, at 300).

    1.  <u>Defendants' Election of Remedies Argument</u>

  Defendants argue that, under California's election of remedies doctrine, plaintiff must choose between pursuing its breach of contract claim and its fraud claims. Dkt. 338 at 12. According to defendants, California Civil Code § 3294(a) forecloses entry of damages for breach of contract and punitive damages for a fraud. <u>Id.</u> at 13. Thus, defendants contend, contract damages and punitive damages for plaintiff's fraud claims are inconsistent remedies. <u>Id.</u>

    *a. Legal Standard*

  The election of remedies doctrine is a "specific application of the doctrine of equitable estoppel" that requires a plaintiff to "choos[e] between two or more concurrent but inconsistent remedies based upon the same state of facts." <u>Baker v. Superior Court</u>, 150 Cal. App. 3d 140, 144 (1983) (internal citations omitted). Under the doctrine, a plaintiff may plead inconsistent causes of action, but, "if a plaintiff has unequivocally and knowledgeably elected to proceed on one of the remedies he is pursuing, he may be barred recourse to the other." <u>Id.</u> (internal citations omitted). "The doctrine rests on the rationale that when plaintiff has pursued a remedy which is inconsistent with an alternative remedy and thereby causes the defendant substantial prejudice, plaintiff should be estopped from pursuing the alternative remedy." <u>Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.</u>, 66 Cal. App. 3d 101, 137 (1977). "Courts and commentators have long recognized the harshness of the election of remedies doctrine" and, accordingly, "courts over the years have devised various ways of narrowing its application." <u>Baker</u>, 150 Cal. App. 3d at 145. For example, courts have applied the doctrine only where "the plaintiff seek[s] inconsistent remedies in causes of action based on the same set of facts." <u>Id.</u>

  California Civil Code § 3294(a) provides that "[i]n an action for breach of an obligation not arising from contract, . . . the plaintiff, in addition to the actual damages,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL            'O'

| Case No. | 2:19-CV-10182-CAS(AFMx) | | Date | September 13, 2022 |
|----------|-------------------------|---|------|--------------------|
| Title    | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | | |

may recover damages for the sake of example and by way of punishing the defendant."
Under the election of remedies doctrine, a plaintiff may be estopped from pursuing a
breach of contract claim and punitive damages stemming from a tort claim.  See Steiner
v. Rowley, 35 Cal. 2d 713, 720 (1950) ("An action for tort in which exemplary damages
are sought is inconsistent with one for money had and received.").

      *b.  Analysis*

      Defendants argue that because defendants' alleged circumvention of plaintiff in
breach of the non-circumvention clause, (the breach of contract claim), and defendants'
alleged false promise and concealment of true intention, (the fraud claims), seek damages
for the same harm, the inconsistent remedies arise out of the same set of facts.  Dkt. 338
at 12.  Accordingly, defendants assert that plaintiff must elect between the $2,388,586
awarded on the breach of contract claim and punitive damages.  Id.  See Steiner, 35 Cal.
2d at 720 (requiring plaintiff to elect between damages for breach of contract and
punitive damages for tortious conduct arising out of the same facts).

      In its opposition, plaintiff argues that, as an initial matter, defendants waived their
election of remedies argument because they did not raise the argument in a pre-verdict
Rule 50(a) motion.  Dkt. 364 at 9.  Specifically, defendants did not raise the argument in
their pre-verdict oral Rule 50(a) motion or in their positions as reflected in the Final Pre-
Trial Conference Order.  Id. at 10.  Plaintiff contends that it is "unfair and unduly
prejudicial for [d]efendants to spring the argument on [p]laintiff after the case was
submitted to the jury."  Id.  Plaintiff further argues that setting aside a jury verdict on
grounds not presented in pre-verdict motions invades the province of the jury, in violation
of the Seventh Amendment of the U.S. Constitution.  Id. at 9.

      Next, plaintiff argues that, in the event the Court finds defendants did not waive
their election of remedies argument, the argument should be rejected on the merits for
three reasons.  First, plaintiff argues that, in general, "[t]he doctrine of election of
remedies is no longer strictly enforced in the federal courts."  Id. at 11 (quoting Taylor v.
Burlington N. R.R. Co., 787 F.2d 1309, 1317 (9th Cir. 1986)).

      Second, plaintiff argues that the election of remedies doctrine does not apply in
this case because plaintiff's fraud-based claims and breach of contract claim arose out of
different obligations and different operative facts.  Id.  Specifically, plaintiff asserts that
the breach of contract claim arose from defendants' breach of the non-circumvention

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|----------|--------------------------|------|---------------------|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

clause, which, according to plaintiff, prohibited defendants' dealing with Kim and 8BC
for the purpose of avoiding payment to plaintiff. Id. at 14. Thus, plaintiff contends,
defendants' breach occurred in early to mid-October 2015, (prior to October 19, 2015),
when Paz was working with Kim and 8BC to cut plaintiff out of the Ace Hotel project.
Id. Plaintiff points to email evidence of a phone call from early October 2015, in which
Paz and Kim intentionally excluded Corbrus as evidence that the non-circumvention
clause was breached at that time. Id. Plaintiff asserts that the fraud arose from a duty not
to defraud plaintiff, separate from the contractual duty under the non-circumvention
clause, and that defendants violated the duty not to defraud plaintiff when Paz
fraudulently induced plaintiff to resign as a general partner from the Manhattan Real
Estate Fund partnership. Id. at 15. This violation, plaintiff contends, occurred on
October 19, 2015, when Paz falsely promised to compensate plaintiff and concealed his
true intention, and continued when Paz subsequently "misle[d] Corbrus into believing
that it would be paid." Id.

Plaintiff further argues that defendants' breach of contract and fraud gave rise to
distinct losses. Id. at 15. According to plaintiff, the fraud led to plaintiff's resignation
from the Manhattan Fund, which, under its own terms, will continue to reinvest funds for
ten to fifteen years. Id. Because the Ace Hotel project will expire after seven years, the
Manhattan Fund will reinvest the funds for the remainder of the ten-to-fifteen-year
period, earning interest and fees in addition to the interest and fees generated by the Ace
Hotel project. Id. Plaintiff asserts that while it did not seek these additional
compensatory damages in its fraud claim given the difficulty of proving such damages,
the additional losses demonstrate that the fraud damages were distinct from the breach of
contract damages. Id. at 15-16.

Plaintiff cites numerous state and federal cases for the position that election of
remedies does not apply when the fraud-based claims and breach of contract claims arise
at different times or out of different conduct. Id. at 11-14. For example, plaintiff cites
Glendale Federal Savings & Loan Assoc., 66 Cal. App. 3d 101, in which the Court of
Appeal concluded that the election of remedies doctrine should not apply because the
contract claim was for breach of an agreement guaranteeing completion of a property
development project, and the fraud claim arose from the developer's false promise that
certain funds would be expended solely for construction work related to the project. Id.
at 137. Similarly, in Baker v. Superior Court, 150 Cal. App. 3d 140 (1983), the Court of
Appeal rejected application of the doctrine where plaintiffs sued for failure to perform a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                            'O'

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|----------|-------------------------|------|--------------------|
| Title    | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

remodeling contract and additionally claimed that defendants fraudulently induced them
to enter into the remodeling contract through false promises about the quality of the end
product. Id. at 144. In doing so, the Court of Appeal reasoned that the two causes of
action involved separate acts and involved separate obligations. Id. at 146.

Further, plaintiff analogizes to Kraif v. Guez, No. CV 12-06206 SJO (SHx), 2013
WL 12121363 (C.D. Cal. Apr. 16, 2013), in which the court found that the doctrine did
not bar plaintiff's fraud claim. Id. at *3. The contract claim in Kraif alleged that
defendant failed to comply with the terms of a settlement agreement, while, in the
fraudulent inducement claim, plaintiff alleged that defendant did not negotiate the
settlement agreement in good faith. Id. Thus, the breach of contract occurred when
defendant failed to make payments as required by the settlement agreement, and the
fraudulent inducement occurred at the time the parties negotiated the agreement. Id. See
also Schroeder v. Hundley, No. 17-CV-919-JLS (JMA), 2021 WL 4934980, at *3 (S.D.
Cal. Aug. 9, 2021) (finding election of remedies doctrine inapplicable because the "fraud
in the inducement and breach of contract causes of action ar[ose] out of different
obligations and different operative facts"). According to plaintiff, these cases compel
rejection of the election of remedies doctrine here. Dkt. 364 at 14.

Third, plaintiff argues that the election of remedies doctrine should not apply
because defendants have failed to establish substantial prejudice. Id. at 16. Specifically,
plaintiff contends that it does not seek duplicative damages but rather seeks damages
awarded for breach of contract plus prejudgment interest and punitive damages, and
having to pay punitive damages "plainly cannot be the basis for the type of prejudice
contemplated by this defense." Id. at 17. Accordingly, plaintiff argues, it should not be
estopped from pursuing both claims. Id.

In their reply, defendants argue that they did not waive their election of remedies
argument by failing to raise it in a Rule 50(a) motion because plaintiff was not required to
elect a remedy for recovery of compensatory damages until after the jury returned its
verdict. Dkt. 367 at 6. Thus, defendants contend, "there was no corresponding
obligation to make [the election of remedies] argument as part of the Rule 50(a) motion."
Id.

Defendants do not address plaintiff's argument that the election of remedies
doctrine is not applicable because the contract and fraud-based claims arise from different
obligations and different operative facts. Rather, defendants emphasize that, under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

California Civil Code § 3294(a), the law is "crystal clear" that punitive damages may only be recovered in an action not arising from contract. Dkt. 367 at 6-7. This is the case, defendants argue, regardless of the fact that the election of remedies doctrine is generally disfavored. Id. at 6. And in response to plaintiff's position that plaintiff's pursuit of both claims did not disadvantage defendants, defendant asserts that "[t]he $1 million punitive damage verdict, if sustained, would 'disadvantage'" them. Id.

As a preliminary matter, the Court finds that defendants have not waived their election of remedies argument by failing to bring it up in a Rule 50(a) motion. "Ordinarily a plaintiff need not elect, and cannot be compelled to elect, between inconsistent remedies during the course of trial prior to judgment." Baker, 150 Cal. App. 3d at 144. However, a plaintiff may be estopped from pursuing inconsistent remedies where the plaintiff has taken action in pursuit of one remedy and, in doing so, causes the defendant substantial prejudice. Id. For example, in Steiner v. Rowley, the Steiners obtained a writ of attachment in furtherance of their contract claim, thereby disadvantaging Rowley and estopping the Steiners from pursuing their fraud claim. 35 Cal. 2d at 719. Here, plaintiff did not take any steps, such as obtaining a writ of attachment, to pursue one claim to the disadvantage of defendants. Accordingly, plaintiff has not obtained any relief resulting in an election of remedies, and it would have been premature for defendants to raise the election of remedies argument before the present motion.

With respect to the merits of defendants' argument, the Court concludes that the election of remedies doctrine does not preclude plaintiff from pursuing both its breach of contract and the punitive damages based on its fraud claims. This is not a case where "the plaintiff seeks alternative remedies based on the same set of facts," so as to warrant application of the doctrine. JW Gaming Development, LLC v. James, No. 3:18-cv-02669-WHO, 2020 WL 1667423, at *2 (N.D. Cal. Apr. 3, 2020). C.f. Lifeline Food Co., Inc., v. Gilman Cheese Corp., No. 5:15-cv-00034-PSG, 2015 WL 2357246, at *6 (N.D. Cal. May 15, 2015) (applying election of remedies doctrine where plaintiff "attempt[ed] to characterize a lack of performance as a failure to follow through on a promise rather than as a breach of its contractual obligations" and the "fraud claim [wa]s predicated upon the same alleged failure to perform . . . that forms the basis for its breach of contract claim."). Rather, plaintiff's contract claim arises out of defendants' dealing with 8BC to cut plaintiff out of the joint venture, in violation of the non-circumvention agreement, and plaintiff's fraud claims arise out of defendants' promise to compensate plaintiff as a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL         'O'

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

consultant and subsequent failure to do so.  Thus, because "the operative facts giving rise to each cause of action are different," Baker, 150 Cal. App. 3d at 145, the causes of action are not inconsistent.

Defendants contend that plaintiff must elect between their remedies because the breach of contract and the fraud caused the same harm, and plaintiff concedes that the fraud damages are duplicative of the damages for breach of contract.  But the fact that the damages from the two sets of claims may be duplicative of each other does not render the legal theories inconsistent, thereby requiring an election of remedies.  See Bowser v. Ford Motor Co., 78 Cal. App. 5th 587, 623-24 (2022) (distinguishing between election of remedies, which applies where the two legal theories "involve a logical inconsistency," and the rule against double recovery, which applies where the compensatory damages derived from numerous claims overlap).  The appropriate course of action where damages are duplicative is to structure the remedy in a way that avoids any duplicative recovery.  See JW Gaming, 2020 WL 1667423 at *3.

The case of JW Gaming Development, LLC v. James is instructive.  2020 WL 1667423.  In that case, plaintiff JW Gaming alleged that numerous defendants induced it to invest $5.38 million in a tribal casino project through fraud and in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, et seq.  Id. at *1. After making the investment, JW Gaming entered into a contract with the tribe memorializing the loan and successfully sued the tribe for breach of contract when the tribe failed to make payments required by the loan.  Id.  The court rejected the defendants' argument that the election of remedies doctrine precluded JW Gaming's fraud and RICO claims, reasoning that the claims arose from different duties and different operative facts.  Id. at *3.  Further, the court concluded that JW Gaming could pursue punitive damages even though an award of compensatory damages on its fraud claims would result in a duplicative recovery because damages on all of its causes of action stemmed from the same harm, namely, the $5.38 million loan.  Id.  The Court reasoned that, while JW Gaming could not recover the $5.38 million more than once, JW Gaming could still pursue its fraud claim, demonstrate entitlement to compensatory damages for fraud upon a finding of liability, and recover punitive damages.  Id.  The proper approach, the court concluded, was to "structure the remedy to avoid double recovery," rather than to prohibit JW Gaming from pursuing its fraud claim and obtaining punitive damages.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

Here, if plaintiff's claims allege the same harm and thus give rise to duplicative damages, the appropriate approach is to structure the damages award to avoid double recovery, not to require plaintiff to elect a remedy. Accordingly, the Court **DENIES** defendants' renewed motion for judgment as a matter of law to the extent that it is based on the election of remedies doctrine.

> 2.  Statute of Limitations

In their motion, defendants contend that no reasonable jury could have found for plaintiff on the statute of limitations issue and thus seek judgment as a matter of law that plaintiff's fraud claims are time-barred. Dkt. 338 at 17.

> a.  *Legal Standard*

Under California Code of Civil Procedure § 338, claims for "actual fraud [including] causes of action based on fraudulent concealment" are subject to a three-year statute of limitations period. See Stueve Bros. Farms, LLC v. Berger Kahn, 222 Cal. App. 4th 303, 321, 166 Cal. Rptr. 3d 116, 130 (2013). The limitations period applicable to a claim for unjust enrichment varies according to the statute of limitations governing the underlying claim. A claim for unjust enrichment "on the ground of fraud or mistake" is subject to a three-year limitations period pursuant to Cal. Civ. Proc. Code § 338(d). Fed. Deposit Ins. Corp. v. Dintino, 167 Cal. App. 4th 333, 347, 84 Cal. Rptr. 3d 38, 50 (2008).

"Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'" Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 806 (quoting Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999)). An exception to this is the discovery rule which postpones accrual of a claim until the plaintiff discovers or has reason to discover the injury." Parrish v. Nat'l Football League Players Ass'n, 534 F. Supp. 2d 1081, 1089 (N.D. Cal. 2007). "Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." Keilholtz v. Lennox Hearth Prod. Inc., No. 08-cv-00836-CW, 2009 WL 2905960, at *3 (N.D. Cal. Sept. 8, 2009) (quoting Grisham v. Philip Morris U.S.A., Inc., 40 Cal. 4th 623, 634, 54 Cal. Rptr. 3d 735, 151 P.3d 1151 (2007)).

A party seeking to invoke the delayed discovery rule must establish: "(a) lack of knowledge; (b) lack of means of obtaining knowledge such that in the exercise of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

reasonable diligence, the facts could not have been discovered at an earlier date; and (c) how and when the party actually discovered the [claim]." Gen. Bedding Corp. v. Echevarria, 947 F.2d 1395, 1397 (9th Cir. 1991). Under California law, "[t]he question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." Ovando v. Cty. of Los Angeles, 159 Cal. App. 4th 42, 61, 71 Cal. Rptr. 3d 415, 429 (2008).

"A close cousin of the discovery rule is the well accepted principle of fraudulent concealment." Bernson v. Browning-Ferris Indus., 7 Cal. 4th 926, 931 (1994) (internal citation and alteration omitted). "Succinctly stated, the rule of fraudulent concealment provides that a 'defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations'." Garamendi v. SDI Vendome S.A., 276 F. Supp. 2d 1030, 1041 (C.D. Cal. 2003) (quoting Bernson, 7 Cal. 4th at 931). The doctrine of fraudulent concealment is generally "available in all cases," see Regents of Univ. of California v. Superior Ct., 20 Cal. 4th 509, 533, 976 P.2d 808 (1999), including "actions based on negligence, malpractice, breach of written contract, and in various types of restitutionary actions brought under the common count to recover benefits tortuously acquired." Sears, Roebuck & Co. v. Blade, 139 Cal. App. 2d 580, 589, 294 P.2d 140, 145–46 (1956); see also Warner Constr. Corp. v. City of Los Angeles, 2 Cal. 3d 285, 293–94, 466 P.2d 996, 1001 (1970) (fraudulent concealment may form the basis for an action in tort or in contract).

The party seeking to invoke the doctrine of fraudulent concealment "must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1024 (9th Cir. 2008) (quoting Baker v. Beech Aircraft Corp., 39 Cal.App.3d 315, 321, 114 Cal. Rptr. 171 (1974)). "A defendant's fraud in concealing a cause of action against him will toll the statute of limitations, and that tolling will last as long as a plaintiff's reliance on the misrepresentations is reasonable." Grisham, 40 Cal. 4th at 637.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

    *b. Analysis*

    Defendants argue that plaintiff had notice of the alleged fraud over three years before filing suit and failed to demonstrate reasonable diligence to discover the fraud. Dkt. 338 at 17. Defendants point to three incidents that occurred more than three years before plaintiff filed suit on November 30, 2019, that put plaintiff on notice of the alleged fraud. Id. at 18-19. First, on November 13, 2015, Hazan met with Chang and told him that Paz would not honor their October 19, 2015, agreement to pay Chang $1.9 million. Id. at 19. Haskalp, who was present at the November 13, 2015, meeting, wrote in an email sent that day that Hazan "asked Max to either provide her much better terms or get 200k and call it a day." Id. at 20. Haskalp testified during his deposition, which was played to the jury at trial, that his email accurately recorded the conversation. Id. Chang testified that Hazan had informed him that Paz was not going to honor their October 19, 2015, agreement to pay him $1.9 million and instead wanted to pay Chang and Haskalp, collectively, a finder's fee of $200,000. Id. at 21. On November 13, 2015, Chang texted Kim "I just met with Orly. I think we have a big issue." Id. According to defendants, this evidence that Paz informed Chang of his refusal to honor the October 19, 2015, agreement and Chang's realization that he had a "big issue" demonstrate that Chang was on notice of the acts constituting his fraud claims. Id.

    Second, between November 24, 2015, and December 8, 2015, Chang attempted to negotiate a consulting agreement between Corbrus and Paz that called for Chang to be paid $1.9 million for his work on the Ace Hotel project, and Paz refused to sign such an agreement. Id. at 22. On December 1, 2015, Chang sent a draft consulting agreement to Paz, which included a provision stating that Chang's compensation for his work on the Ace Hotel project would be $1,950,000, and sent an email to Paz and Kim stating that his "not serving as the GP is CONTINGENT upon the consulting agreement being executed with [Paz]." Id. at 22-23. On December 8, 2015, Paz rejected Chang's proposed consulting agreement and responded with two proposed one-page agreements. Id. at 23. That same day, Chang rejected Paz's proposed agreements, stating that "to move forward, we need to execute the agreements that I sent you." Id. At trial, Chang testified that Paz never signed Chang's proposed consulting agreement. Id. Defendants contend that Paz's refusal to sign Chang's proposed consulting agreement, which called for payment to Chang of $1,950,000 for his work on the Ace Hotel project, despite Chang's insistence that that agreement be executed to move forward, would have put any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|----------|-------------------------|------|---------------------|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

reasonably diligent plaintiff on notice that he had been harmed in connection with the alleged fraud. Id.

Third, on November 22, 2016, Haskalp sent an email to Chang referencing a "telephone conference re . . . collateral for initial $4 million release of EB-5 funds, and payment directive for equity interest payment upon opening hotel . . . ." Id. at 24. According to defendants, this email provided Chang with actual knowledge sufficient to put him on notice that the EB-5 loan was disbursed on November 17, 2016. Id. Thus, because Chang claims that his compensation for his work on the Ace Hotel project was due upon disbursement of the EB-5 loan and because he had not received the $1.9 million compensation, Chang, with basic diligence, should have been aware on November 22, 2016, of the alleged fraud. Id. Defendants reject Chang's claim that he expected the loans to be disbursed in December 2017 as "baseless[]." Id.

Defendants additionally argue that Chang repeatedly voiced suspicions and complaints about being "pushed out" of the Ace Hotel project, indicating that he was on notice of the alleged harm. Id. at 24. Haskalp testified that, more than three years before Corbrus filed suit, Chang had numerous conversations with Haskalp in which Chang expressed that he had been treated unfairly by defendants and that he was concerned that defendants would not compensate him for the Ace Hotel project. Id. at 25. Haskalp further testified that Chang said he was thinking about getting a lawyer to go after Paz and 8BC. Id.

According to defendants, these three incidents and Chang's statements demonstrating his suspicion and concern discredit plaintiff's assertion that it believed its compensation was not due until approximately December 2017. Id. at 26. No reasonable jury, defendants argue, could believe otherwise. Id.

In further support of this position, defendants analogize to three cases. First, in Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103 (1988), the plaintiff, who experienced medical issues related to her mother's ingestion of a drug, suspected that the ingestion of the drug was the cause of her injuries but did not file suit because she did not know who had manufactured the drug. Id. at 1111. The court, holding that the plaintiff's action was barred by the statute of limitations, found that "[s]o long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." Id. Second, defendants point to Miller v. Bechtel Corp., 33 Cal. 3d 868 (1983), in which the plaintiff had a long-held suspicion that her former husband had misrepresented the value

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-10182-CAS(AFMx) | Date | September 13, 2022 |
|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

of his assets in dissolution negotiations but did not file suit until she discovered facts confirming her suspicions, after the statute of limitations had run. The California Supreme Court found her suit time-barred. Id. at 870. Finally, in Cypress Semiconductor Corp. v. Superior Ct., 163 Cal. App. 4th 575 (2000), the appellate court found an action barred by the statute of limitations where plaintiff had suspicions that defendant was using a computer program based off of a trade secret misappropriated from plaintiff but did not file suit until after the plaintiff had actual knowledge of the defendant's use, after the statute of limitations had run. Id. at 585.

Defendants contend that, like plaintiffs in Jolly, Miller, and Cypress, plaintiff here failed to investigate its suspicions of harm—specifically, suspicions that Paz lied about the Ace Hotel project compensation in October 2015—and chose not to act until after the statute of limitations had run. Dkt. 338 at 29.

In response, plaintiff argues that the jury had ample evidence to rule in plaintiff's favor on the statute of limitations claim pursuant to the discovery rule and the principle of fraudulent concealment. Dkt. 364 at 20-21. Specifically, plaintiff argues that the meeting with Hazan on November 13, 2015, was of little relevance because Hazan was not employed by or officially affiliated with Omnia and therefore "had no authority to bind or unbind Omnia in any way." Id. at 22. Further, plaintiff argues, Chang testified that in a conversation with Chang following the meeting with Hazan, Paz told Chang that, despite Hazan's statements, Paz would pay Corbrus the $1.9 million. Id. Haskalp additionally testified that Paz told Haskalp to ignore Hazan's statements at the November 13, 2015, meeting. Id.

With respect to the November 22, 2015, email sent to Chang, plaintiff argues that the jury rightfully rejected defendant's claim that the email should have put Chang on notice of the EB-5 loan's disbursement. Id. at 22-23. Plaintiff characterizes the email as "cryptic," stating that "to the trained *attorney eye*, it appears to be short-hand attorney billing entries written by some unknown person." Id. at 23. Plaintiff argues that for someone in Chang's position, who is not an attorney and not a native English speaker, this email would have little significance. Id. Moreover, the email referenced the "Ace condo deal." Id. Plaintiff points out that the Ace condo deal was a separate deal from the Ace Hotel deal and that, when Chang responded to Haskalp, he referenced the "Ace condo deal," not the Ace Hotel deal. Id. Thus, plaintiff contends, the email would not put a reasonable person on notice that the EB-5 loan had been disbursed in connection with the Ace Hotel, and the jury rightfully gave little weight to this evidence. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

Finally, plaintiff argues that the jury had a sufficient basis to find in favor of plaintiff, despite the evidence that Chang expressed his suspicions over three years before filing suit, because "when Chang became nervous, Paz would engage in fraudulent concealment by assuring Chang that Paz would pay Corbrus." Id. at 23. Specifically, plaintiff cites Chang's testimony that Paz convinced Chang that Corbrus did not need a consulting agreement because Chang's work on the project was complete and Chang was protected by the non-circumvention agreement as well as other communications between the parties. Id. at 23-24. Additionally, Chang testified that, as of January 10, 2016, Paz had convinced Chang that Chang would receive the promised compensation and the parties discussed a "subsequent Ace Hotel raise with Corbrus," which Chang testified he would not have discussed with Paz had he believed that Paz was defrauding him. Id. at 24. According to Chang's testimony, Paz texted him on March 12, 2016, confirming that Paz would pay Corbrus the promised compensation when the loan was disbursed, and, between March 2016 and March 2017, when Chang continually checked in with Paz and Haskalp regarding the status of the loan, Paz dishonestly represented that the loan had not been disbursed yet. Id. This testimony, plaintiff contends, provided the jury with more than a sufficient basis to find in favor of Corbrus under the discovery rule and fraudulent concealment doctrine. Id.

Defendants respond that the November 22, 2016, email referenced a $4 million release of EB-5 funds related to "opening hotel." Dkt. 367 at 8. Thus, defendants argue, the email referenced the hotel in addition to the condo and should have put plaintiff on notice that the EB-5 funds had been disbursed. Id. at 8-9. Defendants emphasize that the email was sufficient to put Haskalp on notice because Haskalp, upon receipt of the email, sought payment of his commission. Id. at 9. In response to plaintiff's assertion that Chang, who is not a native English speaker, would not interpret the email as an indication that the funds had been disbursed, defendants point out that Chang has a bachelor's degree from the University of Washington and an MBA from Boston College. Id.

At oral argument, counsel for defendants reiterated their argument that the November 22, 2016, email would have put a reasonably diligent person on notice that the loan had been disbursed. Counsel for defendants argued that the email and Haskalp's testimony that he sought his commission upon receipt of the email are new evidence that was not before for the Court at the time the Court denied defendants' statute of limitations argument in their partial motion for summary judgement. See dkt. 226. This

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|----------|--------------------------|------|---------------------|
| Title    | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

new evidence, defendants argue, requires a finding that plaintiff's fraud claims are barred by the statute of limitations as a matter of law.

The Court concludes that judgment as matter of law is not appropriate on the ground that plaintiff's fraud claims are barred by the statute of limitations because Corbrus has "come forward with evidence establishing . . . triable issue[s] of fact" with regard to the timeliness of plaintiff's fraud claims. O'Connor v. Boeing N. Am., Inc., 311 F.3d 1139, 1150 (9th Cir. 2002). With respect to the November 13, 2015, meeting, plaintiff presented evidence to the jury that reasonably supported the contention that Hazan's statements did not put Chang on notice of harm. Specifically, Chang testified that Hazan was not an employee of Omnia or a broker of the Ace Hotel deal and that Paz assured Chang that Hazan was confused and that Paz would pay Corbrus the $1.9 million as promised. Dkt. 364 at 22. Haskalp's testimony corroborated this account. Id.

Further, plaintiff presented evidence to the jury indicating that the November 22, 2016, email would not have put Chang on notice that the EB-5 loan had been disbursed because Chang testified that he believed the email related to the Ace condo project, not the Ace Hotel project. Id. at 23. Chang's response to Haskalp referencing the Ace condo project served as additional evidence that the email would not have put Chang on notice. Id. Thus, the Court is not persuaded by defendants' argument that the email and Haskalp's testimony should change the result reached at the summary judgment stage. While the new evidence may support defendants' position, plaintiff presented evidence that could support a reasonable determination by the jury that the email did not put plaintiff on notice.

Moreover, plaintiff presented the jury with numerous pieces of evidence that, from November 2015 to March 2017, Paz continually assured Chang that Chang would receive the promised compensation. Id. at 23-24. For example, Chang testified that in a December 15, 2015, meeting, Paz convinced Chang that a consulting agreement was not necessary because Corbrus was protected by the non-circumvention agreement and other communications between the parties. Id. And Chang further testified that, when he regularly checked in with Paz regarding the status of the loan, Paz hid the fact that the loan had been disbursed. Id. at 24.

In light of this evidence, the Court cannot conclude that, as a matter of law, Corbrus was on notice that he would not be compensated. This is not a case where "the evidence can support only one reasonable conclusion" regarding whether "plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|----------|--------------------------|------|---------------------|
| Title | CORBRUS, LLC V. 8ᵀᴴ BRIDGE CAPITAL, INC., ET AL. | | |

actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule." Ovando, 159 Cal. App. 4th at 61.  Furthermore, plaintiff's evidence is sufficient to support a reasonable finding that defendants "fraudulently concealed the existence of [its] cause[s] of action" such that plaintiff, "acting as a reasonable person, did not know of [their] existence." Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1060 (9th Cir. 2012).  While defendants have set forth evidence suggesting that a reasonably diligent person would have discovered the alleged fraud, in this case, the evidence is not so one-sided that a rational trier of fact would not be able to find for plaintiff on the claims at issue. See Matsushita, 475 U.S. at 587.  And when viewing all inferences drawn from the facts in the light most favorable to plaintiff, the Court cannot conclude that the fraud claims are time-barred as a matter of law.

Accordingly, the Court **DENIES** defendants' renewed motion for judgment as a matter of law to the extent that it is based on the statute of limitations.

### B.      Rule 59 Motion for a New Trial

Federal Rule of Civil Procedure 59(a)(l) provides that, after a jury trial, a court may grant a motion for a new trial based "on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," district courts are "bound by those grounds that have been historically recognized." Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003). Those grounds include, but are not limited to: (1) a verdict that is contrary to the weight of the evidence; (2) a verdict that is based on false or perjured evidence; (3) damages that are excessive; or (4) to prevent a miscarriage of justice. Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007).  When a motion for a new trial is based on insufficiency of the evidence, courts must evaluate the evidence and may assess for itself the credibility of witnesses. See Murphy v. City of Long Beach, 914 F.2d 183, 187 (9th Cir. 1990).  A district court "may grant a new trial only if the verdict is against the clear weight of the evidence, and may not grant it simply because the court would have arrived at a different verdict." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002).

/ / /

/ / /

/ / /

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|----------|--------------------------|------|---------------------|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

1.      Exclusion of Expert Testimony

   *a. Legal Standard*

Under California Civil Code § 1644,

   [t]he words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a specialized meaning is given to them by usage, in which case the latter must be followed.

There is a "general rule that experts cannot offer testimony on the meaning of contractual terms," which "follows from the policy that expert testimony must assist the trier of fact, and in most cases of contract interpretation, the trier of fact is sufficiently capable of interpreting the English language without the assistance of an expert." Pac. Fuel Co., LLC v. Shell Oil Co., No. CV 06-0225 AG (AJWx), 2008 WL 11336467, at *5 (C.D. Cal. Jan. 24, 2008).  However, if "the contractual language contains terms with specialized or technical meaning in a given industry, a qualified expert may assist the trier of fact by offering insight on the meaning of the language in the context of that industry."  Id.

   The trial court has broad discretion in deciding whether to admit or exclude expert testimony.  See e.g., General Elec. Co. Joiner, 522 U.S. 136, 142 (1997); United States v. Espinosa, 827 F.2d 604, 611 (9th Cir.1987) ("The decision to admit expert testimony is committed to the discretion of the district court and will not be disturbed unless manifestly erroneous.").

   *b. Analysis*

   Defendants argue that a new trial is warranted because defendants were substantially prejudiced by the Court's decision to exclude defendants' expert witness, Gary Tenzer, from testifying.  Id. at 30-31.  According to defendants, this decision prejudiced them "because Mr. Paz's testimony regarding his understanding of the non-circumvention clause . . . was never reinforced or buttressed by an experienced expert's testimony," id. at 31, and Mr. Tenzer's testimony would have informed the jury that a borrower in Paz's position would ordinarily have understood the clause "to prohibit the borrower from shopping the terms of the loan rather than preventing the borrower from doing business with the entity created by the partners," id. at 30.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

Defendants argue that parol evidence is admissible to explain special meaning given to contract terms by trade usage, regardless of whether the terms are ambiguous. Id. at 31-32. In support of their position that expert testimony should have been admitted to clarify the terms of the non-circumvention clause, defendants primarily rely on Universal Cable Productions, LLC v. Atlantic Specialty Insurance Co., 9292 F.3d 1143 (2019), in which the Ninth Circuit Court of Appeals found that applying the specialized meaning of the word "war" in the insurance industry was required because "that specialized meaning has been developed from customary usage in a given industry and . . . both parties have constructive notice of that usage." Id. at 1147. See dkt. 338 at 33. Defendants also cite Ermolieff v. R.K.O. Radio Pictures, 19 Cal. 2d 543 (1942 In Bank), for the proposition that "[p]arol evidence is admissible to establish the trade usage, and that is true even though the words are in their ordinary or legal meaning entirely unambiguous, inasmuch as by reason of the usage the words are used by the parties in a different sense." Id. at 550. See dkt. 338 at 33.

Plaintiff responds that the expert testimony was properly excluded under Federal Rules of Evidence 401, 403, and 702. Dkt. 366 at 8. Plaintiff contends that defendants have failed to point to any specific words in the non-circumvention clause that had a specialized meaning in the EB-5 industry. Id. at 11. Rather, plaintiff argues, Tenzer's testimony would have indicated that plaintiff's interpretation of the clause would not be the typical use of non-circumvention language. Id. Plaintiff additionally argues that Tenzer's testimony outside of the presence of the jury indicated that there was no reason why the two parties constituting the lender, (here, Corbrus and 8BC), could not have sought a non-circumvention agreement as to one another. Id. Thus, according to plaintiff, Tenzer's testimony would not have shed light on the specialized meaning of any word or phrase but rather would "throw out the language the parties agreed upon." Id. (citing Supervalu, Inc., v. Wexford Underwriting Managers, Inc., 175 Cal. App. 4th 64, 76 (2009)).

Plaintiff argues that the cases defendants cite are distinguishable because they dealt with specific words with specialized meaning, whereas, here, Tenzer did not identify any such words, and he would simply urge the jury to ignore the plain language of the non-circumvention clause. Id. at 11-14. Plaintiff asserts that Supervalu, Inc. v. Wexford Underwriting Managers, Inc., 175 Cal. App. 4th 64 (2009) is more on point. Id. at 15. The parties in Supervalu disagreed about the meaning of the word "occurrence" in their insurance contract, and the plaintiff employer offered testimony regarding use of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | | Date | September 13, 2022 |
|---|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | | |

word in the insurance industry. 175 Cal. App. 4th at 74-75. The Court of Appeal found that the testimony should not have been admitted because it suggested an industry definition that was "antithetical to the contractual language." Id. at 75.

Plaintiff contends that this case is similar to Supervalu because the expert testimony would have rewritten the terms of the non-circumvention clause, which plaintiff interprets to unambiguously prohibit Paz from dealing with 8BC to cut out plaintiff. Dkt. 366 at 15, 16. Specifically, plaintiff argues that the non-circumvention clause is not ambiguous because reading it to prohibit one or more of the parties to the agreement from dealing only with those entities introduced by or through another party would render the "any other entities" language surplusage. Id. at 16. Accordingly, plaintiff states that Tenzer's testimony that non-circumvention agreements do not typically operate in this way would be "antithetical to the contractual language" and was thus properly excluded. Id. (quoting Supervalu, 175 Cal. App. 4th at 75).

Plaintiff additionally contends that, even if exclusion of Tenzer's testimony was error, defendants cannot show they were substantially prejudiced for several reasons. Id. at 17. First, the Court allowed the parties, including Paz, to testify regarding their understandings of the non-circumvention clause. Id. According to plaintiff, Paz was the proper party to testify on this subject, not Tenzer, because Tenzer had no foundation to testify regarding Paz's subjective understanding of the agreement. Id. at 18. Plaintiff additionally claims that Tenzer's testimony would not have swayed the jury in light of his limited experience in the EB-5 loan industry, his position that the parties were free to contractually bind Paz from dealing with one partner to circumvent the other, and the testimony of plaintiff's EB-5 expert that the non-circumvention clause was standard in such agreements. Id.

In their reply, defendants point out that, in the order denying plaintiff's motion *in limine* to exclude Tenzer's testimony, the Court "rejected Corbrus's argument that Mr. Tenzer's testimony constitutes an impermissible legal opinion, reasoning that testimony as to the means of contractual terms should be admitted 'if offered to clarify language with a specialized meaning' in a given industry." Dkt. 368 at 7 (quoting dkt. 260). Further, defendants' reply reiterates their argument that "[a]mbiguity is not a pre-requisite to admissibility," asserting that evidence of trade usage may be admissible regardless of whether a term is ambiguous or not. Id. at 12-13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | | Date | September 13, 2022 |
|---|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | | |

In response to plaintiff's reliance on <u>Supervalu</u>, defendants argue that <u>Supervalu</u> is distinct from this case because "[h]ere there is no contradiction of the language of the non-circumvention agreement, and no available 'surplusage' argument." In support of this argument, defendants contend that the "any entity" language in the non-circumvention clause could be read to "refer to a prohibition from seeking a loan from a third-party lender (EB-5 or otherwise)" while the "any other entities" language could be read to "prohibit[] contact with prospective EB-5 investors or professionals retained to prepare required documents . . . or to conduct the 'raise' of EB-5 funds." <u>Id.</u> at 13.

Finally, defendants argue that the exclusion of Tenzer's testimony was prejudicial because Tenzer's testimony corroborated Paz's testimony regarding his understanding of the non-circumvention clause. <u>Id.</u> at 14. Defendants further assert that they do not need to show prejudice because the exclusion of Tenzer's testimony amounted to "structural error." <u>Id.</u> at 14-15. Defendants cite a California Court of Appeal case, <u>Kline v. Zimmer, Inc.</u>, 79 Cal. App. 5th 123 (2022), in which the court found that exclusion of an expert's testimony constituted a structural error because it deprived a party of its due process right to a fair trial and concluded that the harmless error standard did not apply. <u>Id.</u> at 135. According to defendants, because the exclusion of Tenzer's testimony resulted in plaintiff's expert being the sole expert speaking on "a central issue which was beyond the experience of lay jurors," it deprived defendants of a fair trial. Dkt. 368 at 15.

Having carefully considered the parties' arguments, the Court concludes that Tenzer's testimony was properly excluded. As an initial matter, the parties to the non-circumvention agreement, not Tenzer, were the proper parties to testify as to their understandings of the agreement.

The "rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the mutual intention of the parties." <u>Waller v. Truck Ins. Exch.</u>, 11 Cal. 4th 1, 18 (Cal. 1995) (quotation marks omitted).

Under California law, "[t]he interpretation of a contract involves "a two-step process." <u>Wolf v. Superior Court</u>, 114 Cal. App. 4th 1343, 1351 (2004). "First the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party." <u>Id.</u> "Even if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

reasonably susceptible. <u>First Nat'l Mortg. Co. v. Federal Realty Inv. Trust</u>, 631 F.3d 1058, 1067 (9th Cir. 2011) (citing <u>Morey v. Vannucci</u>, 64 Cal. App. 4th 904, 912 (1998)).

Second, "if in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract." <u>Wolf</u>, 114 Cal. App. 4th at 1351.

At the time of the motion *in limine*, the Court reserved judgment as to whether the non-circumvention agreement was ambiguous. <u>See</u> dkt. 260. At trial, outside of the presence of the jury, the parties and the Court made inquiry of Tenzer regarding any potential ambiguity in the non-circumvention agreement. Dkt. 368-1, Exh. 8 at 12-36. While Tenzer initially testified that the agreement was ambiguous, <u>id.</u> at 12, his testimony did not identify any particular ambiguity. Rather, he testified that a non-circumvention agreement is typically between a borrower and a lender, and the non-circumvention agreement here was out of the ordinary because it listed the two parties comprising the lender. <u>Id.</u> at 13. He further testified that a term sheet from a lender typically has a non-circumvention clause that functions as a no shop provision, prohibiting the borrower from seeking a loan with better terms elsewhere while the lender works to get the loan approved on the agreed upon terms. <u>Id.</u> at 15-16. He characterized the inclusion of all three parties in the non-circumvention clause as unusual but acknowledged that there was no reason why the two lending partners could not have sought a non-circumvention agreement as to each other. <u>Id.</u> at 28.

Based on Tenzer's testimony that a non-circumvention agreement between two lenders would be unusual but not impossible, the Court concluded that each party to the agreement could testify regarding its understanding of the agreement. <u>Id.</u> at 37. Accordingly, Kim, Corbrus, and Paz all testified as to their own understandings. <u>Id.</u> at 37, 54-55. The parties to the agreement, not Tenzer, were the proper parties to testify about their understandings of the agreement. Allowing Tenzer, who was not a party to the agreement and had no knowledge of the partnership, to testify to the jury regarding his view that the agreement was unusual would not "give effect to the mutual intention of the parties," <u>Waller</u>, 11 Cal. 4th at 18, and thus would not aid the jury in interpreting the contract. Further, such testimony would essentially tell the jury how it should interpret the contract, which would invade the province of the jury and would therefore be improper. <u>See Kostelecky v. NL Acme Tool/NL Indus., Inc.</u>, 837 F,2d 828, 830 (8th Cir. 1988) ("Under either [Rule 701 or Rule 702], evidence that merely tells the jury what

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

result to reach is not sufficiently helpful to the trier of fact to be admissible."). Thus, to the extent that the agreement was ambiguous, the proper parties had the opportunity to testify regarding their understandings of the agreement.

Defendants' argument that Tenzer's testimony should have been admitted as custom and usage evidence is also without merit. While it is true that expert testimony is admissible "if offered to clarify language with a specialized meaning," Pac. Fuel Co., LLC, 2008 WL 11336467, at *4, Tenzer's testimony was not offered for this purpose. Testimony that a contract provision, as written, is out of the ordinary is not equivalent to testimony offered to "assist the trier of fact by offering insight" on "terms with specialized or technical meaning." Pac. Fuel Co., LLC, 2008 WL 11336467, at *5. In testifying that non-circumvention agreements are typically written differently, Tenzer did not aid interpretation of the contract by clarifying the specialized meaning of a term that the jury would not have understood on its own.

Defendants emphasize that parol evidence may be admissible to clarify the specialized meaning of a contract term even if the term is entirely unambiguous when given its ordinary meaning. But the specific issue here with Tenzer's testimony was not that the terms of the contract were or were not ambiguous. Rather, Tenzer's testimony is not proper custom and usage evidence clarifying the specialized meaning of a term because it does not opine on the meaning given to any particular contractual term or phrase in the relevant industry; it simply indicates that the contract language chosen by the parties is unusual based on his expert opinion.

For this reason, the cases on which defendants rely are inapposite. In Universal Cable, the contract at issue was an insurance policy that covered loss caused by terrorism but excluded from coverage "war" and "warlike action by a military force." 929 F.3d at 1149. The Ninth Circuit Court of Appeals held that the district court erred in not giving the terms "war" and "warlike action by a military force" the specialized meaning given them in the insurance industry. Id. at 1154. Plaintiff Universal offered "unrebutted expert evidence demonstrating the customary usage of 'war' and 'warlike action by a military force' in the insurance context" indicating that, in the insurance context, they require hostilities between de jure and de facto sovereigns. Id. at 1154, 1157. This expert evidence was buttressed by caselaw and insurance treatises demonstrating that "ordinary, popular meanings of these terms do not control in [the insurance] context." Id. at 1154. Thus, Universal Cable involved specific terms given a particular meaning based on longstanding and well-known custom in the insurance industry. Here, by contrast,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:19-CV-10182-CAS(AFMx) | Date | September 13, 2022 |
|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

Tenzer did not identify specific terms or phrases with specialized meaning, nor did
defendants present evidence that, in the EB-5 industry, any specific terms or phrases in
the non-circumvention clause ordinarily have a specialized meaning.

Defendants' reliance on Ermolieff is similarly misplaced.  In Ermolieff, the court
of appeal held that defendant R.K.O. Radio Pictures' evidence regarding custom and
usage in the moving picture industry defining "United Kingdom" to include "Eire" was
improperly excluded.  19 Cal. 2d at 549.  R.K.O Radio Pictures offered "testimony of
several witnesses familiar with the distribution of motion pictures to the effect that in
contracts covering the rights to produce pictures the general custom and usage was that
the term 'The United Kingdom' included Eire."  Id.  Accordingly, the testimony assisted
interpretation of the contract "by offering insight on the meaning of the language in the
context of that industry."  Pac. Fuel Co., LLC, 2008 WL 11336467, at *5.  Like
Universal Cable, Ermolieff involved evidence of industry custom giving a particular
meaning to a specific term, namely, the United Kingdom.  Tenzer's testimony that the
non-circumvention clause was written in an unusual way does not provide comparable
insight that could help the trier of fact understand the meaning of its terms.[3]

Because Tenzer's testimony did not opine on a "specialized meaning . . . given to
[the contract terms] by usage," Cal. Civ. Code § 1644, the Court concludes that exclusion
of the testimony as purported custom and usage evidence was proper.  The Court does not

---

[3] At oral argument, counsel for defendants argued that Tenzer's testimony clarified the
meaning of the word "non-circumvention," which is the heading of the non-
circumvention clause in the Term Sheet.  This recharacterization of Tenzer's testimony
does not change the result.  Tenzer testified that, in his experience, non-circumvention
clauses are ordinarily written differently than the one in the Term Sheet.  He stated,
however, that two lenders could write a non-circumvention clause that binds them as to
each other.  In so doing, he did not clarify the special meaning of an industry-specific
term, ("non-circumvention" or any other term), in a way that would assist the jury in
interpreting the agreement.  Rather, his testimony that the parties could have drafted the
clause to align with plaintiff's proposed interpretation indicates that the jury was the
proper party to determine the meaning of the non-circumvention clause.  For the reasons
already stated by the Court, such testimony is not the kind of custom and usage evidence
at issue in Universal Cable and Ermolieff, and defendants' focus on the word "non-
circumvention" does not alter the analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|----------|--------------------------|------|---------------------|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

reach the question of whether defendant was substantially prejudiced by the exclusion since the Court finds that the testimony was properly excluded.

Accordingly, the Court **DENIES** defendants' motion for a new trial to the extent that it is based on the exclusion of Tenzer's expert testimony.

2.   Duplicative Damages

Finally, defendants argue that various components of the verdict's damages awards are duplicative of each other and are not supported by evidence. Dkt. 338 at 34. Defendants seek a new trial on the ground that the damages award lacks an evidentiary basis. Dkt. 368 at 16.

a. *Legal Standard*

When the court, after viewing the evidence concerning damages in a light most favorable to the prevailing party, determines that the damages award is excessive, it has two alternatives. It may grant [a] motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur. The prevailing party is given the option of either submitting to a new trial or of accepting a reduced amount of damage which the court considers justified.

Fenner v. Dependable Trucking Co., Inc., 716 F.2d 598, 603 (9th Cir.1983). The proper amount of a remittitur is the maximum amount sustainable by the evidence. D & S Redi–Mix v. Sierra Redi–Mix and Contracting Co., 692 F.2d 1245, 1249 (9th Cir.1982). If the prevailing party refuses to accept the reduced amount, a new trial must be ordered, at least as to the damages for that particular claim. If the party accepts the remittitur, judgment shall be entered for this reduced amount. Fenner, 716 F.2d at 603.

b. *Analysis*

Defendants make various arguments as to why the compensatory damages other than the damages award for $2,388,586 for the breach of contract claim are duplicative and ask the Court to reduce the judgment by the amount of the duplication. See dkt. 338 at 34.[4] Because plaintiffs have conceded that the compensatory damages awarded in

---

[4] The compensatory damages awarded by the jury for claims other than the breach of contract claim include $500,000 for breach of the implied covenant of good faith,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|---|---|---|---|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

excess of $2,388,586 are duplicative, see dkt. 366 at 20, the Court need not reach those issues.[5]

---

$250,000 for concealment, $250,000 for unjust enrichment, and $350,000 for fraud based on a false promise.

Defendants additionally argue that they are entitled to a new trial because the damages award for the breach of contract claim is not supported by the evidence. Specifically, defendants argue that the jury verdict's inclusion of seven years of interest, as opposed to six years of interest, is "inherently speculative and not based in evidence," in light of testimony that interest has only been paid for six years. Dkt. 338 at 13. Defendants also contend that the damages award was inappropriately based on an October 2015 text agreement that plaintiff stated would not serve as the basis of its breach of contract claim. Id. at 13 n.1. Contrary to defendants' arguments, the damages award for the breach of contract claim is supported by the evidence. With respect to the jury's inclusion of interest for seven years, the number of years for which interest should be included was subject to extensive testimony at trial, and there was sufficient evidence for the jury to award damages based on seven years. As for the basis of the award for breach of contract, plaintiff's expert, Christian Tregillis, testified at length regarding various computations of damages, which were listed in a chart provided to the jury. The jury selected one of the options listed in the chart, which, according to plaintiff's expert, was based on the compensation Corbrus expected from the Ace Hotel project under the partnership with 8BC. See dkt. 366 at 18. Thus, the jury had a sufficient evidentiary basis to award damages in the amount of $2,388,586.

[5] Plaintiff argues that the jury may have been confused by the instruction directing them not to award duplicative damages, speculating that this might be a potential cause for the discrepancy between the damages awarded for breach of contract as compared to fraud. Id. at 22. Additionally, plaintiff argues that the jury may have been confused by defendants' damages expert's testimony regarding hours-based damages for the unjust enrichment claim and, despite the Court's limiting instruction, may have relied on the hours-based damages figures when awarding damages for the fraud claims. Id. at 25-26. The Court does not reach these arguments because plaintiff has stipulated that the compensatory damages in excess of the amount awarded on the breach of contract claim are duplicative. Accordingly, there is no need to speculate as to why the jury awarded a lesser sum for fraud than for breach of contract.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | Date | September 13, 2022 |
|----------|--------------------------|------|---------------------|
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | |

The Court finds that judgment should be entered in the amount of $3,761,876, which comprises $2,388,586, (the jury award for breach of contract), plus prejudgment interest in the amount of $713,556, plus $1,000,000 in stipulated punitive damages, less $340,266 pursuant to the agreement with 8BC.[6]  As plaintiff concedes, the $2,388,586 awarded for breach of contract is duplicative of the damages for fraud.  The appropriate course of action where damages awarded on numerous legal theories are duplicative of each other is to structure the remedy to avoid double recovery.  See supra III.A.1.b. Accordingly, the Court will reduce the damages awards in the special verdict form by the amounts that the jury awarded plaintiff in excess of $2,388,586.  Because the $2,388,586 represents recovery under both the breach of contract theory and the fraud theories, the award "carries with it . . . the right to punitive damages." Bowser, 78 Cal. App. 5th at 624 (explaining that plaintiff was still entitled to punitive damages even though it conceded fraud compensatory damages constituted double recovery).  Thus, plaintiff may recover punitive damages based on its fraud claims.

JW Gaming is again instructive.  In rejecting defendants' argument that punitive damages were unavailable to JW Gaming because the compensatory damages for its fraud claim would be duplicative of the compensatory damages for its breach of contract claim, the court reasoned that "a jury's finding of liability and an *entitlement* to compensatory damages could provide the basis for a punitive damages award even if JW Gaming does not in fact recover the compensatory damages." JW Gaming, 2020 WL 1667423, at *3.  The court concluded that, while JW Gaming could not recover the $5.38 million that it loaned more than once, any double recovery in compensatory damages could be avoided by the court's structuring of the remedy.  Id. (citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 51 n.14 (1974)).  Such structuring, however, would not eliminate the basis for punitive damages.  Id.

Here, given that the jury found for plaintiff on the fraud issues, plaintiff has demonstrated an "entitlement to compensatory damages [that] could provide the basis for a punitive damages award even if [plaintiff] does not in fact recover the compensatory damages" due to the rule against double recovery.  Id.  Thus, plaintiff may recover

---

[6]  Prejudgment interest is based on the methodologies presented in plaintiff's Notice of Lodging Proposed Judgment, which apply an interest rate of 10 percent per annum pursuant to California Civil Code sections 3287(a) and 3289(b) and stipulation of the parties at trial. See dkt. 335.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-10182-CAS(AMFx) | | Date | September 13, 2022 |
| Title | CORBRUS, LLC V. 8TH BRIDGE CAPITAL, INC., ET AL. | | | |

punitive damages based on its fraud claims, even though the compensatory damages for fraud are duplicative of the damages for breach of contract, thereby warranting structuring of the remedy to avoid double recovery.

Because, $3,761,876 represents "the maximum amount sustainable by the evidence," D & S Redi–Mix, 692 F.2d at 1249, and plaintiff concedes as much, the Court concludes that entry of judgment in this amount is proper. Accordingly, the Court **DENIES** defendants' motion for a new trial on the grounds of duplicative damages and **DENIES AS MOOT** defendants' motion to reduce and remit duplicative damages verdicts.

## IV.   CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendants' renewed motion for judgment as a matter of law, **DENIES** defendants' motion for new trial, and **DENIES AS MOOT** defendants' motion to reduce and remit duplicative damages verdicts.

IT IS SO ORDERED.

|  | 00 | : | 27 |
| Initials of Preparer | | CMJ | |